**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

MAURENE COMEY,

                Plaintiff,

     v.

UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

       and

EXECUTIVE OFFICE OF THE PRESIDENT
1600 Pennsylvania Avenue, N.W.
Washington, D.C. 20500

       and

FRANCEY HAKES
in her official capacity as the Director of the Executive
Office for United States Attorneys
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

       and

PAMELA J. BONDI
in her official capacity as Attorney General of the
UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

       and

EXECUTIVE OFFICE FOR UNITED STATES
ATTORNEYS
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

       and

OFFICE OF PERSONNEL MANAGEMENT
1900 E Street, NW
Washington, D.C, 20415

Civil Action No: 25-_____

**JURY TRIAL DEMANDED**

and

THE UNITED STATES OF AMERICA
Washington, D.C. 20500,

              Defendants.

## COMPLAINT

## PRELIMINARY STATEMENT

1.      Plaintiff Maurene Comey was an exemplary, dedicated, and highly decorated public servant who spent nearly ten years prosecuting crime and corruption, without fear or favor, as an Assistant United States Attorney for the Southern District of New York.

2.      During Ms. Comey's tenure, acting in accord with Department of Justice policy and pursuant to direction from Department of Justice and United States Attorney's Office leaders, she helped protect the American public by securing hundreds of criminal convictions and participating in dozens of complex cases, including prosecutions of homicides, racketeering, and public corruption.  Based on her outstanding record, she was assigned to prosecute high-profile defendants including Sean "Diddy" Combs, Robert Hadden, Jeffrey Epstein, and Ghislaine Maxwell.  In recognition of her work, the Department of Justice repeatedly promoted and honored Ms. Comey.

3.      Despite her exemplary performance, Ms. Comey was abruptly fired on July 16, 2025, the day after the U.S. Attorney's Office had asked her to take the lead on a major public corruption case and just three months after her latest receipt of an "Outstanding" review. Defendants did not identify any cause or provide Ms. Comey any due process for her removal. She simply received an email with an attachment stating that she was being terminated "[p]ursuant to Article II of the United States Constitution and the laws of the United States."

4.      Ms. Comey's termination—without cause, without advance notice, and without any opportunity to contest it—was unlawful and unconstitutional.  In addition to her fundamental constitutional rights, Ms. Comey had statutory protections under the Civil Service Reform Act ("CSRA") that governed how and why she could be terminated, including specific prohibitions against termination for discriminatory reasons such as political affiliation.  Her termination violated every one of those protections.

5.      Defendants have not provided any explanation whatsoever for terminating Ms. Comey.  In truth, there is no legitimate explanation.  Rather, Defendants fired Ms. Comey solely or substantially because her father is former FBI Director James B. Comey, or because of her perceived political affiliation and beliefs, or both.

6.      James Comey served as the Director of the Federal Bureau of Investigation from 2013 until President Trump fired him in 2017.  For the past nine years, President Trump has publicly criticized Mr. Comey for his actions while serving as FBI Director,[1] and because after he was fired, Mr. Comey (i) wrote a memoir critical of President Trump, (ii) continued to publicly criticize President Trump and his Administration, and (iii) in May 2025 posted a message on social media that President Trump and others in the Trump Administration claimed to perceive as threatening.[2]

---

[1] According to a website that compiles President Trump's posts on the social media platforms X and Truth Social, President Trump has posted (or reposted) approximately 259 times about Mr. Comey from October 16, 2016, to the date of this filing, including repeatedly calling him the "worst" FBI Director in history.  *See generally,* https://rollcall.com/factbase-twitter/?q=Comey&platform=all&sort=date&sort_order=desc&page=6 ("Roll Call," full Trump social media compilation filtered for the search term "Comey"); *see also id.* at May 24, 2024, May 9, 2019, June 15, 2018, April 18, 2018, April 15, 2018, April 13, 2018, December 3, 2017.

[2] https://www.foxnews.com/media/trump-says-comey-knew-assassination-meaning-behind-deleted-social-media-post?msockid=012137d09fd26ab63f8427e89efb6ba6

7.    Following Mr. Comey's May 2025 social media post and other critical statements, President Trump's supporters called for Ms. Comey's firing.  Notable among those supporters is Laura Loomer, a social media influencer who, on information and belief, has political influence in the Trump Administration, including influence over the termination of federal employees.[3] President Trump has publicly stated: "If you're Loomered you're in deep trouble. That's the end of your career in a sense."[4]

8.    On May 18, 2025, Ms. Loomer called for Mr. Comey's "liberal daughter" and her "Democrat husband" to be "FIRED from the DOJ immediately" "for being a national security risk via their proximity to a criminal [*i.e.*, Mr. Comey] who just committed a felony by threatening to assassinate the President."[5]  Ms. Loomer also declared that, "under [Attorney General Pamela] Blondi [sic], every Deep State Operator is being emboldened," and she "question[ed] the impartiality of Maurene and Lucas [Maurene's husband] in their prosecutorial roles, especially in high-profile cases, due to the undeniable bias and influence stemming from James Comey's public criticism of Trump and the ongoing investigation into his Instagram post."[6]  After Ms. Comey's termination, Ms. Loomer boasted that the decision "c[a]me[] 2

---

[3] *See, e.g.,* https://apnews.com/article/laura-loomer-trump-influence-appointees-fired-83ab8898477427da4dc1824c6ff3b560; https://www.nytimes.com/2025/07/08/us/politics/laura-loomer-trump.html.

[4] https://x.com/WarlordDilley/status/1775672492830462118

[5] https://x.com/LauraLoomer/status/1924195103842984073; *see also* https://www.msn.com/en-za/news/other/laura-loomer-takes-victory-lap-over-firing-of-ex-fbi-chief-comey-s-daughter-after-pressing-pam-blondi/ar-AA1IKfqn?ocid=BingNewsSerp

[6] https://x.com/LauraLoomer/status/1924195103842984073.  Ms. Comey's husband Lucas Issacharoff voluntarily resigned from the Department of Justice several days earlier on May 9, 2025.

months after my pressure campaign on Pam Blondi [sic] to fire Comey's daughter and Comey's son-in-law from the DOJ."[7]

9. The politically motivated termination of Ms. Comey—ostensibly under "Article II of the Constitution"—upends bedrock principles of our democracy and justice system. Assistant United States Attorneys like Ms. Comey must do their jobs without fearing or favoring any political party or perspective, guided solely by the law, the facts, and the pursuit of justice. Congress recognized this essential proposition and, pursuant to its Article I powers, enacted the CSRA to place guardrails on the removal of AUSAs and other federal employees and ensure continuity and impartiality in government service. The executive branch cannot use Article II to overrule Congress and remove career civil servants for perceived disloyalty. Such an act violates the Constitution's fundamental Separation of Powers. It also violates the Bill of Rights, depriving Ms. Comey of protection under the First and Fifth Amendments.

10. To challenge her illegal termination and assert her rights under the United States Constitution and federal law, Ms. Comey brings this action against the U.S. Department of Justice; the Executive Office of the President; Director of the Executive Office for United States Attorneys Francey Hakes, in her official capacity; U.S. Attorney General Pamela Bondi, in her official capacity; the Executive Office for United States Attorneys; the Office of Personnel Management; and the United States of America, for the purposes of seeking relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*., the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the All Writs Act, and the Constitution of the United States, including the First and Fifth Amendments thereto.

