# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MAURENE COMEY,

                                    Plaintiff,

           v.

UNITED STATES DEPARTMENT OF JUSTICE; EXECUTIVE OFFICE OF THE PRESIDENT; FRANCEY HAKES, in her official capacity as the Director of the Executive Office for United States Attorneys; PAMELA J. BONDI, in her official capacity as Attorney General of the United States Department of Justice; EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS; OFFICE OF PERSONNEL MANAGEMENT; and UNITED STATES OF AMERICA,

                                    Defendants.

Civil Action No.
1:25-cv-07625 (JMF)

Honorable Jesse M. Furman

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

---

TODD BLANCHE
Deputy Attorney General

JOHN A. SARCONE III
Acting United States Attorney
Northern District of New York

By:   Karen Folster Lesperance
      Assistant United States Attorney
      *Acting Under Authority Conferred*
      *by 28 U.S.C. §515*

## TABLE OF CONTENTS

Introduction ................................................................................................ 1

Background .................................................................................................. 3

   I.  Statutory Background.......................................................................... 3

   II. Factual Background ........................................................................... 4

Legal Standard ........................................................................................... 8

Argument .................................................................................................... 9

The Civil Service Reform Act Precludes Jurisdiction Over Comey's Claims. ........... 9

   A. Congress intended the CSRA to provide the exclusive means of
       review for claims arising out of federal employment. ................................ 10

   B. Plaintiff's claims are of the type that Congress intended to be
       channeled through the CSRA framework. ..................................... 11

       1. The CSRA provides for meaningful judicial review of
          Plaintiff's claim. ........................................................................ 13

          a. Plaintiff will have an opportunity to present her claims
             to an Article III court ................................................... 13

          b. The CSRA process is available to Plaintiff. ............................ 14

       2. Plaintiff's claim falls squarely within the CSRA's review
          provisions. ................................................................................. 16

       3. Plaintiff's claims present issues that are well within the
          MSPB's expertise. ....................................................................... 18

Conclusion ............................................................................................... 19

Certificate of Compliance ........................................................................ 20

Certificate of Service.............................................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
  598 U.S. 175 (2023) ................................................................................. 12

*Bowles v. Russell,*
  551 U.S. 205 (2007) ................................................................................. 9

*Doe v. F.D.I.C.,*
  545 F. App'x 6 (2d Cir. 2013) ................................................................. 11

*Eaves v. Designs for Fin., Inc.,*
  785 F. Supp. 2d 229 (S.D.N.Y. 2011) ...................................................... 7

*Elgin v. Dep't of Treasury,*
  567 U.S. 1 (2012) ............................................................................ passim

*Elgin v. United States,*
  641 F.3d 6 (1st Cir. 2011) ...................................................................... 14

*Fed. Law Enf't Officers Ass'n v. Ahuja,*
  62 F.4th 551 (D.C. Cir. 2023) ................................................................ 10

*Garrison v. Dep't of Justice,*
  67 M.S.P.R. 154 (1995) .......................................................................... 18

*Jolley v. United States,*
  549 F. Supp. 3d 1 (D.D.C. 2021) ..................................................... 14, 15

*Makarova v. United States,*
  201 F.3d 110 (2d Cir. 2000) .................................................................. 6, 9

*Nat'l Treasury Emps. Union v. Vought,*
  149 F.4th 762 (D.C. Cir. 2025) .......................................................... 10, 11

*Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty.,*
  391 U.S. 563 (1968) ................................................................................ 18

*Renne v. Geary,*
  501 U.S. 312 (1991) ................................................................................. 9

*Robinson v. Gov't of Malaysia,*
  269 F.3d 133 (2d Cir. 2001) .................................................................... 6

*Robinson v. Overseas Mil. Sales Corp.*,
   21 F.3d 502 (2d Cir. 1994) ......................................................................... 9

*Sawyer v. Musumeci*,
   165 F.3d 14 (2d Cir. 1998) ................................................................. 11, 17

*Smart v. Goord*,
   441 F. Supp. 2d 631 (S.D.N.Y. 2006) ................................................ 7, 8

*Smith v. Dep't of Transp.*,
   106 M.S.P.R. 59 (2007) ............................................................................ 18

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) ........................................................................ passim

*Tiltti v. Weise*,
   155 F.3d 596 (2d Cir. 1998) ................................................................... 11

