**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAURENE COMEY, | |
| Plaintiff, | |
| v. | Civil Action No: 25-cv-07625 |
| UNITED STATES DEPARTMENT OF JUSTICE; EXECUTIVE OFFICE OF THE PRESIDENT; FRANCEY HAKES in her official capacity as the Director of the Executive Office for United States Attorneys; PAMELA J. BONDI, in her official capacity as Attorney General of the United States Department of Justice; EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS; OFFICE OF PERSONNEL MANAGEMENT; and THE UNITED STATES OF AMERICA, | Hon. Jesse M. Furman

ORAL ARGUMENT REQUESTED |
| Defendants. | |

# PLAINTIFF MAURENE COMEY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

CLARICK GUERON REISBAUM LLP
Nicole Gueron
Ellen Blain
Deepa Vanamali
41 Madison Avenue
New York, NY 10010
Tel.: (212) 633-4310
ngueron@cgr-law.com
eblain@cgr-law.com
dvanamali@cgr-law.com

KOSKOFF KOSKOFF & BIEDER, PC
Margaret M. Donovan
350 Fairfield Ave.
Bridgeport, CT 06604
Tel: (203) 336-4421
mdonovan@koskoff.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ................................................................................ 5

I.    Congress Enacted the CSRA to Ensure a Meritocratic, Nonpartisan Civil Service .......... 5

    A.    Congress Prohibited Termination of Federal Employees Without Cause or Due Process ........................................................................................................ 5

    B.    Congress Established an Independent MSPB ...................................... 6

II.    After Ten Years of Exceptional Service, Ms. Comey Was Fired Without Cause Pursuant to Defendants' Novel Theory that Article II Authorizes Them to Ignore the CSRA ......... 9

III.    Defendants Initially Agreed that MSPB Lacks Jurisdiction to Address Article II Removals ................................................................................................... 10

IV.    Defendants Eviscerate the Independence of MSPB and Reverse Course—Now They Argue MSPB *Must* Address Article II Removal Authority ............................... 13

V.    Ms. Comey's MSPB Appeal Is Predetermined and Futile ............................... 17

VI.    Defendants Move to Dismiss ....................................................................... 18

RULE 12(b)(1) STANDARD ............................................................................. 18

ARGUMENT ..................................................................................................... 19

I.    This Court Has Subject Matter Jurisdiction Because the Implicit Jurisdiction Stripping Analysis Under *Thunder Basin* Does Not Apply to Article II Removals ........................ 19

    A.    No Statute Displaces District Court Jurisdiction to Review Article II Removals 19

    B.    The CSRA Limits MSPB's Jurisdiction to Removal for "Cause" ........................ 21

II.    The *Thunder Basin* Analysis Establishes that Congress Did Not Implicitly Strip this Court of Jurisdiction .................................................................................... 25

    A.    *Thunder Basin* Step One: Congress Did Not Intend to Displace District Court Jurisdiction for Article II Removals ...................................................... 25

        1.    Congress Intended to Limit MSPB Jurisdiction to Specified Removals .. 26

        2.    Congress Did Not Intend MSPB to Consider Separation of Powers Questions or Adjudicate its Own Constitutionality ............................... 26

            a.    Congress Did Not Intend MSPB to Adjudicate Separation of Powers Questions ....................................................................27

            b.    Congress Did Not Intend MSPB to Determine the Constitutionality of Its Own Authorizing Statute ...................................................29

            c.    The September 2025 OLC Opinion Is Flawed .............................34

        3.    Congress Did Not Intend to Submit Civil Servant Claims to a Non-Independent Board ................................................................................ 35

a.    The CSRA's Text, Structure, Purpose, and Legislative History Show That Congress Intended MSPB to be Independent ............36

b.    MSPB Is No Longer Independent of the President ......................37

c.    Congress Did Not Intend to Subject Employees to A Futile and Predetermined Proceeding ..........................................................39

B.    The *Thunder Basin* Step Two Elements Support This Court's Jurisdiction ........ 40

1.    Precluding District Court Jurisdiction Will Foreclose All Meaningful Judicial Review ................................................................................ 41

2.    Claims Concerning the Separation of Powers Are "Wholly Collateral" to the CSRA's Statutory Review Provisions.................................................. 44

3.    Separation of Powers Claims Are Outside MSPB's Expertise ................ 45

CONCLUSION ................................................................................................ 48

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*AFGE v. Trump,*
  139 F. 4th 1020 (9th Cir. 2025) ...........................................................44, 45

*Am. Fed'n of Gov't Emps. v. Fed. Lab. Relations Auth.,*
  944 F.2d 922 (D.C. Cir. 1991) ...........................................................6, 7, 31

*Am. Fed'n of State County and Mun. Emps. v. Office of Mgmt. and Budget,*
  No. 25-cv-08302, 2025 WL 3654116 (N.D. Cal. Dec. 17, 2025)...........................................45

*Axon Enterprise, Inc. v. Federal Trade Commission,*
  598 U.S. 175 (2023)........................................................... *passim*

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...........................................................40

*Biden v. Nebraska,*
  600 U.S. 477 (2023)...........................................................28

*Califano v. Sanders,*
  420 U.S. 99 (1977)...........................................................28

*Carr v. Saul,*
  593 U.S. 83 (2021)........................................................... *passim*

*Cochran v. U.S. Securities and Exchange Commission,*
  20 F.4th 194 (5th Cir. 2021) ...........................................................20

*Davis-Clewis v. Department of Veterans Affairs,*
  2014 WL 1209225 (Mar. 20, 2024)...........................................8, 12, 31, 32

*Department of Navy v. Egan,*
  484 U.S. 518 (1988)...........................................................8, 22

*Elgin v. Dep't of Treasury,*
  567 U.S. 1 (2012)........................................................... *passim*

*Free Enterprise Fund v. Public Company Accounting Oversight Bd.,*
  561 U.S. 477 (2010)........................................................... *passim*

*Garrison v. Dep't of Justice,*
  67 M.S.P.R. 154 (1995) ...........................................................32

*Gordon v. Exec. Off. of the President,*
  No. 25-cv-02409 (D.D.C.) ...........................................................10

*Harris v. Bessent*,
   No. 25-5037, 2025 WL 3496737 (D.C. Cir. Dec. 5, 2025) ...................................................15

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935)...............................................................................................................38

*Jackler v. Dep't of Justice*,
   No. DA-0752-25-0330-I-1 (M.S.P.B. 2025) .............................................................10, 14, 32

*King v. Jerome*,
   42 F.3d 1371 (Fed Cir. 1994).................................................................................................23

*Lindahl v. OPM*,
   470 U.S. 768 (1985).................................................................................................................5

*Makarova v. U.S.*,
   201 F.3d 110 (2d Cir. 2000)...........................................................................................11, 19

*Malone v. Dep't of Justice*,
   13 M.S.P.B. 81 (1983) ......................................................................................................12, 32

*Margolin v. NAIJ*,
   No. 25A662, 2025 WL 3684278 (U.S. Dec. 19, 2025) ...........................................................37

*McCarthy v. Madigan*,
   503 U.S. 140 (1992).........................................................................................................19, 39

*Myers v. United States*,
   272 U.S. 52 (1926).................................................................................................................15

*NAIJ v. Owen*,
   139 F.4th 293 (4th Cir. 2025) ...........................................................................4, 11, 37, 43

*Nat'l Lab. Rels. Bd. v. N. Mountain Foothills Apartments*,
   157 F.4th 1089 (9th Cir. 2025) ............................................................................................30

*Nat'l Org. for Marriage, Inc. v. Walsh*,
   714 F.3d 682 (2d Cir. 2013)..................................................................................................44

*Riggin v. Off. of Senate Fair Emp't Practices*,
   61 F.3d 1563 (Fed. Cir. 1995)........................................................................................30, 31

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   592 U.S. 14 (2020).................................................................................................................44

*Smith v. Dep't of Transp.*,
   106 M.S.P.R. 59 (2007) .....................................................................................................32, 33

*Somerville Pub. Schs. v. McMahon,*
  139 F.4th 63 (1st Cir. 2025)........................................................24

*Special Counsel v. Gallagher,*
  44 M.S.P.R. 57 (1990) ................................................................12

*Sweet v. Sheahan,*
  235 F.3d 80 (2d Cir. 2000)..........................................................18

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994) ............................................................. *passim*

*Todd v. Merit Systems Protection Board,*
  55 F.3d 1574 (Fed. Cir. 1995)......................................................23

*Trump v. Slaughter,*
  No. 25-332 (U.S)........................................................................10

*U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers,*
  413 U.S. 548 (1973).....................................................................5

*Union Pac. Railroad Co. v. U.S. Railroad Retirement Bd.,*
  No. 24-2547, 2025 WL 3639277 (8th Cir. Dec. 16, 2025).........19, 24, 26

*United States v. Fausto,*
  484 U.S. 439 (1988)..................................................................6, 23

*Widakuswara v. Lake,*
  779 F. Supp. 3d 10 (D.D.C. 2025).................................................11

**Statutes**

5 U.S.C.§ 1103.........................................................................................7

5 U.S.C. § 1201........................................................................................7

5 U.S.C. § 1202...............................................................................7, 16, 36

5 U.S.C. § 1204................................................................................. *passim*

5 U.S.C. § 2301........................................................................................5

5 U.S.C. § 2303.......................................................................................22

5 U.S.C. § 3105........................................................................................8

5 U.S.C. § 3502..............................................................................5, 8, 22, 23

5 U.S.C. § 4303................................................................................. *passim*

5 U.S.C. § 7511 ...................................................................................13

5 U.S.C. § 7512 ...............................................................................8, 22

5 U.S.C. § 7513 ............................................................................ *passim*

5 U.S.C. § 7532 ...........................................................................5, 8, 22

5 U.S.C. § 7701 ............................................................................ *passim*

5 U.S.C. § 7521 .............................................................................8, 16

28 U.S.C. § 1331 ......................................................................... *passim*

**Rules and Regulations**

5 C.F.R. § 351.201 ..........................................................................5, 22

5 C.F.R. § 351.901 ..............................................................................22

5 C.F.R. § 731.501 ..............................................................................22

5 C.F.R. § 1201.3 ................................................................................22

5 C.F.R § 1201.22 ...............................................................................10

28 C.F.R. § 27.7 ..................................................................................22

Fed. R. Civ P. 8(a)(2) ..........................................................................40

Fed. R. Civ P.12(b)(1) ....................................................................11, 18

90 Fed. Reg. 10447 § 7 ........................................................................15

**Other Authorities**

Act of Jan. 16, 1883, c. 27, 22 Stat. 403 § 2 ........................................5

Administrative Procedure Act..............................................................10

Civil Service Reform Act of 1978 ................................................ *passim*

Executive Order 14215 "Ensuring Accountability for All Agencies" ........14, 17, 38, 43

Military Selective Service Act ..............................................................32

Pendleton Act of 1883 ..........................................................................5

U.S Code Title 5 ...................................................................... *passim*

The Merit Systems Protection Board's Authority to Adjudicate Constitutional
    Questions within an Administrative Proceeding
    49 Op. O.L.C. __ (Sept. 26, 2025) ................................................................13, 14, 42

United States Constitution First Amendment ........................................................10, 33, 41, 43, 44

United States Constitution Fifth Amendment ................................................................10, 29, 33

United States Bill of Rights ................................................................................................26, 29

S. Rep. 95-969 ................................................................................................................6, 8, 36, 37

Statement of Justice Department Chief of Staff Chad Mizelle (Feb. 20, 2025) ...........................16

United States Constitution Article II ..................................................................................... *passim*

Plaintiff Maurene Comey respectfully submits this memorandum of law in opposition to Defendants' Motion to Dismiss the Complaint ("Motion" or "Mot.").

## PRELIMINARY STATEMENT

"The executive branch cannot use Article II to overrule Congress and remove career civil servants for perceived disloyalty." (Compl. ¶ 9.) That fundamental constitutional claim lies at the heart of this case, and the Court has jurisdiction to decide it.

In the wake of the Watergate scandal, pursuant to its Article I authority, Congress enacted the Civil Service Reform Act of 1978 ("CSRA") to ensure a meritocratic, nonpartisan civil service. Congress established an independent Merit Systems Protection Board ("MSPB" or "Board") to adjudicate whether executive branch agencies complied with the CSRA's protections. Congress imposed a structure that insulated the Board from political pressure—and specifically, the President—to ensure that civil servants are evaluated on merit, not political patronage. For nearly fifty years, administrations of both parties respected the guardrails of the CSRA and the bedrock principle of a nonpolitical civil service.

