## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

MAURENE COMEY,

                Plaintiff,

     v.

UNITED STATES DEPARTMENT OF JUSTICE; EXECUTIVE OFFICE OF THE PRESIDENT; FRANCEY HAKES, in her official capacity as the Director of the Executive Office for United States Attorneys; PAMELA J. BONDI, in her official capacity as Attorney General of the United States Department of Justice; EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS; OFFICE OF PERSONNEL MANAGEMENT; and UNITED STATES OF AMERICA,

                Defendants.

Civil Action No.
1:25-cv-07625 (JMF)

Honorable Jesse M. Furman

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

---

TODD BLANCHE
Deputy Attorney General

JOHN A. SARCONE III
Acting United States Attorney
Northern District of New York

By:    Karen Folster Lesperance
        Assistant United States Attorney
        *Acting Under Authority Conferred*
        *by 28 U.S.C. § 515*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................ 1

    I.    The CSRA divests this Court of jurisdiction over Plaintiff's challenge to her removal from federal service ....................................... 1

        A.    Plaintiff is a Covered Employee Challenging a Covered Action Under the Civil Service Reform Act. .............................. 1

        B.    Even if Plaintiff were correct that Chapter 75 of the CSRA does not apply to her removal, this Court still would not have jurisdiction to hear her claims. ........................... 5

    II.    Congress Intended the CSRA to Divest District Courts of Jurisdiction Over Federal Employee's Employment Claims ................ 6

        A.    Settled Supreme Court precedent establishes that Congress intended the CSRA to provide the exclusive means of review for claims arising out of federal employment ................................................................. 6

        B.    Plaintiff's contention that the MSPB is not independent of the President does not negate Congressional intent ................... 9

        C.    There is no "futility" exception to the CSRA's jurisdiction-channeling scheme .................................................. 13

    III.    Plaintiff's claims are of the type that Congress intended to be channeled through the CSRA framework. ............................ 15

CONCLUSION ............................................................................................ 20

Certificate of Compliance ............................................................................. 21

Certificate of Service .................................................................................... 22

i

# TABLE OF AUTHORITIES

Cases                                                                          Page(s)

*Axon Enterprise, Inc. v. Federal Trade Commission,*
    598 U.S. 175 (2023) ...................................................................................... 17, 18, 19

*Bosse v. Oklahoma,*
    580 U.S. 1 (2016) ................................................................................................. 7

*Carr v. Saul,*
    593 U.S. 83 (2021) .................................................................................... 13, 14, 15

*Downey v. Runyon,*
    160 F.3d 139 (2d Cir. 1998) ............................................................................... 4

*Elgin v. Dep't of Treasury,*
    567 U.S. 1 (2012) ........................................................................................ passim

*Ercole v. Wilkie,*
    No. 19-CV-11961 (VSB), 2023 WL 6812300 (S.D.N.Y. Oct. 16, 2023) ................... 4

*Free Enterprise Fund v. Public Company Accounting Oversight Board,*
    561 U.S. 477 (2010) .................................................................................... passim

*Gober v. Collins,*
    2025 WL 1360434 (D.D.C. May 8, 2025) ............................................................ 6

*Goodwin v. Veteran's Health Admin.,*
    No. 24-CV-6138 (LLS), 2025 WL 1589251 (S.D.N.Y. June 4, 2025) ....................... 4

*Harris v. Bessent,*
    160 F.4th 1235 (D.C. Cir. 2025) ........................................................................ 10

*Lucia v. SEC,*
    585 U.S. 237 (2018) .......................................................................................... 14

*Matthews v. Diaz,*
    426 U.S. 67 (1976) ............................................................................................ 15

*McCarthy v. Madigan,*
    503 U.S. 140 (1992) .......................................................................................... 13

*Nat'l Ass'n of Immig. Judges v. Owen,*
    139 F.4th 293 (4th Cir. 2025) ........................................................................... 8, 9

*Porter v. Nussle,*
    534 U.S. 516 (2002) ................................................................. 13

*State Oil v. Khan,*
    522 U.S. 3 (1997) .................................................................. 7, 9

*Thunder Basin Coal Co. v. Reich,*
    501 U.S. 200 (1994) ......................................................... 6, 15, 16

*United States ex rel. Marcus v. Hess,*
    317 U.S. 537 (1943) ............................................................... 8, 10

*United States v. Fausto,*
    484 U.S. 439 (1988) ............................................................ passim

*United States v. Hatter,*
    532 U.S. 557 (2001) .................................................................. 7

*Weaver v. U.S. Info. Agency,*
    87 F.3d (D.C. Cir. 1996) ............................................................ 6

