# EXHIBIT 1

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

**2026 MSPB 3**

Docket No. CF-0752-26-0069-I-1

**Jackler and Jaroch Consolidation,**

**Appellant,**

**v.**

**Department of Justice,**

**Agency,**

**and**

**Director of the Office of Personnel**

**Management,**

**Intervenor.**

March 20, 2026

Robert P. Erbe, Esquire, Tucson, Arizona, for the appellant.

Nathaniel A.G. Zelinsky, Esquire, Washington, D.C., for the appellant.

Lourdes M. Guillaume, Esquire, New York, New York, for the agency.

Matthew Tanny Pizzo, Esquire, and Robert Ley, Esquire,
    Falls Church, Virginia, for the agency.

Patrick Alexander Ehler, Esquire, and Jordan Lee Perkins, Esquire,
    Washington, D.C., for the intervenor.


**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

2

## OPINION AND ORDER

¶1    The agency has filed petitions for review of the initial decisions, which reversed the appellants' removals and ordered the agency to retroactively restore the appellants effective February 14, 2025.  For the reasons discussed below, we CONSOLIDATE these appeals,[1] GRANT the agency's petitions for review, VACATE the initial decisions, and DISMISS these appeals for lack of jurisdiction.  We hold that the Attorney General's exercise of constitutional Article II removal authority in relation to these appellants—whom we determine, based on their duties, are inferior officers who exercise significant adjudicative and policymaking authorities on behalf of the United States—abrogates otherwise-applicable statutory removal protections and thus deprives the Board of jurisdiction.

## BACKGROUND

¶2    On June 21, 2021, the agency appointed appellant Jackler to the position of Assistant Chief Immigration Judge in the agency's Executive Office for Immigration Review (EOIR) in its New Orleans office.[2]  *Jackler v. Department of*

---

[1] Pursuant to 5 C.F.R. § 1201.36(a)(1), because appellant Jackler and appellant Jaroch occupied identical positions for the agency and were removed by the agency utilizing the same legal theory, we hereby consolidate the appellants' appeals, MSPB Docket No. DA-0752-25-0330-I-1 and MSPB Docket No. DA-0752-25-0328-I-1, respectively, into one collective appeal, identified as MSPB Docket No. CF-0752-26-0069-I-1.  Additionally, we acknowledge that the agency moved to consolidate the appellants' appeals along with three other appeals on the basis that they dealt with similar factual and legal issues. *Jackler v. Department of Justice*, MSPB Docket No. DA-0752-25-0330-I-1, Initial Appeal File (Jackler IAF), Tab 9; *Jaroch v. Department of Justice*, MSPB Docket No. DA-0752-25-0328-I-1, Initial Appeal File (Jaroch IAF), Tab 9.  The administrative judge denied the agency's motion due to distinctions in factual records and legal theories between the five appeals.  Jackler IAF, Tab 11 at 2; Jaroch IAF, Tab 12 at 2.  Despite this matter being consolidated now, we are not revisiting or reversing the ruling of the administrative judge declining to consolidate the five appeals at that time.

[2] Appellant Jackler was initially appointed to the position on June 21, 2021, for a period not to exceed 24 months.  Jackler IAF, Tab 5 at 5-6.  On May 31, 2023, the Attorney General appointed appellant Jackler to the same position effective June 19, 2023, on a permanent basis. *Id.* at 6.

*Justice*, MSPB Docket No. DA-0752-25-0330-I-1, Initial Appeal File (Jackler IAF), Tab 5 at 28.  On September 26, 2021, the agency appointed appellant Jaroch to the position of Assistant Chief Immigration Judge in EOIR's Buffalo office.[3] *Jaroch v. Department of Justice*, MSPB Docket No. DA-0752-25-0328-I-1, Initial Appeal File (Jaroch IAF), Tab 7 at 30.  Appellant Jaroch subsequently relocated to the agency's Houston office, holding the same position.  Jaroch IAF, Tab 4 at 13-14.

¶3    As immigration judges, the appellants conducted "proceedings for deciding the inadmissibility or deportability of an alien," 8 U.S.C. § 1229a(a)(1), which proceedings are "the sole and exclusive procedure for determining whether an alien may be admitted to the United States or . . . removed from the United States," 8 U.S.C. § 1229a(a)(3).  When conducting these proceedings, the appellants were empowered to "administer oaths; receive evidence; interrogate, examine, and cross-examine . . . witnesses"; "issue subpoenas"; and "sanction . . . any action or inaction in contempt of the judge's proper exercise of authority."  8 U.S.C. § 1229a(b)(1).  At the close of proceedings, the appellants issued decisions determining "whether an alien is removable from the United States."  8 U.S.C. § 1229a(c)(1)(A).

