# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAURENE COMEY,<br><br>          Plaintiff,<br><br>     v.<br><br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.<br><br>          Defendants. | Civil Action No.<br>1:25-cv-07625 (JMF)<br><br>Honorable Jesse M.<br>Furman |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

---

TODD BLANCHE
Acting Attorney General

BRETT A. SHUMATE
Assistant Attorney General

TYLER BECKER
Counsel to the Assistant Attorney General

JOHN A. SARCONE III
First Assistant United States Attorney
Northern District of New York

Karen Folster Lesperance
Assistant United States Attorney
          *Acting Under Authority Conferred*
          *by 28 U.S.C. §515*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

LEGAL STANDARD ................................................................................................ 3

ARGUMENT ............................................................................................................. 4

    I.    Plaintiff's Removal Was Lawful Because She Was Removable at
        Will. .................................................................................................................. 4

        A. Comey was Removable at Will Under Article II of the
            Constitution. ................................................................................... 5

        B. Plaintiff was Removable at Will Under 28 U.S.C. § 542 .................. 14

        C. Plaintiff's Removal Under Article II and 28 U.S.C. § 542
            Qualifies as Removal for "Efficiency of the Service" Under
            the CSRA .......................................................................................... 19

    II.    Defendants Are Entitled to Judgment on All of Plaintiff's Claims
        Because She Was Removable At-Will ................................................... 21

        A.    No Article I, Article II, or Statutory Violation (Counts 1, 2
              & 3) ................................................................................................. 21

        B.    Plaintiff's Fails to State a First Amendment Claim (Count
              4) .................................................................................................... 22

        C.    As an At-Will Employee, Plaintiff Was Afforded All the
              Process She was Due, and Her Remaining Due Process
              Allegations Fail (Counts 5, 6, 7 & 8) .......................................... 24

        D.    Plaintiff is Not Entitled to a Declaratory Judgment
              (Count 9) ...................................................................................... 29

        E.    Plaintiff Is Not Entitled to Mandamus (Count 10) .................... 29

CONCLUSION .......................................................................................................... 32

**TABLE OF AUTHORITIES**

Cases

*Adler v. Pataki,*
　185 F.3d 35 (2d Cir. 1999)...................................................................................23

*Allied Chem. Corp. v. Daiflon, Inc.,*
　449 U.S. 33 (1980) ...............................................................................................30

*Am. Hosp. Ass'n v. Burwell,*
　812 F.3d 183 (D.C. Cir. 2016) ............................................................................29

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009) ............................................................................................. 3

*Bd. of Regents of State Colls. v. Roth,*
　408 U.S. 564 (1972) .............................................................................................24

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007) ............................................................................................. 3

*Blind of Del. Cnty. Valley, Inc. v. Regan,*
　709 F.2d 1521 (D.C. Cir. 1983) ..........................................................................29

*Cheney v. U.S. District Court,*
　542 U.S. 367 (2004) .............................................................................................31

*Ciambriello v. County of Nassau,*
　292 F.3d 307 (2d Cir. 2002)................................................................................25

*DCH Reg. Med. Ctr. v. Azar,*
　925 F.3d 503 (D.C. Cir. 2019) ............................................................................21

*Donato v. Plainview-Old Bethage Cent. Sch. Dist.,*
　96 F.3d 623 (2d Cir. 1996)...........................................................................25, 27

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council,*
　485 U.S. 568 (1988) .............................................................................................16

*Esparraguera v. Dep't of the Army,*
　101 F.4th 28 (D.C. Cir. 2024).............................................................................25

*Free Enter. Fund v. Pub. Acct. Oversight Bd.,*
　561 U.S. 477 (2010) .................................................................................5, 6, 7, 8

*Giglio v. United States*,
  405 U.S. 150 (1972) ................................................................................14

*Gosnell v. Dep't of Justice*,
  69 F.3d  (Fed. Cir. 1995) .......................................................................16

*Hamlett v. Dep't of Justice*,
  90 M.S.P.R. 674 (2002)...................................................................... 12, 17

*Hennen, Ex parte*
13 Pet. 230 (1839) ...................................................................................30

*In re Bluewater Network*,
  234 F.3d 1305 (D.C. Cir. 2000) .............................................................30

*In re Cheney*,
  406 F.3d 723 (D.C. Cir. 2005) ...............................................................30

*In re Columbia Tuition Refund Action*,
  523 F. Supp. 3d 414 (S.D.N.Y. 2021).....................................................4

*In re Grand Jury Investigation*,
  315 F. Supp. 3d 602 (D.D.C. 2018) .........................................................5

*In re Grand Jury Investigation*,
  916 F.3d 1047 (D.C. Cir. 2019) ...............................................................5

*In re Sealed Case*,
  838 F.2d 476 (D.C. Cir. 1988) .................................................................8

*Jenkins v. Tyler*,
  167 F. Supp. 2d 652 (S.D.N.Y. 2001) ....................................................23

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) ................................................................................18

*Kennedy v. Braidwood Management*,
  606 U.S. 748 (2025) .......................................................................... *passim*

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)................................................................. 3, 4

*Langeman v. Garland*,
  88 F.4th 289 (D.C. Cir. 2023)................................................................24

*Marbury v. Madison*,
  1 Cranch 137 (1803) ...............................................................................30

*Me. Cmt'y Health Options v. United States*,
   590 U.S. 296 (2020) ................................................................................................ 17

*Morrison v. Olson*,
   487 U.S. 654 (1988) ............................................................................................. 8, 11

*Morton v. Mancari*,
   417 U.S. 535 (1974) ................................................................................................ 16

*Myers v. United States*,
   272 U.S. 52 (1926) ................................................................................................. 6, 7

*NLRB v. SW General*,
   580 U.S. 288 (2017) ................................................................................................ 16

*NRC v. Texas*,
   605 U.S. 665 (2025) ........................................................................................... 21, 22

*Nyunt v. Chairman, Broad. Bd. of Governors*,
   589 F.3d 445 (D.C. Cir. 2009) ............................................................................... 22

*Paul v. Davis*,
   424 U.S. 693 (1976) ................................................................................................ 27

*Ponzi v. Fessenden*,
   258 U.S. 254 (1922) .................................................................................................. 8

*Printz v. United States*,
   521 U.S. 898 (1997) ............................................................................................... 5, 6

*Russello v. United States*,
   464 U.S. 16 (1983) ............................................................................................. 20, 21

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020) .......................................................................................... *passim*

*Sellers v. M.C. Floor Crafters, Inc.*,
   842 F.2d 639 (2d Cir. 1988) ..................................................................................... 4