---

[7] https://x.com/LauraLoomer/status/1945613578477711461.

## THE PARTIES

11.     Plaintiff Maurene Comey served as an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Southern District of New York ("SDNY") from November 16, 2015, until July 16, 2025, when Defendants terminated her employment unlawfully without advance notice or legal cause, and in contravention of statutorily prohibited personnel practices, the Administrative Procedures Act, and the United States Constitution, including the First and Fifth Amendments thereto.  She is the daughter of James B. Comey.

12.     Defendant the United States Department of Justice ("DOJ") is headquartered in Washington, D.C. and is an agency of the United States as defined by 5 U.S.C. § 701.  The DOJ controls its components, including Defendant the Executive Office for United States Attorneys, and on information and belief, authorized the unlawful and unconstitutional actions taken against Ms. Comey.

13.     Defendant Executive Office of the President is headquartered in Washington, D.C. and, on information and belief, authorized the unlawful and unconstitutional actions taken against Ms. Comey.

14.     Defendant Francey Hakes is sued in her official capacity as the Director of the Executive Office for United States Attorneys.  Ms. Hakes signed the "Memorandum for Maurene R. Comey," dated July 16, 2025, terminating Ms. Comey from federal service and thereby authorizing the unlawful and unconstitutional actions taken against Ms. Comey.

15.     Defendant Pamela J. Bondi is sued in her official capacity as the Attorney General of the United States.  In January 2025, she was nominated by President Donald J. Trump to serve in that position, subject to the advice and consent of the Senate.  On information and belief,

Attorney General Bondi authorized the unlawful and unconstitutional actions taken against Ms. Comey.

16.    Defendant Executive Office for United States Attorneys ("EOUSA") is headquartered in Washington, D.C., a component of DOJ, and an agency of the United States as defined by 5 U.S.C. § 701.  EOUSA carried out, and on information and belief, authorized the unlawful and unconstitutional actions taken against Ms. Comey.

17.    Defendant Office of Personnel Management ("OPM") is headquartered in Washington, D.C. and is an agency of the United States as defined by 5 U.S.C. § 701.  On information and belief, OPM authorized the unlawful and unconstitutional actions taken against Ms. Comey.

18.    Defendant United States of America is responsible for the exercise of state action by the other named Defendants that Plaintiff is challenging in this action.

## JURISDICTION AND VENUE

19.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's causes of action arise under the Constitution and laws of the United States.

20.    Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) and 5 U.S.C. § 703.

21.    Sovereign immunity is waived under 5 U.S.C. § 702, which entitles Plaintiff to relief where Defendants acted unconstitutionally and beyond statutory authority.

## FACTUAL ALLEGATIONS

### *Ms. Comey Served as an Exemplary Assistant United States Attorney in the Southern District of New York*

22.     Ms. Comey graduated from the College of William & Mary *summa cum laude* in 2010, and from Harvard Law School, where she served on the *Harvard Law Review*, in 2013.

23.     After graduating from law school, Ms. Comey worked for a year as an associate at Debevoise & Plimpton LLP in New York City.  She moved into the public sector after that, serving as a law clerk to U.S. District Judge Loretta A. Preska, then-Chief Judge of the Southern District of New York.

24.     Ms. Comey completed her clerkship and decided to build a career in public service.  She applied to serve as an Assistant United States Attorney in the Southern District of New York in March 2015, and after a rigorous interview process with Assistant U.S. Attorneys in the Civil and Criminal Divisions of the Office as well as the Executive Staff, she was hired by Preet Bharara, then-United States Attorney for the Southern District of New York.  She began her employment as an AUSA in November 2015.

25.     Ms. Comey's ensuing decade of service was exemplary.  In her tenure at SDNY, she personally handled eleven criminal trials, secured over 200 convictions, briefed and argued multiple appeals before the Court of Appeals for the Second Circuit, and supervised numerous additional federal investigations, trials, and convictions.  Her performance consistently earned her accolades and promotions, as well as "Outstanding" ratings in her annual reviews along with glowing commentary—including, for example:

- Ms. Comey "is highly respected and is a leader in the office. She is a brilliant lawyer and a gifted supervisor," and "is the lawyer the office turns to when legal excellence is a must."

- Ms. Comey has "handled the highest profile cases in the office because her judgment, work product, and courtroom advocacy are among the finest in the country."

- Ms. Comey "is a highly accomplished AUSA and manager" and is "an outstanding AUSA in every respect."

- Ms. Comey "routinely demonstrates creativity, perseverance, initiative, and dedication, [and] considers novel legal theories and investigative techniques."

- Ms. Comey "demonstrates the foresight and organizational skills necessary to manage lengthy and difficult trials."

- Ms. Comey's "supervision of the investigations and prosecutions in her unit is superb."

- Ms. Comey "works tirelessly to manage the people and cases under her supervision," and "ensure[s] that cases are prosecuted efficiently and with good results."

- Ms. Comey "works extremely hard, and is available at all hours to discuss issues with the unit and with the executive staff, and she promptly responds to any issues."

- Ms. Comey "invariably demonstrates sound judgment in conducting investigations and making [] decisions," and "represents the Department of Justice and the court of law in a professional manner."

- Ms. Comey "took the lead on two of our most sensitive cases, both involving high-profile targets and numerous victims of sexual abuse, and throughout her work has consistently shown exceptional judgment, diligence, and professionalism."

- Ms. Comey "demonstrates excellent courtroom presence, speaks persuasively and with authority, and upholds government positions."

26.    As further testament to her dedication and exceptional work, SDNY leadership repeatedly asked Ms. Comey to conduct the prosecution of some of the most significant criminal cases in the Office's recent history—which she also won.  Notably, in her almost ten years as an AUSA, Ms. Comey served with distinction through Democratic and Republican administrations,

earning the support and confidence of supervisors, United States Attorneys, and DOJ officials serving under Presidents Obama, Trump, and Biden.

27.    Ms. Comey spent the first eighteen months of her AUSA career in SDNY's White Plains Division, where she pursued violence, narcotics, fraud, and sexual exploitation cases.

28.    During this time, Ms. Comey investigated and began prosecuting Nicholas Tartaglione, a former police officer and the perpetrator of a gruesome quadruple homicide.[8] After many years building the case, and a four-week trial in 2023, Ms. Comey and her team secured a conviction against Tartaglione on all seventeen counts, and he was sentenced to four consecutive life sentences.[9]

29.    In recognition of her excellent work on the *Tartaglione* case, U.S. Attorney Preet Bharara awarded Ms. Comey an award "for Outstanding efforts and exceptionally high quality work" in December 2016.

30.    Ms. Comey moved to the Manhattan office in 2017 and joined the Violent and Organized Crime Unit, where she prosecuted dozens of defendants for violence offenses, including racketeering and murder.

31.    In September 2019, Ms. Comey moved to the Public Corruption Unit, where she prosecuted bribery and other cases involving abuse of public trust.