*United States v. Fausto*,
   484 U.S. 439 (1988) ........................................................................ passim

**STATUTES**

28 U.S.C. § 1295 ................................................................................................. 5

28 U.S.C. § 1331 ................................................................................................. 9

5 U.S.C. § 3132A ............................................................................................... 4

5 U.S.C. § 7512 ................................................................................................... 4

5 U.S.C. § 7701 ................................................................................................... 4

5 U.S.C. § 7703 ................................................................................................... 5

**RULES**

Fed. R. Evid. 201 ............................................................................................... 7

**REGULATIONS**

5 C.F.R. § 1201.29 ............................................................................................. 8

**LEGISLATIVE MATERIALS**

171 Cong. Rec. S6975 (2025) ......................................................................... 7

## INTRODUCTION

In challenging her removal from federal employment, Plaintiff seeks to avail herself of the statutory rights and remedies of the Civil Service Reform Act of 1978 (CSRA).   Indeed, each of her claims presuppose that the CSRA grants her a constitutionally protected right to her federal employment along with statutory procedural protections that private-sector at-will employees do not enjoy.   Yet she contends that she is not bound by the jurisdiction-channeling provisions of the CSRA. Plaintiff's attempt to reap the benefits of the CSRA while seeking to escape the jurisdictional limitations and procedural requirements Congress imposed must fail. Congress's intent is clear and dispositive: this Court lacks subject-matter jurisdiction over her claims.

When Congress passed the CSRA, it "comprehensively overhauled the civil service system, creating an elaborate new framework for evaluating adverse personnel actions against federal employees." *United States v. Fausto*, 484 U.S. 439, 443 (1988) (cleaned up).   A key part of that framework eliminated what had become standard suits by federal employees for injunctive relief, mandamus relief, and other remedies in federal district courts and replaced them with centralized, largely exclusive review of federal personnel claims by the Merit Systems Protection Board (MSPB).   The primary rationale for doing so was to correct what had evolved over many years into a "patchwork system" of disjointed, overlapping, and often conflicting statutes, regulations, and rules.   *Id.* at 445.   Under the CSRA's careful design, the MSPB adjudicates covered claims of improper personnel action in the first instance,

and parties dissatisfied with the outcome of that adjudication may seek Article III review primarily in the United States Court of Appeals for the Federal Circuit.

Plaintiff, a former Department of Justice (DOJ) attorney who alleges she was unlawfully removed, has availed herself of that comprehensive scheme by appealing her removal to the MSPB, just as Congress intended. Yet she also filed suit in this Court and seeks relief from the same adverse personnel actions she simultaneously challenges in her MSPB appeal. She acknowledges that covered employees such as herself "follow a prescribed scheme of administrative and judicial review and generally may not bring an initial claim in federal court." Dkt. #1 (Compl.) ¶ 77. Nonetheless, she asks this Court to carve out of that scheme an exception for this suit. Because she fears that "any complaint filed before the MSPB will be futile," *id.* ¶ 76, she asserts that her claim should be excepted from the MSPB process mandated by Congress and allowed to proceed in this Court, her preferred forum.

No such exception exists here. The jurisdiction-stripping review scheme in the CSRA has some narrow exceptions, but none apply to plaintiffs – such as Plaintiff here – who are afforded remedies for their claims under the CSRA but are dissatisfied with how MSPB proceedings might work in their cases. None of the facts Plaintiff alleges can reverse Congress's decision, almost fifty years ago, to channel judicial review of the claims she asserts away from federal district court.

Accordingly, the Court should dismiss Plaintiff's Complaint for lack of jurisdiction.

## BACKGROUND

### I.    Statutory Background

Before the CSRA was enacted in 1978, federal employment law consisted of an "outdated patchwork of statutes and rules built up over almost a century." *Fausto*, 484 U.S. at 444 (quoting S. Rep. No. 95-969, at 3 (1978)). There was no systematic scheme for reviewing adverse employment actions. Some employees were afforded administrative review of employment actions by statute or executive order; others had no right to such review. Employees often sought judicial review of agency personnel decisions in "district courts in all Circuits and the Court of Claims," through "various forms of action . . ., including suits for mandamus, injunction, and declaratory judgment." *Id.* at 444-45 (citations omitted).