Then, in 2025, Defendants began to fire civil servants like Ms. Comey based on their perceived political disloyalty, asserting a novel theory: that Article II executive authority is essentially unlimited within the executive branch and unconstrained by the CSRA. Thus, this case does not address the familiar question of whether Defendants *complied* with the CSRA; it asks whether the CSRA is constitutional. Defendants mischaracterize this dispute as a routine challenge to removal from federal service that must be channeled to MSPB (*see* Mot. at 3 (she is a "covered employee" challenging "a covered employment action")), but Ms. Comey's termination is anything but routine. By firing Ms. Comey *solely* pursuant to Article II, Defendants created a foundational dispute about the separation of powers, raising core

constitutional questions:  Does Article II empower the President to fire federal employees in violation of the civil service laws passed by Congress pursuant to its Article I authority?  If so, is that Article II power delegable to employees of the executive branch?  And if so, to what extent?

These questions belong before this Court.  At present, the Supreme Court is considering the government's Article II removal theory as it applies to principal officers.  This case is one of the first to grapple with the Article II removal theory as it applies to rank-and-file civil service employees—the vast majority of the federal workforce.  No court has yet decided this issue, nor has MSPB.

While these questions are far-reaching, the jurisdictional question now before the Court is a narrow one, and it can be resolved based on Supreme Court precedent and traditional statutory interpretation.  Because Ms. Comey was terminated pursuant to Article II, not the for "cause" provisions of the CSRA, this Court has jurisdiction and MSPB does not.  Indeed, the government initially agreed that MSPB could not review its Article II firings, before reversing course after its step-by-step evisceration of MSPB's independence.

This Court has jurisdiction for two reasons.

*First*, no statute displaces district court jurisdiction over Article II removals, and the Court need not conduct the channeling analysis outlined in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).  The Supreme Court has repeatedly directed that fundamental constitutional and structural questions should not be channeled to administrative agencies absent clear Congressional intent to strip courts of jurisdiction.  The CSRA does not expressly or implicitly strip this Court of jurisdiction because—as the government itself currently asserts before MSPB—the CSRA does not apply where Defendants do not use their CSRA authority to terminate an employee for cause.  Indeed, the government insists that Article II removals are

"separate and distinct" from CSRA removals.  The Court should take Defendants at their word: because Ms. Comey was terminated pursuant to Article II, not the CSRA, this Court retains jurisdiction.

Moreover, the CSRA grants MSPB jurisdiction only over certain types of removals—and Article II removal is not one of them.  For employees like Ms. Comey, the CSRA limits MSPB's jurisdiction to removals for "cause" under 5 U.S.C. §§ 4303 and 7313; as Defendants made clear when firing Ms. Comey, her removal was not for "cause."  Thus, Defendants' own conduct places Ms. Comey's removal outside MSPB's ambit pursuant to the terms of the CSRA itself. The government's accusation that Ms. Comey seeks to avail herself of the CSRA's protections yet avoid its channeling provisions misses the mark, because the substantive and jurisdictional questions are distinct.  Ms. Comey is a "covered employee" under the CSRA and entitled to its protections.  But when Defendants fired her pursuant to Article II, they did not engage in a "covered employment action" recognized by the CSRA, and thus MSPB's jurisdiction was not triggered.  In the absence of express Congressional provision to the contrary, Article III and 28 U.S.C. § 1331's presumptive grants of authority to this Court to hear Ms. Comey's statutory and constitutional claims remain untouched.

*Second*, even if this Court were to conduct the two-step *Thunder Basin* analysis, it would retain jurisdiction.  Under *Thunder Basin* step one, courts ask whether congressional intent to "allocate[] initial review to an administrative body is fairly discernible in the statutory scheme." *Thunder Basin*, 510 U.S. at 207 (cleaned up).  There is nothing in the CSRA's "language, structure, [] purpose, [and] legislative history" to suggest that Congress intended to direct this type of dispute to MSPB because, *first*, the CSRA limits MSPB's jurisdiction to certain statutorily-defined removals—those for "cause" under Title 5 of the U.S Code—which this was

not.  *Second*, Congress did not intend for MSPB to determine constitutional separation of powers questions or its own constitutionality, both of which it would have to address here.  *Third*, Congress did not intend to subject civil servants to a Board no longer independent of the President.  *See Thunder Basin*, 510 U.S. at 207; *NAIJ v. Owen*, 139 F.4th 293, 307 (4th Cir. 2025) (concluding that erosion of Board's independence "cal[s] into question whether the CSRA continues to function as Congress intended for purposes of the *Thunder Basin* analysis").

The second step in *Thunder Basin* also supports this Court's jurisdiction.  Under *Thunder Basin* step two, courts ask whether "the particular claims brought [a]re 'of the type Congress intended to be reviewed within th[e] statutory structure.'"  *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175, 186 (2023).  Three factors are considered: (1) whether "precluding district court jurisdiction [would] 'foreclose all meaningful judicial review' of the claim," (2) whether "the claim is 'wholly collateral to [the] statute's review provisions,'" and (3) whether "the claim [is] 'outside the agency's expertise.'"  *Id.*  Each of these factors weighs in favor of Ms. Comey.  MSPB review would cause Ms. Comey a here-and-now constitutional injury that cannot be remedied by later Federal Circuit review, and the constitutional questions outlined above are wholly collateral to the CSRA's review provisions and far outside MSPB's expertise.  At base, "[t]he ordinary statutory review scheme does not preclude a district court from entertaining [] extraordinary claims."  *Id*. at 180.

This Court has subject matter jurisdiction and should deny the Motion.

## FACTUAL BACKGROUND

**I.    Congress Enacted the CSRA to Ensure a Meritocratic, Nonpartisan Civil Service**

**A.    Congress Prohibited Termination of Federal Employees Without Cause or Due Process**

Congress first established a professional civil service with the Pendleton Act of 1883, enacted to end the "spoils system under which federal employees came and went, depending upon party service and changing administrations, rather than meritorious performance." *U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 557-58 (1973). The Pendleton Act prohibited political removal from office and created the Civil Service Commission to serve as the "agency or administrator of the Act under the rules of the President." *Id.* at 558; Act of Jan. 16, 1883, c. 27, 22 Stat. 403 § 2.

Nearly a century later, Congress passed the CSRA, codified in Title 5 of the U.S. Code, to "comprehensively overhaul[] the civil service system," creating a "new framework for evaluating adverse personnel actions against [federal employees]." *Lindahl v. OPM*, 470 U.S. 768, 773-74 (1985). Congress established nine merit systems principles and fourteen prohibited personnel practices. The CSRA requires, *inter alia*, that employees like Ms. Comey "receive fair and equitable treatment in all aspects of personnel management without regard to [their] political affiliation . . . and with proper regard for their . . . constitutional rights," and "be . . . protected against arbitrary action, personal favoritism, or coercion for partisan political purposes." 5 U.S.C. § 2301(b). (*See* Compl. ¶¶ 71-73.) The CSRA further provides that executive branch agencies may terminate employees like Ms. Comey for four reasons only: (1) in connection with a "reduction in force," 5 U.S.C. § 3502; 5 C.F.R. § 351.201(a)(2); (2) "in the interests of national security," 5 U.S.C. § 7532(a); (3) for "unacceptable performance," 5 U.S.C. § 4303(a); or (4) for "such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a). (*See* Compl. ¶

72.)  Federal employees subjected to an adverse action, including certain types of removals, are entitled to 30 days advance notice, time to respond, representation by counsel, and a written decision explaining the termination decision.  *Id.* § 7513(b).  (*See* Compl. ¶ 74.)

As Congress explained when enacting the CSRA, while the Pendelton Act's Civil Service Commission "largely succeeded in safeguarding merit principles," "there ha[d] been frequent attempts to circumvent them."  S. Rep. 95-969, at 2-3.  After Watergate exposed a system that "fail[ed] to provid[e] assurance against political abuse," *id.*, Congress instituted more explicit guardrails to prohibit the at-will removal of rank-and-file civil servants like Ms. Comey for political reasons.[1]  (Compl. ¶¶ 70-74.)  Congress made clear its purpose: to create a meritocratic civil service free from political pressure.

### B.    Congress Established an Independent MSPB

"A leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the outdated patchwork of statutes and rules built up over almost a century that was the civil service system."  *United States v. Fausto*, 484 U.S. 439, 444-45 (1988) (cleaned up).

Another leading purpose of the CSRA—one entirely ignored by the government in the Motion—was to insulate the civil service from political control.  "Prominent among [the CSRA] reforms were abolition of the 95-year-old Civil Service Commission and enlargement, splitting and redistribution of its former jurisdiction to three newly-created agencies[:]" the Office of Personnel Management ("OPM"), MSPB, and the Federal Labor Relations Authority

---

[1] Defendants concede Ms. Comey is an employee "covered" by the CSRA.  Mot. at 3 n.1.

("FLRA").[2] *Am. Fed'n of Gov't Emps. v. Fed. Lab. Relations Auth.*, 944 F.2d 922, 925 (D.C. Cir. 1991).

Congress charged OPM with "executing, administering, and enforcing" the civil service laws.  5 U.S.C.§ 1103 (outlining OPM functions).  (*See* Compl. ¶¶ 72-73.)  OPM's duties include "aiding the President, as the President may request, in preparing such civil service rules as the President prescribes, and otherwise advising the President on actions which may be taken to promote an efficient civil service and a systematic application of the merit system principles."  5 U.S.C. § 1103(a)(7).

By contrast, Congress made MSPB an independent, quasi-judicial body to adjudicate conflicts between civil servants and their employing agencies, holding agencies to the CSRA's principles.  (*See* Compl. ¶¶ 78, 81.)  Congress authorized MSPB to hear or adjudicate:

> all matters within the jurisdiction of the Board under this title [5], chapter 43 of title 38, or any other law, rule or regulation, and, subject to otherwise applicable provisions of law, take final action on any such matter, [and] order any Federal agency or employee to comply with any order or decisions issued by the Board.

5 U.S.C § 1204(a) (outlining MSPB powers and functions); *see also* 5 U.S.C. § 7701 (outlining MSPB appellate procedures); *see Am. Fed'n of Gov't Emps.*, 944 F.2d at 925 ("[MSPB] was directed to adjudicate employees' administrative appeals from adverse personnel actions and to insure [sic] adherence to stated merit systems principles.") (citations omitted).

Congress imposed a structure that protected the Board's independence when adjudicating disputes: a three member MSPB, with no more than two members from the same political party, serving seven-year terms (longer than the term guaranteed to the appointing President), and with the President (or any other executive branch official) prohibited from removing members without

---

[2] The FLRA primarily addresses federal agency-labor union relations not at issue here.

cause.  5 U.S.C. §§ 1201, 1202(a), (d).  (*See* Compl. ¶¶ 78-79.)  Congress authorized the Board to appoint Administrative Judges, insulated those appointment decisions from the "approval or supervision of the Office of Personnel Management or the Executive Office of the President," and provided they could not be removed without cause.  *Id*. §§ 1204(j), 3105, 7513(a).[3]

Congress designed this structure to create "a vigorous protector of the merit system," the crux of which was "establishment of a strong and independent [MSPB] and Special Counsel."  S. Rep. 95-969, at 6–7.  Congress ensured MSPB was "independent of any control or direction by the president," avoiding regression to the political "spoils" system of the 19th century.  *Id.* at 2, 24.

Congress also specified MSPB's jurisdiction.  For employees like Ms. Comey, the CSRA grants MSPB jurisdiction over only two types of removals:  removals for "cause" under either Chapter 43 (5 U.S.C. § 4303) or Chapter 75 (5 U.S.C. § 7513).  *Compare* 5 U.S.C. § 4303(e) (permitting specified employees terminated under this section to appeal to MSPB) *and* 5 U.S.C. § 7512(A)-(F) (identifying certain adverse actions appealable to MSPB) *with* 5 U.S.C. §§ 3502 and 7532 (*not* identifying right to appeal to MSPB); *see also Department of Navy v. Egan*, 484 U.S. 518, 526 (1988) (noting that only a removal for "cause" under Section 4303 or 7513 provides "a right of appeal to the Board and a hearing of the type prescribed in detail in § 7701").  MSPB has no jurisdiction over employees terminated pursuant to other CSRA sections; certain of those employees may submit their disputes to specialized bodies within their employing agencies.  *See* 5 U.S.C. §§ 3502, 7532.