*Wisconsin Cent. Ltd v. United States,*
    585 U.S. 274 (2018) ............................................................... 8, 10

Statutes

5 U.S.C. § 1214 ......................................................................... 5

5 U.S.C. § 2301 ......................................................................... 5

5 U.S.C. § 2302 (b)(1)(E) ............................................................... 5

5 U.S.C. § 3502 ......................................................................... 2

5 U.S.C. § 7512 ................................................................. 2, 3, 15

5 U.S.C. § 7513(a) ...................................................................... 3

5 U.S.C § 7521 .......................................................................... 3

5 U.S.C. § 7701 ......................................................................... 3

28 U.S.C. § 515 .................................................................. i, 20, 21

42 U.S.C § 1997(e) ..................................................................... 13

Regulations

5 C.F.R. 351.901 ................................................................................................ 2

5 C.F.R. § 432.106 ............................................................................................ 3

5 C.F.R. § 1201.3 .............................................................................................. 3

Other Authorities

Exec. Order No. 14215 ............................................................................... 12, 13

**INTRODUCTION**

Plaintiff's opposition concedes the legal framework that governs this case. She is a covered employee under the Civil Service Reform Act (CSRA), and Congress created a comprehensive scheme for reviewing adverse employment actions against such employees. Supreme Court precedent holds that this scheme is exclusive and precludes district-court jurisdiction. *See Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012); *United States v. Fausto*, 484 U.S. 439 (1988). This framework resolves this case.

Plaintiff instead asks this Court to create novel exceptions to that settled rule. She argues that her removal was not a covered action, that the Merit Systems Protection Board (MSPB) is not functioning as Congress intended, and that pursuing administrative review would be futile. Each argument fails as a matter of statutory text and binding precedent.

Because Plaintiff is a covered employee challenging a covered adverse action, she must proceed through the CSRA's exclusive review scheme. This Court therefore lacks subject-matter jurisdiction.

**ARGUMENT**

I.    **The CSRA divests this Court of jurisdiction over Plaintiff's challenge to her removal from federal service**

A.    **Plaintiff is a Covered Employee Challenging a Covered Action Under the Civil Service Reform Act.**

Plaintiff does not contest that the CSRA strips district courts of subject matter jurisdiction over claims of "covered employees" challenging "covered actions." *Elgin*, 567 U.S. at 11; Dkt. #1 at ¶ 77. She acknowledges that she is a covered employee. Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, Dkt. #38, ("Opp.")

at 25.  But she contends that her removal from federal employment is not a "covered action" under the CSRA.  *Id.* at 24-25.  That argument contradicts the statute's plain text.[1]

Chapter 75 governs "adverse actions" against covered federal employees. Subchapter II, by its express terms, applies to:

    (1) a removal;
    (2) a suspension of more than 14 days;
    (3) a reduction in grade;
    (4) a reduction in pay;
    (5) a furlough of 30 days or less

5 U.S.C. § 7512.  Except for the enumerated statutory exclusions discussed below, none of which apply here, the term "removal" is unqualified in Chapter 75.  It is not, as Plaintiff contends, limited to removals "for cause."

Chapter 75 excludes certain categories of personnel actions, including national-security removals (governed by Subchapter IV); reductions-in-force

---

[1] Plaintiff incorrectly contends that "Defendants . . . insist *Ms. Comey's* Article II removal was 'separate and distinct' from the CSRA."  Opp. at 21 (emphasis added). While she fails to provide a citation for this quote, the surrounding discussion indicates she is referencing the Department of Homeland Security's closing brief in an MSPB appeal filed by Mary Comans, the former Chief Financial Officer of the Federal Emergency Management Agency (FEMA).  Opp. at 11-12 (citing DHS brief in *Comans* MSPB proceeding).  As Plaintiff acknowledges, in Comans' administrative proceeding, DHS withdrew its initial challenge to the MSPB's jurisdiction and conceded in both that action and in Comans' subsequent district court action that the MSPB has exclusive jurisdiction over Comans' challenge to her removal. Dkt. #39-2; *Comans v. Executive Office of the President*, 1:25-cv-01237 (E.D. Va.).  Moreover, Plaintiff's contention that the defendants here have advanced this argument with respect to Ms. Comey's removal is incorrect: DHS is not a defendant in this action, and no defendant in this action was a party to the Comans administrative proceeding. The defendants here have consistently argued that Ms. Comey's removal is subject to the CSRA.  Dkt. ## 29, 32, 34.