¶4    As immigration judges, the appellants acted as delegates of the Attorney General in cases before them.  8 C.F.R. § 1003.10(a).  In doing so, they exercised their independent judgment and discretion in conducting hearings and issuing decisions.  8 C.F.R. § 1003.10(b).  Their decisions were not subject to unlimited appellate review and could potentially become the final order of the United States if not appealed.  8 C.F.R. §§ 1003.1(b), 1241.1.  They also had authority to grant aliens a wide range of immigration benefits, including asylum. 8 C.F.R. § 1208.2(b).

---

[3] Appellant Jaroch was initially appointed to the position on September 26, 2021, for a period not to exceed 24 months.  Jaroch IAF, Tab 1 at 2.  On September 25, 2023, the Attorney General appointed appellant Jaroch to the same position on a permanent basis. Jaroch IAF, Tab 4 at 27.

**¶5**      On February 14, 2025, the Acting Director of EOIR informed both appellants that their employment was being terminated effective that day.  Jackler IAF, Tab 1 at 7; Jaroch IAF, Tab 1 at 7.  On February 20, 2025, appellant Jaroch timely appealed his termination to the Board.  Jaroch IAF, Tab 1.  On February 21, 2025, appellant Jackler timely appealed her termination to the Board.  Jackler IAF, Tab 1.

**¶6**      Before the administrative judge, the appellants' litigation proceeded on parallel and largely identical tracks.  The appellants argued that they met the requirements to qualify as employees under 5 U.S.C. § 7511, and thus were entitled to—but did not receive—the pretermination procedures set forth in 5 U.S.C. § 7513(b).  Jackler IAF, Tab 3 at 6-12; Jaroch IAF, Tab 4 at 6-12.  The agency argued that Article II of the U.S. Constitution authorized the Attorney General to remove individuals qualifying as inferior officers, such as the appellants, without restriction; and that the exercise of this authority abrogated otherwise applicable statutory removal protections.  Jackler IAF, Tab 23 at 6-20; Jaroch IAF, Tab 25 at 6-20.  The agency argued that the Board has jurisdiction to hear the appellants' removal appeals, but that section 7513 could not restrict the President of the United States' Article II authority to remove the appellants, and that the appellants were therefore at-will employees.  *Id.*  The agency argued that it thus had provided the appellants all the pretermination process they were due:  none.[4]  *Id.*

**¶7**      The Office of Personnel Management (OPM) notified the Board of its intent to exercise its statutory right to intervene in these appeals.  Jackler IAF,

---

[4] The agency initially argued that the Board lacks jurisdiction over the appeals because the Board has authority only to hear actions taken under specific statutes, including Title 5, and the agency took the removal action under constitutional, not statutory, authority.  Jackler IAF, Tab 5 at 5, 7-9; Jaroch IAF, Tab 7 at 6, 8-10.  Subsequently, the agency withdrew this argument and took the position that the Board has jurisdiction to hear the appeals.  Jackler IAF, Tab 23 at 6; Jaroch IAF, Tab 25 at 6.  However, the Board is not bound by litigants' concessions regarding jurisdiction; the issue of jurisdiction is always before the Board, and the Board has a duty to determine its jurisdiction in each case before it.  *Waldrop v. U.S. Postal Service*, 72 M.S.P.R. 12, 15 (1996).

Tab 16; Jaroch IAF, Tab 17.  OPM filed a separate brief in both appeals supporting the agency's position, arguing in pertinent part that Article II of the Constitution vests the full executive power in the President; that the President cannot fully "take Care that the Laws be faithfully executed" if he is unable to remove constitutional inferior officers at will; and that the Civil Service Reform Act (CSRA) cannot be read to preclude an Article II removal by the head of a Department.  Jackler IAF, Tab 22 at 5-14; Jaroch IAF, Tab 24 at 5-14.  The appellants contested the agency's and OPM's arguments regarding the effect of the Article II removals.  Jackler IAF, Tab 24 at 4-13; Jaroch IAF, Tab 26 at 4-13.