*Severino v. Biden*,
   71 F.4th 1038 (D.D.C. 2023) .............................................................................. 16, 18

*Shurtleff v. United States*,
   189 U.S. 311 (1903) ........................................................................................... 12, 14

*Skanska USA Building Inc. v. Regeneron Pharms. Inc.*,
   No. 23-cv-8418, 2024 WL 3274731 (S.D.N.Y. July 1, 2024) ................................. 28

iv

*Tapinekis v. Pace Univ.*,
22-1058-CV, 2024 WL 2764146 (2d Cir. May 30, 2024) ......................................... 4

*Trump v. United States*,
603 U.S. 593 (2024) ................................................................................... *passim*

*Trump v. Vance*,
591 U.S. 786 (2020) ............................................................................................ 5

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) ...................................................................................... 26

*United States v. Forman*,
71 F.3d 1214 (6th Cir. 1995) ............................................................................ 9

*United States v. Duell*,
172 U.S. 576 (1899) ......................................................................................... 31

*United States v. Mirabel*,
98 F.4th 981 (9th Cir. 2024)............................................................................ 10

*United States v. Nixon*,
418 U.S. 683 (1974) .................................................................................... 9, 10

*United States v. Texas*,
599 U.S. 670 (2023) .................................................................................... 9, 10

*United States v. Yildiz*,
355 F.3d 80 (2d Cir. 2004).......................................................................... 10, 13

*Wilbur v. U.S. ex rel. Barton*,
46 F.2d 217 (D.C. Cir. 1930) ........................................................................... 6

*Wilcox v. Jackson*,
38 U.S. (13 Pet.) 498 (1839) ............................................................................ 7

*Windsor v. The Tennessean*,
719 F.2d 155. (6th Cir. 1983) ..................................................................... 15, 25

*Yale New Haven Hosp. v. Becerra*,
56 F.4th 9 (2d Cir. 2022) ............................................................................... 21

*Yifrach v. United States*,
169 Fed. Cl. 33 (Ct. Fed. Cl. 2024)................................................................... 9

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S 579 (1952). .................................................................................... 5, 12

*Zynger v. Dep't of Homeland Sec.*,
  615 F. Supp. 2d 50 (E.D.N.Y. 2009) ........................................................................ 25

*Zynger v. Dep't of Homeland Sec.*,
  370 F. App'x 253 n.10 (2d Cir. 2010) ...................................................................... 25

Constitutions

U.S. Const., art. II ............................................................................................... 5, 6

Statutes

5 U.S.C. § 7511(a) ...................................................................................................... 15

5 U.S.C. § 7513(a) ............................................................................................... *passim*

5 U.S.C. § 7543(a) ...................................................................................................... 20

28 U.S.C. §451 ............................................................................................................. 29

28 U.S.C. §515 ...................................................................................................... 32, 33

28 U.S.C. § 541(c) ......................................................................................................... 7

28 U.S.C. § 542 ................................................................................................... *passim*

28 U.S.C. § 542(a) ................................................................................................ 7, 8, 14

28 U.S.C. § 542(b) .............................................................................................. *passim*

28 U.S.C. § 547 ............................................................................................................. 8

28 U.S.C. § 1361 ......................................................................................................... 29

Rules

Fed. R. Crim. P. 1(b)(1)(B) .......................................................................................... 9

Fed. R. Crim. P. 4 ........................................................................................................ 9

**INTRODUCTION**

Plaintiff Maurene Comey challenges her July 2025 removal from her position as an Assistant United States Attorney for the Southern District of New York. The Department of Justice's termination of Plaintiff's employment was a lawful exercise of removal power under Article II of the Constitution, which allows the President, as well as Heads of Departments and other officials employing the President's executive power, to remove without cause officials who exercise preclusive and conclusive executive power on a delegated basis. Assistant United States Attorneys exercise the President's "conclusive and preclusive" executive power when they engage in prosecutorial activities.

Moreover, Congress has by statute explicitly authorized the Attorney General to remove Assistant United States Attorneys. 28 U.S.C. § 542(b). Specifically, that provision states that "[e]ach assistant United States Attorney is subject to removal by the Attorney General." The statute contains no restrictions on the Attorney General's removal powers.

Plaintiff asserts that she was not removable at-will under Article II with no mention of the Attorney General's authority under 28 U.S.C. § 542(b). Moreover, Plaintiff relies on the protections of the Civil Service Reform Act of 1978 ("CSRA") to argue that she could be removed only "for cause," and she argues that limitation on removal is constitutional under Article II. The CSRA, however, does not override the Attorney General's specific removal authority at § 542(b), and cannot be read to

1

preclude a removal of Assistant United States Attorneys like Plaintiff who exercise the President's "preclusive and conclusive" executive power.

Because Plaintiff's removal at the direction of the Attorney General was a lawful exercise of the executive's removal power, Defendants are entitled to judgment on all of Plaintiff's claims.

## BACKGROUND

Maurene Comey worked for the Department of Justice as an Assistant United States Attorney (AUSA) in the U.S. Attorney's Office (USAO) for the Southern District of New York from November 2015 until her termination in July 2025. Complaint, ECF. No 1 ("Compl.") at ¶¶ 24, 47. In that role, she exercised core executive functions, prosecuting and supervising hundreds of criminal cases on behalf of the United States, including some of the office's highest profile cases. Compl. ¶¶ 2, 25, 26, 36, 55; Answer, ECF No. 63, ¶¶ 2, 25, 26, 36, 55.

On July 16, 2025, then-Attorney-General Pamela J. Bondi directed that Ms. Comey be removed from her position as an AUSA pursuant to Article II of the United States Constitution and the laws of the United States. Answer ¶¶ 14, 15. At the direction of the Office of the Attorney General, Francey Hakes, the Director of the Executive Office for United States Attorneys (EOUSA), drafted and signed a memo to Ms. Comey notifying her of her removal from federal service effective immediately. Answer ¶ 14; Compl. ¶ 47; Dkt. #1-1. The memo was sent to Ms. Comey by email the same day. Compl. ¶ 47. On May 26, 2026, Acting Attorney General Todd Blanche ratified the former Attorney General's decision to remove Ms. Comey from federal

2

service pursuant to 28 U.S.C. § 542(b) and Article II of the United States Constitution. Answer ¶¶ 14, 15, 16, Ex. A.

Plaintiff contends that she was removed because she is the daughter of former FBI Director James B. Comey, or because of her actual or perceived political beliefs and affiliations. She alleges that her removal runs afoul of constitutional separation of powers principles and violates the Administrative Procedure Act and her First and Fifth Amendment rights. Compl. ¶¶ 87-118. She also brings an *ultra vires* claim, seeks a declaratory judgment, and requests mandamus relief. Compl. ¶¶ 94-96, 119-124. For the reasons discussed below, each of these claims fail as a matter of law.