32.    With her significant experience prosecuting matters involving violence and sexual exploitation, her SDNY supervisors assigned Ms. Comey to work on the investigation of Jeffrey

---

[8] *See* https://www.justice.gov/usao-sdny/pr/former-police-officer-charged-white-plains-federal-court-quadruple-homicide

[9] *See* https://www.justice.gov/usao-sdny/pr/former-police-officer-sentenced-four-consecutive-life-sentences-2016-quadruple-murder

Epstein in the spring of 2019.  She was part of the team that conducted grand jury proceedings and secured an indictment against Mr. Epstein for sex trafficking and conspiracy; Mr. Epstein was arrested on July 6, 2019.[10]  Ms. Comey was one of three prosecutors who then represented the United States in Mr. Epstein's criminal case, successfully defeating his request for bail pending trial.  Mr. Epstein died in federal jail on August 10, 2019, while awaiting trial; as a result, the charges against him were ultimately dismissed.  Geoffrey Berman—then-U.S. Attorney for the Southern District of New York, serving in the first Trump Administration— supervised Ms. Comey's work on the investigation and prosecution of Mr. Epstein at all times.

33.    At the direction and under the supervision of SDNY leadership, Ms. Comey and her team continued to investigate Mr. Epstein's criminal operation after Mr. Epstein died.  They uncovered details that implicated Mr. Epstein's former girlfriend and collaborator, Ghislaine Maxwell.  On or about July 2, 2020, the SDNY, through Ms. Comey and her team, obtained an indictment charging Ms. Maxwell with enticing a minor to travel to engage in criminal sexual activity, transporting a minor with the intent to engage in criminal sexual activity, conspiracy to commit both of those offenses, and perjury in connection with two sworn depositions.[11]  Ms. Comey and her team subsequently obtained a superseding indictment additionally charging Ms. Maxwell with conspiracy to commit sex trafficking of a minor and sex trafficking of a minor.

34.    At the direction and under the supervision of SDNY leadership, Ms. Comey successfully led the investigation and prosecution of Ms. Maxwell, including serving as one of the lead trial lawyers in a month-long trial, and secured justice for many victims of Mr. Epstein and Ms. Maxwell.  On December 29, 2021, a jury convicted Ms. Maxwell on five counts,

---

[10] *See* https://www.justice.gov/usao-sdny/press-release/file/1180481/dl

[11] *See* https://www.justice.gov/usao-sdny/press-release/file/1291491/dl?inline

including sex trafficking of a minor, conspiracy, and transportation of a minor for illegal sexual activity.  Ms. Maxwell was sentenced in June 2022 to 20 years in prison for her role in the sex trafficking scheme.[12]  U.S Attorney Berman and later Acting U.S. Attorney Audrey Strauss—both serving in the first Trump Administration—were deeply involved in supervising the investigation and prosecution of Ms. Maxwell during their tenures.

35.    In addition, also at the direction and under the supervision of SDNY leadership, Ms. Comey handled the investigation and indictment of Dr. Robert Hadden, a gynecologist who criminally sexually abused dozens of patients for decades at Columbia University and New York-Presbyterian Hospital.[13]  Dr. Hadden was sentenced to 20 years in prison for his depraved crimes.[14]

36.    Ms. Comey carried a substantial caseload beyond the high profile matters she handled.  Those other cases featured a large volume of violence and drug-related cases, including the prosecutions of over 40 defendants charged with murder, over 80 additional defendants charged with racketeering conspiracy, and over 80 additional defendants charged with narcotics offenses.  In addition, Ms. Comey handled white collar cases such as the prosecutions of multiple correctional officers for accepting bribes from inmates in exchange for smuggling contraband, a union president and volunteer fire department treasurer for embezzlement, and a senior advisor at the Treasury Department's Financial Crimes Enforcement Network for unlawfully disclosing Suspicious Activity Reports.

---

[12] *See* https://www.justice.gov/usao-sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-sexually-abuse

[13] *See* https://www.justice.gov/usao-sdny/press-release/file/1314401/dl?inline

[14] *See* https://www.justice.gov/usao-sdny/pr/former-obstetriciangynecologist-robert-hadden-sentenced-20-years-prison-sexually

37.    In February 2021, in recognition of her work and with the approval of the Department of Justice, Ms. Comey was promoted to Deputy Chief of the Violent and Organized Crime Unit.  She was promoted, again, in June 2021, to Co-Chief of the Violent and Organized Crime Unit, and then once again, in January 2023, to Co-Chief of the Public Corruption Unit. All three times, the United States Attorney for the Southern District of New York approved her promotions: Audrey Strauss (the first two) and then Damian Williams (the third).

38.    In addition, in May 2023, the Director of the Executive Office for United States Attorneys awarded Ms. Comey and her team the prestigious Director's Award for "Superior Performance by a Litigative Team" with respect to the *Maxwell* trial.

39.    Ms. Comey's outstanding work continued over the next two years, during which she successfully prosecuted and supervised several more prominent cases.

40.    For example, at the direction and under the supervision of SDNY leadership, Ms. Comey oversaw the team that indicted and tried former New Jersey Senator Robert Menendez (and his wife and three other business associates) on federal bribery charges in September 2023.[15]  Ms. Comey and her Co-Chief closely supervised the nine-week trial after which a jury found Mr. Menendez guilty on all 16 counts, including bribery and conspiracy to act as a foreign agent.  He subsequently resigned from the Senate, and in January 2025, he was sentenced to 11 years in prison.[16]

---

[15] *See* https://www.justice.gov/usao-sdny/pr/us-senator-robert-menendez-his-wife-and-three-new-jersey-businessmen-charged-bribery

[16] *See* https://www.justice.gov/usao-sdny/pr/former-us-senator-robert-menendez-sentenced-11-years-prison-bribery-foreign-agent-and

41.     Further, at the direction and under the supervision of SDNY leadership, in February 2024, Ms. Comey and her Co-Chief oversaw the team that charged 70 current and former employees of the New York City Housing Authority ("NYCHA") with bribery and extortion for accepting cash payments from contractors in exchange for awarding NYCHA contracts—the largest number of federal bribery charges brought on a single day.[17]

42.     After serving as a supervisor for several years, Ms. Comey requested then-U.S. Attorney Damian Williams to permit her to return full time to trial work, which he granted, appointing Ms. Comey as Senior Trial Counsel in the Public Corruption Unit in August 2024.

43.     Most recently, Ms. Comey joined the prosecution team that tried Sean "Diddy" Combs.  Mr. Combs was indicted and arrested in September 2024 and charged with racketeering, sex trafficking, and transportation to engage in prostitution.[18]  Ms. Comey's SDNY supervisors asked her to join the team after Mr. Combs was charged, and she served as a lead prosecutor in the two-month trial against him from May through July 2025.  Mr. Combs was convicted of transportation with intent to commit prostitution and now awaits sentencing; he faces up to 20 years in prison.

44.     Notwithstanding Ms. Comey's demonstrated leadership capabilities and significant prosecutorial experience, she spent her entire career as an Assistant United States Attorney at the end of a long line of supervisors within the Department of Justice.  Even at her ostensibly "highest" position as a unit Co-Chief, approval authority for certain prosecutorial functions—most notably, approval of all indictments—ultimately rested with the SDNY

---

[17] *See* https://www.justice.gov/usao-sdny/pr/70-current-and-former-nycha-employees-charged-bribery-and-extortion-offenses

[18] *See* https://www.justice.gov/usao-sdny/media/1368556/dl

Criminal Division Deputy Chiefs, Criminal Division Chief, and the United States Attorney.   She

had no authority to set DOJ policy; instead, she implemented the policies set by her superiors.