The CSRA replaced those "haphazard arrangements for administrative and judicial review of personnel action," *id.*, with "a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quoting *Fausto*, 484 U.S. at 455). As relevant here, where a covered employee[1] challenges a covered employment action,[2] "Chapter 77 of the CSRA exhaustively details the system of review before the MSPB and the Federal Circuit."

---

[1] The CSRA divides civil-service employees into three main classifications. The Senior Executive Service (SES) encompasses high-level positions in the Executive branch that do not require presidential appointment or Senate confirmation. *See* 5 U.S.C. § 3132(a)(2). The "competitive service" encompasses all other employees not in the SES who are subject to competitive hiring procedures not otherwise excepted by statute or regulation. *Id.* § 2102. The "excepted service" encompasses employees outside the SES and competitive service classifications. *Id.* § 2103. *See also Elgin*, 567 U.S. at 5 n.1 (discussing the three categories of employees covered by the CSRA); *Fausto*, 484 U.S. at 441 n.1 (same). Plaintiff was an excepted service employee. *See* Dkt. # 1-2 at box 34.

[2] Reviewable actions include removal, suspension for more than 14 days, reduction in pay or grade, or furlough for 30 days or less. 5 U.S.C. § 7512.

*Elgin*, 567 U.S. at 11 (citing 5 U.S.C. §§ 7701, 7703).  An employee appealing a final adverse employment action has the right to a hearing before the MSPB and to be represented by counsel at such hearing.  5 U.S.C. § 7701.  Any MSPB Board Member or administrative law judge (ALJ) presiding over an MSPB appeal may administer oaths, examine witnesses, take depositions, and receive evidence.  *Id*. § 1204(b)(1).  In advance of a hearing, any Board member or ALJ may issue subpoenas to compel witnesses to appear and testify and/or to produce documents, and may order depositions and responses to written interrogatories.  *Id*. § 1204(b)(2).  If the employee prevails, the MSBP may order relief that includes reinstatement, back pay, and attorneys' fees.  *Id*. § 7701(g); *Elgin*, 567 U.S. at 6.

An employee who is dissatisfied with the MSPB's decision is entitled to judicial review in the Federal Circuit, which "shall review the record and hold unlawful and set aside any agency action, findings, or conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "obtained without procedures required by law, rule, or regulation having been followed," or "unsupported by substantial evidence." § 7703(a)(1), (c); *Elgin*, 567 U.S. at 6.  Subject to limited exceptions not applicable here, the Federal Circuit has "exclusive jurisdiction" over appeals from a final decision of the MSPB. *Id.* (citing 28 U.S.C. § 1295(a)(9); 5 U.S.C. § 7703(b)(1) (judicial review of an MSPB decision "shall be" in the Federal Circuit)).

## II.    Factual Background

Maurene Comey worked for the Department of Justice as an Assistant United States Attorney (AUSA) in the U.S. Attorney's Office (USAO) for the Southern

4

District of New York from November 2015 until her termination in July 2025. Compl. at ¶¶ 24, 47. On July 16, 2025, she received an e-mail from the Director of Human Resources for DOJ's Justice Management Division, attaching a memorandum signed by Francey Hakes, the Director of the Executive Office for United States Attorneys (EOUSA), which read:

> This memorandum provides official notice that you are removed from your position of Assistant United States Attorney, AD-0905-29, Criminal Division, Southern District of New York, Offices of the United States Attorneys, and from the federal service, effective immediately.
>
> Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated, and you are removed from federal service effective immediately.
>
> If applicable, you may have a right to file an appeal with the Merit Systems Protection Board (MSPB) within 30 days of the effective date of the removal action. For more information on how to file an appeal with the MSPB, please visit www.mspb.gov.

*Id.* ¶ 47; Dkt. #1-1.

On August 14, 2025, Plaintiff, through counsel, filed an MSPB appeal. *See* Compl. ¶ 76 n.42; *Comey v. DOJ*, No. PH-0752-25-1814-I-1 (MSPB 2025).[3]

The following day, the MSPB issued an Acknowledgment Notice signed by the Chief Administrative Judge of the Washington Regional Office, notifying Ms. Comey

---

[3] A copy of Ms. Comey's appeal to the MSPB is submitted as Exhibit 1 to the Declaration of Karen Folster Lesperance. Exhibits to the Lesperance Declaration will hereinafter be cited as "Exhibit __". It is well-settled that the Court may look beyond the pleadings to other evidence in the record to determine if subject-matter jurisdiction exists. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n.6 (2d Cir. 2001); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

that her appeal was being considered for consolidation with other appeals "from the same agency with the same or similar issues."  Exhibit 2.