---

[3] MSPB adjudicators include Administrative Judges, appointed pursuant to 5 U.S.C. § 1204(j) and protected from removal pursuant to 5 U.S.C. § 7513, *see Davis-Clewis v. Department of Veterans Affairs,* 2014 WL 1209225 (Mar. 20, 2024) at *3, as well as Administrative Law Judges, appointed pursuant to 5 U.S.C. § 3105 and protected from removal pursuant to 5 U.S.C. §§ 7701(b)(1), 7521(a).

II.    **After Ten Years of Exceptional Service, Ms. Comey Was Fired Without Cause Pursuant to Defendants' Novel Theory that Article II Authorizes Them to Ignore the CSRA**

For a decade, Ms. Comey served as an exemplary, dedicated, and highly decorated Assistant United States Attorney for the Southern District of New York.  (Compl. ¶ 1.)  She protected the American public by securing hundreds of criminal convictions in homicide, racketeering, and public corruption cases.  (*Id.* ¶ 2.)  Her performance consistently earned her accolades, promotions, and "outstanding" ratings in annual reviews.  (*Id.* ¶ 25.)  Her supervisors and peers described her as a "brilliant lawyer and gifted supervisor," "the lawyer the office turns to when legal excellence is a must," "an outstanding AUSA in every respect" with "judgment, work product, and courtroom advocacy [that are] among the finest in the country," and a "tireless[]" worker who "represents the Department of Justice and the court of law in a professional manner."  (*Id.*)

On July 16, 2025, Ms. Comey received an e-mail from Francey Hakes, Director of the Executive Office for United States Attorneys, stating that her "employment with the Department of Justice [wa]s [] terminated" "[p]ursuant to Article II of the United States Constitution."  (*Id.*)  Her SF-50 form, issued by OPM, stated the same—the sole "legal authority" identified for her removal was "Article II Constitution."  (*Id.* ¶ 47, Ex. B.)  Defendants provided no advance notice and made no claim that her termination was for cause.  (*Id.* ¶ 48.)  When Ms. Comey asked the basis for her termination, Acting U.S. Attorney Jay Clayton responded, in sum and substance: "All I can say is it came from Washington. I can't tell you anything else."  (*Id.* ¶ 50.)  The White House claimed that it "was a decision that was made by the Department of Justice."  (*Id.* ¶ 51.)

Defendants had no legitimate reason to terminate Ms. Comey.  She was fired because she is James Comey's daughter, or because of her perceived political affiliation and beliefs, or both.  (*Id.* ¶¶ 56, 69.)

9

Ms. Comey filed suit alleging that her politically motivated termination—ostensibly under Article II of the Constitution—violates the Separation of Powers, the Administrative Procedure Act, and the First and Fifth Amendments to the United States Constitution, as well as the CSRA.  (*Id.* ¶¶ 87-118.)

Out of an abundance of caution, Ms. Comey also filed an appeal with MSPB.  (Compl. ¶ 76 n.42).  (*See* Dkt. No. 33-1.)  Ms. Comey did so to comply with the CSRA's thirty-day statute of limitations, *see* 5 C.F.R § 1201.22(b)(1), in order to preserve an avenue for relief in the event this Court determines it lacks jurisdiction.  Before MSPB—like here—Ms. Comey asserts that she is an employee covered by the CSRA and entitled to its protections.  But because Defendants fired her pursuant to Article II of the Constitution, MSPB's jurisdiction was not triggered.  Accordingly, she has repeatedly stated that her MSPB filings are without prejudice to her claims here, reasserting at every turn that this dispute belongs in federal district court.  (*See, e.g.*, Dkt. 33-6 at p. 5.)[4]  Defendants omit this fact from their description of Ms. Comey's MSPB filings.  (*See* Mot. at 7-8.)

## III.  Defendants Initially Agreed that MSPB Lacks Jurisdiction to Address Article II Removals

The CSRA's procedures and guardrails guided presidential administrations of both parties for almost fifty years.  But, in 2025, the executive branch began removing civil servants at will, citing Article II authority.  *See, e.g.*, *Trump v. Slaughter*, No. 25-332 (U.S) (removal of principal officer); *Jackler v. Dep't of Justice*, DA-0752-25-0330-I-1 (M.S.P.B. 2025) (removal of inferior officer); *Gordon v. Exec. Off. of the President,* No. 1:25-cv-02409 (D.D.C.) (removal of employee).

---

[4] Citations to pages numbers in MSPB filings, including the MSPB filings attached as Exhibits 1, 2, 5, 6, and 7 to the Blain Declaration, are to the "MSPB Page" numbers.

Initially, the government acknowledged that one consequence of its extraordinary new claim that Article II authority supersedes the CSRA, was that MSPB lacked jurisdiction.[5] In *Comans*, one of the first Article II removal appeals filed with MSPB, the government argued that "[t]he Board Has No Jurisdiction Over a Challenge to an Article II Removal":

> Because Appellant was removed at the direction of the President pursuant to Article II, rather than Title 5 of the United States Code**,** *the Board has no jurisdiction over this case.* "The Board's appellate jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation." 5 C.F.R. § 1201.3. There is no law, rule, or regulation that confers jurisdiction on the Board to review removal actions taken pursuant to Article II.

(Declaration of Ellen Blain ("Blain Decl.") Ex. 1, *Comans v. Dept. of Homeland Sec.*, Docket # DC-0752-25-1783-I-1 (M.S.P.B.) ("*Comans*") Agency Motion to Dismiss ("*Comans* 4/25 MTD") at 9 (emphasis in original).)  A few weeks after Ms. Comans followed the government's lead and sued in district court, the government withdrew its jurisdictional argument in MSPB but maintained its merits position, that Article II removals are distinct from CSRA removals.  The government restated: "Although Congress has granted *agencies* authority to remove employees pursuant to Chapter 75, that statutory authority is separate and distinct from the President's

---

[5] While the government has not yet articulated its merits defense in this case, it has done so in other filings.  This Court can take judicial notice of those filings when resolving a Rule 12(b)(1) motion to dismiss, in order to evaluate what question the adjudicator must answer, and thus whether any statute displaces this Court's jurisdiction.   *See* Mot. at 5 n.3, 6 n.4 (agreeing that court may refer to evidence outside the pleadings for purposes of Rule 12(b)(1) motion); *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (courts may take judicial notice on Rule 12(b)(1) motions).  Other courts have taken note of recent executive branch actions. *See, e.g.*, *NAIJ*, 139 F.4th at 313 ("Serious questions have recently arisen regarding the functioning of both the MSPB and the Special Counsel. We cannot allow our black robes to insulate us from taking notice of items in the public record, including, relevant here, circumstances that may have undermined the functioning of the CSRA's adjudicatory scheme."); *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 31 (D.D.C. 2025) (court cannot "ignore the facts on the record and on the ground," including that dismantled agency's "80-year-old flagship news service, VOA, has gone completely dark" that the agency "stopped the disbursement of funds").

inherent removal authority under Article II." (*Id.* Ex. 2 ("*Comans* 9/26 Br.") at 7; *see also*

*Comans* 4/25 MTD at 7.)  According to the government:

> The case at hand involves the President's exercise of his inherent Article II authority, rather than the exercise of statutory authority granted in Title 5. The notice of termination states this clearly. *See* Attachment 3 ("This action is being taken pursuant to Article II of the United States Constitution, at the direction of the President."); *see also* Attachment 4 (removal SF-50). The *Agency disclaims any reliance on Title 5 as a basis for Appellant's removal.* Instead, the Agency removed appellant from service at the direction of the President.

*Comans* 9/26 Br. at 7-8 (emphasis added); *Comans* 4/25 MTD at 8 (same).

Setting aside the merits of this remarkable proposition—that the President and

Defendants have unrestrainable, unreviewable power to remove any executive branch employee

without notice, cause, or procedure, notwithstanding a 50-year-old statute stating the opposite—

the government's initial position at least had logical consistency:  if the CSRA did not constrain

the executive branch, then its procedural channels did not apply.  And as the government argued,

that was consistent with long-standing MSPB precedent that the Board has no jurisdiction to hear

structural constitutional challenges or claims that the CSRA is unconstitutional.  *Comans* 4/25

MTD at 9; *see also Davis-Clewis v. Dep't of Veterans Aff.*, 2014 WL 1209225, at *3

(disclaiming authority to adjudicate Article II challenges to the CSRA: MSPB "lacks the

authority to adjudicate the constitutionality of statutes" and could not hear employee's Article II

challenge to statutory removal protections governing MSPB administrative judges because

employee was "asking the Board to invalidate one or more provisions of the statute that created

it"); *Special Counsel v. Gallagher*, 44 M.S.P.R. 57, 73 (1990) ("[T]he Board lacks authority to

adjudicate the constitutionality of a statute."); *Malone v. Dep't of Justice*, 13 M.S.P.B. 81, 83

(1983) ("[A]dministrative agencies are without authority to determine the constitutionality of

statutes.").

**IV.    Defendants Eviscerate the Independence of MSPB and Reverse Course—Now They Argue MSPB *Must* Address Article II Removal Authority**

On August 22, 2025, in twin cases brought by inferior officers fired without cause under the Article II theory, the MSPB Chief Administrative Judge agreed with the government's initial position in *Comans*:  the government's "contentions are, in essence, a challenge to the constitutionality of the removal protections afforded by 5 U.S.C. §§ 7511-7513," and "the Board lacks authority to resolve a party's constitutional challenge of the removal protections" afforded by chapter 75 of Title 5.  (Blain Decl., Exs. 3, 4, Initial Decisions in *Jackler v. Dep't of Justice,* MSPB Docket No. DA-0752-25-0330-I-1 (*"Jackler"*) and *Brandon Jaroch v. Dep't of Justice*, MSPB Docket No. DA-0752-25-0328-I-1 ("*Jaroch*") (together, "*Jackler and Jaroch Decisions*") at 6.)  The CAJ explained, "By arguing that Article II of the Constitution precludes the application of the removal protections afforded under the [CSRA] to Immigration Judges, the agency is asking the Board to invalidate one or more of the provisions of the statute," which MSPB is "without authority to determine[.]"  *Id.*[6]   The CAJ also concluded that the immigration judges were "entitled to" but did not receive "due process" under the CSRA, and ordered DOJ to restore the judges to their positions.  *Id.* at 4, 7-8.

Faced with this decision, the government engineered a different outcome.  On September 26, 2025—eleven days after Ms. Comey filed suit—DOJ's Office of Legal Counsel issued an opinion titled "The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding," 49 Op. O.L.C. __ (Sept. 26, 2025) ("OLC

---

[6] The CAJ noted that while MSPB "has authority to adjudicate a constitutional challenge to an agency's *application* of a statute, . . . the agency does not merely challenge an application of a statute but asks the Board to declare provisions of the [CSRA] to be an unconstitutional curtailment of the Attorney General's authority under Article II of the Constitution."  *Id.* at 6 n.3 (emphasis in original).

Op.").[7]  OLC opined for the first time that "MSPB administrative judges are empowered and obligated to consider constitutional issues raised by the Agencies during these [removal] proceedings," and *must* adjudicate Article II firings.  *Id.* at 1.  Hence, the government now claims MSPB *must* evaluate the constitutionality of the CSRA in connection with an employee's Article II firing.

On the same day, DOJ filed petitions for review in *Jaroch and Jackler*, stating that the CAJ was "required to consider the Agency's constitutional argument."  (Blain Decl. Ex. 5 ("*Jackler* DOJ PFR") at 5).  The next day, DOJ filed supplemental motions in the *Jackler* and *Jaroch* MSPB proceedings to assert OLC's new position.  (*See* Blain Decl. Ex. 6 ("*Jackler* DOJ PFR Supp.") at 7 (asserting that, in light of the OLC Opinion, "MSPB administrative judges must adjudicate the constitutional issues raised by the Agencies")).  Despite reversing its position in *Comans* that MSPB lacked jurisdiction, the government reiterated its merits position:  the CSRA cannot constrain the executive branch.  (*See Jackler* DOJ PFR Supp. at 4 (asking for review of previously filed argument).)