(governed by Chapter 35 and appealable to the MSPB, *see* 5 U.S.C. § 3502; 5 C.F.R. 351.901); certain supervisory probationary actions (governed by Chapter 33); performance-based actions (governed by Chapter 43 and appealable to the MSPB, *see* 5 C.F.R. § 432.106); disciplinary actions brought through the Office of Special Counsel (governed by Chapter 12); actions involving administrative law judges (governed by Subchapter III of Chapter 75 and adjudicated by the MSPB, *see* 5 U.S.C § 7521); and suitability actions taken by the Office of Personnel Management (OPM). 5 U.S.C. § 7512.

Section 7512 thus covers all removals of covered employees other than those that are expressly excluded because they are covered elsewhere in the CSRA. Chapter 77 establishes a comprehensive and exclusive scheme for reviewing adverse actions to which Chapter 75 applies. *United States v. Fausto*, 484 U.S. 439 (1988); *Elgin v. Dep't of* Treasury, 567 U.S. 1 (2012); 5. U.S.C. §§ 7701, *et seq.*

Most actions excluded from Section 7512 remain subject to administrative review by the MSPB or the Office of Special Counsel (OSC). The Supreme Court has confirmed that district courts lack jurisdiction over adverse employment actions that fall within the purview of the CSRA. *Elgin*, 567 U.S. at 11.

Plaintiff's reliance on 5 C.F.R. § 1201.3 is misplaced. That regulation simply recognizes that the MSPB exercises jurisdiction granted by statute or regulation. Nothing in it limits the jurisdiction Congress granted in Sections 7512 and 7513. Section 7513 of the CSRA gives jurisdiction to the MSPB to hear appeals of any adverse action "covered by this subchapter." 5 U.S.C. § 7513(a), (d). And section 7512

3

defines the actions "covered by this subchapter" to include "removals" other than those expressly excepted.

Plaintiff's contention that she is a "covered employee under the CSRA, entitled to its protections" but that the CSRA's jurisdiction-channeling provision was not triggered because the CSRA does not address Article II removals fails. She is entitled to the CSRA's protections only as to those adverse actions that are covered by the CSRA. If Article II removals are not covered by the CSRA, then she has no remedy. To invoke CSRA remedies, she must accept that her removal was a covered action, which requires her to seek review through the MSPB.

As a covered employee challenging her removal from federal employment, it is beyond reasonable dispute that the CSRA applies.[2] "If *an employee asserts rights under the CSRA*, MSPB decisions are subject to judicial review exclusively in the Federal Circuit." *Goodwin v. Veteran's Health Admin.*, No. 24-CV-6138 (LLS), 2025 WL 1589251, at *2 (S.D.N.Y. June 4, 2025) (citing *Downey v. Runyon*, 160 F.3d 139, 141-44 (2d Cir. 1998); *Ercole v. Wilkie*, No. 19-CV-11961 (VSB), 2023 WL 6812300, at *5 (S.D.N.Y. Oct. 16, 2023)) (emphasis added). Indeed, in exhaustively cataloging the CSRA's preclusive structure, *Elgin* and *Fausto* do not even mention the "for cause" removal restrictions that Plaintiff casts as central to the CSRA's application. *See Elgin*, 567 U.S. at 5-6, 10-13; *Fausto*, 484 U.S. at 445-50. Like any other covered

---

[2] Plaintiff's arguments to the contrary are more appropriately characterized as arguing that an Article II removal is not "the type of claim" that Congress intended to be channeled through the administrative process under step two of the *Thunder Basin* analysis. These arguments also fail, however, for the reasons discussed in Point III, *infra*.

employee challenging a covered employment action, Plaintiff must "proceed exclusively through the statutory review scheme." *Elgin*, 567 U.S. at 10.

**B.    Even if Plaintiff were correct that Chapter 75 of the CSRA does not apply to her removal, this Court still would not have jurisdiction to hear her claims.**

As explained above, Plaintiff's claim falls within Chapter 75 and is subject to Chapter 77 review. But even if she were correct that the MSPB lacks jurisdiction to review her appeal, that does not create jurisdiction in this court. *See Fausto*, 484 U.S. at 447-48 (rejecting the Federal Circuit's conclusion that the exclusion of an employee from Chapter 75 did not mean that employee was "free to pursue whatever judicial remedies he would have had before enactment of the CSRA.").

Plaintiff alleges that she was terminated by or at the direction of the President because of her actual or perceived political beliefs, because her father is a political enemy of the President, or both. Compl. ¶¶ 5, 9, 56, 69, 72, 73, 75, 99, 117; Opp. at 9-10. Those allegations amount to a claim that her removal was a prohibited personnel practice under Chapter 23 of the CSRA, which requires, as relevant here, that employees receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation . . . and with proper regard for their . . . constitutional rights." 5 U.S.C. § 2301; *see also* 5 U.S.C § 2302(b)(1)(E). *See also Fausto*, 484 U.S. at 446 ("Chapter 23 of the CSRA addresses the very types of claims that establishes the principles of the merit system of employment and forbids an agency to engage in certain "prohibited personnel practices") (internal citations omitted).