¶8    The administrative judge issued initial decisions finding jurisdiction and reversing the appellants' removals.  Jackler IAF, Tab 28, Initial Decision (Jackler ID); Jaroch IAF, Tab 30, Initial Decision (Jaroch ID).  The administrative judge found that the appellants' tenures at the agency qualified them as employees under 5 U.S.C. § 7511, and thus they were entitled to the procedures set forth in 5 U.S.C. § 7513 prior to their terminations.  Jackler ID at 2-5; Jaroch ID at 3-5. Because the agency concededly did not provide those procedures to the appellants, the administrative judge reversed their terminations and ordered them restored to employment.  Jackler ID at 2-5, 7-8; Jaroch ID at 3-5, 7-8.  Regarding the agency's and OPM's arguments that termination of inferior officers pursuant to Article II invalidates section 7513's removal protections, the administrative judge held that, as an administrative agency, the Board "has long recognized" that it lacks the authority to invalidate statutory provisions, and the administrative judge therefore declined to address the agency's and OPM's arguments.  Jackler ID at 6; Jaroch ID at 6-7.

¶9    The agency has filed petitions for review of the initial decisions. *Jackler v. Department of Justice*, MSPB Docket No. DA-0752-25-0330-I-1, Petition for Review (Jackler PFR) File, Tab 1; *Jaroch v. Department of Justice*, MSPB Docket No. DA-0752-25-0328-I-1, Petition for Review (Jaroch PFR) File, Tab 1.  The agency argues in both petitions for review that the administrative judge

erred in declining to consider its constitutional defense as an "as-applied challenge," which does not require that the Board overturn a statutory provision, but that it merely find its application invalid in particular circumstances.  Jackler PFR File, Tab 1 at 8-12; Jaroch PFR File, Tab 1 at 8-12.  The agency reiterated its agreement with the appellants that the Board has jurisdiction over their appeals. Jackler PFR File, Tab 1 at 8; Jaroch PFR File, Tab 1 at 8.  OPM exercised its statutory authority to intervene in the petitions for review and attached and incorporated its briefs before the administrative judge for consideration by the Board.  Jackler PFR File, Tab 10; Jaroch PFR File, Tab 10.

## ANALYSIS

### The Board has authority to consider constitutional challenges as part of its jurisdictional analysis.

¶10    We begin by clarifying our authority to address constitutional challenges as part of our jurisdictional analysis.  We have previously held that the Constitution is not an independent source of jurisdiction, and as such we lack jurisdiction to evaluate a constitutional challenge if we do not otherwise have jurisdiction over the appeal.  *Riddick v. Department of the Navy*, 41 M.S.P.R. 369, 371-72 (1989) ("[W]e find that constitutional allegations of due process and equal protection do not confer upon the Board an independent jurisdictional basis to review matters outside our statutory jurisdiction.").  This remains true for constitutional challenges to *actions* that are appealable to the Board—we may adjudicate allegations that an action was unconstitutional only if we have jurisdiction over the appeal pursuant to statute or regulation.  However, with respect to constitutional challenges that themselves relate to our jurisdiction over certain appeals, we must be able to consider such challenges to determine whether we have jurisdiction over those appeals.

¶11    As noted, the agency argues that the administrative judge should have considered its constitutional arguments, which the agency explains are threefold:

(1) the Board has authority to consider whether the procedural and substantive protections afforded to employees under section 7513, as applied in this particular case, are consistent with constitutional requirements (specifically Article II exercise by an agency head), Jackler PFR File, Tab 1 at 8-12; Jaroch PFR File, Tab 1 at 8-12; (2) the appellants were inferior officers removable at will under the Constitution, and thus lacked the property interest in their employment that otherwise would attach via section 7513(b), Jackler PFR File, Tab 1 at 13-22; Jaroch PFR File, Tab 1 at 13-22; and (3) the Board must rule on these issues to comply with its statutory mandate to issue a complete decision on all legal issues raised by the parties.  Jackler PFR File, Tab 1 at 8-12; Jaroch PFR File, Tab 1 at 8-12.  The appellants oppose these arguments.  Jackler PFR File, Tab 3 at 6-9, Tab 7 at 8-22; Jaroch PFR File, Tab 3 at 6-9, Tab 7 at 8-22.  We consider them carefully below.