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is subject to the same legal standards as a Rule 12(b)(6) motion to dismiss. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). A court must assume the truth of all facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *See id.* To survive a motion for judgment on the pleadings, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

3

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The Court may consider in connection with a Rule 12(c) motion the defendants' answer and documents cited in and attached thereto. *See, e.g., In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 425 (S.D.N.Y. 2021), *aff'd sub nom. Tapinekis v. Pace Univ.*, No. 22-1058-CV, 2024 WL 2764146 (2d Cir. May 30, 2024) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

**ARGUMENT**

## I.   Plaintiff's Removal Was Lawful Because She Was Removable at Will.

Plaintiff contends that she was removable only for cause under the CSRA, and that Congress's limitations on Article II removals are constitutional. Because Plaintiff in her duties as an Assistant United States Attorney exercised the President's conclusive and preclusive executive authority, she was removable at-will under Article II by the Attorney General. Moreover, Plaintiff's claims fail because Congress has not limited the Attorney General's ability to remove Assistant United States Attorneys by statute; rather, Congress has expressly authorized removals of such individuals without cause. In any event, Plaintiff's removal under Article II and 28 U.S.C. § 542(b) qualifies as "such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a)—the only protection that Plaintiff asserts the CSRA provides her. Plaintiff's removal was thus lawful.

4

### A.    Comey was Removable at Will Under Article II of the Constitution.

1. Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President[.]'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1). "The President's duties are of 'unrivaled gravity and breadth.'" *Trump v. United States*, 603 U.S. 593, 607 (2024) (quoting *Trump v. Vance*, 591 U.S. 786, 800 (2020)). It follows that there are some "quintessentially executive function[s]" that neither Congress nor courts can interfere with—*i.e.*, functions that are within the President's "'conclusive and preclusive' authority." *Id.* at 607-08, 620 (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. at 638 (Jackson, J., concurring)). For example, Article II entrusts the President with the great responsibility to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

The President, of course, must rely on others to assist him in executing the laws. *See Seila Law*, 591 U.S. at 204 ("[T]he Framers expected that the President would rely on subordinate officers for assistance."); *Printz v. United States*, 521 U.S. 898, 922 (1997) (explaining that the President fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints" (internal citations and quotation marks omitted)); *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 666-67 & n.51 (D.D.C. 2018), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019) (collecting cases). It "follows from the text of Article II" that the President has the "power to remove—and thus supervise—those who wield executive power on his behalf." *Trump*, 603 U.S. at 608 (internal quotations omitted); *see Free Enter. Fund v. Pub. Acct. Oversight Bd.*,

561 U.S. 477, 513-14 (2010) (noting that the President "as a general matter" has "authority to remove those who assist him in carrying out his duties" to ensure that those appointees faithfully execute the laws on his behalf). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514. And where those lower-ranking officials are exercising the President's "conclusive and preclusive" executive power, the President's power to remove such officials cannot be restricted. *Cf. Trump*, 603 U.S. at 608-09; *Seila Law*, 591 U.S. at 204 (describing "the general rule" of "the President's unrestricted removal power," subject to two narrow exceptions). After all, "Congress cannot act on … the President's actions on subjects within his 'conclusive and preclusive' constitutional authority." *Id.* at 609.

While "all of" the "executive Power" is vested in the President, *Seila Law*, 591 U.S. at 203, the heads of departments—and inferior officers below them—may properly exercise that power on his behalf. *See* U.S. Const., art. II, § 2, cl. 2 (providing that the heads of departments may appoint inferior officers). And when heads of departments exercise executive power, their acts are attributable to the President. *See, e.g., Myers v. United States*, 272 U.S. 52, 133 (1926) ("[e]ach head of a department is and must be the President's alter ego in the matters of that department where the President is required by law to exercise authority"); *Printz*, 521 U.S. at 922 (the [P]resident fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints"); *Wilbur v. U.S. ex rel. Barton*, 46 F.2d 217, 219 (D.C. Cir. 1930) ("It is settled law that the President speaks and acts through the

6

heads of the several departments in relation to subjects which appertain to their respective duties and that the acts of the heads of departments, within the scope of their powers, are in law the acts of the President." (internal quotations to *Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 513 (1839), and *Wolsey v. Chapman*, 101 U.S. 755, 769 (1879), omitted)).

When the Attorney General terminated Plaintiff from her position as an Assistant United States Attorney, the Attorney General was exercising the President's executive power. When Congress has tasked a department head with the appointment, "it is ordinarily the department head, rather than the President, who enjoys the power of removal." *Free Enter. Fund*, 561 U.S. at 493.[1] That is because "the power of removal of executive officers [is] incident to the power of appointment." *Myers*, 272 U.S. at 119; *see Kennedy v. Braidwood Mgmt.*, 606 U.S. 748, 763 (2025) (citing the same). And here, Congress has vested the power of appointment of Assistant United States Attorneys in the Attorney General, 28 U.S.C. § 542(a), and has provided expressly and without limitation that the Attorney General has the power to remove those same individuals, *id.* § 542(b) ("Each assistant United States attorney is subject to removal by the Attorney General"). As then-Judge Ruth Bader Ginsburg explained many years ago: "The President has the power to remove U.S.

---

[1] Of course, the President may direct and control that power through his supervision over, and ability to remove, the department head. Because of that control, the department head's actions are properly attributable to the President himself. *See Wilcox v. Jackson*, 38 U.S. (13 Pet.) 498, 513 (1839) ("The President speaks and acts through the heads of the several departments, in relation to subjects which appertain to their respective duties.").

Attorneys at will, 28 U.S.C. § 541(c), but it is the Attorney General who has the parallel power to remove Assistant U.S. Attorneys. 28 U.S.C. § 542(b). The difference is not significant, since the Attorney General 'is the hand of the President in taking care that the laws of the United States ... be faithfully executed.'" *In re Sealed Case*, 838 F.2d 476, 528 n.30 (D.C. Cir. 1988) (Ginsburg, R.B., J., dissenting) (quoting *Ponzi v. Fessenden,* 258 U.S. 254, 262 (1922)), *rev'd, Morrison v. Olson,* 487 U.S. 654 (1988). Thus, where the head of a department exercises such removal power—as the Attorney General did here—she properly wields the President's Article II powers on the President's behalf.  Indeed, in *Free Enterprise Fund*, the Supreme Court *invalidated under Article II* a removal restriction that prevented *SEC Commissioners* from removing members of the PCAOB, 561 U.S. at 496-97, making clear that restrictions on removal by Heads of Department can violate Article II.