Moreover, certain prosecutorial functions in many of Ms. Comey's cases could not be performed

without express approval of Department of Justice officials outside of SDNY's own leadership

chain.  For example, violent crime cases that involved the use of electronic surveillance (a

"wiretap") required the approval of senior DOJ leaders who oversaw the Electronic Surveillance

Unit at DOJ Headquarters.  Additionally, racketeering charges required the approval of senior

DOJ leaders within the Violent Crime and Racketeering Section at DOJ Headquarters, and

certain cases implicating national security required approval of senior DOJ leaders within the

National Security Division at DOJ Headquarters.  Similarly, cases involving the investigation of

current or former United States politicians required the approval of senior DOJ leaders within the

Public Integrity Section at DOJ Headquarters.  In these and similar instances, Ms. Comey's work

as a prosecuting attorney and unit supervisor involved implementing decisions made by a chain

of supervisors and approval authorities stretching from the SDNY Criminal Division to the

Office of the Attorney General.

***Ms. Comey is Terminated without Advance Notice or Cause on July 16, 2025***

45.     On July 15, 2025, Ms. Comey met with the Co-Chiefs of the SDNY Public

Corruption Unit, who asked her to join the trial team for another of the SDNY's major cases.

46.     The next day, July 16, 2025, Ms. Comey agreed to take on the case and went to

speak with a colleague about joining the trial team.

47.     While in her colleague's office, Ms. Comey received an e-mail at 4:57 p.m. from

DOJ's Justice Management Division, Director of Human Resources, with an attachment titled

"Memorandum for Maurene R. Comey."  The memorandum, dated July 16, 2025, and signed by

Francey Hakes, the Director of the Executive Office for United States Attorneys—the same title

of the official who awarded Ms. Comey the prestigious Director's Award for her work on the

*Maxwell* trial—stated as follows:

> Subject:          Notice of Removal from Federal Service
>
> This memorandum provides official notice that you are removed from your position of Assistant United States Attorney, AD-0905-29, Criminal Division, Southern District of New York, Offices of the United States Attorneys, and from the federal service, effective immediately.
>
> Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated, and you are removed from federal service effective immediately.
>
> If applicable, you may have a right to file an appeal of this removal with the U.S. Merits Systems Protection Board (MSPB) within 30 days of the effective date of this removal action. For more information on how to file an appeal with the MSPB, please visit www.mspb.gov.

(Attached hereto as Exhibit A, the "Termination Memorandum.")

48.      Before receiving the Termination Memorandum, Ms. Comey received no notice

or reason for the termination decision, and she was provided with no opportunity to respond.

49.      Ms. Comey then walked into the office of one of the Co-Chiefs of the Public

Corruption Unit to inform her supervisors that she had been terminated.  Those supervisors were

visibly shocked and upset by the news.

50.      Immediately, Jay Clayton, then-interim United States Attorney for the Southern

District of New York, and Sean Buckley, Deputy United States Attorney for the Southern

District of New York, came to the Co-Chief's office to speak with Ms. Comey and her

supervisors.  Ms. Comey asked the basis for the termination.  U.S. Attorney Clayton responded,

in sum and substance: "All I can say is it came from Washington.  I can't tell you anything else."

No other explanation was ever provided to Ms. Comey regarding the reason for her termination.

51.    The White House also has not provided a substantive explanation for Ms.

Comey's termination; the White House Press Secretary claimed that the termination "was a

decision that was made by the Department of Justice."[19]

***Ms. Comey's Termination was Illegal Because it was Based on Her Affiliation with James B.
Comey, or Her Perceived Political Affiliation and Beliefs, or Both***

52.    OPM issued a Standard Form ("SF") 50, "Notification of Personnel Action," to

Ms. Comey shortly after her receipt of the July 16, 2025 memorandum.  (Attached hereto as

Exhibit B, the "SF-50," redacted.)  Section 5-D of Ms. Comey's  SF-50 is titled "Legal

Authority."  This section states: ART II CONSTITUTION.

53.    Section 45 of Ms. Comey's SF-50 is titled "Remarks."  This section states:

REASON(S) FOR REMOVAL: ARTICLE II OF THE CONSTITUTION.

54.    The July 16 memorandum terminating Ms. Comey indicated twice that she was

being "removed from federal service."  This term was not defined in the letter.  However,

5 U.S.C. § 2101 defines the "civil service" as "consist[ing] of all appointive positions in the

executive, judicial, and legislative branches of the Government of the United States, except

positions in the uniformed services."

55.    Defendants did not assert that Ms. Comey was being terminated for cause or for

any reason related to her performance as an AUSA.  Nor would such an assertion have been

remotely plausible.  Ms. Comey was a highly regarded AUSA who had consistently received

"Outstanding" reviews and glowing feedback from her superiors.  In fact, on April 25, 2025,

fewer than three months before her termination, Ms. Comey received another review of

"Outstanding," which was approved and signed by Jay Clayton, U.S. Attorney for the Southern

---

[19] https://www.youtube.com/watch?v=qZ9IdCcB1Dk

District of New York.  Also, as of the date of her termination, she was counsel of record on

hundreds of cases and expected to handle sentencing in the *Combs* case, to brief the appeal in the

*Tartaglione* case, and to handle another significant trial slated for February 2026, which her

supervisors had asked her to lead just one day earlier.  Nor could the explanation plausibly be

that she mishandled her high-profile cases; she received accolades related to her work on some

of those high-profile cases, and, on information and belief, among the at least fourteen AUSAs

who participated in the prosecutions of *Epstein*, *Maxwell*, *Hadden*, and *Combs*, Ms. Comey was

the only one who was terminated.

56.     On information and belief, Ms. Comey's termination was designed to retaliate

against her based on her familial relation as the daughter of James B. Comey, or because of her

perceived political affiliation and beliefs, or both.  No other plausible explanation exists for her

termination—and certainly none was provided.

57.     President Trump has publicly criticized Mr. Comey for nearly a decade,

beginning with President Trump's disapproval of actions Mr. Comey took when he served as

Director of the FBI.  According to a website that compiles President Trump's posts on the social

media platforms X and Truth Social, President Trump has thus far posted (or reposted)

approximately 259 times about Mr. Comey, including describing him repeatedly as the "worst"

FBI Director in history.[20]

58.     During his first presidential campaign, then-Candidate Trump called on the FBI to

bring criminal charges against Democratic Presidential Nominee Hillary Clinton.  After Mr.

Comey announced that the FBI would not recommend that the Justice Department bring charges,

---

[20] *See generally,* Roll Call; *see also, e.g., id.* at May 24, 2024, May 9, 2019, June 15, 2018, April
18, 2018, April 15, 2018, April 13, 2018, December 3, 2017.

President-Elect Trump reposted that Mr. Comey "stood in the way" of the investigation and claimed that he "was the best thing that ever happened to Hillary Clinton in that he gave her a free pass for many bad deeds."[21]  After he was elected, President Trump's criticism of Mr. Comey continued, including for the FBI's investigation into Russia's role in the 2016 presidential election, which President Trump has repeatedly criticized as a "hoax" and a "witch hunt."[22]

59.     On May 9, 2017, President Trump terminated Mr. Comey.  In the following years, President Trump and Mr. Comey publicly commented about and criticized each other.[23] President Trump has also continued to refer to the Russia and Hillary Clinton investigations as hoaxes, witch hunts, and "rigged" probes,[24] and claimed that Mr. Comey was a "liar"[25] and that

---

[21] *See* Roll Call at October 17, 2016, May 2, 2017.