One month later, with her MSPB appeal still pending and being considered for consolidation with other appeals raising similar issues, Plaintiff filed this action.  The substantive allegations in her complaint track closely with her MSPB appeal.  Added to her complaint was a section acknowledging that federal employees challenging employment action "generally may not bring an initial claim in federal court," Compl. ¶ 77, but rather must "generally proceed[] before the MSPB," *id.* ¶ 80, while claiming that the MSPB process here "will be futile." *Id.* ¶ 76.  She cited the absence (at that time) of a quorum on the Board, and the number of new cases recently filed with the MSPB.  *Id.* ¶84.

Then, on October 7, 2025, the Senate confirmed the President's nomination of James Woodruff II to serve on the Board; he was sworn in on October 28, 2025, restoring the Board's quorum.  *See* 171 Cong. Rec. S6975–76, S6992 (daily ed. Oct. 7, 2025); Exhibit 3 at 1.[4]  Notwithstanding the lack of a Board quorum for much of 2025, MSPB administrative judges continued to adjudicate appeals assigned to them, including ruling on motions, overseeing discovery, and holding evidentiary hearings,

---

[4] Courts may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201.  This generally includes matters of public record, including the confirmation and swearing-in of Mr. Woodruff to the Board.  *See, e.g.*, *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244-45 (S.D.N.Y. 2011); *Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006).

6

among other standard adjudicatory functions they perform by delegation of authority from the Board.  *See id.* at 1–2.

On November 26, 2025, the Chief Administrative Judge (CAJ) issued an order to show cause why Ms. Comey's appeal should not be dismissed *without prejudice,* "subject to automatic refiling by the Board 6 months from [the] date this appeal is dismissed."  Exhibit 4.  The CAJ noted that in two separate appeals brought by other DOJ employees, Megan Jackler[5] and Brandon Jaroch,[6] the Board's Washington Regional Office issued decisions on August 22, 2025, concluding that: (1) the Board had jurisdiction over the appeals; (2) Jackler and Jaroch were entitled to, but did not receive, due process before removal from federal employment; and (3) the Board lacks authority to decide DOJ's challenge to the constitutionality of the removal protections afforded by the CSRA.  *See id.*  The CAJ further noted that on September 26, 2025, the DOJ filed petitions for review of those initial decisions.  *See id.*  Thus, the CAJ concluded, "the dispositive issues in this appeal are pending before the Board in *Jackler* and *Jaroch.*"  *Id.*  Noting that 5 C.F.R. § 1201.29 provides dismissal without prejudice as "a procedural option that allows for the dismissal and subsequent refiling of an appeal," the CAJ concluded "it appears that good cause exists to dismiss this appeal without prejudice to refiling in the interests of administrative efficiency."  *Id.*

In its response to the order to show cause, DOJ concurred with the CAJ: "Given that the dispositive issues in the *Jackler* and *Jaroch* appeals will likely have some

---

[5] *Megan Jackler v. Department of Justice*, No. DA-0752-25-0330-I-1.

[6] *Brandon Jaroch v. Department of Justice*, No. DA-0752-25-0328-I-1.

bearing on the CAJ's adjudication of the instant matter, the Agency believes that dismissal without prejudice is an appropriate procedural step."  Exhibit 5.

Comey objected to the dismissal of her case without prejudice. Exhibit 6.  On December 1, 2025 – the same day she filed a letter in this Court arguing that she should not have to proceed before the MSPB but instead should be permitted to pursue her claims in this Court, *see* Dkt. #29 – she filed a response to the Order to Show Cause in the MSPB proceeding.  Noting she was a "career civil servant" and "clearly an 'employee' as defined by the [CSRA]" who was removed without the notice and process required under the CSRA, *id.* at 2, 4, she argued that dismissal of her MSPB claim for six months would be "antithetical to the mission of the MSPB to '[p]rotect the Merit System Principles and promote an effective Federal workforce free of Prohibited Personnel Practices.'"  *Id.* at 2-3.  In other words, Comey argued that her claims as a "covered employee" challenging a "covered personnel action" were not only within the MSPB's purview, but that the MSPB was duty-bound to hear her claims.