OLC ostensibly declined to opine on "the merits of any question currently pending before the administrative judges about whether Congress has limited (or even could limit) the ability of officers of the United States to terminate employees when necessary to fulfill the President's obligation to 'take Care that the Laws be faithfully executed,'" OLC Op. at 1.  But that fig leaf means little, given executive branch actions that eviscerated the independence of MSPB.

*First*, on February 18, 2025, the President issued Executive Order 14215 entitled, "Ensuring Accountability for All Agencies," pursuant to which:

---

[7] *Available at*:  https://www.justice.gov/olc/media/1415466/dl.

> The President and the Attorney General, subject to the President's supervision and control, shall provide authoritative interpretations of law for the executive branch. The President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties. No employee of the executive branch acting in their official capacity may advance an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law, including but not limited to the issuance of regulations, guidance, and *positions advanced in litigation*, unless authorized to do so by the President or in writing by the Attorney General.

Exec. Order No. 14215, 90 Fed. Reg. 10447, § 7 (emphasis added).[8] The Executive Order expressly applies to what it labels "so-called" independent agencies such as MSPB. *Id.* §§ 1, 2(b), 5. Thus, according to the President, every executive branch employee—such as an MSPB Administrative Judge—must rule in favor of the government on every legal question on which the government has advanced a position in litigation.[9] And in the CSRA context, the government advances exactly the position one would expect: "merit principles and for-cause removal protections may apply only in subordination to, and in support of, the President's Article II powers." (Blain Decl. Ex. 7 ("*Jaroch* OPM Br.") at 6; *see also Jackler* DOJ PFR at 12 (the "CSRA cannot constitutionally be applied to restrict [Article II] authority").)

*Second*, the President has taken control over MSPB. In February 2025, the President removed a Democratic member of MSPB without cause (and the D.C. Circuit upheld that extraordinary act). *See Harris v. Bessent*, 160 F. 4th 1235, 1237 (D.C. Cir. 2025) (CSRA's for-cause removal protection for Board members is unconstitutional), *en banc petition denied*, 2026

---

[8] *Available at*: https://www.whitehouse.gov/presidential-actions/2025/02/ensuring-accountability-for-all-agencies/.

[9] The Executive Order's directive that "so-called independent agencies" must apply the law as the executive directs, is also novel. *See Myers v. United States*, 272 U.S. 52, 135 (1926) (noting the President cannot "properly influence or control" "members of executive tribunals" with a "quasijudicial character" whose "decisions after hearing affect interests of individuals").

WL 88114 (D.C. Cir. Jan. 9, 2026).  The President also claims unfettered power to remove the Administrative Law Judges who conduct hearings and issue preliminary decisions for independent agencies, including MSPB, despite Congress's express prohibition of such removals.  *See* Letter from Sarah M. Harris, Acting Solicitor General, to Hon. Charles Grassley (Feb. 20, 2025) ("the Department of Justice has concluded that the multiple layers of removal restrictions for administrative law judges (ALJs) in 5 U.S.C. 1202(d) and 7521(a) violate the Constitution, that the Department will no longer defend them in court, and that the Department has taken that position in ongoing litigation") ("SG Statement")[10]; Statement of Justice Department Chief of Staff Chad Mizelle (Feb. 20, 2025) (same).[11]  And after Ms. Comey filed her complaint, the President restored a quorum to MSPB by appointing a Board member (*see* Mot. at 6), who now—like MSPB's Administrative Judges—serves at the President's will and must decide cases consistent with the President's legal interpretations.

In sum, the government's view of any CSRA dispute (and its channeling mandate) is as follows: *first*, the President and his subordinate officers can remove any federal employee at will under Article II.  *See Jackler* DOJ PFR at 12.  *Second*, the CSRA provides employees no substantive or procedural protections from Article II removal.  *See id*.  *Third*, the CSRA nevertheless forces employees to contest removal before the MSPB.  OLC Op. at 1.  *Fourth*, MSPB must adopt the government's legal position that the CSRA's for-cause removal

---

[10] *Available at*: https://iptp-production.s3.amazonaws.com/media/documents/2025.02.20_DOJ_letter_re_ALJs.pdf.  Given that MSPB's Administrative Judges' removal protections are the same as Ms. Comey's under 5 U.S.C. § 7513, the government's Article II removal theory logically applies to those judges as well.

[11] *Available at*: https://www.justice.gov/opa/pr/statement-justice-department-chief-staff-chad-mizelle.

protections are unconstitutional when the President exercises Article II power.  Exec. Order

14215.  And *fifth*, the President can remove any Administrative Judge or MSPB member who

fails to so rule.[12]  SG Statement.  Thus, while the President has restored a quorum, MSPB

"currently cannot and does not function as intended"—as Ms. Comey alleges—because the

Board is no longer independent of the President.  (Compl. ¶ 81.)[13]

## V.    Ms. Comey's MSPB Appeal Is Predetermined and Futile

Ms. Comey's allegation that her MSPB appeal will be futile (Compl. ¶ 76 n.42), has

already proven true.  The result is predetermined.

Before the government even responded to Ms. Comey's MSPB appeal, on November 26,

2025, the Chief Administrative Judge *sua sponte* issued an Order to Show Cause articulating the

government's position: "[t]he agency contends [Ms. Comey] was not entitled to notice or an

opportunity to respond with regard to [her] removal, because the agency head is authorized by

Article II of the Constitution to appoint and remove such individuals without restriction."  (Dkt.

33-4 ("OTSC") at 1.)  The CAJ explained that because of the government's petitions for review

in *Jackler* and *Jaroch*, and the September OLC Opinion ostensibly compelling MSPB to decide

whether Article II can override the CSRA, "it appear[ed] that good cause exists to dismiss this

---

[12] Taken together, the President under this scheme could eliminate MSPB's quorum at any time, for any reason, for an indefinite period.

[13] Ms. Comey pled that she "need not exhaust her administrative remedies before the very agency that the government []argues is without administrative power or authority, and [where the government] has taken steps to strip of its power and authority," thus "thwart[ing]" the "framework of the CSRA."  (Compl. ¶ 85-86.)  Ms. Comey noted that (1) the MSPB then lacked a quorum; (2) administrative judges were "overwhelmed"; (3) the government argued that the CSRA is an unconstitutional restraint on Article II authority, and (4) MSPB declined to rule on Article II-based challenges.  (*Id.*)  Regardless of events that transpired since Ms. Comey filed her complaint, Ms. Comey relies on her fundamental assertion that the government has "thwarted" the "framework of the CSRA," specifically by eviscerating MSPB's independence.  (*Id.* ¶ 86.)  *See infra* Point II.A.3.

appeal without prejudice [subject to automatic refiling by the Board in 6 months]" because the dispositive issues in this appeal are pending before the Board in *Jackler* and *Jaroch*.  (*Id.* at 2.)

To preserve some avenue of relief should this Court determine it lacks subject matter jurisdiction—and again stating that her arguments were without prejudice to those here—Ms. Comey opposed the dismissal of her appeal.  She argued that *Jackler* and *Jaroch* "involve issues specific to [inferior officers] terminated by the Attorney General" and therefore would not be "dispositive of [her] appeal, which involves [a] line-level Assistant United States Attorney[] terminated through a black-box process by an unknown decision maker."  (Dkt 33-6 at 6.) Defendants agreed that the appeal should be stayed.  (Dkt. 33-5 at 1.)

As a result, Ms. Comey's MSPB appeal is subject to dismissal followed by reinstatement in six months' time—awaiting decision from an MSPB now compelled to agree with the executive.

## VI.    Defendants Move to Dismiss

Defendants' unprecedented actions have thwarted the very purpose and structure of the CSRA and MSPB, which they claim have no power to constrain them.  Nonetheless, and despite their arguments to the contrary just months earlier, Defendants assert Ms. Comey's case must proceed before MSPB because Congress's "intent" to channel her claim is supposedly "clear and dispositive."  Mot. at 1.  Defendants' argument fails as a matter of law.

## RULE 12(b)(1) STANDARD

A complaint may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  *See* Fed. R. Civ. P. 12(b)(1).  "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."  *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).  The court "may refer to evidence

outside the pleadings," and plaintiff "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Makarova*, 201 F.3d at 113.

## ARGUMENT

Ms. Comey has properly pled that this Court has subject matter jurisdiction under 28 U.S.C. § 1331. "District courts may ordinarily hear [] challenges [to federal agency action] by way of 28 U.S.C. § 1331's grant of jurisdiction for claims 'arising under' federal law." *Axon*, 598 U.S. at 185. "[F]ederal courts are vested with a 'virtually unflagging obligation' to exercise the jurisdiction given them" and "'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992), *superseded by statute on other grounds*.

## I.    This Court Has Subject Matter Jurisdiction Because the Implicit Jurisdiction Stripping Analysis Under *Thunder Basin* Does Not Apply to Article II Removals

This Court has Section 1331 subject matter jurisdiction because, *first*, Defendants terminated Ms. Comey pursuant to Article II, not the CSRA, and *second*, the CSRA limits MSPB's jurisdiction to removals for "cause"—which this was not. Therefore, no statute displaces district court jurisdiction to review Ms. Comey's removal, and the Court need not conduct a *Thunder Basin* analysis.

### A.    No Statute Displaces District Court Jurisdiction to Review Article II Removals

This Court has jurisdiction because the government terminated Ms. Comey pursuant to Article II, not the CSRA. There is no statute that divests the district court of jurisdiction in this circumstance; Defendants' Motion does not quote any such statutory jurisdictional displacement because none exists. (Mot. at 10.) *See Union Pac. Railroad Co. v. U.S. Railroad Retirement Bd.*, No. 24-2547, 2025 WL 3639277, at *3 (8th Cir. Dec. 16, 2025) ("While *Axon* confirmed that the *Thunder Basin* factors are an important aid in determining congressional intent, the

threshold question is whether the agency order at issue falls within the relevant statutory review scheme"; concluding that statutory review scheme did not displace district court jurisdiction over a particular action) (citing *Axon*, 598 U.S. at 185-86); *Cochran v. U.S. Securities and Exchange Commission*, 20 F.4th 194, 199-200 (5th Cir. 2021) (statute did not "explicitly or implicitly strip the district court of jurisdiction over [plaintiff's] claims" because statutory text "says nothing about people, like [plaintiff], . . . .who have claims that have nothing to do with" the statute, and plaintiff's "removal power claim challenges the *constitution* of the tribunal") (emphasis in original), *aff'd and remanded sub nom. Axon*, 598 U.S. at 196.[14]

Here, the Court need not search for implicit Congressional intent within the CSRA, because Defendants did not fire Ms. Comey pursuant to the CSRA. (Compl. ¶¶ 3, 47, 53, Dkt. 1-2.) While Defendants have not yet formally stated their merits position in this case—that they can lawfully fire Ms. Comey without cause under Article II—they effectively did so in Ms. Comey's SF-50, identifying "Article II" as the sole authority for her termination. Indeed, in connection with Ms. Comey's MSPB appeal, the government did not contest the following characterization in the Order to Show Cause: "[t]he agency contends [Ms. Comey] was not entitled to notice or an opportunity to respond with regard to [her] removal, because the agency head is authorized by Article II of the Constitution to appoint and remove such individuals without restriction." OTSC at 1.

---

[14] In the decades since *Thunder Basin*, several Supreme Court justices have expressed skepticism about the wisdom of searching for "implicit" congressional intent. *See Axon*, 598 U.S. at 205-09 (Gorsuch, J., concurring) (criticizing implicit preclusion jurisprudence in contrast to statutes that expressly preclude jurisdiction); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 25-26 (2012) (Alito, J., dissenting) (contrasting *Thunder Basin's* implicit preclusion scheme with "an express preclusion clause . . . [where] we determine the scope of preclusion simply by interpreting the words Congress has chosen").

Defendants thus assert that the executive branch's removal powers lie outside of, and separate from, the CSRA's limits, doctrines, and constraints; that Article II provides, effectively, a parallel legal structure whereby Defendants can terminate federal employees at will, whereas the CSRA constrains Defendants only if they *choose* to adhere to it. *See*, *e.g.*, *Comans* 9/26 Br. at 7 ("Although Congress has granted *agencies* authority to remove employees pursuant to Chapter 75 [Title 5 of the U.S. Code], that statutory authority is separate and distinct from the President's inherent removal authority under Article II.") (emphasis in original).