If the MSPB lacks jurisdiction to review her removal, as she claims, her remedy would be to submit a complaint to the Office of Special Counsel (OSC).  5 U.S.C. § 1214.  *See also Gober v. Collins*, 2025 WL 1360434, at *5 (D.D.C. May 8, 2025) (concluding that because terminated probationary employees raising constitutional challenges to their removal from federal service "have a CSRA remedy available to them – review by OSC – this Court lacks jurisdiction over their claims") (citing *Weaver v. U.S. Info. Agency*, 87 F.3d at 1429, 1433 (D.C. Cir. 1996)).

Accordingly, Plaintiff's claims are subject to the jurisdiction-channeling provisions of the CSRA, and this Court lacks jurisdiction.

## II. Congress Intended the CSRA to Divest District Courts of Jurisdiction Over Federal Employee's Employment Claims

### A. Settled Supreme Court precedent establishes that Congress intended the CSRA to provide the exclusive means of review for claims arising out of federal employment.

Plaintiff acknowledges that the question at the first step of the *Thunder Basin* analysis asks whether the statute's text, structure, purpose and legislative history evince a congressional intent to preclude initial judicial review.  Opp. at 25; *Thunder Basin*, 510 U.S. at 207.

The Supreme Court has already answered that question for the CSRA.  "[T]he CSRA's elaborate framework … indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012) (cleaned up).  That holding resolves *Thunder Basin* step one.

Plaintiff asks this Court to speculate that Congress would alter the CSRA based on the current MSPB composition and to disregard controlling precedent. Opp. at 35-40.[3] This Court cannot do so. *See, e.g., State Oil v. Khan*, 522 U.S. 3, 20 (1997) ("it is [the Supreme] Court's prerogative alone to overrule one of its precedents"); *accord Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (same); *United States v. Hatter*, 532 U.S. 557, 567 (2001). Indeed, a lower court is beholden to apply a Supreme Court holding even if it finds it beset with "infirmities" and relying on "increasingly wobbly, moth-eaten foundations." *State Oil*, 522 U.S. at 20.

No Supreme Court precedent and nothing in the CSRA's supports the ad hoc exception Plaintiff proposes. *Elgin* states categorically that "covered employees appealing covered agency actions" must "proceed exclusively through the statutory review scheme." 567 U.S. at 10. The Court thus rejected an "exception" for constitutional challenges to federal statutes because "[t]he availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue," not whether the employee is bringing a constitutional challenge to a federal statute. *Id.* at 12.

---

[3] In her step one analysis, Plaintiff also argues that Congress did not intend for the MSPB to review Article II removals or to adjudicate whether the CSRA should be applied in a way that does not to infringe on the President's powers under the Vesting and Take Care clause of Article II of the Constitution. Opp. at 26-35. These issues are not relevant to the step one analysis, which asks only whether Congress intended, at the time it enacted the CSRA, to create an administrative review process that forecloses district court review. Plaintiff's arguments in this regard relate instead to step two analysis, whether Plaintiff's claims are the type of claims that Congress intended to be channeled through that process and whether they are outside the agency's expertise. Therefore, Defendant addresses these arguments in its discussion of the step two analysis. *See infra* Point III.

Plaintiff's position is untenable. She contends that the MSPB is no longer independent and that its lack of independence defeats congressional intent. But statutory meaning "is fixed at the time of enactment." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018). Even if "conditions have changed since the Act was passed[,] . . . the statute has not." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 547 (1943).

Plaintiff cites the Fourth Circuit's unprecedented decision in *Nat'l Assn of Immigr. Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025) (*NAIJ*), for the proposition that the MSPB is not functioning as intended. Opp. at 36-37. That assertion mischaracterizes the Fourth Circuit's holding. The district court in *NAIJ* dismissed plaintiff's challenge to a policy governing immigration judges' public engagements concerning their official duties, holding that the CSRA deprived it of jurisdiction and required initial resolution through the MSPB. *NAIJ*, 139 F.4th at 303. On appeal from that dismissal, the Fourth Circuit—sua sponte and without notice to or input from the parties—concluded based on post-oral argument events that a "new examination" was needed "in light of changing circumstances around the MSPB." *See NAIJ*, 139 F.4th at 308. It remanded for the district court to make "a factual record" assessing the CSRA's "functionality," specifically, whether MSPB is addressing claims "adequately and efficiently." *Id.* at 305. The government has filed a petition for writ of certiorari,[4] which is pending. *Margolin v. Nat'l Ass'n of Immig. Judges*,