¶12    In support of its argument, the agency submitted a September 26, 2025 memorandum opinion from the Department of Justice's Office of Legal Counsel (OLC).  *The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding*, 49 Op. O.L.C. __ (Sep. 26, 2025),  https://www.justice.gov/olc/media/1415466/dl  (last visited Mar. 20, 2026) (OLC Opinion).  In its memorandum, OLC opines, as pertinent to the arguments made by the agency in this petition for review,[5] that the Board has

---

[5] Although the OLC opinion appears to diverge from Board precedent regarding facial constitutional challenges, the agency, on petition for review, insists that it challenges only the administrative judge's rejection of its as-applied constitutional challenge. Jackler PFR File, Tab 1 at 8 ("But while the Agency recognizes the Board's longstanding view that it lacks 'authority to determine the constitutionality of statutes,' the Agency's argument does not require such a determination.  Rather, the Agency's position requires only that the Board consider its constitutional arguments regarding the '*application* of a statute.'") (internal citation omitted; emphasis in original); Jackler PFR File, Tab 13 at 10-11 ("[C]ontrary to Appellant's claims, the Agency did not request that the Board invalidate the CSRA or any other statute . . . .  As consistently held by the Agency, the Board need only determine whether the CSRA's principles and protections would be unconstitutional *as applied to Appellant*, rather than whether any CSRA provision is facially unconstitutional.") (emphasis in original); Jaroch PFR File, Tab 1 at 8, Tab 13

authority to consider "as-applied" constitutional arguments, such as the argument made by the agency in this appeal. *Id.*  The agency argues that the OLC opinion is the legal position of the Executive Branch and thus is binding upon the Board. Jackler PFR File, Tab 2 at 6-7; Jaroch PFR File, Tab 2 at 6-7.  The appellants dispute the agency's contention about the binding nature of the OLC opinion and the opinion's characterization of the agency's argument as an "as-applied" constitutional argument, but they do not object to the Board considering it as supplemental authority.  Jackler PFR File, Tab 3 at 6-9, Tab 7 at 8-22; Jaroch PFR File, Tab 3 at 6-9, Tab 7 at 8-22.

¶13    We need not address the parties' contentions about the OLC opinion because, as explained below, we resolve the dispositive issues through application of long-established Board case law.  Additionally, we note that to the extent the agency cites the OLC opinion in support of its arguments that the Board may resolve as-applied constitutional challenges and must resolve all dispositive legal issues raised in an appeal, the OLC opinion recites Board case law and regulations for these propositions.  OLC Opinion at *4-*9.

The Board has the authority to consider the agency's constitutional defense as an as-applied challenge.

¶14    The Board has held that it lacks authority to adjudicate the constitutionality of statutes.  *Special Counsel v. Gallagher*, 44 M.S.P.R. 57, 73 (1990).  However, the Board does have authority to adjudicate a constitutional challenge to an agency's application of a statute.  *May v. Office of Personnel Management*, 38 M.S.P.R. 534, 538 (1988).  Although we heed the U.S. Supreme Court's caution that "the distinction between facial and as-applied challenges is not so well defined . . .[,]" *Citizens United v. Federal Election Commission*, 558 U.S. 310, 331 (2010), we hold that, in this appeal, the agency has brought an as-applied

---

at 10-11.  Thus, the agency waived any facial constitutional challenge it might have maintained, and such challenge is not before us.  5 C.F.R. § 1201.114(b); *see McCoy v. U.S. Postal Service*, 108 M.S.P.R. 160, ¶ 16 n.4 (2008) (the Board will not consider issues not raised in a petition for review).

challenge within our authority to address. Indeed, the agency expressly disclaims any intention of presenting a facial challenge, arguing that it challenges only the constitutional applicability of section 7513 removal protections *to the appellants*, not the validity of the larger statutory scheme. Jackler PFR File, Tab 1 at 8, Tab 13 at 11-12; Jaroch PFR File, Tab 1 at 8; Tab 13 at 11-12.

¶15    The appellants argue that, despite this framing, the agency in fact presents a facial challenge to the statutory removal provisions, because it seeks to invalidate statutory removal protections as incompatible with the Constitution. Jackler PFR File, Tab 7 at 10; Jaroch PFR File, Tab 7 at 10. The administrative judge agreed with the appellants, holding that the agency's argument presented a facial and not an as-applied challenge. Jackler ID at 5-6; Jaroch ID at 5-6. We disagree.

¶16    The agency does not contend that Article II of the Constitution renders section 7513 removal protections invalid as a matter of law or in all circumstances. The agency argues only that the removal protection provisions cannot be constitutionally applied to the appellants, whom the agency argues are inferior officers under the Constitution, because doing so would impinge on the President's authority under Article II of the Constitution to manage the Executive Branch. The agency's argument hinges on the nature of the appellants' positions (an issue we address below) and does not apply to the broad swath of section 7513-protected employees who are not inferior officers.