2. Because Plaintiff exercised "conclusive and preclusive" executive power in her former position as an AUSA, she was removable at-will under Article II. When then-Attorney-General Bondi directed that Plaintiff be removed from her position, she was ensuring that the President may properly control the exercise of his conclusive and preclusive constitutional power—including the power to engage in criminal prosecution. And when Acting Attorney General Blanche ratified her termination, he was ensuring the same.

AUSAs are charged with conducting all aspects of criminal prosecutions on behalf of the United States—a core executive function. *See* 28 U.S.C. § 542(a) ("The Attorney General may appoint one or more assistant United States attorneys in any

8

district when the public interest so requires."); *id.* § 547(1) (requiring U.S. Attorneys to "prosecute for all offenses against the United States" within their districts); *see also Yifrach v. United States*, 169 Fed. Cl. 33, 60 (Ct. Fed. Cl. 2024). ("The statutory duties of an AUSA, in pertinent part, are to: (1) prosecute all offenses against the United States; (2) represent the government in civil actions concerning the United States, and (3) institute and prosecute proceedings for the collection of fines, penalties, and forfeitures."). Where "superiors have assigned [an] AUSA[] to work in some official capacity on [a] criminal proceeding," that AUSA becomes an "authorized assistant" to the U.S. Attorney. *United States v. Forman*, 71 F.3d 1214, 1220 (6th Cir. 1995); *see* Fed. R. Crim. P. 1(b)(1)(B). This means they can file indictments on behalf of the United States, seek warrants from federal district courts, file briefs and motions with the court, and discuss and reach plea agreements with criminal defendants, except where the Agency's manual provides a requirement for higher-level approval. *See* Fed. R. Crim. P. 4, 7(c)(1), 11(c)(1), 12; *Justice Manual, supra*, at 9-2.400. AUSAs thus have considerable control and discretion for how to proceed in any individual criminal case.

And as the Supreme Court has made clear, the "investigation and prosecution of crimes"—exactly the role of an AUSA—is a special province of the Executive within the President's "'conclusive and preclusive' Presidential authority." *See Trump*, 603 U.S. at 620-21; *see also United States v. Texas*, 599 U.S. 670, 678-79 (2023) (collecting cases). In performing their duties, AUSA exercise the Executive Branch's "exclusive authority and absolute discretion' to decide which crimes to investigate and

9

prosecute." *Trump*, 603 U.S. at 620 (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). And they wield the Executive Branch's absolute "authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'" *Id.* (quoting *Texas*, 599 U.S. at 678-79). When AUSAs make such decisions, they are exercising core executive power under Article II.

Because AUSAs exercise the President's "conclusive and preclusive" executive power when they engage in prosecutorial activities, Article II requires that they be removable at-will. Congress lacks the authority to legislate "the President's actions on subjects within his 'conclusive and preclusive' constitutional authority"—and restricting the President's—and his direct subordinates'—ability to remove officials who exercise such core executive power would directly interfere with his ability to act in a domain that belongs exclusively to the Executive. *See Trump*, 603 U.S. at 608-09. A different rule would significantly intrude on the President's "conclusive and preclusive" executive power.

As an AUSA, the statements Plaintiff made and the positions she took in court would bind the federal client—including the United States as sovereign, an agency of the federal government, or even the President himself—thus directly affecting or restricting that federal client's exercise of the Executive Power. *See, e.g.*, *United States v. Yildiz*, 355 F.3d 80, 82 (2d Cir. 2004) ("[T]he government's attorneys can bind the government with their in-court statements."); *United States v. Mirabal*, 98 F.4th 981, 987 n.3 (9th Cir. 2024) ("[G]overnment attorneys can and do bind the United States."). If AUSAs were not removable at-will, they could bind the President

10

and the entire Executive Branch to positions that the President disagrees with in an area where the President is supposed to have "conclusive and preclusive" power. Article II does not allow such a result.

The government of course recognizes that the Supreme Court has upheld a removal restriction that interfered with the President's conclusive and preclusive power over criminal prosecutions, under the now-defunct Independent Counsel statute. *See Morrison v. Olson*, 487 U.S. 654 (1998). But as emphasized in *Seila Law*, *Morrison* is strictly limited to a prosecutor who had extremely limited jurisdiction and tenure. *See Seila Law*, 591 U.S. at 217-21. And especially given that *Seila Law* called *Morrison* into doubt, *see id.* at n.2—and the United States preserves its position that it was wrongly decided—*Morrison* should not be expanded to reach ordinary criminal prosecutors. *See id.* at 218 (describing *Morrison* as the "the outermost constitutional limits of permissible congressional restrictions on the President's removal power.")

3. Plaintiff primarily asserts that the CSRA provides her protections from removal and a process the Department must go through to remove her, and that she did not exercise the type of executive power that would require her to be subject to at-will removal under Article II. Compl. ¶¶ 70-75, 89-90. Neither contention is meritorious.

First, the CSRA cannot be read to preclude an Article II removal here because Plaintiff in her position as an AUSA exercised the President's "exclusive and preclusive" executive power, as discussed *supra.* Under these circumstances,

11

Congress lacks the ability to place any restrictions on the President's removal of Appellants from their positions. *Cf. Youngstown*, 343 U.S. at 637-38 (Jackson, J., concurring) (where "conclusive and preclusive" executive power is exercised, Congress is "disabl[ed] … from acting upon the subject"). If the CSRA were read to preclude Article II removal of attorneys like Plaintiff without additional protections, the statute would encroach on the President's and Attorney General's power under Article II. And there is little reason to read such a limitation on Plaintiff's removal here, where the Attorney General is explicitly authorized to remove AUSAs by statute without any limitation. 28 U.S.C. § 542(b) ("Each assistant United States attorney is subject to removal by the Attorney General."). When Congress wants to "'take away' the power of at-will removal from an appointing officer," the general rule is that "Congress must use 'very clear and explicit language.'" *Braidwood Mgmt.*, 606 U.S. at 771 (quoting *Shurtleff v. United States*, 189 U.S. 311, 315 (1903)). Section 542 suggests Congress had no intent to take away that power; if anything, Section 542 suggests Congress meant to codify the general rule of at-will removal. At the very least, to the extent the CSRA provides AUSAs with any protection from agency removal, *see Hamlett v. U.S. Dep't of Just.*, 90 M.S.P.R. 674, 677-79 (2002), it should not restrict removals made specifically by the Attorney General, the official named in section 542. Due to the significant constitutional concerns with reading the CSRA to limit the Attorney General's removal authority here, as well as the Attorney General's express statutory authority to remove AUSAs without cause, Plaintiff's

12

removal without cause was a permissible exercise of the Attorney General's authority under Article II.