[22] *See, e.g.,* Roll Call at August 1, 2018.

[23] *See, e.g*., https://www.cnn.com/2017/06/07/politics/james-comey-testimony-released (Mr. Comey testified to Congress about conversations he had with President Trump); Roll Call at December 3, 2017 (President Trump's post stating that this was "another Comey lie"); https://www.npr.org/2018/04/12/602029560/5-insights-from-comeys-memoir-ex-fbi-chief-blasts-trump-as-mob-like (Mr. Comey published a memoir in April 2018 describing President Trump as "unethical[] and untethered to the truth and institutional values"); Roll Call at June 17, 2018, April 18, 2018, April 16, 2018, April 13, 2018 (President Trump's posts stating that Mr. Comey is "slippery," "a proven LEAKER & LIAR," and that he has "committed many crimes"); https://www.youtube.com/watch?v=oKcsEuD3fnw (interview with James Comey in which he stated, "The president of the United States [is] saying that private citizens should be in jail….That's not normal").

[24] *See, e.g.,* Roll Call at July 12, 2025, July 10, 2025, July 25, 2023, December 6, 2022, October 19, 2022, September 10, 2020, July 9, 2020, February 14, 2019, January 12, 2019, December 7, 2018, August 17, 2018, August 1, 2018, June 28, 2018, June 18, 2018, June 17, 2018, June 16, 2018, May 19, 2018, April 19, 2018, September 1, 2017, May 31, 2017.

[25] *See, e.g.,* Roll Call at September 30, 2020, August 11, 2020, September 2, 2029, April 13, 2018.

he and Hillary Clinton, among others, "should be in jail."[26]  President Trump continues to criticize Mr. Comey, posting about Mr. Comey on Truth Social as recently as August 13 and 14, 2025.[27]

60.    On information and belief, and as reported by the Press, while in office during his first term, President Trump told his White House Chief of Staff that he wanted a number of his perceived political enemies to be investigated by the IRS.[28]  On information and belief, and also as reported by the Press, in 2019, Mr. Comey was notified that the IRS would audit him.[29]

61.    More recently, in May 2025, Mr. Comey posted on social media an image showing seashells arranged to read "8647."  President Trump and others within the Trump Administration claimed to interpret the "86" as a slang term for "eliminate" and "47" as referencing President Trump as the 47th president, describing it as a call for violence against President Trump.[30]  Mr. Comey described the post as a "political message" that was not associated with "violence," but deleted the post.[31]

---

[26] Roll Call at September 21, 2020.

[27] *See* Roll Call at August 14, 2025, August 13, 2025.

[28] *See* https://www.nytimes.com/2022/11/13/us/politics/trump-irs-investigations.html

[29] *See* https://www.nytimes.com/2022/07/06/us/politics/comey-mccabe-irs-audits.html

[30] *See, e.g.,* https://www.politico.com/news/2025/05/15/james-comey-sparks-republican-outrage-with-trump-social-media-post-00353141*; see also* https://x.com/DonaldJTrumpJr/status/1923118680658862260 (Donald Trump Junior reposting Mr. Comey's post and stating "Just James Comey causally [sic] calling for my dad to be murdered").

[31] *See* https://www.cbsnews.com/news/james-comey-under-investigation-posting-deleting-86-47-instagram-noem-says

62.     On May 16, 2025, President Trump appeared on Fox news and called Mr. Comey a "dirty cop" and accused him of publishing an "assassination message."[32]  The Department of Homeland Security and United States Secret Service reportedly investigated Mr. Comey in connection with his now-deleted post.[33]

63.     Following Mr. Comey's May 2025 social media post and other critical statements, President Trump's supporters, including Laura Loomer, called for the termination of Ms. Comey. Ms. Loomer has met with President Trump in the Oval Office and, upon information and belief, has political influence in the Trump Administration with respect to the firing of federal employees.[34]  President Trump has publicly stated: "You don't want to be Loomered; if you're Loomered you're in deep trouble. That's the end of your career in a sense."[35]

64.     Specifically, on May 18, 2025, Ms. Loomer, who has over 1.7 million followers on X, called for the firing of Mr. Comey's "liberal daughter" and "Democrat son-in-law," stating as follows:

> Pam Blondi [sic] Is Allowing James Comey's Daughter and his Son In Law to Work at the Trump DOJ

---

[32] https://www.yahoo.com/news/trump-melts-down-over-comey-171103635.html

[33] *See* https://www.cbsnews.com/news/james-comey-under-investigation-posting-deleting-86-47-instagram-noem-says

[34] *See, e.g.,* https://www.nytimes.com/2025/04/03/us/politics/trump-meeting-laura-loomer.html ("Trump Fires 6 N.S.C. Officials After Oval Office Meeting With Laura Loomer"); https://apnews.com/article/laura-loomer-trump-influence-appointees-fired-83ab8898477427da4dc1824c6ff3b560 (reporting that "the list of administration officials who have drawn Loomer's ire and swiftly thereafter gotten the axe from Trump has been growing"); *see also* https://www.nytimes.com/2025/07/08/us/politics/laura-loomer-trump.html ("Laura Loomer, Trump's Blunt Instrument").

[35] https://x.com/WarlordDilley/status/1775672492830462118

Did you know that Maurene Comey, the daughter of former FBI Director James Comey, serves as an Assistant U.S. Attorney in the Southern District of New York (SDNY), where she heads the Violent and Organized Crime Unit?

She has been with the SDNY since 2015 and has prosecuted high-profile cases, including those involving Jeffrey Epstein, Ghislaine Maxwell, and currently Sean "Diddy" Combs. Her husband is Lucas Issacharoff. He also works at the current Trump DOJ, despite a long history being a Trump hater.

He is the Assistant U.S. Attorney in SDNY, working in the Civil Division since 2019. Their roles involve significant responsibilities in federal prosecutions and civil litigation, respectively, under the Department of Justice (DOJ), which is currently led by the ever incompetent Attorney General Pam Blondi [sic] @AGPamBondi….

Donald Trump campaigned on DRAINING THE SWAMP and taking a bulldozer to the FBI and DOJ, which has been weaponized against him and his supporters. And now, under Pam Blondi [sic], James@Comey is getting away with putting assassination hits on President Trump, and our tax dollars are paying for the salaries of James Comey's liberal daughter and her Democrat husband.

If Blondi [sic] was a serious person, she would FIRE them both for being a national security risk via their proximity to a criminal who just committed a felony by threatening to assassinate the President.

Under Blondi [sic], every single Deep State operator is being emboldened. James Comey is under investigation by the Department of Homeland Security and US Secret Service. Maurene Comey and Lucas Issacharoff's continued employment at the DOJ, is unacceptable.[36]

I question the impartiality of Maurene and Lucas in their prosecutorial roles, especially in high-profile cases, due to the undeniable bias and influence stemming from James Comey's public criticism of Trump and the ongoing investigation into his Instagram post.

Both Maurene Comey and Lucas Issacharoff need to be FIRED from the DOJ immediately. ….

---

[36] Upon information and belief, these comments echo similar comments made on various social media and other internet platforms; according to the Press, the commentators seem to connect Ms. Comey's involvement in the *Epstein* and *Combs* prosecutions to her perceived political affiliation. *See, e.g.*, https://www.pbs.org/newshour/politics/what-to-know-about-the-maga-faithfuls-anger-over-trump-and-the-epstein-case.