As of the time of this filing, the CAJ has not entered a dismissal order, and Plaintiff's MSPB appeal remains pending.

## LEGAL STANDARD

A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A court should "presume that [it] lack[s] jurisdiction unless the contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312,

316 (1991) (cleaned up).  In considering whether a plaintiff has met this burden, the Court will "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations," but "will not draw 'argumentative inferences' in the plaintiff's favor."  *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

## ARGUMENT

### The Civil Service Reform Act Precludes Jurisdiction Over Comey's Claims.

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."  *Bowles v. Russell*, 551 U.S. 205, 212 (2007).  Although 28 U.S.C. § 1331 generally confers the federal courts with broad jurisdiction to entertain "all civil actions arising under the Constitution, laws, or treaties of the United States," Congress, through its enactment of the CSRA, has affirmatively stripped district courts of § 1331 jurisdiction over claims regarding adverse personnel decisions such as the ones at issue in this case.

To determine whether a statutory scheme displaces § 1331 jurisdiction, a court considers two questions: first, "whether a preclusive intent is 'fairly discernible in the statutory scheme'"; and second, "whether the claims at issue 'are of the type Congress intended to be reviewed within'" that scheme.  *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 774 (D.C. Cir. 2025) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)).

### A. Congress intended the CSRA to provide the exclusive means of review for claims arising out of federal employment.

To determine the first question – whether it is 'fairly discernible' that Congress intended a statute to deprive district courts of jurisdiction – a court examines the statute's text, structure, and purpose. *Thunder Basin*, 501 U.S. at 207; *Fausto*, 484 U.S. at 443. Critically, "Congress need not expressly deem a statutory regime to be exclusive for it to satisfy step one. Rather, Congress's intent to displace district court jurisdiction may be 'implied' – for instance, by the comprehensive nature of the statutory system of review and Congress's purpose in enacting it." *Fed. Law Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 558 (D.C. Cir. 2023); *see also Elgin*, 567 U.S. at 8–10 (Congress need not be "explicit" when it divests district courts of § 1331 jurisdiction).

The Supreme Court has held that it is fairly discernible that Congress, in enacting the CSRA, "intended to deny [covered] employees an additional avenue of review in district court." *Elgin*, 567 U.S. at 12; *see also Fausto*, 484 U.S. at 450. The CSRA established an "'integrated scheme of administrative and judicial review' for aggrieved federal employees," that – aside from limited exceptions for certain types of discrimination claims not at issue here – provides the exclusive means by which covered employees may challenge adverse employment actions. *Elgin*, 567 U.S. at 5, 13-14 (quoting *Fausto*, 484 U.S. at 445). As the Supreme Court explained in *Elgin*, the "outdated patchwork of statutes and rules" that governed federal employment law prior to the CSRA's enactment produced issues of parallel litigation, inconsistent

decision-making, and duplicative judicial review of the same or similar matters. *Id.* at 13-14.

To remedy these problems, Congress set forth in "painstaking detail" the procedure by which covered employees may obtain review of adverse employment actions. *Id.* at 11-12. By doing so, Congress made clear its intent that "extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review." *Id.* at 11. *See also Doe v. F.D.I.C.*, 545 F. App'x 6, 8 (2d Cir. 2013) ("We have held that "the [CSRA] . . . provides the exclusive remedy by which [federal] employees may challenge such actions and, unless the [CSRA] either explicitly or by necessary implication sanctions judicial challenges to such actions, judicial challenge is foreclosed.") (quoting *Tiltti v. Weise*, 155 F.3d 596, 600 (2d Cir. 1998)); *Sawyer v. Musumeci*, 165 F.3d 14 (2d Cir. 1998) ("For claims falling within its purview, the CSRA provides the exclusive remedy.").