The Court should take Defendants at their word. They insist Ms. Comey's Article II removal was "separate and distinct from" the CSRA. If so, the CSRA cannot strip this Court of its jurisdiction. There is thus no reason to evaluate whether, in passing the CSRA, Congress intended to channel this case to MSPB—implicitly or otherwise.

This Court retains its Section 1331 subject matter jurisdiction because the government's actions render CSRA channeling totally extraneous to the analysis. Any other outcome creates a heads-I-win, tails-you-lose scenario whereby Ms. Comey is subject to the procedural constraints of the CSRA but entitled to none of its protections, while the government is constrained by nothing in the CSRA but can force Ms. Comey into the CSRA's procedures. Put another way— if Defendants want this case before MSPB, they must concede that the CSRA protected Ms. Comey from termination without cause. But that is precisely what they refuse to do.

## B.    The CSRA Limits MSPB's Jurisdiction to Removal for "Cause"

This Court retains jurisdiction for another reason: the CSRA limits MSPB's jurisdiction of removals of employees such as Ms. Comey to those "for cause," pursuant to two specified sections of Title 5 of the U.S. Code—which Ms. Comey's was not.

Congress granted MSPB jurisdiction to hear or adjudicate only "matters within the jurisdiction of the Board under this title[,] or any other law, rule, or regulation." 5 U.S.C. §

1204(a)(1); *see also* 5 C.F.R. § 1201.3 ("The Board's appellate jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation.").

The CSRA authorizes agencies to remove federal employees for one of four reasons: (1) pursuant to a "reduction in force," 5 U.S.C. § 3502; 5 C.F.R. § 351.201(a)(2); (2) "in the interests of national security," 5 U.S.C. § 7532(b); (3) "unacceptable performance", 5 U.S.C. § 4303(a); or (4) for "such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a). Chapter 75 provides that MSPB can review "adverse actions," including certain "removals." 5 U.S.C. § 7512; 5 C.F.R. § 1201.3(a) (enumerating covered actions subject to MSPB review). The Board will sustain an agency's removal decision only if: "in the case of an action based on unacceptable performance, [it] is supported by substantial evidence;" "or in any other case, [it] is supported by a preponderance of the evidence." 5 U.S.C. § 7701(c)(1)(A).[15]

Therefore, MSPB does not have jurisdiction over *every* removal of employees like Ms. Comey. Only a removal for "cause" under Section 4303 (for unacceptable performance) or 7513 (for efficiency of the service) provides "a right of appeal to the Board and a hearing of the type prescribed in detail in § 7701," in which MSPB must determine whether the agency's action was supported by evidence. *Egan*, 484 U.S. at 526 (a "removal for 'cause' embraces a right of appeal to the Board," whereas "[s]uspension and removal under § 7532 [] entail no such right of appeal" and instead proceed before specially-created body within employing agency); *see* 5 U.S.C. § 7512(A)-(F) (excluding certain adverse actions from MSPB review, including removals under

---

[15] While OPM has issued regulations purporting to expand MSPB's removal jurisdiction in the years since the CSRA was enacted, it has not included purported Article II firings. *See, e.g.*, 5 C.F.R. § 731.501(a) (permitting appeal to MSPB where agency "takes a suitability action against a person"); 5 C.F.R. § 351.901 ("An employee who has been furloughed for more than 30 days, separated, or demoted by a reduction in force action may appeal" to MSPB); 28 C.F.R. § 27.7 ("An FBI whistleblower may appeal to, or seek corrective relief from, the U.S. Merit Systems Protection Board in accordance with the provisions of 5 U.S.C. 2303(d).").

Section 7532 and reduction-in-force removals under section 3502); *King v. Jerome*, 42 F.3d 1371, 1374 (Fed Cir. 1994) ("We begin our analysis of the board's power to review an agency's undue disruption determination from the foundation that the board has no plenary jurisdiction. We construe its jurisdiction narrowly, it includes only those actions specifically granted by some law, rule, or regulation.") (citations omitted).

The Supreme Court has repeatedly held that MSPB's jurisdiction is limited. *See Fausto*, 484 U.S. at 445-47 (Chapters 23, 43, and 75 are "three main sections" of the CSRA governing personnel actions taken against civil service members, and only Chapters 43 and 75 permit appeals to the MSPB); *Elgin* 567 U.S. at 5 ("Under the [CSRA], certain federal employees may obtain administrative and judicial review of specified adverse employment actions"; finding MSPB jurisdiction where neither party contested that removal action was covered employment action under CSRA). As the Supreme Court made clear, "the CSRA makes MSPB jurisdiction over an appeal dependent only on the nature of the employee *and* the employment action at issue." *Elgin*, 567 U.S. at 18 (emphasis added) (citing 5 C.F.R. § 1201.3(a)); *see also Todd v. Merit Systems Protection Board*, 55 F.3d 1574, 1576 (Fed. Cir. 1995) (employee "has the burden of establishing that she *and* the action she seeks to appeal [are] within the [MSPB]'s jurisdiction") (emphasis added).

Here, while the parties agree that Ms. Comey is an employee covered by the CSRA, Mot. at 3 n.1, MSPB does not have jurisdiction over the "employment action at issue," *Elgin*, 567 U.S. at 18. That is because Defendants did *not* fire Ms. Comey for "cause" under Sections 4303 or 7513—Defendants expressly stated that she was terminated *solely* pursuant to "Article II of the Constitution." Dkt. 1-2. The "employment action at issue" is, therefore, a removal action taken pursuant to Article II, and there is no "law, rule, or regulation" that authorizes MSPB to review

23

it.  5 U.S.C. § 1204(a)(1).  Thus, MSPB lacks jurisdiction over Ms. Comey's termination.  *See*

*Elgin*, 567 U.S. at 18 (MSPB's jurisdiction dependent on type of adverse action); *Axon*, 598 U.S.

at 185 ("a statutory review scheme of that kind does not necessarily extend to every claim

concerning agency action"); *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 71 (1st Cir. 2025)

(there is no reason to "attribute to Congress the intention in enacting the CSRA that . . . Congress

intended to bar every challenge to an unlawful effort by the Executive" regarding employee

termination); *Union Pac. R.R.*, 2025 WL 3639277, at *3 ("the threshold question is whether the

agency order at issue falls within the relevant statutory review scheme"; concluding that

statutory review scheme did not displace district court jurisdiction) (citing *Axon*, 598 U.S. at

185-86).[16]

The government previously endorsed this exact position, although the Motion omits that

fact.  *See* Factual Background III.  In April of 2025, the government asserted:  "There is no law,

rule, or regulation that confers jurisdiction on the Board to review removal actions taken

pursuant to Article II."  *Comans* 4/25 MTD at 9.  Nothing in the government's subsequent about-

face undoes the logic of its initial position.

Defendants attempt to sweep this problem under the rug, asserting without citation

"[t]here is no dispute that [Ms. Comey] is a covered employee under the CSRA, and that her

removal represents a covered employment action."  (Mot. at 17, citing Compl. ¶¶ 74-75).  That is

wrong:  Defendants did not engage in a "covered employment action" and they cannot rewrite

the CSRA's mandate that MSPB has jurisdiction over only certain removals.  Nor can they

---

[16] Underscoring the mismatch between the CSRA and Article II removals, OPM's guidance for
personnel actions does not include "Article II" in the list of permissible legal authorities to cite
when issuing SF-50s for involuntary separations.  *See* https://www.opm.gov/policy-data-
oversight/data-analysis-documentation/personnel-documentation/processing-personnel-
actions/gppa31.pdf .

ignore *Elgin*'s admonition that MSPB must have jurisdiction over both the employee *and* the action at issue.  To be clear:  Defendants' argument that Ms. Comey seeks to "reap the benefits of the CSRA while seeking to escape [its] jurisdictional limitations" (Mot. at 1), misreads the Complaint.  Ms. Comey is a covered employee under the CSRA, entitled to its protections from wrongful firings like this one.  But because Defendants fired her pursuant to Article II of the Constitution, MSPB's jurisdiction stripping provision was not triggered.  There is no tension between Ms. Comey claiming substantive CSRA protection while asserting that MSPB's jurisdictional provisions are inapplicable.  Ms. Comey's position is consistent with the text of the statute; the government's is not.

Defendants' own stated basis for firing Ms. Comey—Article II and solely Article II— leaves MSPB without a statutory basis for jurisdiction.  *See Axon*, 598 U.S. at 209 (Gorsuch, J., concurring).  The motion should be denied on that basis alone.

## II.    The *Thunder Basin* Analysis Establishes that Congress Did Not Implicitly Strip this Court of Jurisdiction

### A.    *Thunder Basin* Step One: Congress Did Not Intend to Displace District Court Jurisdiction for Article II Removals

While unnecessary, a *Thunder Basin* analysis yields the same conclusion—this Court retains Section 1331 subject matter jurisdiction to hear this case.

Where a statute (such as the CSRA) establishes an administrative review scheme but does not expressly displace district court jurisdiction, courts conduct a two-step analysis outlined in *Thunder Basin*.  Under step one, a court must ask if congressional intent to "allocate[] initial review to an administrative body is fairly discernible in the statutory scheme."  *Thunder Basin*, 510 U.S. at 200 (cleaned up).  "The ultimate question is how best to understand what Congress has done."  *Axon*, 598 U.S. at 186.

Here, nothing in the CSRA's "language, structure, [] purpose, [and] legislative history" suggests that Congress intended MSPB to hear Ms. Comey's dispute, for three reasons. *Thunder Basin*, 510 U.S. at 207. *First*, as discussed *supra* Point II.B, the CSRA limits MSPB review to removals for "cause." *Second*, Congress did not intend MSPB to determine constitutional separation of powers questions or to adjudicate its own constitutionality, both of which it would be forced to do here. OLC's recent arguments to the contrary are wrong. *Third*, Congress did not intend to subject civil servants to a Board no longer independent of the President; indeed, Ms. Comey's appeal has already proven futile. *See Thunder Basin*, 510 U.S. at 207. The Court's analysis can stop here. *See Union Pac.*, 2025 WL 3639277, at *3 ("[W]hile Axon confirmed that the *Thunder Basin* [step two] factors are an important aid in determining congressional intent, the threshold question is whether the agency order at issue falls within the relevant statutory review scheme.").

### 1. Congress Intended to Limit MSPB Jurisdiction to Specified Removals

Start with the CSRA's language. As discussed above, Congress limited MSPB's jurisdiction over the removal of employees like Ms. Comey to those for cause under Sections 4303 and 7513, neither of which Defendants cited when firing Ms. Comey. Defendants can point to no "law, rule or regulation" that grants MSPB jurisdiction over Article II terminations. 5 U.S.C § 1204(a); *see also Comans* 4/25 MTD at 9. There is thus no basis to conclude that Congress intended MSPB to rule on the lawfulness of Article II removals.

### 2. Congress Did Not Intend MSPB to Consider Separation of Powers Questions or Adjudicate its Own Constitutionality

To resolve the merits of Ms. Comey's termination, the adjudicator must evaluate whether Article II authority can override protections guaranteed to civil servants under laws passed pursuant to Article I and enshrined in the Bill of Rights. While Defendants are coy about future

merits arguments (*see* Mot. at 18 ("Even if Plaintiff has correctly assumed that the government's defense to her removal appeal may challenge the constitutionality of the CSRA to the extent it infringes on the power of the Executive . . .")), in parallel cases they are not hiding the ball. Those filings state the government's position explicitly:  when the executive branch acts pursuant to Article II authority, it can override any law to the contrary, including the CSRA. *See, e.g.*, *Jackler* DOJ PFR at 20-21 ("the CSRA's protections from at-will removal should not be read to preclude an Article II removal by the head of a Department," because it would "significantly encroach on the Executive's power and thus render the statute unconstitutional under Article II").

Congress did not intend for MSPB to adjudicate these issues.  As an initial matter, nothing in the CSRA indicates that Congress intended MSPB to rule on fundamental separation of powers questions; the Supreme Court has repeatedly concluded that administrative agencies are not suited to that task.  Furthermore, Congress did not intend MSPB to determine the constitutionality of its own authorizing statute, as the Supreme Court has also repeatedly held. OLC's justifications to the contrary—directing MSPB to nevertheless adjudicate Article II firings—are incorrect.