---

[4] The Fourth Circuit denied the government's petition for rehearing *en banc* by a 9-6 vote. Judges Wilkinson concurred in the denial of rehearing, explaining that he did "not agree with the panel opinion," which would "vest the judiciary with a general

No. 25-767 (U.S.).  And, while the Supreme Court declined to stay the mandate from the Fourth Circuit because the government had not shown it would suffer irreparable harm in the absence of a stay, it invited the government to renew its request for a stay if the district court directs discovery while the certiorari petition is still pending – acknowledging that proceeding with discovery could impose serious, potentially irreparable harm to the government.  *Id.,* Dkt No. 25A662, 2025 WL 3684278 (Dec. 19, 2025).

Plaintiff nevertheless invites this Court to conclude *sua sponte* that the MSPB is not functioning as Congress intended, to speculate as to what Congress's intentions would be were they asked to reconsider the jurisdiction-channeling provisions of the MSPB in the current climate, and to flout controlling Supreme Court precedent based on these conclusions and speculation.  Respectfully, this Court should decline Plaintiff's invitation.

## B. Plaintiff's contention that the MSPB is not independent of the President does not negate Congressional intent.

Plaintiff argues that because the MSPB—housed within the Executive

---

supervisory authority over both the legislative and executive branches," but in his view, "only the Supreme Court can bring an effective halt" to those "seeds of real mischief." *NAIJ,* 160 F.4th 100, 103 (4th Cir. 2025).  Judge Quattlebaum, joined by Judges Agee, Richardson, and Rushing, dissented. *Id.* at 107-18. He explained that this Court has already held— "emphatically and directly—that district courts lack jurisdiction over claims like the ones" here. *Id.* at 107. The panel had no license to "set aside Supreme Court precedent" and "reimagine congressional intent" on the basis that "events decades after a statute's passage suggest it is not functioning as originally intended." *Id.* at 108. That approach, Judge Quattlebaum noted, risked profound "instability" as the CSRA's exclusive review scheme could toggle on and off based on "judges' views on political whims of the most recent administration." *Id.* at 116.

Branch—is not sufficiently "independent" from the President—who leads that branch—there has been a "thoroughgoing evisceration of . . . Congress' design," Opp. at 38, thereby excluding her claims from the exclusive jurisdiction of the MSPB under the CSRA.  *Id.* at 37-38.  Specifically, she contends that because the President removed a Democratic Board member (and that removal was upheld as lawful, *see Harris v. Bessent*, 160 F.4th 1235, 1237 (D.C. Cir. 2025), the MSBP has now been "transform[ed] . . . into a creature alien to Congress' design."  Opp. at 37.

This argument fails because Congressional intent is measured at the time of the statute's enactment and cannot be undone by subsequent events.  *See Wisconsin Cent.*, 585 U.S. at 284; *Hess*, 317 U.S. at 547.  Moreover, her argument can only succeed in securing jurisdiction here if its critical underlying premise is true: that if the MSPB were *not* sufficiently insulated from a democratically elected, politically accountable President, the CSRA's exclusive scheme should be snuffed out altogether. But the Supreme Court has flatly rejected that approach to the aftermath of changes to removal protections for officials within a broader statutory scheme. *See Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010).

In *Free Enterprise,* the petitioners persuaded the Supreme Court that multiple levels of for-cause removal protections for members of the PCAOB was "incompatible with the Constitution's separation of powers." *Id.* at 498. But they urged the Court to go even further, arguing that the PCAOB's "freedom from presidential oversight and control" rendered the entire body, and all of the authority it exercised, "in violation of the Constitution." *Id.* at 508. The Court refused to throw the baby out with the

10

bathwater. "[W]hen confronting a constitutional flaw in a statute," the Court explained, "we try to limit the solution to the problem" in the statute "while leaving the remainder intact." *Id.* at 508. And because the statute's provisions were "not incapable of functioning independently," undoing the PCAOB's removal protections did not require scrapping the agency altogether. *Id.* at 509 (cleaned up). There was no reason to believe, the Court concluded, "that Congress, faced with the limitations imposed by the Constitution, would have preferred no [PCAOB] at all to a [PCAOB] whose members are removable at will." *Ibid.*

The same logic applies here. The Supreme Court has explained that prior to the CSRA, aggrieved federal employees needed to navigate an "outdated patchwork of statutes and rules" that produced "wide variations in the kinds of decisions issued on the same or similar matters" and a "wasteful and irrational" system of judicial review. *Fausto*, 484 U.S. at 444–45 (quotation cleaned). "Congress responded to this situation by enacting the CSRA, which replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. And "the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions" reflects Congress's desire to channel such claims to the MSPB. *Elgin*, 567 U.S. at 11–12.