¶17    The closest analogue to this situation arises out of recent, related Article II litigation regarding the Appointments Clause. In *Lucia v. Securities and Exchange Commission,* 585 U.S. 237 (2018), and subsequent cases, parties challenged the validity of various Executive Branch adjudicatory officials' appointments, arguing that they were invalid under the Appointments Clause of the Constitution. *See, e.g.*, *Brooks v. Kijakazi*, 60 F.4th 735, 739-44 (4th Cir. 2023) (challenging the appointment status of an administrative law judge (ALJ) employed by the Social Security Administration); *Joseph Forrester Trucking v. Director,*

*Office of Workers' Compensation Programs*, 987 F.3d 581, 585 (6th Cir. 2021) (challenging the appointment status of a Department of Labor ALJ).  Although the adjudicatory officials at issue in those cases all operated under the same statute and were appointed under the same statutory authority, courts did not treat these Appointments Clause challenges as facial challenges to the entire statutory adjudication structure of an agency; instead, they treated them as as-applied challenges to the appointment of the particular individual official charged with overseeing the adjudication at issue.  *Joseph Forrester Trucking*, 987 F.3d at 591. When courts found violations, they ordered remedies for the individual cases at issue; they did not invalidate statutory provisions.  *See, e.g.*, *Cody v. Kijakazi*, 48 F.4th 956, 963 (9th Cir. 2022) (ordering new hearing for violation of the Appointments Clause).

¶18    The same is true here.  Nowhere does the agency (or OPM) argue that section 7513's removal protections are invalid on their face for all Federal employees.  The agency argues only that the specific nature of the appellants' positions and duties elevate them to a status where these protections cannot constitutionally be applied to them.  Jackler PFR File, Tab 13 at 11-12; Jaroch PFR File, Tab 13 at 11-12.  This is a classic as-applied challenge.

¶19    The appellants argue that the agency's challenge is more similar to one addressed in a recent Board decision, *Davis-Clewis v. Department of Veterans Affairs*, 2024 MSPB 5.  This comparison is inapposite.  In *Davis-Clewis*, the appellant challenged not just the particular administrative judge adjudicating her appeal, but instead the removal protections for *all* of the Board's administrative judges, arguing that the statutory removal protections provided to Board administrative judges made its entire adjudication structure constitutionally deficient.  *Davis-Clewis*, 2024 MSPB 5, ¶7.  Therefore, the appellant in *Davis-Clewis* raised a facial challenge, and the Board's holding in *Davis-Clewis* that it could not adjudicate the appellant's constitutional challenge in that case does not support the appellants' position here.

¶20    Accordingly, we reverse the initial decisions' holdings on this issue and determine that the agency's constitutional challenge to the appellants' section 7513 protections was within the Board's adjudicatory authority as an as-applied challenge.

The Constitution abrogates the application of section 7513 to inferior officers such as the appellants, and therefore, the Board lacks jurisdiction over these appeals.

¶21    We now address the agency's and OPM's specific constitutional challenges in these appeals:  whether as applied to the appellants, Article II abrogates the removal protections 5 U.S.C. § 7513 otherwise provides to employees covered under 5 U.S.C. § 7511, and therefore deprives the Board of jurisdiction over adverse actions brought under section 7513(d).  We hold that it does.

¶22    The Supreme Court first addressed the legality of removal restrictions for Executive Branch officers in *U.S. v. Perkins*, 116 U.S. 483 (1886).  There, the Court held that "[w]e have no doubt that when congress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of removal as it deems best for the public interest."  *Id.* at 485.  In other words, the Court held that Congress could establish removal restrictions for inferior officers in the Executive Branch.  *Id.*  Approximately 40 years later, the Court clarified that such removal restrictions could not, however, require the President to obtain Senate approval for such removals; the power to remove a constitutional officer in the Executive Branch remains within the exclusive domain of the President.  *Myers v. United States*, 272 U.S. 52, 176 (1926).  Another 60 years later, as pertinent here, the Court further clarified that the standard for whether inferior officers' statutory removal restrictions are constitutional is whether the limitation deprives the President of control over the official such as to interfere impermissibly with his constitutional obligation to ensure faithful execution of the laws.  *Morrison v. Olson*, 487 U.S. 654, 685-93 (1988) (permitting removal restrictions for independent counsel, whose position had limited jurisdiction and tenure, combined with lack of policymaking or significant

administrative authority).    The Court recently reaffirmed this holding in *Seila Law, L.L.C. v. Consumer Financial Protection Bureau*, 591 U.S. 197, 218 (2020) (observing that at-will removal should be considered the default position for officers in the Executive Branch, except for "inferior officers with limited duties and no policymaking or administrative authority . . . ."), and *Kennedy v. Braidwood Management, Inc.*, 606 U.S. 748, 762-64 (2025) (discussing removability at will as "the default presumption" for inferior officers in the Executive Branch").