Second, Plaintiff's attempt to diminish the authority she exercised as an AUSA falls flat.  She admits that she "was assigned to prosecute high-profile defendants including Sean 'Diddy' Combs, Robert Hadden, Jeffrey Epstein, and Ghislaine Maxwell," including serving as "lead prosecutor" in the two-month trial of Combs. Compl. ¶¶ 2, 43. She admits that the day before her termination, she had been "asked … to take the lead on a major public corruption case." Compl. ¶ 3. She admits that she "closely supervised" the high-profile trial of former New Jersey Senator Robert Menendez. Compl. ¶ 40. And she admits that "in her tenure at SDNY, she personally handled eleven criminal trials, secured over 200 convictions, briefed and argued multiple appeals before the Court of Appeals for the Second Circuit, and supervised numerous addition federal investigations, trials, and convictions." Compl. ¶ 25.

Yet Plaintiff tries to downplay the authority she exercised by stating that she had to receive approvals to conduct aspects of her work and allegedly only "implemented … policies set by her superiors." *See* Compl. ¶ 44. That attempt to reduce her duties is belied by the other allegations in her complaint. Plaintiff's admissions that as an AUSA she regularly appeared in court, conducted trials, and led prosecutorial and investigatory teams—many times in the office's most important cases—shows that she regularly and repeatedly exercised the executive's preclusive and conclusive power to "investigat[e] and prosecut[e] … crimes." *See Trump*, 603 U.S. at 620-21. And during those investigations and prosecutions, Plaintiff had the ability

13

to "bind" the United States. *Yildiz*, 355 F.3d at 82. In fact, an AUSA can bind the United States in such prosecutions even if they lack authority or approval to do so. *See Giglio v. United States*, 405 U.S. 150, 154 (1972) ("The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government."). As such, Plaintiff cannot dispute that she exercised the President's conclusive and preclusive power when she engaged in the investigation and prosecution of—in the Plaintiff's own words—some of the most high-profile and important crimes that the U.S. Attorney's Office for Southern District of New York handled. She thus was removable at-will by the Attorney General under Article II.

### B.    Plaintiff was Removable at Will Under 28 U.S.C. § 542

As discussed above, if the CSRA were read to preclude Article II removal of AUSAs without cause, the statute would encroach on the President's and Attorney General's power under Article II. But even without reaching the constitutional question, this Court should conclude that Plaintiff was removable at-will by the Attorney General because a statute expressly provides as much.

The Attorney General is explicitly authorized by statute to appoint and remove AUSAs.  Specifically, 28 U.S.C. § 542(a) provides that the Attorney General can appoint AUSAs, and § 542(b) provides that "[e]ach assistant United States attorney is subject to removal by the Attorney General." Nothing in that statute imposes a "for cause" requirement—or any other limitation—on the Attorney General's authority to remove an AUSA. When Congress wants to "'take away' the power of at-will removal

14

from an appointing officer," the general rule is that "Congress must use 'very clear and explicit language.'" *Braidwood*, 606 U.S. at 770-71 (quoting *Shurtleff*, 189 U.S. 311 at 315). Here, section 542(b) strongly suggests that Congress meant to codify the general rule of at-will removal, at least with respect to the Attorney General's removal authority. *See Windsor v. The Tennessean*, 719 F.2d 155, 159 & n.3. (6th Cir. 1983) (acknowledging that the Attorney General has the "unconditional power to discharge assistant United States attorneys").

Plaintiff will presumably argue that the CSRA's 1990 Due Process Amendments, which expanded the scope of the federal-government employees subject to the CSRA's restrictions, somehow placed restrictions on the Attorney General's authority. Those amendments expanded the definition of "employee" subject to the CSRA to include:

> an individual in the excepted service (other than a preference eligible)—
>
>> (i) who is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service; or
>>
>> (ii) who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less.

5 U.S.C. § 7511(a)(1)(C). As Plaintiff alleges, she meets that very broad definition, and Defendants do not disagree. Compl. ¶ 75. But that does not resolve the impact of those amendments on AUSAs who are removed by the Attorney General given 28 U.S.C. § 542(b). As the Federal Circuit has acknowledged, "[d]etermining precisely the rights provided to assistant U.S. attorneys by the Due Process Amendments … is problematic because of the language of 28 U.S.C. § 542 which gives the Attorney

15

General broad discretion in appointing and removing assistant U.S. attorneys." *Gosnell v. Dep't of Just.*, 69 F.3d 1138, 1140 (Fed. Cir. 1995).

Plaintiff bases her claims on allegations that her removal violated the CSRA's protections and procedural mandates, which were concededly not followed here. *See, e.g.,* Compl. ¶¶ 70-75, 90, 92, 95, 103, 111, 123; 5 U.S.C. § 7513(a), (b). Yet the CSRA's protections from at-will removal cannot be read to preclude an Article II removal by the head of a Department—here, the Attorney General. After all, "Congress must speak clearly if it wishes to insulate officers from at-will removal." *Braidwood*, 606 U.S. at 772; *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023) (requiring a "clear signal" that Congress intends to displace the appointing official's Article II removal authority); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

Nothing in the CSRA expressly withdraws the Attorney General's power under 28 U.S.C. § 542(b) to remove AUSAs without cause. Moreover, it "is a commonplace of statutory construction that the specific governs the general." *NLRB v. SW Gen.*, 580 U.S. 288, 305 (2017) (citation omitted). The fact that AUSAs could qualify as employees under the CSRA—a general statute that applies to millions of federal employees—cannot mean that the more specific statutory power of the Attorney General to remove AUSAs without cause was somehow limited by the CSRA under

16

ordinary principles of statutory interpretation. *See, e.g.*, *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment."). And the fact that the CSRA was enacted after 28 U.S.C. § 542(b)—a provision that has existed in its current form "since 1966" and "in some form as early as 1896," *Hamlett*, 90 M.S.P.R. at 676—makes an interpretation rendering § 542(b) a nullity particularly disfavored. *See, e.g.*, *Me. Cmt'y Health Options v. United States*, 590 U.S. 296, 315 (2020). "Presented with two statutes, [courts] will regard each as effective—unless Congress' intention to repeal is clear and manifest, or the two laws are irreconcilable." *Id.* (cleaned up). Congress expressed no clear intent in the CSRA to alter the Attorney General's power in § 542(b). And the two statutes are capable of co-existence; if the Attorney General does not direct the removal of an AUSA or the AUSA is provided a reason for their termination, the CSRA may provide the AUSA a different process and different protections. But if the Attorney General removes the AUSA without cause—as happened here—the more specific statute (28 U.S.C. § 542(b)) governs. The statutes are also capable of co-existence if a removal under 28 U.S.C. § 542(b) is read to qualify as the relevant "cause" for the "efficiency of the service" that permits a removal under the CSRA, 5 U.S.C. § 7513(a). *See infra* pp. 19-20.