Has Pam Blondi [sic] told President Trump that James Comey's daughter still works at the DOJ? Has anyone told Trump? How on Earth does something like that slip through the cracks?[37]

65.    Ms. Loomer also posted on her Facebook account, two days earlier on May 16, as

follows:

If Comey doesn't get arrested & Pam Blondi [sic] doesn't fire James@Comey's daughter from the DOJ, then you'll know all of the talk about accountability from the DOJ is nothing more than a Fox News talking point.  If we care about law & order, now is the time for Blondi [sic] to prove it.[38]

66.    And, once more, on May 16, Ms. Loomer posted on X:

This is Patrice Comey, the wife of former FBI Director James @Comey who was just interviewed by @SecretService for threatening to assassinate President Trump.

Their daughter is Maurene Comey, who still works at the Trump DOJ because Pam Blondi [sic] won't fire her.

Don't expect anything good to happen at the DOJ if Blondi [sic] can't even bring herself to fire Comey's rat daughter.[39]

67.    Then, on the day Ms. Comey was terminated—July 16, 2025—Ms. Loomer celebrated Ms. Comey's termination, posting on X:

Today, the DOJ FIRED Maurene Comey from the United States Attorney's office for the Southern District of New York. She is the daughter of former disgraced FBI Director James @Comey.

---

[37] https://x.com/LauraLoomer/status/1924195103842984073.  As of the date of this filing, this post received approximately 892,000 views and 14,000 likes, and was re-shared approximately 8,100 times.

[38]  https://www.facebook.com/groups/267428837831289/posts/1415851112989050/.  As of the date of this filing, this post received approximately 169,000 views.

[39] https://x.com/LauraLoomer/status/1923555086837613012. As of the date of this filing, this post received approximately 642,600 views and 11,000 likes, and was re-shared approximately 5,700 times.

This comes 2 months after my pressure campaign on Pam Blondi [sic] to fire Comey's daughter and Comey's son in law from the DOJ.

Mauren Comey's husband is Lucas Issacharoff. As I previously reported, he works at the current Trump DOJ, despite a long history being a Trump hater.

He is the Assistant U.S. Attorney in SDNY, working in the Civil Division since 2019.

No word yet on whether or not he was also fired today, but he should be!

+1 for Blondi today![40]

68.     On information and belief, Ms. Loomer has also influenced the recent termination of another long-time Assistant United States Attorney based in Los Angeles—Adam Schliefer— who was abruptly fired an hour after Ms. Loomer posted the following about him: "Fire him.  He supported the impeachment of President Trump and said he wanted to repeal Trump's tax plan…We need to purge the US Attorney's office of all leftist Trump haters."[41]

69.     The facts and circumstances reflect that Ms. Comey was terminated not because of her performance or for any cause, but in retaliation for her association with her father James Comey and his constitutionally protected speech, or because of her perceived political affiliation and viewpoint, or both.  Her termination violates the United States Constitution, the First and Fifth Amendments thereto, and federal law, including the Civil Service Reform Act.

***Ms. Comey's Termination Violates the Civil Service Reform Act of 1978***

70.     Neither the President nor the Department of Justice have unlimited authority to remove Assistant United States Attorneys.  Specifically, the Civil Service Reform Act of 1978,

---

[40] https://x.com/LauraLoomer/status/1945613578477711461.  Lucas Issacharoff voluntarily resigned from the Department of Justice on May 9, 2025.

[41] https://www.nbcnews.com/politics/justice-department/white-house-firing-career-prosecutor-pulls-justice-department-ever-clo-rcna198864

Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), provides crucial guardrails that protect these federal employees from arbitrary or unlawful termination.

71.     Accordingly, the Government may not terminate federal employees like Ms. Comey unless doing so comports with statutorily defined "merit system principles" and does not constitute statutorily defined "prohibited personnel practices," and even then, the Government may terminate federal employees like Ms. Comey only after following established pre- and post-removal procedures.  5 U.S.C. § 2301, 5 U.S.C. § 2302(b).

72.     OPM is explicitly charged with administering the federal civil service, which encompasses all federal employees.  5 U.S.C.§ 1103(a)(5).  OPM's duties include managing the federal work force consistent with the nine merit system principles, which dictate that all employees should receive, *inter alia*, "fair and equitable treatment…without regard to political affiliation…and with proper regard for their privacy and constitutional rights," and that personnel actions (including removals) must be based on merit and fitness, and must not be arbitrary, capricious, or discriminatory.  *Id*. § 2301.  These principles explicitly require that "[e]mployees should be protected against arbitrary action, personal favoritism, or coercion for partisan political purposes."  *Id*. § 2301(b)(8)(A).  Relatedly, agencies may take a "major adverse action" against an employee only "for such cause as will promote the efficiency of the service." *Id.* § 7513(a).

73.     OPM also oversees conduct relating to the prohibited personnel practices as outlined in 5 U.S.C. § 2302(b).  These statutory prohibitions prevent agencies from taking, or failing to take, personnel actions against members of the civil service for certain reasons.  For example, agencies cannot "take, direct others to take, recommend, or approve any personnel

action" that "discriminate[s] for or against any employee or applicant for employment on the basis of conduct that does not adversely affect performance" or "on the basis of their… political affiliation."  5 U.S.C §§ 2302(b)(10) (prohibiting discrimination based on conduct not adversely affecting performance); 2302(b)(1)(E) (prohibiting discrimination based on protected characteristics, including political affiliation).

74.     Federal employees against whom an action—including removal—is proposed are also entitled to "at least 30 days' advance written notice" of the action, to "a reasonable time, but not less than 7 days, to answer orally and in writing," to "be represented by an attorney or other representative," and to "a written decision and the specific reasons therefor at the earliest practicable date."  5 U.S.C § 7513(b).

75.     As an employee covered by 5 U.S.C. § 7511(a)(1), Ms. Comey was entitled to these protections under the CSRA.  Her termination violated multiple provisions of the CSRA. Her termination was not for cause because it was not based on any of her own conduct, let alone conduct that adversely affected her performance.  Her termination violated the merit system principles and amounted to a prohibited personnel practice under the CSRA; it was arbitrary, capricious, discriminatory (based on her connection to her father, or her perceived political affiliation and beliefs, or both), and the result of "personal favoritism" towards her critics. Moreover, she was not provided with any advance notice, opportunity to be heard, or written decision explaining the reason for her termination, in further violation of the due process protections under the CSRA.

*Unavailability and Futility of the Merit Systems Protection Board*

76.     In a normal course of proceedings, Plaintiff would be able to seek recourse through the Merit Systems Protection Board ("MSPB").  However, any complaint filed before the MSPB will be futile.[42]

77.     Congress enacted the CSRA in 1978 to create a uniform scheme for administrative and judicial review of covered federal employee personnel actions, in order to ensure a non-political career civil service for the good of the American public.  In the CSRA and as outlined above, Congress set forth protections and remedies available to such federal employees who face adverse employment actions, as well as a procedural process to vindicate their rights.  Generally, when federal employees seek relief from an action covered by the CSRA, they follow a prescribed scheme of administrative and judicial review and generally may not bring an initial claim in federal court.