## B. Plaintiff's claims are of the type that Congress intended to be channeled through the CSRA framework.

Plaintiff concedes that her claim is the type of claim that "generally proceeds before the MSPB," Compl. ¶ 74, and that employees such as herself who challenge their removal from federal employment "generally may not bring an initial claim in federal court." *Id.* ¶ 77. *See also Nat'l Treasury Emps. Union*, 149 F.4th at 775 (holding that if the adverse personnel action is "covered" by the CSRA, its "scheme is 'exclusive."') (quoting *Elgin*, 567 U.S. at 5). Nevertheless, she contends that an exception should be carved out for her claims because they present "novel issues" and her MSBP appeal "will be futile." Dkt. #29 at 2, 3 ,5; Compl. ¶¶ 76, 82-86. She is not

entitled to such an exception.  She is entitled to review of her claim – including any novel issue it may raise – in the Federal Circuit.  And Congress expressly intended to divest district courts of subject matter jurisdiction over a challenge to a removal action, such as Plaintiff's here, with jurisdiction over such claims exclusively channeled through the CSRA review process.

In *Thunder Basin*, the Supreme Court addressed the question whether the statutory-review scheme in the Federal Mine Safety and Health Amendments of 1977 "prevents a district court from exercising subject-matter jurisdiction over a pre-enforcement challenge to the Act."  510 U.S. at 202.  The Court held that it does.  *Id.* at 202, 207.  After determining that the statute evinced Congress' intent to allocate initial review of final agency action to an administrative body, the Court turned to the question whether the petitioner's claims were of the type that Congress intended to be reviewed within the statutory structure.  In making this determination, the Court "identified three considerations designed to aid in that inquiry, commonly known now as the *Thunder Basin* factors."  *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023).  Those factors are: (1) whether precluding district court review will "foreclose all meaningful judicial review" of the claim; (2) whether the claim is "wholly collateral" to the statute's review provisions; and (3) whether the claim is "outside the agency's expertise."  *Id.* (citing *Thunder Basin*, 510 U.S. at 212-13); *see also Elgin*, 567 U.S. at 15-16.  Applying each of these factors here, Plaintiff's claims are clearly of the type that Congress intended to be channeled through the CSRA review structure.

1. **The CSRA provides for meaningful judicial review of Plaintiff's claim.**

    a. **Plaintiff will have an opportunity to present her claims to an Article III court.**

Plaintiff contends that because her claim "raises foundational constitutional questions with respect to the separation of powers, the MSPB is not the appropriate forum for this dispute." Dkt. #29 at 2; *see also* Compl. ¶¶ 84-85. She is wrong. The Supreme Court rejected such a contention in *Elgin*, holding that "the CSRA does not foreclose all judicial review of petitioners' constitutional claims, but merely directs that judicial review shall occur in the Federal Circuit" – which, the Court noted, "is fully capable of providing meaningful review." *Id.* at 10. *See also Thunder Basin*, 510 U.S. at 215 (holding that even if the independent mining commission cannot adjudicate constitutional claims, "petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals").

The plaintiffs in *Elgin* were former competitive service employees who were terminated under a statute that prohibits agencies from employing individuals who "knowingly and willfully failed to register" for the Selective Service when required to do so. *Id.* at 7. The removed employees filed an action in district court challenging the constitutionality, on equal protection grounds, of that statute. *See id.* The district court held that it had jurisdiction because the MSPB "had no authority to determine the constitutionality of a federal statute." *Id.* at 8. The First Circuit reversed, holding that the CSRA provides a forum—the Federal Circuit—to adjudicate constitutional questions, and petitioners "were obliged to use it." *Id.* (quoting *Elgin v. United States*, 641 F.3d 6, 12-13 (1st Cir. 2011). The Supreme Court affirmed, rejecting plaintiffs'

attempts to "carve out an exception to CSRA exclusivity for . . . constitutional challenges to federal statutes." 567 U.S. at 12.

This Court need not carve out an exception to the CSRA's exclusivity provisions to ensure that Plaintiff is not deprived of meaningful judicial review of the constitutional issues raised by her appeal. If she does not obtain the relief she seeks at the MSPB, "the CSRA provides review in the Federal Circuit, an Article III court fully competent to adjudicate [her] claims." *Id.* at 17.

### b. The CSRA process is available to Plaintiff.

Plaintiff's Complaint alleges that the MSPB is unavailable to her due to the lack (at the time) of a quorum and administrative backlog. Compl. ¶ 84. As discussed above, a quorum was restored when James Woodruff II was sworn in as a member of the Board on October 28, 2025. Even if the quorum had not been restored, allegations of delay and gridlock cannot override the CSRA's comprehensive review framework or confer subject matter jurisdiction on this Court, which plainly does not exist. *See, e.g.*, *Jolley v. United States*, 549 F. Supp. 3d 1, 6 (D.D.C. 2021) (even in absence of Board quorum "for over four years," there existed "no basis, statutory or otherwise, to say that a court's subject matter jurisdiction can turn on the presence or absence of political gridlock").