### a.    Congress Did Not Intend MSPB to Adjudicate Separation of Powers Questions

In two of the most recent Supreme Court channeling cases, *Axon* and *Free Enterprise*, the Supreme Court reiterated that administrative review schemes "do not displace district court jurisdiction over [] far-reaching constitutional claims."  *Axon*, 598 U.S. at 185; *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 491 (2010).  The Supreme Court "has often observed that agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical

expertise." *Axon*, 598 U.S. at 185 (citing *Carr v. Saul,* 593 U.S. 83, 92 (2021)).  The Court honors "the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence."  *Carr*, 593 U.S. 92. *Califano v. Sanders*, 420 U.S. 99, 109 (1977) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions . . . .") (citations omitted); *see Carr* 593 U.S. 92 (2021) ("agency adjudications are generally ill suited . . . to entertain constitutional challenges to statutes").

This line of cases forms the adjudicatory counterpart to the now well-established major questions doctrine.  That "doctrine serves as an interpretive tool reflecting 'common sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency.'"  *Biden v. Nebraska*, 600 U.S. 477, 511 (2023) (Barrett, J., concurring) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).  Under the major questions doctrine, as in the implied jurisdiction-stripping context, courts should be "'skeptical of mismatches' between broad 'invocations of power by agencies' and relatively narrow 'statutes that purport to delegate that power.'"  *Id.* at 517-18 (quoting *In re MCP No. 165*, 20 F.4th 264, 272 (6th Cir. 2021) (Sutton, C. J., dissenting from denial of initial hearing en banc)).  "Another telltale sign that an agency may have transgressed its statutory authority is when it regulates outside its wheelhouse."  *Id.* at 518.  Both principles weigh strongly against an interpretation of the CSRA that vests MSPB with authority to determine constitutional questions of vast significance based upon a statute that provides jurisdiction to consider only specific types of for-cause employment actions.

In firing Ms. Comey pursuant to Article II, Defendants assert the remarkable position that they need not comply with a law passed pursuant to Article I or adhere to the Bill of Rights. This Court must decide whether Defendants are correct.  This is a legal separation of powers question, not a factual employment question that would require MSPB to determine whether the executive branch has proven by preponderance or substantial evidence that it fired Ms. Comey for "cause" in compliance with the CSRA.  5 U.S.C. § 7701(c)(1).  MSPB is "ill suited to address [such] structural constitutional challenges."  *Carr*, 593 U.S. at 92.

Defendants can point to nothing in the CSRA's "language, structure, [] purpose, [and] legislative history" to suggest that Congress intended MSPB—an executive branch agency—to determine whether the executive branch's Article II authority can override Congress's Article I authority or the Bill of Rights.  *Thunder Basin*, 510 U.S. at 207.[17]

### b.    Congress Did Not Intend MSPB to Determine the Constitutionality of Its Own Authorizing Statute

Moreover, Congress did not intend MSPB to rule on the constitutionality of its own authorizing statute, which MSPB would be required to do here.

The Supreme Court instructs that "adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies." *Thunder Basin*, 510 U.S. at 215 (citations and quotations omitted).  In *Axon*, plaintiffs successfully argued that they need not appear before administrative law judges who enjoyed

---

[17] As discussed further *infra* Point II.B.1, *Elgin* is not to the contrary; it noted that "MSPB routinely adjudicates some constitutional claims, such as claims that an agency took adverse employment action in violation of an employee's First or Fourth Amendment rights."  567 U.S. at 12.  Here, by contrast, MSPB would not simply evaluate whether as a factual matter Defendants had *violated* Ms. Comey's First or Fifth Amendment rights, but would first determine whether Article II *overrides* those rights.  Those are very different questions.  *See, e.g.*, *Comans* 4/25 MTD at 7, 20-21 (DOJ arguing that civil servants do not have due process rights when executive branch acts pursuant to Article II).

allegedly unconstitutional dual for-cause removal protections.  *See* 598 U.S. at 180.  Plaintiffs'

challenge was "not to any specific substantive decision" but rather to "the structure or very

existence of an agency," asserting "that an agency [was] wielding authority unconstitutionally in

all or a broad swath of [the] work."  *Id*. at 189.  Because the dispute was "fundamental, even

existential," addressing the "very existence" of the agency, the Supreme Court found district

court jurisdiction.  *Id.* at 180, 189.

The Supreme Court reached the same conclusion in *Free Enterprise*, where plaintiffs

similarly argued that members of the Public Company Accounting Oversight Board enjoyed

unconstitutional dual for-cause protections.  *See* 561 U.S. at 483.  Because plaintiffs "object[ed]

to the Board's existence," the district court retained jurisdiction.  *Id.* at 491; *cf. Riggin v. Off. of

Senate Fair Emp't Practices*, 61 F.3d 1563, 1569-70 (Fed. Cir. 1995) ("A finding that the agency

lacks jurisdiction to decide constitutional questions is especially likely when the constitutional

claim asks the agency to act contrary to its statutory charter").

"Allowing courts to review unexhausted constitutional claims concerning an agency's

enabling statute makes good sense," *Nat'l Lab. Rels. Bd. v. N. Mountain Foothills Apartments*,

157 F.4th 1089, 1097 (9th Cir. 2025), because an agency cannot "remed[y] [its own

unconstitutional] defect," *Carr*, 593 U.S. at 94 (plaintiffs need not follow administrative scheme

challenging constitutionality of ALJs' appointments, in part because the ALJs are not "capable of

remedying any defects in their own appointments").

Here, although it is the government and not plaintiff who mounts the constitutional

challenge to the administrative scheme, the result is the same.  One party (the government)

asserts that MSPB acting under the CSRA "wield[s] authority unconstitutionally" over the

executive's Article II power.  *Axon*, 598 U.S. at 189; *see Comans* 4/25 MTD at 10-12

(government asserts CSRA is unconstitutional restraint on executive's Article II power).  To resolve Ms. Comey's case, MSPB must determine whether the CSRA—its own authorizing statute—is an unconstitutional restraint on the executive's Article II power.  This requires MSPB to step outside of the CSRA and examine its own "structure" and the "very existence" of its own authority, questions the Supreme Court has instructed belong in district court and cannot be determined by the agency.  *Axon*, 598 U.S. at 189; *Free Enterprise Fund*, 561 U.S. at 491.

Furthermore, by directing MSPB to rule that the CSRA "should not be read to preclude an Article II removal," *Jackler* DOJ PFR at 20-22, the government "ask[s] the agency to act contrary to its statutory charter."  *Riggin*, 61 F.3d at 1569-70.  *Compare Am. Fed'n of Gov't Emps*, 944 F.2d at 925 ("[MSPB] was directed . . . to insure [sic] adherence to [CSRA's] merit systems principles," including protections against retaliatory or political firings), *with Jackler* DOJ PFR at 12 (DOJ asserting "CSRA cannot constitutionally be applied to restrict [Article II firing] authority").  And if MSPB determined that its own authorizing statute unconstitutionally restrains Article II power, it would not be capable of "remedying [that] defect" because it cannot rewrite its own Congressionally-created scheme.  *Carr*, 593 U.S. at 94.

The MSPB itself has concluded that it lacks jurisdiction to "invalidate one or more provisions" of the CSRA.  *Davis-Clewis*, 2024 WL 1209225, at *3-5 (reviewing challenge to Board's own CSRA removal protections where appellant asked "the Board to invalidate one or more provisions of the statute that created it"; concluding Board "lacks the authority to adjudicate the constitutionality of statutes" and declining to rule on issue) (citing *Special Counsel v. Jackson*, 119 M.S.P.R. 175 (2013); *Carr*, 593 U.S. at 92; *Free Enterprise Fund*, 561 U.S. at 491), *appeal transferred*, No. 2025-1237, 2025 WL 654984 (Fed. Cir. Feb. 28, 2025).  Indeed, MSPB's Chief Administrative Judge has already ruled that MSPB lacks authority to

31

determine whether the "for-cause removal protections for civil service employees can[] limit the President's Article II power[.]" *Jaroch and Jackler* Decisions at 6.  This is consistent with MSPB's oft-stated position that "it is well settled that administrative agencies are without authority to determine the constitutionality of statutes." *Malone*, 13 M.S.P.B.. at 82.

While MSPB does adjudicate some constitutional claims, as the Supreme Court noted in *Elgin*, *see* 567 U.S. at 12 (citing *Smith v. Dep't of Transp.*, 106 M.S.P.R. 59 (2007); *Garrison v. Dep't of Justice*, 67 M.S.P.R. 154 (1995)), MSPB was not required to adjudicate the constitutionality of its own power in any of those cases.  *See Smith*, 106 M.S.P.R. at 79-80 (evaluating First Amendment retaliation and Fifth Amendment due process claims); *Garrison*, 67 M.S.P.R. at 157 (evaluating whether agency had reasonable suspicion under the Fourth Amendment to require a drug test).  To the best of Plaintiff's knowledge, whenever the question of MSPB's own power is presented, MSPB has declined to rule.  *See Davis-Clewis*, 2024 WL 1209225 at *3.

Nothing in *Elgin* changes the conclusion that MSPB lacks jurisdiction over this Article II termination.  *See* Mot. at 13-17.  In *Elgin*, plaintiffs were fired for failing to register for the Military Selective Service Act, which 5 U.S.C. § 3328 made mandatory for federal employment.  567 U.S. at 6-7.  Plaintiffs argued that Section 3328 was an unconstitutional bill of attainder and sex discrimination, and thus sought to bypass MSPB and bring their claims in district court.  *Id.* at 7.  The Supreme Court concluded that "[n]othing in the CSRA's text suggests its exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing that action is unconstitutional."  *Id.* at 13.[18]

---

[18]  To the extent the Supreme Court questioned whether MSPB is correct that it cannot rule on the constitutionality of statutes, *Elgin*, 567 U.S. at 17, that question is immaterial because in order for MSPB to rule on a statute's constitutionality, it must *first* have jurisdiction over the

This dispute bears no resemblance to *Elgin*; it is like *Axon* and *Free Enterprise*. *First*, Ms. Comey does not challenge "a covered action" because the CSRA does not cover Article II removals nor send them to MSPB for adjudication. *See supra* Point II.A.1.[19] *Second*, Ms. Comey does not challenge her removal "on the ground that the statute authorizing that action is unconstitutional": rather, there is *no* statute authorizing her removal. Instead, the government has expressly *disclaimed* reliance on any statute, relying instead solely on Article II. Ms. Comey, on the other hand, argues that the Government's action violated *lawful* statutes as well as the separation of powers and other provisions of the Constitution. (*See* Compl. Causes of Action (claiming that the executive branch's *ultra vires* action violated the CSRA, the APA, the First and Fifth Amendments, and the separation of powers)). *Third*, the constitutional question in *Elgin* did not concern the constitutionality of the MSPB itself, nor did it involve the type of fundamental, "far-reaching" separation of powers question that the Supreme Court has concluded is unsuitable for administrative agencies. *Axon*, 598 U.S. at 189; *see also Free Enterprise*, 561 U.S. at 491. Finally, the government in *Elgin*, unlike here, appears to have cited Title 5, Chapter 75, as the authority for Elgin's termination. *See Elgin*, 576 U.S. at 5. Therefore, while *Elgin* and this matter both concern employees covered by the CSRA and constitutional questions, that is

---

employment action at issue. *Smith*, 106 M.S.P.R. at 233 ("It is well established that the Board has no jurisdiction to review constitutional claims that are not coupled with an independently appealable action"; "for the Board to have jurisdiction over appellant's claimed constitutional violations, he must first show that the Board has been authorized by law, rule, or regulation to review the agency's decision terminating him during his probationary period. [He] has failed to make this showing.") (citing *Manning v. Merit Systems Protection Board*, 742 F.2d 1424, 1428-29 (Fed. Cir. 1984)). Because the MSPB does not have jurisdiction over Ms. Comey's Article II removal, it cannot rule on the constitutional question her termination presents.

[19] As noted above, Ms. Comey is a "covered employee" under the CSRA and entitled to its protections, but her removal was not a "covered employment action" subject to MSPB jurisdiction.

where the resemblance ends. *Elgin* does not address executive actions taken wholly separate from the CSRA that challenge the existence of the MSPB itself.