That scheme, and the historical reality that gave rise to it, belies any notion that "Congress … would have preferred no [MSPB] at all to a[n] [MSPB] whose

members are removable at will." *Cf. Free Enterprise Fund*, 561 U.S. at 509. To the contrary, the MSPB continues to play a critical role in Congress's plan for the "sound and efficient administration" of federal personnel claims, *Fausto*, 484 U.S. at 445, and nothing about the President's assertion—rightly or wrongly—of his constitutional removal power calls into question any one of those statutory features that the Supreme Court has held preclude district-court jurisdiction under the *Thunder Basin* framework. The same logic likewise extends to the President's assertion of authority to "'provide authoritative interpretations of law for the executive branch.'" Opp. 38 at 11 (quoting Exec. Order No. 14215, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10448 (2025)).

Plaintiff does not acknowledge the ramifications of her argument, were this Court to accept it. Should this Court conclude that the alleged erosion of the MSBP's independence negates Congress' intent in enacting the CSRA's administrative review scheme such that Plaintiff's claim need not be funneled through that process, it would follow that no claim would need to be channeled through that process. If the MSPB really were an illegitimate forum as applied to Plaintiffs, it would necessarily be illegitimate as to *all* ongoing proceedings in that forum, resulting in thousands of federal-employee suits flooding the federal district courts—despite Congress' dedication of a specific administrative entity to adjudicate those claims. It is that result that *Free Enterprise* rejects, and that result would eviscerate Congress' intent.

### C. There is no "futility" exception to the CSRA's jurisdiction-channeling scheme.

Equally unavailing is Plaintiff's contention that she may bring her claims in this Court because the MSPB process would be "futile." Opp. at 39-40. She relies on cases considering pre-suit administrative exhaustion requirements in support of the argument that her claim of futility releases her from the exclusive jurisdiction of the CSRA's administrative process. *Id.* (citing *McCarthy v. Madigan*, 503 U.S. 140 (1992); *Carr v. Saul*, 593 U.S. 83 (2021)). These cases are inapposite.

*McCarthy* analyzed a federal inmate's administrative exhaustion requirement under 42 U.S.C § 1997(e) prior to the passage of the Prison Litigation Reform Act (PLRA). Section § 1997(e) contained a "limited exhaustion requirement," *id.* at 150-51; exhaustion was discretionary and would be mandated only if the Attorney General certified that the prison's grievance provisions were "fair and effective." *McCarthy*, 503 US at 150. The passage of the PLRA in 1996 "invigorated" the exhaustion requirement, making exhaustion "mandatory" with no requirement that the remedies available be "plain, speedy and effective." *Porter v. Nussle*, 534 U.S. 516 (2002). Thus, *McCarthy* has been abrogated by the PLRA, and "effectiveness" of the administrative process is no longer required for exhaustion to be mandated. *See id.* But Plaintiff nonetheless cites *McCarthy* as authority for her contention that she may be excused from the CSRA's mandatory and exclusive jurisdiction-channeling provision.

Likewise, *Carr* also involved pre-suit administrative exhaustion requirements in the Social Security disability benefits context. 593 U.S. 83. Six separate petitioners

13

each administratively challenged the denial of disability benefits. *Id.* at 86. Each had their benefits determination reviewed by an Administrative Law Judge (ALJ), who affirmed the Commissioners' decision to deny benefits. *Id.* The petitioners then challenged the ALJ decisions in federal court. *Id.* While those cases were pending, the Supreme Court ruled in a different case that the appointment of SEC administrative law judges by lower-level employees, other than "heads of department" or "officers of the United States," violated the Appointments Clause of the Constitution. *Id.* (citing *Lucia v. SEC*, 585 U.S. 237 (2018)). Since the Social Security ALJs who affirmed the denial of petitioners' benefits had also been appointed by lower-level employees, they asked the district courts hearing their appeals to direct a new hearing before a validly appointed ALJ. The Commissioner argued that the petitioners had waived their Appointments Clause arguments by failing to raise them before the agency. *See id.* at 87. The Supreme Court ultimately held that the petitioner's failure to challenge the legitimacy of the ALJ's appointments did not preclude them from raising their challenge in the district court. *Id.* at 95.