¶23    It is in view of this full landscape that we consider the agency's challenge to the applicability of the removal restrictions contained at 5 U.S.C. § 7513 to the appellants—and specifically, consider this challenge as it pertains to our jurisdiction.  While the agency asserts that the appellants met the definition of "employee" under 5 U.S.C. § 7511 and thus were entitled to appeal certain adverse actions to the Board, Jackler IAF, Tab 23 at 5-6; Jaroch IAF, Tab 25 at 5-6, the Board nevertheless must satisfy itself that it has jurisdiction over these appeals. *Waldrop v. U.S. Postal Service*, 72 M.S.P.R. 12, 15 (1996).

¶24    The agency argues that the Board lacks authority to review the Attorney General's exercise of Article II authority to remove inferior officers such as the appellants.  Jackler IAF, Tab 23 at 10-20; Jaroch IAF, Tab 25 at 10-20.  For the reasons set forth below, and in consideration of the particular duties and authorities of these appellants, we agree.

¶25    As established in *Myers* and reiterated in *Seila Law* and *Braidwood Management, Inc.*, the default rule is that the President possesses unfettered removal authority over certain constitutional officers in the Executive Branch. *Myers*, 272 U.S. at 176; *Seila Law*, 591 U.S. at 213-18; *Braidwood Management, Inc.*, 606 U.S. at 762-64.  Per the Supreme Court, no entity, including Congress or the Board, may place restrictions on such authority, nor may they subject that decision to subsequent review, for doing so would infringe upon the President's ability to faithfully execute the laws.  *Id.*  While the Court has allowed exceptions

for certain officers, it has generally emphasized that any restriction imposed by Congress upon the President's authority to remove officers is an unconstitutional interference with the President's constitutional obligation to ensure faithful execution of the laws. *Morrison*, 487 U.S. at 685-93. Accordingly, for any removal taken pursuant to Article II authority against an individual subject to at-will removal under *Perkins/Morrison/Seila Law*, the Constitution prohibits the Board from reviewing any aspect of the removal, including whether the removal was taken for the efficiency of the service, as well as whether the proper pre-removal procedures were provided, because doing so would impermissibly interfere with the President's Article II removal authority. Thus, for any individual meeting these criteria, the Board necessarily lacks jurisdiction over an appeal of an Article II-based removal.

¶26    However, notwithstanding the above discussion, the Supreme Court made clear in *Seila Law* that the President's Article II removal authority does not necessarily invalidate removal restrictions for all inferior officers in the Executive Branch. Rather, the President's Article II removal may still be restricted for individuals meeting the criteria described in *Seila Law*—those with limited duties and no policymaking or administrative authority. *Seila Law*, 591 U.S. at 218. Thus, to determine whether the agency is correct with respect to the appellants, we must answer two separate but related questions. First, we must determine whether the appellants qualify as inferior officers under the Constitution. If they do, then as *Perkins*, *Morrison*, and *Seila Law* teach, we must determine whether they are inferior officers with limited duties and no policymaking or administrative authority. If the second question is answered in the affirmative, then their statutory removal restrictions are constitutionally permissible, and we have jurisdiction to review the agency's removal actions. However, if they have more than limited duties, or some level of policymaking or administrative authority, then the exceptions from *Perkins* and *Morrison* do not apply, the restrictions contained

within section 7513 cannot be constitutionally applied to them, and we lack jurisdiction to review the agency's removal actions.