To be sure, the MSPB previously held that AUSAs putatively qualify as "employees" with appeal rights under the CSRA. *See Hamlett*, 90 M.S.P.R. at 677-

17

79.[2] The decision of the MSPB is, of course, not binding on this Court. But even if it were, *Hamlett* did not purport to hold that the CSRA "clearly express[ed] a congressional intent to trim" the Attorney General's removal power, *Severino*, 71 F.4th at 1044, which Congress had previously explicitly granted in § 542(b). And *Hamlett* pre-dates the Supreme Court's recent decision in *Braidwood* admonishing against removal restrictions created by inference or implication. *See Braidwood,* 606 U.S. at 770-72. The CSRA's protections and processes do not expressly apply to the President's or the Attorney General's constitutional removal authority, as opposed to, for example, routine administrative discipline. Notably, *Hamlett* involved an AUSA removed for misconduct, and not—as here—a decision by the Attorney General herself to exercise her statutory and constitutional authority to remove an AUSA.

Moreover, to the extent that the CSRA is ambiguous with respect to its intent to limit Section 542's grant of unqualified removal authority to the Attorney General, the constitutional avoidance doctrine should preclude a reading of the CSRA that does restrict that authority. *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). Interpreting the CSRA to restrict the power of the President and the Attorney General to remove an AUSA without cause would significantly encroach on the Executive's power and thus render the statute unconstitutional under Article II.

---

[2] Although the government disagrees with the M.S.P.B.'s decision in *Hamlett*, it acknowledges that it did not appeal *Hamlett* to the Federal Circuit.

18

C.    **Plaintiff's Removal Under Article II and 28 U.S.C. § 542 Qualifies as Removal for "Efficiency of the Service" Under the CSRA**

Plaintiff's complaint asserts repeatedly that she could only be terminated "for cause," which she asserts must mean that she can be terminated only for a "reason related to her performance as an AUSA" that "adversely affected her performance." Compl. ¶¶ 55, 75. She further asserts that she cannot be terminated "without cause." Compl. ¶ 90. Plaintiff, however, admits that the CSRA's "for cause" language is not so limited. As she acknowledges, the CSRA provides that she can be terminated "for such cause as will promote the efficiency of the service." Compl. ¶ 72 (quoting 5 U.S.C. § 7513(a)).

That limitation comfortably encompasses the Attorney General's removal of Plaintiff under Article II and 28 U.S.C. § 542(b). Where the Attorney General makes the decision to exercise clear statutory authority permitting her to remove an AUSA, the Attorney General has made an implicit determination that the AUSA's continued employment no longer accords with the effective administration of the Department and its prosecutorial responsibilities. This is especially true given the significant responsibilities AUSAs have in exercising the President's prosecutorial and investigative powers, areas within the President's conclusive and preclusive authority. It would be anomalous to conclude that relying on "efficiency of the service" required more than citing Article II and 28 U.S.C. § 542(b) as justifications for

19

Plaintiff's removal, especially where Congress has already made the determination that the Attorney General can remove an AUSA without restriction.

At the very least, Plaintiff's interpretation of what "cause" for the "efficiency of the service" under 5 U.S.C. § 7513(a) constitutes is incorrect. For individuals in the Senior Executive Service—Plaintiff is not—the CSRA provides that "action[s]" like termination under the CSRA may be taken "against an employee only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a). Yet for employees like Plaintiff, Congress chose to permit removals using much broader language: "only for such cause as will promote the efficiency of the service." *Id.* § 7513(a). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted). It is simply wrong that Plaintiff could be terminated only for a "reason related to her performance as an AUSA" that "adversely affected her performance" where Congress included such a limit elsewhere in the statute, but left it out of § 7513(a). Compl. ¶¶ 55, 75.

*  *  *

Thus, the Attorney General was authorized to remove Plaintiff without cause under both Article II of the Constitution and 28 U.S.C § 542.  Alternatively, Plaintiff's removal under Article II and 28 U.S.C. § 542 qualifies as removal for "efficiency of

20

the service" under the CSRA. Plaintiff's removal was therefore lawful, and Defendants are entitled to judgment in their favor.

## II.    Defendants Are Entitled to Judgment on All of Plaintiff's Claims Because She Was Removable At-Will

### A.    No Article I, Article II, or Statutory Violation (Counts 1, 2 & 3)

Plaintiff's status as an official who was removable at-will under Article II and 28 U.S.C. § 542(b) means Defendants are entitled to judgment on Plaintiff's claims under Articles I and II of the Constitution, Administrative Procedure Act claim, and *ultra vires* claim. Congress has expressly provided for the removal by the Attorney General of AUSAs like Plaintiff without cause, and Article II permits her removal without cause because she exercises the President's preclusive and conclusive executive power as an AUSA. *Supra* pp. 5-14. The CSRA does not preclude her removal without cause, and any other reading would raise significant constitutional questions. *Supra* pp. 19-21.

Defendants are also entitled to judgment on Plaintiff's *ultra vires* claim for those reasons, and for the additional reason that Plaintiff cannot meet the high bar for asserting an *ultra vires* claim.  Such claims are only available in extreme circumstances where an "agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Yale New Haven Hosp. v. Becerra*, 56 F.4th 9, 27 (2d Cir. 2022) (quoting *DCH Reg. Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019)); *accord NRC v. Texas*, 605 U.S. 665, 681 (2025). The Supreme Court recently reaffirmed that an *ultra vires* claim is "essentially a Hail Mary pass—and in court as in football, the attempt rarely

21

succeeds." *NRC*, 605 U.S. at 681-82 (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)). Given that a statute expressly provides that the Attorney General could remove Plaintiff without any cause, *see* 28 U.S.C. § 542(b), *ultra vires* review is unavailable here.

### B.    Plaintiff's Fails to State a First Amendment Claim (Count 4)

Because Plaintiff could be removed under Article II for any constitutionally permissible reason and Plaintiff has failed to plausibly allege that her removal violated the First Amendment, those claims fail. Plaintiff asserts that she was removed from her position as an AUSA "because of her association with her father and in retaliation for her father's protected speech, or because of her presumed political affiliation and beliefs, or both." Compl. ¶ 99. But she alleges no facts to support the assertion that her removal was based on her perceived political beliefs, and the only speech she cites in her complaint is not her own, but that of her father, former FBI Director James Comey. *See, e.g.*, Compl. ¶¶ 56-63. Her First Amendment claims should therefore be dismissed.