78.     The CSRA established the MSPB as an independent agency consisting of three members, each appointed by the President with the advice and consent of the Senate to serve seven-year terms.  5 U.S.C. §§ 1201, 1202(a)–(c).  The MSPB is a quasi-judicial body, adjudicating conflicts between civil servants and their employing agencies.  It was designed to resolve disputes including federal employees' allegations that their government employers discriminated against them, retaliated against them for whistleblowing, violated protections for veterans, or otherwise subjected them to an unlawful adverse employment action or prohibited personnel practice.  5 U.S.C. §§ 1204(a)(1), 1221, 2302(b)(1), (8)–(9), 3330a(d), and 7512.

---

[42] To preserve her rights and remedies, Ms. Comey has filed a timely appeal with the MSPB challenging her termination.

79.     By statute, no more than two members of the MSPB are permitted to be from the same political party, to ensure that federal employees are "protected against arbitrary action, personal favoritism, or coercion for partisan political purposes."  5 U.S.C. §§ 1201, 2301.  MSPB members serve seven-year terms—a term limit longer than that guaranteed to the appointing President.  *Id.* § 1202(a).  Pursuant to its duties under the Appointments Clause, Senate consent is required for confirmation of any MSPB member.  *Id.* § 1201.

80.     Thus, an action to remove employees covered by the CSRA through termination, such as in this matter, generally proceeds before the MSPB.  *See id*. §§ 7511–15. The statute provides that a covered employee "against whom an action is proposed is entitled to[:]" a minimum of "30 days' advance written notice[;]" the opportunity to respond orally and in writing; representation; and "a written decision and the specific reasons therefor at the earliest practicable date."  *Id*. § 7513(b).  Decisions are appealable, first to the MSPB and then in most cases to the United States Court of Appeals for the Federal Circuit.  *Id*. § 7513(d).

81.     However, the MSPB currently cannot and does not function as intended.

82.     MSPB member Raymond Limon retired on February 28, 2025.[43]

83.     MSPB member Cathy Harris's term was set to expire on March 1, 2028, but President Trump terminated her position three years early, on February 10, 2025.  On March 4, 2025, the U.S. District Court for the District of Columbia held that Harris' removal was illegal and issued a permanent injunction that permitted Ms. Harris to return to her MSPB position. However, the U.S. Supreme Court has stayed that injunction pending appeal, and thus Ms. Harris is not currently serving as an MSPB member.

---

[43] *See*
https://www.mspb.gov/publicaffairs/press_releases/Ray_Limon_Farewell_Press_Release.pdf

84.     Accordingly, as of this filing, there is only one remaining member of the MSPB, which thus lacks a quorum to vote on any petitions for review (PFRs).[44]  Likewise, the Board does not have the ability to issue final decisions until a quorum is restored.[45]  As a result, MSPB administrative judges have become overwhelmed.  Available statistics published on the MSPB's website show that there were approximately 100 or fewer cases filed per week from September 2024 to January 2025.  Yet in February 2025, the number of filed cases ballooned dramatically, peaking at 2,188 cases filed between February 23, 2025 and March 1, 2025.[46]  As of September 1, 2025, 891 PFRs are pending.[47]  Finally, on information and belief, in recent cases, the Government itself has argued before the MSPB that the CSRA is unconstitutional because it violates the President's alleged Article II prerogatives, and that the MSPB has no jurisdiction over a challenge to an Article II removal.  The MSPB, for its part, has previously ruled that it does not have the authority to adjudicate the constitutionality of statutes.[48]  On information and belief, the MSPB is currently treating agencies' Article II-based challenges to its authority consistent with this precedent, which is to say, it is declining to rule on the issue.

85.     To be clear, Plaintiff disputes that the Constitution authorizes the President to ignore or disobey the civil service laws passed by Congress and signed into law by former Presidents.  But at present, the Government not only disputes the constitutionality of the CSRA,

---

[44] *See* https://www.mspb.gov/FAQs_Absence_of_Board_Quorum_4-9-25.pdf

[45] *Id.* at 2; *see also* https://www.mspb.gov/Pending%20PFR%20Data%20as%20of%209_1_2025.pdf

[46] *See* https://www.mspb.gov/Recent%20ROFO%20Case%20Receipts.pdf

[47] *See* https://www.mspb.gov/Pending%20PFR%20Data%20as%20of%209_1_2025.pdf

[48] *See Davis-Clewis v. Dep't of Veterans Affs.*, 2024 M.S.P.B. 5, ¶ 9 (Mar 20, 2024); *Malone v. Dep't of Justice*, 14 M.S.P.R. 403, 406 (1983).

but has taken action to render the MSPB ineffective by removing the member of the Board necessary to ensure a quorum exists and removing the one member who was from a political party other than the President's.  As a result, Plaintiff need not exhaust her administrative remedies before the very agency that the Government both argues is without administrative power or authority, and has taken steps to strip of its power and authority.

86.    Therefore, (a) there is no quorum at the MSPB to issue final decisions, and thus the MSPB cannot perform its duty to process and resolve Ms. Comey's claims, and (b) Defendants assert that the MSPB has no jurisdiction over what Defendants characterize as an "Article II removal," and in fact have taken steps to defeat the effective exercise of such jurisdiction.  The framework of the CSRA accordingly has been thwarted, and this Court may and should exercise jurisdiction over the presented Constitutional and statutory challenges because proceeding before the MSPB would be futile.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the United States Constitution (Articles I and II and Separation of Powers)**
**(Against All Defendants)**

87.    Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

88.    The removal of Ms. Comey "[p]ursuant to Article II of the Constitution and the laws of the United States" is invalid.

89.    *First*, Article II of the Constitution provides authority for the President, and the President alone, to appoint principal officers, concomitant with the power to remove them "at will."  Ms. Comey was not a principal officer, and neither the Department of Justice nor Ms.

Hakes—who signed the Termination Memorandum and ostensibly terminated Ms. Comey—is the President.

90.     *Second*, under Article I, Section 8, of the Constitution, Congress has the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof," and under Article II, Section 2, "Congress may by Law vest the Appointment of []inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  The Constitution thus empowers Congress to regulate and restrict the removal of inferior officers and federal employees.  *See United States v. Perkins*, 116 U.S. 483, 485 (1886) ("We have no doubt that when congress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of removal as it deems best for the public interest."); *Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2449 (2025)  (Congress can "insulate officers from at-will removal" if it speaks clearly in legislation so doing).  Congress has exercised this power by creating the Civil Service Reform Act.  Defendants' removal of Ms. Comey under a purported Article II authority thus violates authorities vested in Congress by Articles I and II of the Constitution, including the power to place limitations on the removal of inferior officers and federal employees without due process or without cause.

**SECOND CAUSE OF ACTION**
**Violation of the Administrative Procedure Act**
**5 U.S.C. §§ 706(1) and 706(2)**
**(Against All Defendants)**

91.     Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

92.      Defendants, in authorizing and signing Plaintiff's Termination Memorandum on July 16, 2025, unlawfully withheld the due process owed to Plaintiff, and implemented a final agency decision that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," "without observance of procedure required by law," "unsupported by substantial evidence," and/or "unwarranted by the facts."  5 U.S.C. § 706.