Likewise, Plaintiff's MSPB appeal is not, as she alleges, "futile." Compl. ¶ 86; Dkt. #29 at 3-4. Nor are allegations of futility sufficient to confer jurisdiction on this Court. First, the proposed dismissal without prejudice of Plaintiff's MSPB appeal does not foreclose "all meaningful judicial review" of her claims. The OSC stated that the dismissal was for procedural purposes pending determination of the government's

appeal of the ALJ's determination in Jackler's and Jaroch's appeals that their removals violated the CSRA and the Board lacked authority to determine the government's constitutional challenge to the CSRA. *See* Exhibit 4. The OSC provides that if dismissed, the Board will reinstate Plaintiff's appeal in six months. *Id.* A procedural dismissal with the right to re-file is permitted by 5 U.S.C § 1201.29. Plaintiff may be dissatisfied with the delay, but that dissatisfaction is not sufficient to confer jurisdiction on a district court. *See, e.g.*, *Jolley*, 549 F. Supp. 3d at 6. Indeed, that the MSPB is consolidating Article II removal cases and effectively staying those appeals while the common constitutional questions are adjudicated illustrates the very purpose behind the CSRA's exclusivity provisions: Congress was concerned about the "problems of parallel litigation, inconsistent decision-making, and duplicative judicial review of the same or similar matters." *Elgin*, 567 U.S. at 13-14. Plaintiff would have this Court exercise jurisdiction to determine the very same constitutional issues that are currently being appealed from an ALJ to the Board (and then presumably to the Federal Circuit), potentially resulting in inconsistent results. This was the very result that Congress intended to avoid when it enacted the CSRA.

Next, Plaintiff contends that the MSPB's independence has been "eviscerate[ed]" because the DOJ's Office of Legal Counsel (OLC) issued a Memorandum Opinion regarding the MSPB's authority to adjudicate constitutional questions, and DOJ argued in the *Jackler* and *Jaroch* appeals that because OLC opinions reflect the legal position of the Executive Branch, they are generally viewed as providing binding interpretive guidance for executive agencies (to include the

MSPB).  *See* Dkt. #29 at 3.  The OLC opinion concluded that the Board has jurisdiction to determine the constitutional challenge raised in appeals of Article II terminations, but took no position on the merits of the Agency's constitutional arguments or any other merits arguments in any of the underlying disputes.  But even if the Board follows the guidance in the OLC opinion and rules on the government's constitutional challenge, that guidance merely reflects OLC's interpretation of existing law, and Plaintiff will have the opportunity not only to challenge her removal but also to contest the legal basis of any final Board decision before the Federal Circuit.

Moreover, *Elgin* forecloses this argument too.  Noting that the MSBP "has repeatedly refused to pass upon the constitutionality of legislation," the Court reasoned that "[w]e do not, and need not, decide whether the MSPB's view of its power is correct, or whether the oft-stated principle that agencies cannot declare a statute unconstitutional is truly a matter of jurisdiction," as "that issue" could be "meaningfully addressed in the Court of Appeals."  560 U.S. at 17 (citing *Thunder Basin*, 510 U.S. at 215).

### 2. Plaintiff's claim falls squarely within the CSRA's review provisions.

Far from being "wholly collateral," Plaintiff's claims – that she was removed from federal employment without cause, without written notice, and without the procedural requirements of the CSRA – are at the very foundation of what the CSRA was intended to address.  Plaintiff's expectation that the government may argue that those statutory protections are unconstitutional to the extent that they infringe on

the Executive's powers under Article II does not render her underlying claim "collateral" to the purposes of the CSRA's exclusive review framework. There is no dispute that she is a covered employee under the CSRA, and that her removal represents a covered employment action (not to mention a statutorily defined adverse action appealable to the MSPB as of right). Compl. ¶¶ 74-75. Her challenge to her removal must therefore be brought before the MSPB, as the CSRA's exclusivity "does not turn on the constitutional nature of an employee's claim, but rather on the type of employee and the challenged employment action." *Elgin*, 510 U.S. at 15. Rejecting the petitioners' arguments that their constitutional challenge was "wholly collateral" because it had "nothing to do with the types of day-to-day personnel action adjudicated by the MSPB," the *Elgin* Court held that the constitutional claims were "the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action." *Id.* at 22. Here, too, where Plaintiff's claims raise constitutional issues, those issues are secondary to the relief she seeks, both in this action and in her MSPB appeal: reinstatement, back pay, and attorneys' fees.