While Defendants correctly note that "Congress made clear its intent that 'extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review'" (Mot. at 11), the government ignores that the CSRA does not grant MSPB jurisdiction to review of separation of powers questions, particularly those concerning the constitutionality of MSPB's own authority. The cases on which Defendants rely are inapposite, as none involved either (a) a separation of powers question addressing the constitutionality of the CSRA itself; or (b) a Board whose Congressionally-mandated independence had been gutted by the executive. *See id*. (citing *Doe v. FDIC*, 545 F. App'x 6 (2d Cir. 2013) (evaluating plaintiff's claims that agency retaliated against whistleblowing and concluding claims governed by CSRA); *Tiltti v. Weise*, 155 F.3d 596, 599 (2d Cir. 1998) (evaluating plaintiffs' claims that agency violated APA and concluding claims governed by CSRA); *Sawyer v. Musumeci*, No. 97-9305, 1998 WL 743734 (2d Cir. Oct. 21, 1998) (evaluating plaintiff's claims challenging suspension, transfer, and lack of due process in disciplinary proceedings)).

### c.    The September 2025 OLC Opinion Is Flawed

OLC's late-breaking September 26, 2025, opinion that MSPB nevertheless retains jurisdiction to adjudicate the constitutionality of Article II firings is neither binding nor persuasive.

*First*, OLC concluded that MSPB can adjudicate the executive's novel Article II firings because MSPB can "adjudicate a constitutional challenge to an agency's application of a statute." OLC Op. at 4 (citation omitted). That is irrelevant here, because neither party asks MSPB to determine whether "an agency" "appli[ed] a statute" in a constitutional fashion. The

constitutional question here is whether the executive branch acted lawfully when it declared a statute unconstitutional, not when it applied it.[20]  *Second*, OLC concluded that MSPB can overturn an agency's decision if it "was not in accordance with law," which implicitly includes the Constitution.  OLC Op. at 4 (citing 5 U.S.C. § 7791(c)).  But OLC ignores that MSPB is authorized to adjudicate only certain "decision[s] of the agency," and removals without "cause" are not one of them.  *See supra* Point II.A.1.  *Finally*, OLC argues that it is "unlikely that Congress intended to insulate unconstitutional agency action from the MSPB's review," because the CSRA empowers MSPB "to perform statutory interpretation, which often necessarily implicates constitutional analysis."  OLC Op. at 5-6.  Once again, OLC glosses over the crux of this dispute: that MSPB must determine the constitutionality of its own authorizing statute. There is nothing in the CSRA, or in decades of court precedent, to suggest that Congress intended MSPB to do so.

### 3.    Congress Did Not Intend to Submit Civil Servant Claims to a Non-Independent Board

The CSRA's "language, structure, [] purpose, [and] legislative history" also demonstrate that Congress did not intend to submit executive branch employee disputes to an MSPB that is not independent of the President.  *Thunder Basin*, 510 U.S. at 207.  Congress intended just the opposite.  Now that the executive branch has structurally altered MSPB and directed the Board to rule for the executive, MSPB's independence has been eliminated, rendering any proceeding predetermined and futile.

---

[20] The MSPB Chief Administrative Judge likewise concluded that the government's Article II removal argument "does not merely challenge an application of a statute," which the Board has authority to determine, but rather "asks the Board to declare provisions of [the CSRA] to be an unconstitutional curtailment of [Article II] authority," which the Board does not have authority to determine.  *Jaroch* at 6 n.3.

a.      The CSRA's Text, Structure, Purpose, and Legislative History
Show That Congress Intended MSPB to be Independent

The text of the CSRA demonstrates that Congress intended MSPB decisionmakers to be independent of the President.  Board members serve staggered seven-year terms, longer than the term guaranteed to the appointing President; there can be no more than two members from the same party; and members may be removed only for "inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202(d).  Similarly, Administrative Judge appointments are not subject to Presidential approval, and they can be removed only for cause.  *See id.*

The CSRA's structure also reflects Congress's intent to make MSPB an adjudicative body independent of the President.  The CSRA divided the roles within the Civil Service Commission, directing OPM to act as "the arm of the President in matters of personnel administration," S. Rep. 95-969 at 24, whereas MSPB plays a quasi-judicial role, adjudicating appeals from agency personnel actions.  5 U.S.C. § 1204(a); *see generally* 5 U.S.C. Part II.

The CSRA's purpose further demonstrates that Congress sought to insulate MSPB from executive branch control.  The Senate Report describes the new structure as "a vigorous protector of the merit system"—the centerpiece of which was "a strong and independent [MSPB]."  S. Rep. 95-969 at 6–7; *see id.* at 24 ("As with the Board, the special counsel [which investigates prohibited personnel practices] is independent of any control or direction by the president.").  Thus, the CSRA created "an independent merit systems protection board . . . to adjudicate employee appeals and protect the merit system."  *Id.* at 2.  Congress wanted MSPB "insulated from the kind of political pressures that [had] led to violations of merit principles in the past," because "absent such a mandate for independence for the merit board, it is unlikely that [it] would have granted [OPM] the power it has[.]"  *Id*. at 7.  Indeed, the Fourth Circuit recently reviewed the CSRA's text, structure, and legislative history and agreed that "[t]he

CSRA's adjudicatory scheme was predicated on the existence of a[n] . . . independent MSPB." *NAIJ*, 139 F.4th at 306, 313 ("The structure of the CSRA relies fundamentally . . . on a strong and independent MSPB and Special Counsel"; "CSRA devised an adjudication system that was to serve as a 'vigorous protector of the merit system'—the crux of this was the "establishment of a *strong and independent* [MSPB]"—because Congress was "deeply concerned with preventing regression back to the 'spoils' system of the 19th century, in which employees advanced on the basis of 'political or personal favoritism'").

While Defendants argue that MSPB's quorum has been restored and that backlog is insufficient to defeat channeling, Mot. at 14, they ignore that Article III Courts are currently debating whether MSPB is functioning as intended, and a Fourth Circuit panel expressed serious concern on the issue. *NAIJ*, 139 F.4th at 299-300 (remanding to district court "to consider whether the text, structure, and purpose of the Civil Service Reform Act has been so undermined that the jurisdiction stripping scheme no longer controls"). The full Fourth Circuit also considered the issue when denying review of the panel's decision. *NAIJ*, 160 F.4th at 105 (4th Cir. 2025) (noting the apparent "dysfunction or lack of independence of the Merit Systems Protection Board or the Office of Special Counsel") (Thacker, J., concurring). The Supreme Court then denied the government's request to stay the district court's decision, authorizing the district court to rule on MSPB's functionality and independence. *Margolin v. NAIJ*, No. 25A662, 2025 WL 3684278, at *1 (U.S. Dec. 19, 2025).

### b.    MSPB Is No Longer Independent of the President

Recent executive branch actions have eliminated MSPB's independence from the President, transforming MSPB into a creature alien to Congress's design. *See* Point II.A.3. MSPB is now an adjunct to the executive. To require federal employees fired by the executive

branch for their perceived disloyalty to the President to submit to a Board wholly beholden to the President would run directly counter to Congress's intent to maintain a nonpartisan civil service that brings its grievances to an impartial forum.  It would subject federal employees to the spoils system that Congress has sought to eradicate since 1883.

The President has fired without cause a Democratic MSPB Board Member, which the D.C. Circuit has upheld, and the Department of Justice has proclaimed that the President can also fire Administrative Judges without cause—all in spite of the CSRA's explicit provisions to the contrary.  *See* Point II.A.3.[21]  The President has also asserted that independent agencies must follow his interpretation of the law.  Executive Order 14215 (the President and the Attorney General "shall provide authoritative interpretations of law for the executive branch," and their "opinions on questions of law are controlling on all employees"—including on "so-called independent agencies.").  DOJ also recently reversed its position that MSPB does not have jurisdiction to review Article II removals.  *See Comans* 9/26 Br.  That issue is now on appeal to the very Board that the President has ordered must adhere to his interpretation of law.

Thus, the President now asserts that not only can he fire MSPB Board Members and Administrative Judges, but he can also instruct them on how to interpret and apply the law, including in specific pending cases, and fire them at will if they disagree.  This is a thoroughgoing evisceration of the Board's independence and Congress's design.

---

[21] For purposes of the *Thunder Basin* analysis, it would not matter if the Supreme Court were to strike down the CSRA's removal protections for Board members and administrative judges, because it would remain true that Congress *intended* to limit the President's power over MSPB when it enacted the CSRA in 1978 (a time when *Humphrey's Executor v. United States*, 295 U.S. 602 (1935) (permitting for-cause removal protections for members of independent agencies), was unquestionably binding precedent).  *See* 510 U.S. at 207 (directing courts to examine whether Congress "intended to preclude initial judicial review").

c.    **Congress Did Not Intend to Subject Employees to A Futile and Predetermined Proceeding**

The touchstone of adjudicatory independence is that the outcome is not preordained. Congress did not intend to subject executive branch employees to a captive Board that will oversee a futile, biased, or predetermined administrative proceeding.  *See Carr*, 593 U.S. at 93 (Supreme Court "has consistently recognized a futility exception to exhaustion requirements") (citing *McCarthy*, 503 U.S. at 146, 148 (exhausting administrative remedies not required where proceedings would be futile, biased, or predetermined)); *Elgin*, 567 U.S. at 25 (Alito, J., dissenting) ("I doubt that Congress intended to channel petitioners' constitutional claims into an administrative tribunal that is powerless to decide them[.]").

In *McCarthy*, the Supreme Court declined to force plaintiffs to submit to futile administrative proceedings "where the administrative body is shown to be biased or has otherwise predetermined the issue before it."  *McCarthy*, 503 U.S. at 148.  Notably, this prohibited bias or predetermination did not require a showing of animus; rather, the Supreme Court referred to a pre-existing legal interpretation that rendered the administrative process fixed.  *See id.* at 148-49 (*citing e.g.*, *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (prisoner need not exhaust administrative process "in view of the Attorney General's submission that the challenged rules of the prison were 'validly and correctly applied to petitioner'" because "requiring administrative review through a process culminating with the Attorney General would be to demand a futile act")).

More recently, in *Carr*, the Supreme Court explained that "[i]t makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested. Such a vain exercise will rarely 'protec[t] administrative agency authority' or 'promot[e] judicial efficiency.'"  *Carr*, 593 U.S. at 93 (quoting *McCarthy*, 503 U.S. at 145).  Instead, the Supreme

Court directed lower courts not to "reflexively 'assimilat[e] the relation of . . . administrative bodies and the courts to the relationship between lower and upper courts'" but rather to engage in the "careful examination of 'the characteristics of the particular administrative procedure provided.'" *Id*. at 88-89 (citations and internal quotation marks omitted). The Court emphasized that the futility doctrine was particularly applicable where "[p]etitioners assert purely constitutional claims about which [agency judges] have no special expertise and for which they can provide no relief." *Id*. at 93.

These cases and doctrines are decisive here. Whatever legal process and analysis MSPB might normally apply to a CSRA covered employment action, it cannot apply them to this Article II removal. Defendants have predetermined MSPB's answer to the legal viability of an Article II removal because, as set out above, MSPB's independence has been destroyed. By Defendants' own proclamations, any MSPB proceeding will be—indeed, *must* be—futile, biased, and predetermined.[22]   This argument is not a cynical assumption of animus; it is the direct and unavoidable consequence of the government's own actions.

### B.    The *Thunder Basin* Step Two Elements Support This Court's Jurisdiction

Because Congress never intended for the CSRA to divest district courts of Section 1331 jurisdiction to consider the constitutional question of Article II removals, the *Thunder Basin*

---

[22] To the extent Defendants argue that Ms. Comey's futility allegations rely solely on the fact that MSPB lacked a quorum, that is incorrect. *First*, Ms. Comey pled that Congress "established the MSPB as an independent agency" and that "MSPB currently cannot and does not function as intended." (Compl. ¶¶ 78, 81); *see also id*. ¶ 86 ("the framework of the CSRA accordingly has been thwarted"). Such allegations are sufficient to provide "fair notice" of the claim and its grounds. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also* Fed. R. Civ P. 8(a)(2) (requiring only "a short and plain statement of the claim"). *Second*, it is not a pleading defect that Ms. Comey did not allege events that post-date her filing. When Ms. Comey filed her complaint, she understood that the government would *concede* that the MSPB has no jurisdiction over her case, as that was the government's own position at that time.

analysis can and should end here.  Nevertheless, a march through the "second step" of *Thunder Basin* further proves that this Court retains jurisdiction.