Both *Carr* and *McCarthy* analyze pre-suit administrative exhaustion requirements. This differs materially from a statutory jurisdictional-channeling scheme such as that in the CSRA that wholly divests the district courts of subject matter jurisdiction. Moreover, in *Carr*, the administrative exhaustion requirement was not based on statute or regulation, but rather was judicially-implied. 593 U.S. at 88. And the Court was swayed by the differences between proceedings before a Social

14

Security ALJ and the litigation process. *See id.* at 90-91. Most notably, Social Security ALJs perform a primarily fact-finding role, and do not determine disputed issues of law. *Id.* Indeed, the Social Security Commissioner has no representative before the ALJ to oppose the claim for benefits. *Id.* Based in part of these differences and on the non-mandatory nature of exhaustion in Social Security cases, the court in *Carr* concluded that because constitutional challenges usually fall outside the adjudicators area of technical expertise, it is "***sometimes*** appropriate for courts to entertain constitutional challenges to statutes or other agency wide policies even when those challenges were not raised in administrative proceedings." *Id.* at 92-93 (citing *Matthews v. Diaz*, 426 U.S. 67, 76-77 (1976)).

*McCarthy* and *Carr* bear little relevance to the issue before this court. Both address issues of pre-suit administrative exhaustion, which is markedly different than the question whether the district court has subject matter jurisdiction over Plaintiff's claims at all. While the Supreme Court "has consistently recognized a futility exception to exhaustion requirements," *Carr*, 593 U.S. at 93, Plaintiff cites no authority, and Defendants are aware of none, that hold that a statutory jurisdiction-channeling provision is subject to the same sort of futility exception.

## III. Plaintiff's claims are of the type that Congress intended to be channeled through the CSRA framework.

The second step of the *Thunder Basin* inquiry likewise requires redirecting this case to the MSPB. That step asks whether Plaintiffs' claims "are of the type Congress intended to be reviewed within [the CSRA's] statutory structure." *Thunder Basin*, 510 U.S. at 212. Again, the Supreme Court has decided that question: "The

CSRA makes MSPB jurisdiction over an appeal dependent *only on the nature of the employee and the employment action at issue.*" *Elgin*, 567 U.S. at 18 (emphasis added). Plaintiff concedes she is covered by the CSRA. *See* Dkt. #1 at ¶ 77; Opp. at 25. And "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme," *Elgin*, 567 U.S. at 22. *See also* 5 U.S.C. § 7512. That should end the inquiry.

But Plaintiff resists this straightforward conclusion by attempting to inject into the analysis consideration of the government's anticipated defenses. Indeed, all of her arguments focus on whether issues that she expects the government to raise are the types of claims Congress intended to be reviewed under the CSRA. Opp. at 26-27, 30. There is no precedent and no authority for this, and she offers none. Indeed, all of the relevant case law focuses on the plaintiff's claims, not the government's defenses. *See, e.g., Thunder Basin*, 501 U.S. at 212 (analyzing "whether petitioner's claims are of the type Congress intended to be reviewed within this statutory structure," where petitioner was the plaintiff); *Elgin*, 567 U.S. at 15 ("Petitioners raise … additional factors in arguing that *their claims* are not the type that Congress intended to be reviewed within the CSRA scheme," where petitioners were the plaintiffs) (emphasis added); *Free Enterprise Fund*, 561 U.S. at 487 (evaluating claim, brought in district court by subject of PCAOB investigation, seeking declaratory judgment that PCAOB is unconstitutional). Plaintiff brought a straightforward claim challenging her removal from the federal civil service—that is, claims "precisely the type … regularly adjudicated by the MSPB," *Elgin*, 567 U.S. at

16

22, and precisely the type addressed by *Elgin*. Under the *Thunder Basin* framework, that puts her claims out of the reach of district-court jurisdiction.

Plaintiff bases her step two arguments primarily on the Supreme Court's decisions in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), and *Free Enterprise*, 561 U.S. 477. *See* Opp. at 41-44 (arguing under *Axon* that proceeding before the MSPB will cause an "irremediable here-and-now injury" that will deprive her of meaningful judicial review);[5] Opp. at 27-34 (arguing under *Axon* and *Free Enterprise* that questions pertaining to separation of powers and the constitutionality of the CSRA are not the type of claims that Congress intended the MSPB to review, and are outside its expertise); Opp. at 45-47 (same). But neither case is analogous here.

In *Axon Enterprises*, two companies that were the subjects of enforcement actions by the SEC and the FTC, respectively, brought "sweeping" constitutional challenges to those agencies' constitutional authority to continue those actions. *Id.* at 189. They claimed that the agencies' ALJs were insufficiently accountable to the President in violation of separation-of-powers principles, and attacked the "combination of prosecutorial and adjudicatory functions in a single agency." *Id.* at 180. "The challenges [we]re fundamental, even existential. They maintain in essence that the agencies, as currently structured, are unconstitutional in much of their work." *Id.* They sought injunctions against the continuation of the enforcement

---

[5] Plaintiff does not contest that, if she is unsuccessful at the MSBP, she has a right to appeal to the Federal Circuit Court of Appeals, which "is fully capable of providing meaningful review," even of constitutional claims raised by her removal. *Elgin,* 567 U.S. at 10.

actions.