*The appellants were inferior officers under the Constitution.*

¶27    In *Lucia*, and previously in *Freytag v. Commissioner*, 501 U.S. 868 (1991), the Supreme Court found similar types of non-Article III adjudicatory officials to be inferior officers. *Lucia*, 585 U.S. at 247-50; *Freytag*, 501 U.S. at 880-82. The appellants' immigration judge positions share many of the same pertinent characteristics and duties as the ALJs in *Lucia* and the special trial judges (STJs) in *Freytag*. Like those positions, the appellants' positions were continuing and permanent. Jackler IAF, Tab 5 at 28; Jaroch IAF, Tab 7 at 30. As immigration judges, the appellants conducted proceedings "for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). In carrying out these proceedings, the appellants must "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). The appellants may also issue subpoenas for the attendance of witnesses and presentation of evidence and can sanction by civil money penalty any action in contempt of their proper exercise of authority under the law. *Id.* Finally, at the end of a proceeding, the appellants issue a decision as to whether an alien is removable from the United States. 8 U.S.C. § 1229a(c)(1)(A). Thus, in conducting adversarial inquiries, immigration judges have duties and powers equivalent to those of SEC ALJs and U.S. Tax Court STJs. *See Lucia*, 585 U.S. at 248; *Freytag*, 501 U.S. at 880-82. Accordingly, because SEC ALJs and Tax Court STJs are considered inferior officers, we find that the appellants also qualify as inferior officers. *See Duenas v. Garland*, 78 F.4th 1069, 1072-74 (9th Cir. 2023) (finding immigration judges to be inferior officers).

*The appellants exercised significant duties, including policymaking
and administrative authority.*

¶28    With the question of the appellants' officer status settled, we must now determine whether they meet the *Perkins/Morrison/Seila Law* exception

allowing removal restrictions for inferior officers who have only limited duties and no policymaking or administrative authority.  We conclude that they do not meet this exception because they exercised significant policymaking and administrative authority.   As immigration judges, the appellants were charged with making decisions regarding the inadmissibility or deportability of an alien.   8 U.S.C. § 1229a(a)(1).   By regulation, they exercised their "independent judgment and discretion and may take any action consistent with [their] authorities under the Act and regulations that is necessary or appropriate for the disposition or alternative resolution of" cases before them—including conducting hearings and exercising the adjudicative authorities described above.  8 C.F.R. § 1003.10(b).  While it is true that their decisions were subject to review by both the Board of Immigration Appeals and the Attorney General, 8 C.F.R. §§ 1003.1(h)(1)(i), 1003.10(c), and that only the Board and the Attorney General are empowered to issue binding, precedential decisions in immigration decisions, 8 C.F.R. § 1003.1(g)(2), their decisions could still become the final decisions of the United States if not appealed. 8 C.F.R. § 1241.1.  Additionally, even if an alien does appeal a decision, that right to appeal may be limited in scope.   Thus, many circumstances exist where an immigration judge's decision will remain the final decision of the United States. 8 C.F.R. § 1003.1(b).[6]

¶29    Moreover, an immigration judge's decisions can have a major impact on a significant area of our nation's domestic and foreign policy.  As the Supreme Court stated in *Arizona v. United States*, "[i]mmigration policy can affect trade, investment, tourism, and diplomatic relations for the entire Nation, as well as the perceptions and expectations of aliens in this country who seek the full protection of its laws . . . . Perceived mistreatment of aliens in the United States may lead to

---

[6] We note that in *United States v. Arthrex*, 594 U.S. 1, 26 (2023), the Supreme Court allowed administrative patent judges (APJs) to retain for-cause removal protections as inferior officers provided that all APJ decisions are subject to review by the Director of the U.S. Patent and Trademark Office.   The limited and conditional review of immigration judge decisions makes this case distinguishable from *Arthrex*.

harmful reciprocal treatment of American citizens abroad." 567 U.S. 387, 395 (2012). Essentially, the appellants as immigration judges wielded vast administrative authority in an area of significant consequence, and the decisions entrusted to their discretion can "involve policy choices that bear on this Nation's international relations." *Id.* at 396. The authority provided to them thus placed them in a position that had the potential to dramatically impact the rights of those inside our borders, as well as the nation's standing in the world. Their positions are not comparable to the independent prosecutor in *Morrison*, who exercised limited jurisdiction and had no ability to affect policy. Thus, the appellants cannot fit within the exception for inferior officers established in *Morrison* and *Perkins*, and reaffirmed by *Seila Law* and *Braidwood*, and the Constitution requires that they be removable at will.

¶30 Because we find that the appellants do not meet the requirements necessary to allow removal restrictions for their positions, we find that 5 U.S.C. § 7513 cannot be applied to them, as doing so would unconstitutionally infringe upon the President's ability to faithfully execute the laws. We therefore must dismiss these appeals for lack of jurisdiction.

¶31 Our holding in this case does not mean that an agency can deprive the Board of jurisdiction over an adverse action merely by invoking Article II authority. However, if we find that a particular employee is subject to at-will Article II removal, we must dismiss their appeal for lack of jurisdiction because 5 U.S.C. § 7513, including the grant of Board jurisdiction in section 7513(d), cannot constitutionally apply to that employee. An individual who otherwise meets the definition of an employee under 5 U.S.C. § 7511 is entitled to come before the Board for a determination of whether the section 7513 protections apply.