*First*, the Executive is not required to explain the rationale behind its Article II-based decisions, and Plaintiff's speculatory and conclusory assertions that it was based on protected First Amendment activity is insufficient to override the Executive's prerogative to remove lower officials. *See Seila Law*, 591 U.S. at 213-14 (2020). If Article II permits the Attorney General to remove Plaintiff without cause, it would be an extreme intrusion on the separation of powers for courts to interfere in that exercise of executive power by inquiring into those reasons or overriding that determination based on unsupported allegations of First Amendment violations. If

22

interpreted otherwise, even cabinet officials of a different party from the President and from a prior presidential administration could stay in office given the First Amendment. That would eviscerate Article II.

*Second*, Plaintiff's complaint does not state a viable First Amendment claim for a federal employee in Plaintiff's position. Although she alleges in conclusory fashion that her removal was based on "perceived political affiliation and beliefs," *see* Comp. ¶¶ 5, 56, 69, 75, 99, 117, she alleges no facts to support this assertion. The only place in the complaint that even references any perceptions regarding her political affiliation and beliefs quotes a private citizen's social media post referring to her as James Comey's "liberal daughter." *Id.* ¶ 8, 64. This is hardly sufficient to plausibly allege that the Attorney General removed Plaintiff because the Attorney General perceived Plaintiff as "liberal."

Nor does the Complaint allege that Plaintiff was removed based on her protected speech. Rather, Plaintiff premises her First Amendment claim on her father's speech. True, the Second Circuit has recognized the viability of a First Amendment claim where a husband employed by New York State was fired because of his wife's lawsuit against state officials. *See Adler v. Pataki*, 185 F.3d 35, 41-45 (2d Cir. 1999). But judges in this district have limited *Adler's* applicability, noting that "the right to intimate association is not absolute" and dismissing First Amendment claims that "failed to plead facts indicating how [the defendant] interfered with" the parent-child relationship. *Jenkins v. Tyler*, 167 F. Supp. 2d 652, 655 (S.D.N.Y. 2001) (holding that an employer does not run afoul of the First Amendment when it take

23

an adverse action not solely because of a familial relationship, but because of concerns that a parent might exercise undue influence over their employee-child, or to prevent the appearance of a conflict of interest).  Moreover, *Adler* is distinguishable because it does not involve an AUSA exercising executive power, and a statute authorizes the Attorney General to remove AUSAs with no requirement that the removal be for cause. Given the duties of AUSAs, who represent the Executive Branch in court and exercise the Executive's prosecutorial power, it would be anomalous for such individuals to be shielded from removal by the First Amendment based not even on their own speech, but a parent's.

Defendants are thus entitled to judgment on Plaintiff's First Amendment claim.

**C.    As an At-Will Employee, Plaintiff Was Afforded All the Process She was Due, and Her Remaining Due Process Allegations Fail (Counts 5, 6, 7 & 8)**

Defendants are also entitled to judgment on Plaintiff's claim that her procedural due process rights were violated.

1. "For a property interest to be constitutionally protected by procedural due process, a person must 'have a legitimate claim of entitlement to it,' beyond 'an abstract need or desire.'" *Langeman v. Garland*, 88 F.4th 289, 295 (D.C. Cir. 2023) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Such an entitlement must be "derived from 'existing rules or understandings that stem from an independent source.'" *Id.* (quoting *Bd. of Regents of State Colls.*, 408 U.S. at 577). "[T]he independent source must place substantive limitations on official discretion"

24

in the form of "explicitly mandatory language." *Id.* (internal quotation marks omitted).

No independent source mandated Plaintiff's continued employment. To the contrary, 28 U.S.C. § 542(b) expressly provides that "[e]ach assistant United States attorney is subject to removal by the Attorney General," without any limitation. Plaintiff cannot claim a property interest in her continued employment where the Attorney General has the "unconditional power to discharge assistant United States attorneys" like herself. *See Windsor*, 719 F.2d at 159 n.3. Because "the law expressly permitted her termination at any time," she had no "legitimate claim of entitlement to continued employment" as an AUSA. *See Donato v. Plainview-Old Bethage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir. 1996). Plaintiff will presumably argue that the CSRA provided her such an independent source, but as explained above, the CSRA does not override the Attorney General's explicit ability to remove AUSAs without cause. *Supra* pp. 4-20.

In any event, where, as here, a federal official serves at will under Article II—that is, she may be removed for "any constitutionally permissible reason or for no reason at all"—the employee "has no property interest" in her employment. *Esparraguera v. Dep't of the Army*, 101 F.4th 28, 33 (D.C. Cir. 2024) (citations omitted). Indeed, a public employee has a property interest in continued employment only if "the employee is guaranteed continued employment absent 'just cause' for discharge." *Zynger v. Dep't of Homeland Sec.*, 615 F. Supp. 2d 50, 59 n.10 (E.D.N.Y. 2009), *aff'd,* 370 F. App'x 253 n.10 (2d Cir. 2010) (quoting *Ciambriello v. County of*

25

*Nassau,* 292 F.3d 307, 313 (2d Cir. 2002)). Because Article II of the Constitution permits the President and Heads of Departments to remove without cause those who wield executive power, and 28 U.S.C. § 542 authorized the Attorney General to remove an AUSA without cause, Plaintiff was not guaranteed continued employment absent just cause. She therefore lacks a property interest in her continued employment and her due process claims fail.

This makes sense given the constitutional structure. As explained above, the President and his immediate subordinates must be able to act with dispatch and make important, inherently discretionary judgment calls regarding the individuals who exercise executive power on his behalf. They must be able to do so quickly, as all of the executive power belongs to the President, *see Seila Law,* 591 U.S. at 203—he cannot be hamstrung with officials whom he no longer trusts wielding executive power while he waits for some notice period to pass or hearing to transpire. *Cf. Trump v. Wilcox,* 145 S. Ct. 1415, 1415 (2025) ("[T]he Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty.").

2. Plaintiff also cites a liberty interest in her professional reputation that was allegedly harmed by Defendants "terminating her without cause and implicitly ratifying stigmatizing allegations." Compl. ¶¶ 109-118. That claim fails.

As an initial matter, the Supreme Court has cast doubt on the availability of a due process claim based on professional reputation. "While … a number of [the

26

Court's] prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701 (1976). There is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause." *Id.* at 702. And here, Plaintiff does not even assert any defamation by a public official. She instead relies on statements posted to social media by a private citizen. Compl. ¶¶ 63-69.