93.      Plaintiff has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm.  As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

**THIRD CAUSE OF ACTION**
**Violation of the Administrative Procedure Act**
**(*Ultra Vires* in Violation of Statutory Authority)**
**(Against All Defendants)**

94.      Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

95.      Defendants had no lawful authority to terminate Plaintiff from federal service without adhering to the statutory protections afforded to her.  Her termination was therefore *ultra vires* and without legal force or effect.

96.      Plaintiff has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm.  As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

## FOURTH CAUSE OF ACTION
**Violation of the First Amendment (Freedom of Speech and Association)**
**(Against All Defendants)**

97.     Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

98.     Plaintiff has a constitutional right to free speech and free association under the First Amendment of the United States Constitution.  Neither Article II of the Constitution, nor any other provision or law, can override or diminish that Constitutional right.

99.     Defendants violated Plaintiff's constitutionally protected rights by terminating her because of her association with her father and in retaliation for her father's protected speech, or because of her presumed political affiliation and beliefs, or both.

100.     Plaintiff has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm.  As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

## FIFTH CAUSE OF ACTION
**Violation of the Fifth Amendment (Procedural Due Process)**
**(Against All Defendants)**

101.     Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

102.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution guarantees that "no person shall . . . be deprived of life, liberty, or property, without due process of law."  Plaintiff has protected property and liberty interests under the Due Process Clause in her continued employment with the DOJ and consideration for employment in "the federal service" under the Fifth Amendment of the United States Constitution.

103.    Defendants' use of Article II to terminate Plaintiff and circumvent legislatively-mandated due process, which Congress was properly empowered to enact under Articles I and II, is improper and has unlawfully deprived her of these protected interests.

104.    Plaintiff has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm.  As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

## SIXTH CAUSE OF ACTION
### Violation of the Fifth Amendment (Property Interest)
### (Against All Defendants)

105.    Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

106.    Plaintiff has a protected property interest in her continued employment with the DOJ under the Fifth Amendment of the United States Constitution.

107.    Defendants' actions to terminate Plaintiff without due process unlawfully deprived her of that property interest.

108.    Plaintiff has suffered adverse and harmful effects from the deprivation of her property interest in her employment, including, but not limited to, loss of income and lost or jeopardized present or future financial opportunities and reputational harm.  As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

## SEVENTH CAUSE OF ACTION
### Violation of the Fifth Amendment (Liberty Interest)
### (Against All Defendants)

109.    Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

110.    The Fifth Amendment's protection against deprivation of liberty without due process of law protects against reputational harm caused by government actors when that harm is accompanied by other harm.  Here, the Defendants' actions harmed Plaintiff's reputational interests by terminating her without cause and implicitly ratifying stigmatizing allegations.  In addition, Defendants' actions have caused the loss of Plaintiff's present government employment and have harmed her future employment prospects.

111.    As a DOJ employee within the federal civil service, Plaintiff was entitled by statutes, regulations, and the Fifth Amendment to protections against deprivation of her liberty interest without the process required by law.  The lack of any due process accorded to Plaintiff deprived her of the ability to challenge the accuracy of any evidence that allegedly serves as the basis for her removal, if any even exists, as well as to protect her reputation.

112.    Defendants' action has prevented Plaintiff from participating in her chosen profession or line of work.  Should Plaintiff apply to work for a federal agency or a private civilian employer for a position that requires even the most rudimentary background investigation, the Defendants may disseminate information that includes inaccurate and false information that will adversely impact her reputation and chances for additional employment opportunities.  As a result, Defendants have effectively stigmatized Plaintiff's reputation and imparted a "status change" upon her that has implicated her liberty interests.

113.    Plaintiff has suffered adverse harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm.  As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

## EIGHTH CAUSE OF ACTION
### Violation of the Fifth Amendment (Reputational Harm)
### (Against All Defendants)

114.    Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

115.    Defendants' actions violate Plaintiff's substantive Due Process rights, which arise from her protected interest in her stellar reputation following a distinguished yearslong career at SDNY.

116.    The Fifth Amendment protects "reputation plus" harm caused by government actors.  Here, Defendants' actions harm Plaintiff's interest beyond her reputation, with the loss of her present government employment.

117.    As set forth above, Plaintiff was unlawfully terminated because of her association with James Comey and in retaliation for his protected speech, or because of her perceived political affiliation and beliefs, or both.

118.    Plaintiff has suffered adverse harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm.  As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

## NINTH CAUSE OF ACTION
### Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202
### (Against All Defendants)

119.    Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

120.    Plaintiff is entitled to declaratory relief on the basis of all claims identified.  There is a substantial and ongoing controversy between Plaintiff and Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that the

Defendants do not have authority to remove Plaintiff without affording her all rights and protections set forth by applicable statutes and regulations.

121.    Plaintiff has suffered adverse harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities and reputational harm.  As such, she is entitled to reinstatement, an award of backpay, and any other available damages.

**TENTH CAUSE OF ACTION**
**Relief in the Nature of Mandamus**
**(Against All Defendants)**

122.    Plaintiff repeats and realleges all of the foregoing paragraphs as if fully set forth herein.

123.    In the alternative, Plaintiff is entitled to relief in the nature of mandamus commanding Defendants to return her to her office and not remove her from federal service without following lawful procedures.  Defendants have a legal duty not to terminate Plaintiff without affording her the protections prescribed by law.

124.    The provisions of 28 U.S.C. § 1361 provide for an independent cause of action in cases seeking relief in the nature of mandamus against federal officers, employees, and agencies in the absence of any other available remedies.  To the extent relief is unavailable under either the CSRA, APA, common law equity, or any other law to enjoin unlawful government action, mandamus lies here.

**JURY DEMAND**

125.    Plaintiff demands a jury trial on all triable issues.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Maurene Comey respectfully requests the following relief:

a.      A declaration that Defendants violated the Separation of Powers;

b.      A declaration that Defendants' reliance on Article II as a removal authority was invalid;

c.      A declaration that Defendants violated the Administrative Procedure Act;

d.      A declaration that Defendants' actions, including their reliance on Article II of the Constitution as a basis for summary termination, violated Plaintiff's Fifth Amendment due process and statutory rights and order for appropriate relief;

e.      A declaration that Defendants violated Plaintiff's First Amendment free speech and free association rights and order for appropriate relief;

f.      An order requiring Defendants to immediately reinstate Plaintiff and enjoin Defendants from taking any further adverse personnel action against Plaintiff without providing appropriate procedural and substantive due process as required by law including the CSRA and the Fifth Amendment;

g.      An award of backpay and other monetary and administrative relief as appropriate;

h.      An award of the costs of this action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and

i.      A grant of any other further relief as the Court may deem just and proper.

Dated: September 15, 2025                          CLARICK GUERON REISBAUM LLP
       New York, New York


                                                  By:   _/s/ Ellen Blain_ __  ____
                                                  Nicole Gueron
                                                  Ellen Blain
                                                  Deepa Vanamali
                                                  41 Madison Avenue
                                                  New York, NY  10010
                                                  Phone: (212) 633-4310


                                                  _/s/ Margaret M. Donovan_
                                                  Margaret M. Donovan (*pro hac vice
                                                  forthcoming*)
                                                  Koskoff Koskoff & Bieder, PC
                                                  350 Fairfield Ave.
                                                  Bridgeport, CT 06604
                                                  Tel: (203) 336-4421
                                                  Fax: (203) 368-3244
                                                  mdonovan@koskoff.com


                                                  *Attorneys for Plaintiff Maurene Comey*