Nor is jurisdiction conferred on this Court by Plaintiff's claims that her termination violated not just the CSRA, but also her First and Fifth Amendment rights. As the Supreme Court noted in *Elgin*, "the MSPB routinely adjudicates some constitutional claims, such as claims that an agency took adverse employment action in violation of an employee's First or Fourth Amendment rights." *Id.* at 12. "[T]hese claims must be brought within the CSRA scheme." *Id.* (citing *Smith v. Dep't of*

17

*Transp.,* 106 M.S.P.R. 59, 78–79 (2007) (applying *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty.,* 391 U.S. 563 (1968), to an employee's claim that he was suspended in retaliation for the exercise of his First Amendment rights); *Garrison v. Dep't of Justice,* 67 M.S.P.R. 154 (1995) (considering whether an order directing an employee to submit to a drug test was reasonable under the Fourth Amendment)). As such, Plaintiff's claims are not "wholly collateral" to the types of claims that the CSRA intended to be heard by the MSPB.

### 3. Plaintiff's claims present issues that are well within the MSPB's expertise.

Likewise, Plaintiff's challenge to her removal is the type of challenge well within the MSBP's expertise. Removal challenges are at the core of the MSPB's day-to-day functions. Even if Plaintiff has correctly assumed that the government's defense to her removal appeal may challenge the constitutionality of the CSRA to the extent it infringes on the power of the Executive, the Supreme Court has already held that even claims raising constitutional issues beyond the purview of the MSPB are subject to administrative adjudication in the first instance so that the MSPB may bring its expertise to bear on the "threshold issues" relating to the employment claim. *Elgin*, 510 U.S. at 22-23. This is particularly true where, as here, the claims involve a statute that the MSPB routinely considers. *Id.* at 23. It is beyond cavil that the MSPB "routinely considers" the CSRA. *Id.*

Considering the *Thunder Basin* factors in totality, Plaintiff's claims are the type Congress intended to be channeled through the CSRA framework. Accordingly, this Court lacks subject matter jurisdiction.

18

## CONCLUSION

The Court should dismiss Plaintiff's Complaint in its entirety with prejudice for lack of subject matter jurisdiction.

December 15, 2025                 Respectfully submitted,

                                  TODD BLANCHE
                                  Deputy Attorney General

                                  JOHN A. SARCONE III
                                  Acting United States Attorney
                                  Northern District of New York


                     By:    _____
                                  Karen Folster Lesperance
                                  Assistant United States Attorney
                                  *Acting Under Authority Conferred*
                                  *by 28 U.S.C. § 515*

                                  *Counsel for Defendants*

19

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(c) of the Local Rules for the United States District Court for the Southern District of New York, the undersigned counsel for the Defendants hereby certifies that this memorandum of law complies with the type volume limitation of Rule 7.1(c). As measured by the word-processing system used to prepare this memorandum of law, there are approximately 4961 words in the brief.

TODD BLANCHE
Deputy Attorney General

JOHN A SARCONE III
Acting United States Attorney

By: _____

Karen Folster Lesperance
Assistant United States Attorney
*Acting Under Authority Conferred
by 28 U.S.C. § 515*

**CERTIFICATE OF SERVICE**
**BY NEXTGEN CM/ECF**

Maurene Comey
v.
Department of Justice, et al.

Docket No.   1:25-cv-07625

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York, and is a person of such age and discretion as to be competent to serve papers.

She further certifies that on December 15, 2025, she served a copy of the Defendant's motion to dismiss for lack of subject matter jurisdiction, memorandum of law in support thereof, and the accompanying Declaration of Karen Folster Lesperance, with exhibits, on counsel for plaintiff by uploading a Portable Document Format (PDF) version of the same to the Southern District of New York's ECF system.

_____
Karen Folster Lesperance