Under step two, courts ask whether "the particular claims brought [a]re 'of the type Congress intended to be reviewed within th[e] statutory structure.'"  *Axon,* 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 208, 212).  Three factors must be considered: (1) whether "precluding district court jurisdiction would 'foreclose all meaningful judicial review' of the claim," (2) whether "the claim is 'wholly collateral to [the] statute's review provisions,'" and (3) whether "the claim is 'outside the agency's expertise.'"  *Id.* (citations omitted).  A district court has jurisdiction when the answer to all—or even some—of these inquiries is "yes."  *Id.* (district court retains jurisdiction even when answers "point in different directions").  This is because the "ultimate question" is "whether the statutory review scheme, though exclusive where it applies, reaches the claim in question."  *Id.*

Here, all factors support district court jurisdiction.

### 1.    Precluding District Court Jurisdiction Will Foreclose All Meaningful Judicial Review

While eventual review of the merits of a constitutional question by a federal circuit court can sometimes constitute meaningful review, *Axon*, 598 U.S. at 190, that is not the case here.  In MSPB, Ms. Comey faces both process-based and First Amendment harms that cannot be remedied by subsequent judicial review.  This type of irremediable here-and-now injury was the deciding factor in *Axon*, leading the Supreme Court to conclude that the agency lacked jurisdiction.

In *Axon,* plaintiffs argued that the tenure protections of the agency ALJs who would have decided their claims were an unconstitutional restraint on the executive branch's Article II removal authority, rendering the administrative process unconstitutional.  598 U.S. at 180.  The

Supreme Court observed that, unlike a harm that can be later remedied by a federal appellate court, "[t]he harm Axon and Cochran allege is being subjected to unconstitutional agency authority—a proceeding by an unaccountable ALJ." *Id.* at 191.  This would constitute "a here-and-now injury" not curable by the Federal Circuit.  *Id.* (citing *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020)).  The Court distinguished that irremediable harm from the injuries that plaintiffs in *Thunder Basin* and *Elgin* would have incurred had they proceeded before an administrative agency imposing decisions that were later reversed.  The Court concluded that, whereas a federal appeals court could have "revoked the fine" (*Thunder Basin*) or "reinstated the employee with backpay" (*Elgin*), for the *Axon* plaintiffs, a federal appeals court could not remedy the harm of being forced to submit "to an illegitimate proceeding, led by an illegitimate decision maker." *Id.* at 191.

Ms. Comey faces a similar harm—the risk of being forced to submit to an illegitimate proceeding.  If MSPB concludes that it *has* jurisdiction to adjudicate her case, then she would be forced to proceed before a captive MSPB that is required (by the OLC Opinion and Executive Order 14215) to endorse the executive branch's legal arguments.  That is a here-and-now, due process injury.  And if MSPB concludes—as the executive mandates it must—that the CSRA is an unconstitutional restraint on executive power, then Ms. Comey would have been forced to submit to a hearing over which the adjudicator lacked authority.  Thus, as in *Axon*, Ms. Comey would be subjected to "an illegitimate proceeding, led by an illegitimate decision maker." *Id.* at 191.  Forcing Ms. Comey into to a forum (1) whose remedies *the government itself insists* are unavailable to her, *see* OLC Op. at 3-4; (2) whose very functionality has been called into question by Article III courts, *NAIJ*, 139 F.4th at 313; and (3) whose decision makers are bound

by the President's interpretations of the CSRA, Exec. Order 14215, would be a here-and-now injury that cannot later be remedied.

As above, Defendants' reliance on *Elgin* is misplaced. (Mot. at 13-14.) Unlike in *Elgin*, Ms. Comey is not challenging the constitutionality of a statute that the MSPB "lacks authority" to declare unconstitutional but that the Federal Circuit can eventually review. *Elgin* at 16-17. Ms. Comey is challenging the executive branch's violation of the separation of powers, a constitutional injury that cannot be remedied in a proceeding overseen by those beholden to the executive branch and directed to override protections created by Article I. Thus, although the Federal Circuit could one day reverse the MSPB, award Ms. Comey backpay, and offer a "meaningful" review and remedy, that could occur only after she was required to submit to an administrative body that is captive to the executive branch and perpetuating the very separation of powers violations she asks to this Court to address. *Axon*, 598 U.S. at 191; *Elgin*, 567 U.S. at 25 (Alito, J., dissenting) ("I doubt that Congress intended to channel petitioners' constitutional claims into an administrative tribunal that is powerless to decide them[.]").

Moreover, the Federal Circuit could not retroactively remedy her ongoing First Amendment harms. Ms. Comey alleges that she was barred from serving her country because of her bloodline and her presumed political belief. That termination caused significant reputational harm, indelibly staining her previously sterling reputation, earned through almost a decade of tireless public service. Firing in retaliation for familial association, in retaliation for another's protected First Amendment speech, or because of presumed political affiliation are all quintessential First Amendment violations. Those injuries are irreparable and ongoing, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably

constitutes irreparable injury."[23]  *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19

(2020).  Furthermore, the chilling effect that this may have on current employees who fear being

targeted for their constitutionally protected associations and viewpoints will be unabated without

prompt declaratory relief.  *Cf. Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir.

2013) (discussing relaxed standards for standing and ripeness given prospect of First

Amendment chilling).

## 2.    Claims Concerning the Separation of Powers Are "Wholly Collateral" to the CSRA's Statutory Review Provisions.

Ms. Comey's challenges to Defendants' self-proclaimed Article II removal power are

wholly collateral to the CSRA's review provisions.  As outlined above, Congress did not intend

to submit to MSPB the novel question of whether, as the government insists, Article II removals

exist separate and independently from CSRA constraints.

Given recent mass firings of federal employees, the concept of employment claims

collateral to MSPB jurisdiction is being addressed by courts nationwide.  In *AFGE v. Trump*, 139

F. 4th 1020 (9th Cir. 2025), the Ninth Circuit invoked *Axon* to note that "[e]ven assuming that

the MSPB . . . could adjudicate, for example, an *ultra vires* claim within an individual

employment dispute," that claim would be collateral to the termination action being addressed by

the MSPB proceeding.  *Id.* at 1031.  Though certain of the court's rulings were later stayed on

other grounds, the Ninth Circuit's channeling reasoning remains untouched and has been relied

on as recently as December 17, 2025, to support district court jurisdiction.  *Am. Fed'n of State*

*County and Mun. Emps. v. Office of Mgmt. and Budget*, No. 25-cv-08302, 2025 WL 3654116, at

---

[23] If the President can fire MSPB members at will, he can defeat a quorum at any time and thereby prevent indefinitely a civil servant's constitutional claims from being heard.  Thus it is possible that Ms. Comey's claims would never proceed to the Federal Circuit.

*6-7 (N.D. Cal. Dec. 17, 2025) (noting "the heart of plaintiffs' claims lies not with the individual termination decisions themselves but with OMB and OPM's legal positions that purport to authorize" those decisions).  The Ninth Circuit also observed a growing trend of cases rejecting channeling in the context of recent summary firings.  *AFGE*, 139 F.4th at 1031-32.  While those courts evaluated mass "reductions in force" rather than the individual termination at issue here, the decisions are instructive because the government's Article II removal theory has no limiting principle; the logic could apply to the entire civil service.  Such a sweeping attack on the foundation of the CSRA is entirely collateral to the CSRA's review scheme.

### 3.      Separation of Powers Claims Are Outside MSPB's Expertise

The final inquiry under *Thunder Basin* step two is whether a claim lies outside of an agency's expertise.  The answer here is yes, and the Supreme Court's opinions in *Free Enterprise* and *Axon* are controlling.

There, plaintiffs argued that the dual-layer tenure protections for members of an oversight board and for ALJs violated the executive's Article II removal authority.  *Free Enterprise* at 483-84; *Axon*, 598 U.S. at 182.  Because the claims "raise[d] 'standard questions of administrative' and constitutional law, detached from 'considerations of agency policy,'" the subject agencies had no special expertise weighing in favor of channeling.  *Axon*, 598 U.S. at 194 (quoting *Free Enterprise*, 561 U.S. at 491).  As the *Axon* Court stated, the agency in that case—the FTC—"knows a good deal about competition policy, but nothing special about the separation of powers."  *Id*.  The same is true here:  this case calls for an evaluation of how Article II interacts with Congress's Article I power to set guardrails around the removal of federal employees.  Just as in *Axon*, the MSPB may know a "good deal" about CSRA firings, but it has no special expertise on this separation of powers issue.  *Carr*, 593 U.S. at 84 ("[A]gency adjudications are

generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise.").  Indeed, MSPB's evidentiary standard in 5 U.S.C. § 7701(c)(1) would be irrelevant under the government's interpretation, because the only fact at issue would be whether "Article II" was typed onto an SF-50.

MSPB also has no expertise to opine on the executive's purported delegation of Article II removal authority in this case.  Ms. Comey's SF-50 lists "Article II" as a basis for termination. (Compl. ¶¶ 52, 53.)  The government appears to assert that the executive branch may remove lower-level federal employees pursuant to either the Take Care Clause or the Vesting Clause of the U.S. Constitution.  *See* OLC Op. at 3 ("As a general matter, the Agencies justify the terminations based upon the President's powers—arising from the Vesting and Take Care Clauses of Article II—to remove those who wield executive power on his behalf."); OTSC at 1 ("The agency contends the appellant was not entitled to notice or an opportunity to respond with regard to the removal, because *the agency head is* authorized by Article II of the Constitution to appoint and remove such individuals without restriction.") (emphasis added).

But by their plain text, the Take Care Clause and the Vesting Clause apply only to the President.  U.S. Const., Art. II, §§ 1, 3.  And here, the White House disavowed any involvement in Ms. Comey's termination.  (Compl. ¶ 51.)  Moreover, it was not even an "agency head" who approved Ms. Comey's firing; her termination letter was signed by Francey Hakes, a subordinate DOJ official who leads the Executive Office of U.S. Attorneys.  *Id*. at ¶ 89.  Therefore, to defend this case on the merits, the government must lead MSPB past its sweeping Article II arguments—already uncharted territory for MSPB—into even lesser-known waters:  a constitutional analysis of how far down the executive branch chain the President can delegate his

Article II removal powers.  MSPB has no expertise on this novel and consequential constitutional question.

* * *

All three factors in *Thunder Basin* step two—lack of meaningful review, identification of wholly collateral claims, and lack of agency expertise—weigh in favor of district court jurisdiction.  But even if this Court finds that they "point in different directions," it is immaterial, because they need not all align (*Axon*, 598 U.S. at 186), and further, step one of the *Thunder Basin* analysis demonstrates that this Court has Section 1331 jurisdiction.  Defendants did not terminate Ms. Comey in reliance on Title 5; they removed her based on Article II.  No statute displaces this Court's jurisdiction.  *See id*. at 217 (Gorsuch, J., concurring) ("When Congress withholds jurisdiction, we must respect its choice. But when Congress grants jurisdiction to the Nation's courts, we must respect that choice too.").

**<u>CONCLUSION</u>**

For the above-stated reasons, this Court should deny the Defendants' Motion to Dismiss.


Dated: January 15, 2026
New York, New York

CLARICK GUERON REISBAUM LLP

By: */s/ Ellen Blain*
Nicole Gueron
Ellen Blain
Deepa Vanamali
41 Madison Avenue
New York, NY 10010
Tel: (212) 633-4310
Fax: (646) 478-9484
ngueron@cgr-law.com
eblain@cgr-law.com
dvanamali@cgr-law.com

KOSKOFF KOSKOFF & BIEDER, PC
Margaret M. Donovan
350 Fairfield Ave.
Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
mdonovan@koskoff.com


*Attorneys for Plaintiff Maurene Comey*

## **CERTIFICATE OF COMPLIANCE**

Ellen Blain, pursuant to this Court's Order (ECF 37), undersigned counsel for Plaintiff Maurene Comey, hereby certifies that the number of words within the attached memorandum of law, excluding the caption, table of contents, table of authorities, and signature block, is 14,907 according to the word-processing system used to prepare the aforesaid document.

Dated: January 15, 2026                    */s/ Ellen Blain*
       New York, New York                 Ellen Blain