The lawsuits were dismissed by the lower courts in deference to the agency's administrative processes for challenging the outcome of an enforcement action. The Supreme Court reversed, holding that the Exchange Act and FTC Act did not displace district court jurisdiction over the plaintiffs' "far-reaching constitutional claims." Because those claims challenged whether the agencies were legitimately empowered to take enforcement action against them, forcing them to continue to endure the enforcement action before having the right to challenge it would cause a "here-and-now" injury that could not be remedied. The harm of being subjected to an unconstitutional proceeding would be impossible to remedy once it was over – which is when appellate review would kick in. *Id.* at 191.

Plaintiff's attempt to liken her claims here to those in *Axon* fall flat. Axon's claim challenged the constitutionality of an ongoing enforcement action and sought the court's intervention to end it. Here, Plaintiff challenges her removal from federal employment – a discrete and finite act that was complete as of July 16, 2025. The type of ongoing harm that was present in *Axon* simply does not exist here. Unlike in *Axon*, there is no remedy that a court could provide today that would not be available to her from the MSPB or the Federal Circuit. And, while she complains that she will be harmed by having to submit to an MSBP that lacks independence, that is not the harm that her lawsuit challenges – unlike in *Axon*.

Nor does *Free Enterprise*, 561 U.S. 477, dictate in favor of this Court's jurisdiction. In that case, the subject of an investigation by the Public Company

Accounting Oversight Board (Board) challenged in district court whether dual layers or removal-for-cause protections for Board members violated separation-of-powers principles. As in *Axon*, the plaintiff sought an injunction preventing the Board from continuing its investigation. *Id.* at 487. The Board was created by the Sarbanes-Oxley Act (the Act), which also required every accounting firm that audits public companies to register with the Board and comply with its rules and oversight. The SEC (the Commission) has oversight to review any Board rule or sanction. Final decisions of the Commission are, in turn, reviewable in a court of appeals. *Id.* at 489.

The Supreme Court held, under step two of the *Thunder Basin* analysis, that the district court had jurisdiction over that claim for relief because the plaintiffs could not otherwise "meaningfully pursue" their claims. *Id.* at 490. While the Act provided for judicial review of Commission action, not every Board action is encapsulated in a final Commission order or rule. *Id.* Therefore, the Act provided no avenue for judicial review of Board actions that were not acted upon by the Commission. *Id.*

Again, this is distinct from Plaintiff's claims here. Plaintiff concedes that if her claims proceed in the MSPB and she does not prevail, she may seek judicial review in the Federal Circuit. Opp. at 42-43. She fails to identify any remedy this Court could provide that the Federal Circuit could not. *See id.* As such, her claim that she will suffer a "here and now" injury if her claims must proceed in the MSPB before reaching an Article III court are unavailing.

19

## CONCLUSION

The Court should dismiss Plaintiff's Complaint in its entirety with prejudice for lack of subject matter jurisdiction.

January 23, 2026                    Respectfully submitted,

                                    TODD BLANCHE
                                    Deputy Attorney General

                                    JOHN A. SARCONE III
                                    Acting United States Attorney
                                    Northern District of New York

                    By:    _____
                                    Karen Folster Lesperance
                                    Assistant United States Attorney
                                    *Acting Under Authority Conferred*
                                    *by 28 U.S.C. § 515*

                                    *Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(c) of the Local Rules for the United States District Court for the Southern District of New York, the undersigned counsel for the Defendants hereby certifies that this memorandum of law complies with the type volume limitation of Rule 7.1(c). As measured by the word-processing system used to prepare this memorandum of law, there are approximately 6177 words in the brief.

TODD BLANCHE
Deputy Attorney General

JOHN A SARCONE III
Acting United States Attorney

By: _____

Karen Folster Lesperance
Assistant United States Attorney
*Acting Under Authority Conferred
by 28 U.S.C. § 515*

**CERTIFICATE OF SERVICE**
**BY NEXTGEN CM/ECF**

Maurene Comey
v.
Department of Justice, et al.

Docket No.   1:25-cv-07625

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York and is a person of such age and discretion as to be competent to serve papers.

She further certifies that on February 2, 2026, she served a copy of the reply memorandum of law in further support of defendant's motion to dismiss for lack of subject matter jurisdiction on counsel for plaintiff by uploading a Portable Document Format (PDF) version of the same to the Southern District of New York's ECF system.

_____
Karen Folster Lesperance