We deny the agency's request to vacate the interim relief orders.

¶32 The agency requests that we vacate the interim relief awarded to appellants by the initial decisions. Jackler PFR File, Tab 1 at 12; Jaroch PFR File, Tab 1 at 12. We decline to do so. Under 5 U.S.C. § 7701(b)(2), an initial decision

will provide appropriate interim relief to a prevailing appellant "effective upon the date of the initial decision and remaining in effect until the date of the final order of the Board on any petition for review, unless the judge determines that the granting of interim relief is not appropriate."  5 C.F.R. § 1201.111(c)(1).  The agency may decline to return the appellants to their place of employment if it determines that the return or presence of the appellants will be unduly disruptive to the work environment but must provide pay and benefits.  *Id.*  The initial decisions here ordered interim relief consistent with their reversal of the appellants' removals. Jackler ID at 8; Jaroch ID at 8-9.

¶33    The agency certified that it properly complied with the interim relief order by reinstating the appellants to their positions of record effective the date of the initial decisions, maintaining them in a non-duty status based on its determination that returning them to duty would cause an undue disruption to the work environment, and paying them appropriate pay and benefits from the date of the initial decisions.  Jackler PFR File, Tab 1 at 24; Jaroch PFR File, Tab 1 at 24.

¶34    As set forth in the applicable statute and regulation, the agency's interim relief obligations automatically terminate upon the issuance of this final Opinion and Order.  5 U.S.C. § 7701(b)(2)(A); 5 C.F.R. § 1201.111(c)(1); *see* Jackler ID at 8; Jaroch ID at 8-9.  Nothing in the statute or the regulation authorizes the Board to vacate properly awarded interim relief.  *Cf. Bruneau v. Department of the Navy*, 73 M.S.P.R. 308, 311 (1997) (vacating interim relief as improperly granted where the agency had already, independent of interim relief, returned the appellant to duty and restored his pay, compensation, and benefits).  Indeed, the purpose of interim relief is to maintain a prevailing appellant in a financial and employment status that permits them to await the outcome of the Board's final order, whether or not the Board ultimately affirms the initial decision.  Interim relief thus is distinct from back pay, which restores appellants to the status quo ante before the agency action at issue, and so—unlike interim relief—back pay is retroactive to the date of the reversed agency action.  *See* 5 U.S.C. § 7701(b)(2)(C)

(providing interim relief does not require payment of back pay prior to issuance of a final decision); 5 C.F.R. § 772.102.  The agency has not argued that the interim relief awards here were improper for any reason other than that the agency disagreed with the initial decisions' reversal of the removal actions, Jackler PFR File, Tab 1 at 12; Jaroch PFR File, Tab 1 at 12, and we find that the interim relief awards were consistent with statute, regulations, and our precedent.  *E.g.*, *Stewart v. Department of Transportation*, 2023 MSPB 18, ¶ 7.

## ORDER

¶**35**    For the foregoing reasons, we dismiss these appeals for lack of jurisdiction.  This is the final decision of the Merit Systems Protection Board in these appeals.  Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[7] Since the issuance of the initial decisions in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in

20

part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

22

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


_Gina K. Grippando_

Gina K. Grippando
Clerk of the Board
Washington, D.C.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

Electronic Service          Jackler and Jaroch Consolidation
                            Served on email address registered with MSPB

Appellant Representative

Electronic Service          Robert Erbe
                            Served on email address registered with MSPB

Appellant Representative

Certified Mail              Nathaniel Zelinsky
                            Washington Litigation Group 5335 Wisconsin Ave. NW, Suite 440
                            Washington, District of Columbia 20015

Agency Representative

Electronic Service          Lourdes Guillaume
                            Served on email address registered with MSPB

Agency Representative

Electronic Service          Robert Ley
                            Served on email address registered with MSPB

Agency Representative

Electronic Service   Matthew Pizzo
Served on email address registered with MSPB


Statutory Intervenor

Electronic Service   Patrick Ehler
Served on email address registered with MSPB


Consolidated Appellant

Electronic Service   Megan Jackler
Served on email address registered with MSPB


Consolidated Appellant

Electronic Service   Brandon Jaroch
Served on email address registered with MSPB


Statutory Intervenor

Electronic Service   Jordan Perkins
Served on email address registered with MSPB


| 03/20/2026 | Dinh Chung |
|---|---|
| (Date) | Dinh Chung |
| | Case Management Specialist |