The Second Circuit has also been clear that "[s]pecial aggravating circumstances" are necessary to state a liberty-interest claim based on reputation, such as when "the state fires an employee and publicly charges that she acted dishonestly or immorally" or other "[s]tigmatizing comments." *Donato*, 96 F.3d at 630. And even here, Plaintiff is entitled to a name-clearing hearing "only when [the statements] denigrate * the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Id.* at 630-31.

Plaintiff makes no such plausible allegations here. She asserts that the Department terminated her employment "without cause." Compl. ¶ 110. Her termination notice states only that she was removed under "Article II." Compl. Ex. A.

27

The Acting Attorney General's ratification of her termination states only that she was removed under "Article II and 28 U.S.C. § 542(b)." Answer Ex. A.  The government has not disputed any of Plaintiff's allegations relating to her successful prosecutions and "outstanding" ratings on her performance evaluations.  Answer ¶¶ 2, 25-44. Plaintiff does not allege that any government actor made any defamatory statements. Plaintiff complains that she was not afforded the ability to "challenge the accuracy of any evidence that allegedly serves as the basis for her removal," Compl. ¶ 111, implicitly conceding that no defamatory statements have been made regarding the basis for her removal. And she asserts without evidence that "[s]hould Plaintiff apply to work for a federal agency or a private civilian employer for a position that requires even the most rudimentary background investigation, the Defendants *may* disseminate information that includes inaccurate and false information that will adversely impact her reputation and chances for additional employment opportunities." Compl. ¶ 112 (emphasis added). That speculative assertion of potential future harm is woefully inadequate to survive judgment on the pleadings.

* * *

In sum, Appellants' procedural due process rights were not violated when the then-Attorney-General directed that she be removed from her position as an AUSA. Her removal was therefore lawful, and Defendants are entitled to judgment as a matter of law.

### D.    Plaintiff is Not Entitled to a Declaratory Judgment (Count 9)

Plaintiff also seeks a declaratory judgment that "Defendants do not have authority to remove Plaintiff without affording her all rights and protections set forth

28

by applicable statutes and regulations." Compl. ¶ 120. This request merely duplicates Plaintiff's substantive claims, and thus should be dismissed. *E.g.*, *Skanska USA Bldg. Inc. v. Regeneron Pharms. Inc.*, No. 23-cv-8418, 2024 WL 3274731, at \*3 (S.D.N.Y. July 1, 2024) ("Courts in this Circuit routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through [other] claim[s] in the same action."). In any event, Defendants are entitled to judgment on Plaintiff's other claims, and there is no independent basis here that confers jurisdiction on this Court to enter a declaratory judgment.

### E.    Plaintiff Is Not Entitled to Mandamus (Count 10)

Plaintiff also seeks a writ of mandamus "commanding Defendants to return her to her office and not remove her from federal service without following lawful procedures." Compl. ¶ 123. She is not entitled to such relief.

In 28 U.S.C. § 1361, Congress granted federal district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." An "agency" is defined as "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest." *Id.* § 451. Mandamus may only issue when "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983). "These three threshold requirements are jurisdictional; unless all

are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

"It is not disputed that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). As the D.C. Circuit has explained, its "consideration of any and all mandamus actions starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000). "[E]ven if the plaintiff overcomes all the[ ] hurdles" to show he is entitled to relief, "whether mandamus relief should issue is discretionary." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc).

Plaintiff is not entitled to the extraordinary relief of mandamus. Plaintiff's conclusory assertions that Plaintiffs have a "legal duty not to terminate Plaintiff without affording her the protections prescribed by law," Compl. ¶ 123, do not suffice to plausibly allege that Plaintiff has a right to be reinstated or that Defendants have a clear duty to reinstate her. On the contrary, as discussed, Plaintiff was removable at-will under Article II of the Constitution and 28 U.S.C. § 542. *Supra* pp.5-19. Moreover, Plaintiff has not (and cannot) identify any right to reinstatement or a duty to reinstate in the First Amendment, Fifth Amendment, or any laws of the United States.

Finally, while mandamus is a proper mechanism for trying the title to judicial offices, *see Marbury v. Madison*, 1 Cranch 137, 167-173 (1803) (justice of the peace);

30

*Hennen, Ex parte,* 38 U.S. 230, 256 (1839) (court clerk), courts may not use it to restore executive officers. Mandamus must comport with separation-of-powers principles. *See Cheney v. U.S. District Court for D.C.*, 542 U.S. 367, 381 (2004). While parties can obtain preliminary injunctions upon showing a likelihood of success and can obtain declaratory judgments upon prevailing on the merits, anyone seeking mandamus must establish a "clear and indisputable" right to relief. *United States* v. *Duell*, 172 U.S. 576, 582 (1899). Plaintiff cannot satisfy that standard here.

The Complaint does not plausibly allege that she is entitled to the extraordinary relief of mandamus and therefore Defendants are entitled to judgment on Count 10.

## CONCLUSION

For all the foregoing reasons, the Court should issue judgment in favor of Defendants.

June 5, 2026                              Respectfully submitted,

                                          TODD BLANCHE
                                          Acting Attorney General

                                          BRETT A. SHUMATE
                                          Assistant Attorney General

                                          TYLER BECKER
                                          Counsel to the Assistant Attorney General

                                          JOHN A. SARCONE III
                                          First Assistant United States Attorney
                                          Northern District of New York

                              By:   */s/ Karen Folster Lesperance*
                                          Karen Folster Lesperance
                                          Assistant United States Attorney
                                              *Acting Under Authority Conferred*
                                              *by 28 U.S.C. § 515*

                                          *Attorneys for the United States*

32

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(c) of the Local Rules for the United States District Court for the Southern District of New York, the undersigned counsel for the Defendants hereby certifies that this memorandum of law complies with the type volume limitation of Rule 7.1(c). As measured by the word-processing system used to prepare this memorandum of law, there are approximately 8177 words in the brief.

*/s/ Karen Folster Lesperance*
Karen Folster Lesperance
Assistant United States Attorney
*Acting Under Authority Conferred*
*by 28 U.S.C. § 515*

33

**CERTIFICATE OF SERVICE
BY NEXTGEN CM/ECF**

Maurene Comey
v.
Department of Justice, et al.

Docket No.   1:25-cv-07625

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York, and is a person of such age and discretion as to be competent to serve papers.

She further certifies that on June 5, 2026, she served a copy of the Defendant's motion for judgment on the pleadings and memorandum of law in support thereof on counsel for plaintiff by uploading a Portable Document Format (PDF) version of the same to the Southern District of New York's ECF system.

*/s/ Karen Folster Lesperance*
Karen Folster Lesperance

34