**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MAURENE COMEY,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE, et al.

Defendants.

Civil Action No.
1:25-cv-07625 (JMF)

Honorable Jesse M.
Furman

---

# REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

---

TODD BLANCHE
Attorney General

BRETT A. SHUMATE
Assistant Attorney General

TYLER BECKER
Counsel to the Assistant Attorney General

JOHN A. SARCONE III
First Assistant United States Attorney
Northern District of New York

Karen Folster Lesperance
Assistant United States Attorney
*Acting Under Authority Conferred*
*by 28 U.S.C. §515*

# TABLE OF CONTENTS


INTRODUCTION ........ 1

ARGUMENT ........ 3

I. Plaintiff Was Removable at Will Under Federal Statute and the Constitution ........ 3

A. Plaintiff was Removable at Will Under 28 U.S.C. § 542 ........ 3

B. Plaintiff was Removable at Will Under Article II of the Constitution ........ 13

C. Plaintiff's Removal Under Article II and 28 U.S.C. § 542 Qualifies as Removal for "Efficiency of the Service" Under the CSRA ........ 26

II. Defendants Are Entitled to Judgment on All of Plaintiff's Claims, and Plaintiff Is Not Entitled to Judgment on Claims 1, 2, 3, 5 & 6 ........ 28

A. No Article I, Article II, or Statutory Violation (Counts 1, 2 & 3) ........ 28

B. Plaintiff Fails to Plead Cognizable First Amendment Claims (Count 4) ........ 28

C. Plaintiff's Fifth Amendment Claims Fail (Counts 5, 6, 7 & 8), and Judgment for Plaintiff Should Be Denied on Counts 5 & 6 ........ 33

E. Plaintiff Does Not Plead Legally Cognizable Declaratory Judgment or Mandamus Claims (Counts 9 & 10) ........ 36

CONCLUSION ........ 38

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Adler v. Pataki*,
185 F.3d 35 (2d Cir. 1999) .......... 29, 32
*Aviel v. Gor*,
No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025) .......... 25
*Brown v. Dep't of the Navy*,
229 F.3d 1356 (Fed. Cir. 2000) .......... 27
*Butler v. N.Y. State Dep't of Law*,
211 F.3d 739 (2d Cir. 2000) .......... 29, 30
*Cine SK8, Inc. v. Town of Henrietta*,
507 F.3d 778 (2d Cir. 2007) .......... 36
*Doe v. Dep't of Just.*,
565 F.3d 1375 (Fed. Cir. 2009) .......... 27
*Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*,
96 F.3d 623 (2d Cir. 1996) .......... 33
*Edmond v. United States*,
520 U.S. 651 (1997) .......... 18
*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 29, 30
*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 8
*Ezekwo v. N.Y.C. Health & Hosps. Corp.*,
940 F.2d 775 (2d Cir. 1991) .......... 34
*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019) .......... 9
*Gosnell v. Dep't of Just.*,
69 F.3d 1138 (Fed. Cir. 1995) .......... 10
*Hamlett v. Department of Justice*,
90 M.S.P.R. 674 (2002) .......... 9, 10
*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... 17
*In re Hennen*,
38 U.S. 230 (1839) .......... 25
*Jenkins v. Tyler*,
167 F. Supp. 2d 652 (S.D.N.Y. 2001) .......... 32
*Kennedy v. Braidwood Mgmt., Inc.*,
606 U.S. 748 (2025) .......... 1, 4, 6, 11, 14
*King v. Briggs*,
83 F.3d 1384 (Fed. Cir. 1996) .......... 12
*Langeman v. Garland*,
88 F.4th 289 (D.C. Cir. 2023) .......... 34

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .................................................. 11
*Marbury v. Madison*,
1 Cranch 137 (1803) .................................................. 37
*Me. Cmty. Health Options v. United States*,
590 U.S. 296 (2020) .................................................. 6, 12, 13
*Morrison v. Olson*,
487 U.S. 654 (1988) .................................................. 20, 21
*Myers v. United States*,
272 U.S. 52 (1926) .................................................. 24
*Narumanchi v. Board of Trs. of Conn. State Univ.*,
850 F.2d 70 (2d Cir. 1988).................................................. 33
*Nixon v. Fitzgerald*,
418 U.S. 683 (1974) .................................................. 17
*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017) .................................................. 5
*Patel v. Searles*,
305 F.3d 130 (2d Cir. 2002).................................................. 31, 32
*Perry v. Sindermann*,
408 U.S. 593 (1972) .................................................. 34
*Printz v. United States*,
521 U.S. 898 (1997) .................................................. 24
*Regan v. Boogertman*,
984 F.2d 577 (2d Cir. 1993).................................................. 30
*Russello v. United States*,
464 U.S. 16 (1983) .................................................. 27
*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) .................................................. 15, 20, 21, 29
*Severino v. Biden*,
71 F.4th 1038 (D.C. Cir. 2023).................................................. 5
*Shurtleff v. United States*,
189 U.S. 311 (1903) .................................................. 4
*Skanska USA Bldg. Inc. v. Regeneron Pharms. Inc.*,
No. 23-cv-8418, 2024 WL 3274731 (S.D.N.Y. July 1, 2024) .................................................. 36
*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) .................................................. *passim*
*Trump v. United States*,
603 U.S. 593 (2024) .................................................. *passim*
*United States ex rel. Bernardin v. Duell*,
172 U.S. 576 (1899) .................................................. 37
*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) .................................................. 18, 19
*United States v. Perkins*,
116 U.S. 483 (1886) .................................................. 20, 21

*United States v. Yildiz*,
355 F.3d 80 (2d Cir. 2004).......................................................................... 20
*Velez v. Levy*,
401 F.3d 75 (2d Cir. 2005).......................................................................... 35
*Wille v. Lutnick*,
158 F.4th 539 (4th Cir. 2025)...................................................................... 25
*Windsor v. The Tennessean*,
719 F.2d 155. (6th Cir. 1983) ................................................................... 4, 11
*Yifrach v. United States*,
169 Fed. Cl. 33 (Ct. Fed. Cl. 2024).............................................................. 15
*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 ............................................................................................. 2, 15

**Constitution**

U.S. Const. art. II....................................................................................... *passim*

**Statutes**

5 U.S.C. § 2302(a)(2) ........................................................................................ 30
5 U.S.C. § 7511...............................................................................................8, 9
5 U.S.C. § 7511(b)(2) ........................................................................................ 30
5 U.S.C. § 7511(b)(3) ........................................................................................ 10
5 U.S.C. § 7511(b)(9) ........................................................................................ 10
5 U.S.C. § 7512(2) ............................................................................................ 10
5 U.S.C. § 7512(4) ............................................................................................ 10
5 U.S.C. § 7513...............................................................................................2, 8
5 U.S.C. § 7513(a) ............................................................................................ 24
5 U.S.C. § 7513(d) ....................................................................................... 26, 27
5 U.S.C. § 7543(a) ............................................................................................ 10
18 U.S.C. § 3553(f) ........................................................................................... 18
18 U.S.C. § 6003(b) .......................................................................................... 18
18 U.S.C. § 2510(9) .......................................................................................... 18
18 U.S.C. § 2518(1) .......................................................................................... 18
28 U.S.C. § 542.......................................................................................... 10, 26
28 U.S.C. § 542(a) ..................................................................................13, 15, 25
28 U.S.C. § 542(b) ...................................................................................... *passim*
28 U.S.C. § 547(1) ............................................................................................ 15
42 U.S.C. § 299b–4(a)(6) ..................................................................................... 4

**Rules**

Fed. R. Crim. P. 4 .......... 16
Fed. R. Crim. P. 7(c)(1) .......... 16
Fed. R. Crim. P. 11(c)(1) .......... 16
Fed. R. Crim. P. 12 .......... 16

**Other Authorities**

Hearing on H.R. 917 Before the Subcommittee on Civil Service of the House Committee on Post Office and Civil Service, 99th Cong. 25 (1985) .......... 9
The Federalist No. 70 (A. Hamilton) (Clinton Rossiter ed. 1961) .......... 22
The Federalist No. 47 (J. Madison) (Clinton Rossiter ed. 1961) .......... 22
U.S. Dep't of Just., U.S. Attorneys' Manual § 9-2.400 .......... 16

## INTRODUCTION

Defendants' motion for judgment on the pleadings should be granted, and Plaintiff Maurene Comey's motion for partial judgment on the pleadings should be denied.

Plaintiff, as an Assistant United States Attorney, was removable at will for at least three reasons. *First*, Assistant United States Attorneys are expressly removable at-will by statute. 28 U.S.C. § 542(b) provides that "each assistant United States Attorney is subject to removal by the Attorney General[,]" and contains no restrictions on the Attorney General's removal powers. Plaintiff agrees that Congress must "use 'very clear and explicit language'" when it wishes to "'take away' the power of at-will removal from an appointing officer[.]" *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 770-71 (2025). Plaintiff asserts Congress has provided the requisite clear statement restricting the Attorney General's removal of AUSAs in the Civil Service Reform Act (CSRA) and the Due Process Amendments. But Plaintiff fails to grapple with the fact that implied repeals are disfavored, and neither the CSRA nor the Due Process Amendments say anything about repealing 28 U.S.C. § 542(b). Instead, Plaintiff invokes legislative history suggesting that Congress meant to provide removal protections to attorneys and Department of Justice staffers. Even if that history was appropriate to consider, it says nothing about Congress's intent specifically as to the removal of AUSAs by the Attorney General. And interpreting the CSRA and Due Process Amendments to preclude the Attorney General's ability to remove AUSAs without cause would raise significant constitutional concerns.

*Second*, even if the CSRA's statutory protections did apply—they do not—Plaintiff, as an AUSA, was removable at-will under Article II of the Constitution. AUSAs exercise "quintessentially executive function[s]" with which neither Congress nor courts can interfere—*i.e.*, functions that are within the President's "'conclusive and preclusive' authority." *Trump v. United States*, 603 U.S. 593, 607-08, 620 (2024) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 638 (1952) (Jackson, J., concurring)). AUSAs exercise conclusive and preclusive executive power, as even Plaintiff's amici confirm. Plaintiff attempts to limit the Supreme Court's holding in *Trump v. Slaughter*, 146 S. Ct. 2283 (2026), to only principal officers. Yet the Supreme Court there did not even rely on the principal versus inferior officer distinction, and stated its holding much more broadly. In any event, Plaintiff ignores the Supreme Court's other recent narrowing of the exceptions to at-will removal.

*Third*, even if the CSRA's limitations somehow did apply to Plaintiff's removal, Plaintiff's removal under Article II and 28 U.S.C. § 542(b) qualifies as removal for the "efficiency of the service" under the CSRA. As some of Plaintiff's amici confirm, 5 U.S.C. § 7513's efficiency-of-the-service standard "is significantly less constraining" than other for-cause removal restrictions. CAC Br. 21. Plaintiff's contrary arguments that "efficiency of the service" means something more constraining would add words to the statute that simply are not there.

Defendants are also entitled to judgment on Plaintiff's remaining claims, and judgment to Plaintiff should be denied as well where she seeks it. Plaintiff does not allege that she engaged in any protected speech; she merely relies on the speech of

and her association with her father, former FBI Director James Comey, to argue that her termination violated the First Amendment. Her claims on that basis fail for both pleading deficiencies and her status as an Assistant United States Attorney (AUSA) responsible for representing the Government in court at the time of her termination. Plaintiff's procedural and substantive due process claims fail for the lack of a property interest in her employment as an AUSA. Her liberty interest claim fails because she does not plausibly allege that any government official ratified statements made by a non-government official on social media; Plaintiff instead asks the court to infer adoption from silence. Plaintiff's declaratory judgment and mandamus claims—which largely mirror her substantive claims—should be dismissed as well.

## ARGUMENT

### I. Plaintiff Was Removable at Will Under Federal Statute and the Constitution

Plaintiff contends that she was removable only for cause under the CSRA, and that Congress's limitations on Article II removals are constitutional.

#### A. Plaintiff was Removable at Will Under 28 U.S.C. § 542

Plaintiff argues that the CSRA and the Due Process Amendment "[c]onstrain[]" the Attorney General's ability to remove AUSAs under 28 U.S.C. § 542(b). Comey Br. 22. But § 542(b) includes no for-cause removal requirement for AUSAs removed by the Attorney General. As the statute provides: "Each *assistant United States attorney* is subject to removal by the Attorney General." 28 U.S.C. § 542(b) (emphasis added).

Plaintiff agrees that *Kennedy v. Braidwood Management, Inc.*, 606 U.S. 748 (2025), provides the relevant test to determine whether Congress has provided limitations on an official's removal. Comey Br. 22. That is, when Congress wants to "'take away' the power of at-will removal from an appointing officer," "Congress must use 'very clear and explicit language.'" *Braidwood*, 606 U.S. at 771 (quoting *Shurtleff v. United States*, 189 U.S. 311, 315 (1903)). Thus, a statute providing that members of a task force shall be "independent and, to the extent practicable, not subject to political pressure" could not be read to include a for-cause removal restriction for members' removals by the Secretary of Health and Human Services. *Id.* at 770-71 (quoting 42 U.S.C. § 299b–4(a)(6)). In this case, Plaintiff does not dispute that 28 U.S.C. § 542(b) itself does not provide such a "very clear and explicit" constraint on the Attorney General's removal authority with respect to AUSAs, but she argues that Congress did use such "very clear and explicit" language constraining the Attorney General's authority in the CSRA and Due Process Amendments. Comey Br. 22. Not so.

The statutory text is clear: "Each assistant United States attorney is subject to removal by the Attorney General." 28 U.S.C. § 542(b). There is no qualifier constraining the Attorney General's authority. Here, § 542(b) suggests that Congress meant to codify the general rule of at-will removal, at least with respect to the Attorney General's removal authority. Mot.15 (citing *Windsor v. The Tennessean*, 719 F.2d 155, 159 n.3. (6th Cir. 1983)). That is especially so because "Congress must speak clearly if it wishes to insulate officers from at-will removal." *Braidwood*, 606

U.S. at 772; *see Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023) (requiring a "clear signal" that Congress intends to displace the appointing official's Article II removal authority). Here, there is the precise opposite of a clear statement that Congress meant to insulate AUSAs from at-will removal: that is, a statutory provision that states expressly that AUSAs can be removed by the Attorney General without any mention of constraints on that removal.

Plaintiff relies on the CSRA, and the Due Process Amendments to that statute, to argue that Congress actually spoke clearly in constraining the Attorney General's removal authority. Before addressing the provisions Plaintiff cites, it is worth mentioning that Plaintiff does not assert that any of the provisions she cites actually mention AUSAs or (specifically) the Attorney General's removal authority. *See* Comey Br. 25-26 (asserting only that Congress provided additional protections in the Due Process Amendments for employees in the "excepted service" without mentioning AUSAs specifically); *id.* at 26 (admitting that "Congress did not specifically mention the Attorney General" in the Due Process Amendments). That should be the end of the discussion. It is well-established that the "specific governs the general" in statutory-interpretation matters, *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017) (citation omitted), and the fact that AUSAs could qualify as employees under the CSRA cannot mean that the more specific power of the Attorney General to remove AUSAs without cause is somehow limited by the CSRA—a statute that applies to millions of federal employees. Mot. 16. Much like the language establishing members of the task force as being "independent" was not clear enough to constitute a removal

restriction in *Braidwood*, 606 U.S. at 770-71, the CSRA is not clear enough to impose a removal restriction where § 542(b) already authorizes at-will removal of AUSAs by the Attorney General. Moreover, reading later-enacted statutes to impliedly repeal prior statutes is particularly disfavored. *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 315 (2020) ("Presented with two statutes, [courts] will regard each as effective—unless Congress' intention to repeal is clear and manifest, or the two laws are irreconcilable."). *See* Mot. 17. Here, the specific statute dealing with the Attorney General's authority to remove AUSAs is clearly 28 U.S.C. § 542(b), not the later-enacted CSRA or its Due Process Amendments. And given that those later enactments do not say anything specific about the Attorney General's removal authority, removal protections for AUSAs, or 28 U.S.C. § 542(b), there is no reason to think that Congress somehow altered silently the Attorney General's authority in § 542(b) to remove AUSAs without cause.

Faced with clear law providing no protections for removals of AUSAs by the Attorney General, Plaintiff turns these principles of statutory interpretation on their head while accusing Defendants of doing the same. She asserts that actually "Section 542 is the *general* provision," and "[t]he CSRA and the 1990 Amendments … are the *specific* provisions." Comey Br. 30. Plaintiff acknowledges that the CSRA and Due Process Amendments were "enacted after Section 542," but asserts that they "modify the Attorney General's power"—even though they mention neither § 542(b) nor the Attorney General. Comey Br. 30. Plaintiff bases her reasoning on her assertion that § 542(b) merely "identifies *who* may remove an AUSA—the Attorney General,"

whereas the CSRA and Due Process Amendments "address the precise question of *why* and *how* covered employees are removed." Comey Br. 30. That argument ignores statutory history in an attempt to avoid the fatal implied-repeal problem with Plaintiff's argument. Plaintiff admits that the current version of 28 U.S.C. § 542(b) was enacted in 1966 before either the original CSRA was enacted in 1978, or the Due Process Amendments were enacted in 1990. Comey Br. 23. Section 542(b) provides no for-cause or other restriction on the Attorney General's ability to remove AUSAs; the statute simply says that each AUSA "is subject to removal by the Attorney General." 28 U.S.C. § 542(b). Plaintiff thus correctly does not dispute that prior to the enactment of the CSRA and then Due Process Amendments years later, AUSAs enjoyed no statutory protections from removal. To use Plaintiff's phraseology, at enactment, § 542(b) thus provided the *who* could remove AUSAs—the Attorney General—as well as the question of *why* and *how* they could be removed—without any cause and without any particular procedural process. Once CSRA was enacted in 1978, and in particular once the Due Process Amendments were enacted in 1990, the *who* could remove AUSAs did not change, but, according to Plaintiff, the *why* and *how* they could be removed did. In other words, for Plaintiff's reading of the statute to work, the CSRA and/or Due Process Amendments would have needed to somehow alter what § 542(b) provided for AUSAs: no protections from removal by the Attorney General. Yet, as discussed, the CSRA and its Due Process Amendments fail to speak

clearly in imposing a removal restriction where § 542(b) already authorized at-will removal by the Attorney General.

Plaintiff is asking this Court to infer a significant limitation on the Attorney General's expressly stated removal authority from provisions that do not expressly say that 28 U.S.C. § 542(b) is subject to 5 U.S.C. § 7513. Plaintiff's argument suffers from another significant flaw: Plaintiff conflates coverage under the CSRA with a restriction on the Attorney General's § 542(b) removal authority. Defendants have not disputed that Comey qualifies as an "employee" for purposes of CSRA, 5 U.S.C. § 7511, such that she can appeal adverse actions to the Merit Systems Protection Board (MSPB). But Plaintiff confuses the issue of whether she can appeal adverse actions to the MSPB with another issue, namely whether Congress intended the removal protections in another part of the statute, 5 U.S.C. § 7513, to override or limit the Attorney General's removal authority in 28 U.S.C. § 542(b). Comey essentially wants to add words to § 542(b) that do not appear there. In her view, § 542(b) actually reads: "Each assistant United States attorney is subject to removal by the Attorney General *only for the efficiency of the service under § 7513*." That is not what the statute says. Congress may have intended to give AUSAs procedural review and rights for certain adverse actions—like one taken for cause or by an official other than the Attorney General—without silently eliminating the Attorney General's distinct authority to remove AUSAs without cause.

Plaintiff next turns to legislative history, but "legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). Even if the Court considers

this legislative history, it is unhelpful to Plaintiff. Plaintiff points to legislative history that she suggests indicates Congress intended to provide government attorneys with removal protections. Comey Br. 26-27. Most of the history she cites does not mention AUSAs at all. To the extent it mentions Department of Justice attorneys, not all DOJ attorneys are AUSAs—including those attorneys at Main Justice. Concededly, one committee hearing Plaintiff cites includes a single mention a comment from DOJ expressing concern if the Due Process Amendments were to apply to AUSAs handling "sensitive cases." Administrative Due Process for Certain Federal Employees, Hearing on H.R. 917 Before the Subcommittee on Civil Service of the House Committee on Post Office and Civil Service, 99th Cong. 25, 26 (1985). But "excerpts from committee hearings are among the least illuminating forms of legislative history." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 437 (2019) (cleaned up). And here, nothing indicates that Congress actually meant the Due Process Amendments to apply to AUSAs.

Plaintiff also invokes *Hamlett v. Department of Justice*, 90 M.S.P.R. 674, 676 (2002), and the Merit Systems Protection Board's analysis of the interaction between the Due Process Amendments and 28 U.S.C. § 542(b). There, the MSPB interpreted § 542(b) to not preclude AUSAs having appeal rights to the Board under 5 U.S.C. § 7511. But, having appeal right to the MSPB does not provide an indication that Congress meant to override or limit the Attorney General's removal authority in § 542(b). After all, even if the CSRA did provide AUSAs appeal rights, there is nothing in the CSRA that evinces clear intent to restrict the *Attorney General's*

removal authority with respect to AUSAs. And AUSAs retain appeal rights for other types of adverse personnel actions, including suspensions of more than fourteen days, reductions in pay, etc.—*i.e.*, adverse actions that do not implicate removal by the Attorney General. *See* 5 U.S.C. §§ 7512(2), (4), 7513(d).

Moreover, the MSPB's analysis of the legislative history in *Hamlett* is no more convincing. The Board looked to the fact that employees of certain other agencies like the FBI were excluded from the Due Process Amendments' coverage as evidence that the lack of a specific exclusion for AUSAs meant that AUSAs had the ability to appeal adverse actions to the Board despite § 542(b). *Hamlett*, 90 M.S.P.R. at 678 (citing 5 U.S.C. § 7511(b)(3)-(9)). Yet the lack of a specific exclusion in the CSRA for AUSAs says nothing about whether the Due Process Amendments constrained § 542(b)'s more specific authority for the Attorney General to remove AUSAs; § 542(b) was enacted first, so the question is whether the Due Process Amendments actually altered the pre-amendments status quo, under which AUSAs were removable by the Attorney General without cause under § 542(b). This is why the Federal Circuit acknowledged long ago that "[d]etermining precisely the rights provided to assistant U.S. attorneys by the Due Process Amendments … is problematic because of the language of 28 U.S.C. § 542 which gives the Attorney General broad discretion in appointing and removing assistant U.S. attorneys." *Gosnell v. Dep't of Just.*, 69 F.3d 1138, 1140 (Fed. Cir. 1995). In any event, the MSPB's statutory analysis in *Hamlett* is neither binding on nor entitled to any deference from this Court, which must

"exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).

Plaintiff contends that *Braidwood* involved a different situation because "no statute restricts removal of [the] Task Force members" there, *Braidwood*, 606 U.S. at 764, whereas here, the CSRA "does restrict removal of AUSAs." Comey Br. 29. That line of reasoning merely assumes that the CSRA actually alters § 542(b) by implication and restricts the Attorney General's removal authority—in other words, the merits arguments here. Plaintiff also attempts to differentiate *Windsor v. The Tennessean*, which holds that AUSAs "possess[] no property entitlement because the Attorney General's power to remove [AUSAs] is unconditional" under Section 542. 719 F.2d 155, 159 (6th Cir. 1983). But her efforts fall flat. Plaintiff first asserts that because her allegations involve a prohibited personnel practice, that somehow provides her with a legally cognizable interest in her employment. Comey Br. 29. Yet that assumes the conclusion that the CSRA actually constrains the Attorney General's authority under § 542(b) to remove AUSAs. Plaintiff then argues that *Windsor* cannot mean what Defendants say it means because the decision came out before the 1990 Due Process Amendments. Comey Br. 29. But that ignores one of Plaintiff's arguments, namely that even before the Due Process Amendments the CSRA provided protections for AUSAs. Quite evidently, the Sixth Circuit in *Windsor* did not interpret the statute like Plaintiff does now. In any event, *Windsor* confirms that under § 542(b) AUSAs can be removed without cause by the Attorney General, and the question in this case is whether that authority was actually restricted by the

1990 Due Process Amendments. If § 542(b) provided authority for the Attorney General to remove AUSAs without cause prior to the 1990 Amendments, Plaintiffs need to overcome a significant hurdle to prevail: they must show the Due Process Amendments included specific language that made "Congress' intention to repeal" the Attorney General's authority under § 542(b) "clear and manifest[.]" *Me. Cmty. Health Options*, 590 U.S. at 315. They can point to none. Moreover, nothing here suggests that the two laws are "irreconcilable." *See id.* Rather, the two laws can co-exist; if the Attorney General does not direct the removal of an AUSA, the AUSA is removed for cause, or the AUSA is subject to an adverse personnel action not involving removal by the Attorney General, the CSRA may provide the AUSA a different process and different protections. But if the Attorney General removes the AUSA without cause—as happened here—the more specific statute (28 U.S.C. § 542(b)) governs. Mot. 17.

Plaintiff next invokes *King v. Briggs*, 83 F.3d 1384 (Fed. Cir. 1996), which she contends involves a statute that is "akin" to Section 542. Comey Br. 30. There, the Federal Circuit concluded that the employee retained CSRA removal protections even though by statute the CSRA's appointment provisions did not apply to that position. *Briggs*, 83 F.3d at 1386-88. Section 542 is different. Section 542 provides the Attorney General with the authority to hire and terminate AUSAs. 28 U.S.C.

§ 542(a)-(b). No assumption can be made from Congress leaving in place both provisions.

Plaintiff also asserts that Defendants' interpretation would create a "gaping hole in the CSRA" because AUSAs would be subject to the CSRA's removal restrictions unless the Attorney General terminates their employment without cause. Comey Br. 31. Yet that is simply the consequence of giving effect to both the CSRA and § 542(b), as courts are supposed to do when two statutes exist on the same subject. *Me. Cmt'y Health Options*, 590 U.S. at 315.

Lastly, Plaintiff contends that the doctrine of constitutional avoidance counsels in favor of Plaintiff's interpretation, not Defendants'. Comey Br. 31-32. Specifically, Plaintiff asserts that Defendants' interpretation would "sets up a conflict with Congress's powers under both the Appointments Clause in Article II and the Necessary and Proper Clause in Article I." *Id.* at 32. That assumes Congress actually intended to restrict the Attorney General's removal authority under § 542(b), but as discussed above Congress did no such thing. If the doctrine applies at all here, it supports Defendants. Interpreting the CSRA to restrict the power of the President and the Attorney General to remove an AUSA without cause would obviously encroach on the Executive's power to control subordinates exercising executive power. Mot. 18. There is no reason to interpret the CSRA that way here, where § 542(b) provides the Attorney General to remove AUSAs without cause.

### B. Plaintiff was Removable at Will Under Article II of the Constitution

Plaintiff exercised "conclusive and preclusive" executive power in her position as an AUSA, so she was removable at-will under Article II of the Constitution.[1] Reading the CSRA to preclude Article II removal of AUSAs without cause would encroach on the President's and Attorney General's power under Article II.

1. Plaintiff contends that Defendants are "asserting sweeping removal power over inferior officers and employees *in contravention of congressional intent*." Comey Br. 9 (emphasis added). But Plaintiff's opposition relies primarily on older cases that provide Congress *can* impose restrictions on the removal of certain inferior officers consistent with Article II. Those cases, however, do not establish that Congress can impose any removal restriction it wants on non-principal officers, phrased in whatever way it wants. The Supreme Court's case law requires that Congress use "very clear and explicit language" when it wants to "take away the power of at-will removal from an appointing officer"; "mere inference or implication does not suffice." *Braidwood*, 606 U.S. at 771 (cleaned up). Congress clearly did not do that here, where the later-enacted 28 U.S.C. § 542(b) provides no removal protections for AUSAs and the later-enacted CSRA and Due Process Amendments mention neither AUSAs nor § 542(b). At most, Plaintiff points to mere inferences or implications, which *Braidwood* says are insufficient. 606 U.S. at 771. There is thus little reason to read the CSRA and Due Process Amendments as restricting the Attorney General's

[1] Plaintiff agrees that "the Court need not parse if Ms. Comey is an inferior officer or employee." Comey Br. 11.

removal authority over AUSAs, especially given that an alternative reading exists that is both more consistent with the statutory text and history, and avoids the significant constitutional questions that would arise if Congress intended to restrict the Attorney General's ability to remove AUSAs.

2. Regardless, reading the CSRA and its Due Process Amendments to restrict the Attorney General's removal authority over AUSAs would raise serious constitutional concerns.

a. As detailed in Defendants' motion, Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President[.]'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1). And there are some "quintessentially executive function[s]" which neither Congress nor courts can interfere—specifically, functions that are within the President's "'conclusive and preclusive' authority." *Trump v. United States*, 603 U.S. 593, 607-08, 620 (2024) (quoting *Youngstown*, 343 U.S. at 638 (Jackson, J., concurring)). One such quintessentially executive function within the President's "'conclusive and preclusive" authority is the "[i]nvestigation and prosecution of crimes." *See id.* at 620-21. That is precisely the job of an AUSA.

AUSAs are charged with conducting all aspects of criminal prosecutions on behalf of the United States. *See* Mot. 9-10; 28 U.S.C. § 542(a) ("The Attorney General may appoint one or more assistant United States attorneys in any district when the public interest so requires."); *id.* § 547(1) (requiring U.S. Attorneys to "prosecute for all offenses against the United States" within their districts); *Yifrach v. United*

*States*, 169 Fed. Cl. 33, 60 (Ct. Fed. Cl. 2024) (listing "statutory duties of an AUSA" including "prosecut[ing] all offenses against the United States"). AUSAs file indictments and seek warrants in district courts, draft and file briefs, motions, and the like, appear routinely before district court judges, and discuss and even reach plea agreements with criminal defendants. *See* Mot. 10 (citing Fed. R. Crim. P. 4, 7(c)(1), 11(c)(1), 12; U.S. Dep't of Just., U.S. Attorneys' Manual § 9-2.400). When an AUSA exercises these functions, there can be little doubt that the AUSA is exercising core executive power.

Even Plaintiff admits that as an AUSA, she "was assigned to prosecute high-profile defendants," was "asked … to take the lead on a major public corruption case" soon before her termination, and "personally handled eleven criminal trials, secured over 200 convictions, briefed and argued multiple appeals before the Court of Appeals for the Second Circuit, and supervised numerous additional federal investigations, trials, and convictions." Compl. ¶¶ 2, 3, 25; *see* Mot. 13. Comey thus regularly and repeatedly exercised the executive's preclusive and conclusive power to "investigate and prosecute ... crimes." *Trump*, 603 U.S. at 620-21; *see* Mot. 13.

However, Plaintiff attempts to downplay the role of an AUSA primarily by citing officials that are above AUSAs in the DOJ's organizational chart and citing various statutes and court rules restricting the authority of federal prosectors (not only AUSAs). Comey Br. 14-15, 21-22. Plaintiff's citations merely provide examples of constrains on prosecutorial discretion, and do not establish that AUSAs not not exercise conclusive and preclusive executive authority. There cannot be serious

dispute that conducting criminal prosecutions on behalf of the United States is a core executive function within the President's "conclusive and preclusive" authority. The Supreme Court has repeatedly emphasized that "[i]nvestigative and prosecutorial decisionmaking is 'the special province of the Executive Branch[.]'" *Trump*, 603 U.S. at 620 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). The Supreme Court has further emphasized that the Executive Branch possesses "exclusive authority and absolute discretion" to decide which crimes to investigate and prosecute. *Nixon v. Fitzgerald*, 418 U.S. 683, 693 (1974). *Trump v. United States* characterized the investigation and prosecution of crimes as "a quintessentially executive function" and held that the President's authority over the investigative and prosecutorial functions of DOJ falls within the President's "conclusive and preclusive" authority. 603 U.S. at 620-21. That conclusion did not depend on prosecutorial decisions being wholly unregulated or made personally by the President; indeed, the Supreme Court specifically recognized that the President's ability to carry out his constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, through the Attorney General and other Justice Department officials. *Id.* at 620. Nor does the existence of judicial or executive checks on an AUSA's authority transform an executive function into a non-executive one.

Plaintiff provides several examples of "multiple congressionally- or court-regulated procedures governing and restricting a criminal prosecutor's authority" that she contends somehow compel a conclusion that AUSAs do not exercise conclusive and preclusive executive power. Comey Br. 21. But Plaintiff's wiretap

example shows only that Congress has imposed a judicial safeguard on one investigative technique; it does not transfer the underlying investigative or prosecutorial function to Article III courts. *See* Comey Br. 21 (citing 18 U.S.C. §§ 2510(9), 2518(1)). Likewise, the fact that an AUSA cannot negotiate around a statutory mandatory-minimum sentences establishes only that the AUSA's prosecutorial discretion is bounded by congressional law, not that the prosecutorial authority an AUSA exercises in, for example, recommending a sentence is not executive in nature. *See* Comey Br. 21 (quoting 18 U.S.C. § 3553(f)). And the requirement that certain prosecutorial decisions like offering witness immunity receive approval from politically-accountable DOJ officials, Comey Br. 21 (citing 18 U.S.C. § 6003(b)), simply places AUSAs within the hierarchical supervision through which Article II executive power is exercised. *See United States v. Arthrex, Inc.*, 594 U.S. 1, 18-20 (2021) (recognizing review by a superior executive officer as a means of ensuring that lower ranking executive officials remain subject to executive supervision); *Edmond v. United States*, 520 U.S. 651, 663 (1997) (characterizing inferior officers as being "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate").

Of course, the Supreme Court in *Arthrex* made clear that an official's exercise of "significant authority" can raise a distinct Article II concern when the official's decisions are significant and insulated from any meaningful executive review—that is, where the individual is a principal officer who must be appointed by the President and confirmed by the Senate. 594 U.S. at 14-23. But that does not support Plaintiff's

inference that an official does not exercise significant authority whenever the official's decisions are reviewable or subject to approval. *Arthrex* itself distinguished between the existence of significant authority and the separate question whether that authority is adequately supervised by an appropriate official. *Id.* at 18-20 (rejecting dissent's "focus on the location of an officer in the agency 'organizational chart'"). The relevant Article II question is not whether an AUSA possesses unfettered discretion over every consequential prosecutorial decision, but whether the authority she does exercise is "conclusive and preclusive" executive authority. Because federal investigation and prosecution of crimes are quintessential executive functions and because AUSAs exercise those functions on behalf of the Executive Branch subject to both statutory constraints and executive supervision, judicial review or executive approval requirements do not establish that AUSAs do not exercise "conclusive and preclusive" executive power.

Moreover, Plaintiff's focus on supervision makes little sense. Almost all executive officers are subject to supervision. For example, at the Department of Justice, the Attorney General is the head of the Department, and everyone below the Attorney General is subject to the Attorney General's supervision. Nobody would suggest, however, that Congress could impose for-cause removal restrictions on the Deputy Attorney General, Associate Attorney General, Solicitor General, and Assistant Attorneys General at the Department simply because the Attorney General supervises those officials.

Plaintiff simply has no response to Defendants' argument that AUSAs exercise "conclusive and preclusive" executive power when they represent the United States in court and can bind the federal client through their statements. Mot. 10 (citing, e.g., *United States v. Yildiz*, 355 F.3d 80, 82 (2d Cir. 2004)). If Plaintiff were correct that the Attorney General lacks the ability to remove AUSAs without cause, AUSAs could appear in court and bind the President and the entire Executive Branch to positions that the President disagrees with in an area where the President is supposed to have "conclusive and preclusive" power. Mot. 10-11. Article II does not permit that.

b. Plaintiff argues that despite her exercise of executive power as an AUSA, Supreme Court precedent has long established that Congress has the constitutional authority to regulate her removal as a non-principal officer. Comey Br. 11. Of course, as Defendants contend, Congress has not actually put forth the requisite clear statement necessary to restrict to Attorney General's removal of AUSAs. *See supra* pp. 3-6. Even it had done so, Plaintiff states the rule far too broadly.

Congress at most can restrict the removal of "certain *inferior* officers with narrowly defined duties." *Seila Law*, 591 U.S. at 204 (citing *United States v. Perkins*, 116 U.S. 483 (1886), and *Morrison v. Olson*, 487 U.S. 654 (1988)). There is no rule that Congress may restrict the removals of all officials who exercise the President's conclusive and preclusive authority. *See Trump*, 603 U.S. at 609 ("Congress cannot act on … the President's actions on subjects within his 'conclusive and preclusive' constitutional authority."). Plaintiff fails to mention the Supreme Court's more

limited reading of *Perkins* and *Morrison* to advocate for a broader rule, namely that Congress can restrict the removal of inferior officers in general. That is simply not the law.

As Defendants stated in their motion, the Supreme Court has upheld a removal restriction that interfered with the President's conclusive and preclusive power over criminal prosecutions, under the now-defunct Independent Counsel statute. Mot. 11 (citing *Morrison v. Olson*, 487 U.S. 654 (1998)). But *Seila Law* has cabined that holding. Specifically, *Morrison* is strictly limited to a prosecutor who had extremely "limited jurisdiction and tenure," such that the removal restriction was not "of such a nature that it impedes the President's ability to perform his constitutional duty." *See Seila Law*, 591 U.S. at 217-21 (cleaned up). Extending the *Morrison* exception to ordinary criminal prosecutors like AUSAs is particularly unwarranted given that *Seila Law* called *Morrison* into doubt. *See id.* at 216 n.2; *see also id.* at 218 (describing *Morrison* as the "the outermost constitutional limits of permissible congressional restrictions on the President's removal power.")

The Supreme Court's recent decision in *Trump v. Slaughter*, 146 S. Ct. 2283 (2026), provides additional support for the argument that AUSAs are not insulated from Article II removal. There, the Supreme Court analyzed, in careful detail, the extent of permissible removal restrictions for Executive Branch officials who exercise the President's executive power. "Nearly 250 years ago," the Supreme Court explained, "the Framers decided to vest 'the executive Power' in one person—a President of the United States of America." *Id.* at 2291 (quoting U.S. Const. art. II,

§ 1, cl. 1) (cleaned up). "With just one President in charge, they reasoned, there would be no doubt 'on whom the blame or punishment of a pernicious measure ought really to fall.'" *Id.* (quoting The Federalist No. 70, p. 428 (A. Hamilton) (Clinton Rossiter ed. 1961)) (cleaned up). But "[b]ecause no one could execute the laws alone and unaided, … the President must be permitted to select those who act for him and remove those for whom he cannot continue to be responsible." *Id.* (quotation cleaned). "To hold otherwise would make it impossible for the President to fulfill his constitutional obligation to take care that the laws be faithfully executed." *Id.* (cleaned up).

The point of this system is "to establish a hierarchy—a 'Chief Magistrate' with whom the buck stops, and below him various 'assistants or deputies' who … remain 'subject to his superintendence.'" *Id.* at 2293 (quoting The Federalist No. 47, p. 303 (J. Madison) (Clinton Rossiter ed. 1961)). And "[t]o remain accountable to the President, those officers must be removable by the President." *Id.* Put differently, "the power to remove at will was a necessary corollary of the Constitution's design[,]" because "[o]nly if the President's deputies were removable at will would they truly be 'subordinate' to 'the sole executive magistrate.'" *Id.* at 2295 (quoting The Federalist No. 47, p. 303). "And only then could the Constitution live up to" the aspiration "that the President would be *personally responsible* for everything." *Id.* (emphasis in original) (cleaned up).

In *Slaughter*, applying those principles meant expressly overruling *Humphrey's Executor*—the only exception, out of what were once two exceptions, to

the general-removability rule relevant there. *See id.* at 2302 ("If anything more *is* left of *Humphrey*'s, we overrule it" (emphasis omitted)). Here, applying the same principles requires concluding that AUSAs like Comey must be removable at will. The President can only be "*personally responsible* for everything" in the Executive Branch if he or his close subordinates can be personally responsible for—and therefore able to freely remove—officials exercising the executive functions that Comey exercised in her former role as an AUSA. *Id.* at 2295 (emphasis in original). Those functions are quintessentially executive, as discussed above. *See supra* pp. 15-20. *Slaughter* thus confirms exercising such core executive functions triggers at-will removability.

Plaintiff attempts to argue that *Slaughter* is limited to only *principal* officers. Comey Br. 13-14. There is no merit to that suggestion. Even the dissent in *Slaughter* resigned itself to the fact that those principles prevent "drawing a line" on the President's removal authority "at principal officers." *Slaughter*, 146 S. Ct. at 2344 (Sotomayor, J., dissenting). After all, "[i]inferior officers (and likely many employees within the civil service) wield some executive power." *Id.* (Sotomayor, J., dissenting). And "[r]egardless of their rank, if the President cannot have such individuals removed at will, then there is a break in the chain of dependence … []which … must reach" from the President "down all the way to the lowest officers." *Id.* (Sotomayor, J., dissenting) (quotation cleaned). That is undoubtedly correct. The majority in *Slaughter* conspicuously did not disagree, even though the majority went out of its way to flag *other* officers it was not addressing—namely, the judges of non-Article III

courts. *See id.* at 2306. In fact, the only exceptions acknowledged by *Slaughter* to the general-removability rule is for offices to which executive power is not "attached," or for those limited to "functions traditionally handled outside the Executive Branch." *Id.* at 2306. AUSAs simply do not occupy such an office and in fact exercise conclusive and preclusive executive power investigating and prosecuting crimes against the United States. AUSAs like Comey are thus removable at will under Article II.

3. Plaintiff attempts to argue that the President's Article II removal authority cannot be delegated to the Attorney General or other officials. Comey Br. 15. Plaintiff provides no direct citations for this rule, which contravenes the general rule that the "power of removal as incident to the power of appointment[,]" *Myers v. United States*, 272 U.S. 52, 60 (1926), and the heads of departments—and inferior officers below them—may properly exercise that power on his behalf, with their acts attributable to the President. *See* U.S. Const., art. II, § 2, cl. 2 (providing that the heads of departments may appoint inferior officers); *e.g., Myers*, 272 U.S. at 133 ("[e]ach head of a department is and must be the President's alter ego in the matters of that department where the President is required by law to exercise authority"); *Printz v. United States*, 521 U.S. 898, 922 (1997) (the [P]resident fulfills his duties under the Take Care Clause both "personally and through officers whom he appoints"). Here, then-Attorney General Bondi—acting through Director Hakes—and later then-Acting Attorney General Blanche, removed Comey from federal service and ratified that removal, respectively. In doing so, the Attorneys General acted pursuant to the executive authority they derive from the President.

Ultimately, Plaintiff's brief asks the wrong question. The Attorney General has already received an express delegation of appointment and removal authority for AUSAs from Congress. Specifically, Congress has vested the Attorney General with the power to appoint AUSAs, 28 U.S.C. § 542(a), and has provided specifically that the Attorney General has the power to remove those AUSAs, *id.* § 542(b). Plaintiff was removed by Attorneys General exercising that statutory authority. Plaintiff's brief effectively admit this was proper, citing Judge Katsas's opinion in *Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *1 (D.C. Cir. June 5, 2025) (Katsas, J., concurring, joined by Pillard, J.) (If "Congress vests a department head with the power to appoint and remove an inferior officer"—or an employee—"'the President has certainly no power to remove' the inferior officer [or employee] directly." (quoting *In re Hennen*, 38 U.S. 230, 260 (1839)). Regardless of that opinion's correctness that the President cannot himself remove lower-level officials when Congress has vested Department Heads like the Attorney General with removal authority, here Comey's removal was directed by the Attorney General (and that removal was ratified by the Acting Attorney General. Congress vested that removal authority in that office. *See* 28 U.S.C. § 542(b).

4. Lastly, Plaintiff inaccurately asserts that then-Acting Attorney General Todd Blanche's ratification of Plaintiff's Article II termination is ineffective. Relying on *Wille v. Lutnick*, 158 F.4th 539, 547 (4th Cir. 2025), Plaintiff argues that "[f]or ratification to be effective, the principal must possess the authority to authorize the act both when the agent initially took the action and when the principal ratifies it,"

and since none of the officials involved in Plaintiff's termination or ratification had the constitutional authority to carry out an Article II termination, the ratification is meaningless. Comey Br. 19. Plaintiff is wrong that the Attorney General cannot carry out an Article II termination for the reasons discussed above. *Supra* pp. 15-25. And, in any event, then-Acting Attorney General Blanche's ratification of Plaintiff's termination did not rely exclusively on Article II; the ratification also invoked 28 U.S.C. § 542(b), which expressly provides the Attorney General with authority to remove AUSAs. Answer Ex. A. Plaintiff does not dispute that the Attorney General has authority to remove AUSAs under § 542(b).

### C. Plaintiff's Removal Under Article II and 28 U.S.C. § 542 Qualifies as Removal for "Efficiency of the Service" Under the CSRA

Plaintiff also contends that the CSRA's "efficiency of the service" limitation on removals "refers to misconduct or performance issues with a nexus to an agency's ability to carry out its functions[.]" Comey Br. 33. That is a significant misreading of the statute.

5 U.S.C. § 7513(a) provides that agencies may take adverse actions "covered by this subchapter" against employees "only for such cause as will promote the efficiency of the service." A different part of the same statute provides more specific limitations when it comes to removing Senior Executive Service employees. There, the CSRA provides that "action[s]" like termination may be taken "against an employee only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a). Plaintiff's interpretation of "efficiency of the service" to require that the employee have

misconduct or performance issues is thus wrong under established principles of statutory interpretation. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (citation omitted); Mot. 20. Plaintiff offers no response. *See* Comey Br. 33-37.

And the cases Plaintiff does cite do not even support her definition of "efficiency of the service." *See* Comey Br. 33-34. One case does state that the agency needs to establish the "existence of a nexus between the employee's misconduct and the work of the agency" to prevail, but that case involved a specific "charge of misconduct" that formed the basis of the employee's removal. *Doe v. Dep't of Just.*, 565 F.3d 1375, 1379 (Fed. Cir. 2009). Same with *Brown v. Dep't of the Navy*, 229 F.3d 1356, 1358 (Fed. Cir. 2000). Neither case states a general rule defining "efficiency of the service" as requiring misconduct or performance issues as Comey would have it; the cases simply provide an evidentiary burden, namely that when an employee is removed for cause, the Government must show a nexus between the for-cause removal charge and the agency's work. In all events, "efficiency of the service" is not necessarily synonymous with poor employee performance or misconduct. It must at least encompass legitimate institutional considerations relevant to the Government's operation of the federal prosecutorial function—something Plaintiff's definition would clearly not allow for. Plaintiff's more limited reading of the statute simply adds words to the § 7513(a) that are not there.

## II. Defendants Are Entitled to Judgment on All of Plaintiff's Claims, and Plaintiff Is Not Entitled to Judgment on Claims 1, 2, 3, 5 & 6

### A. No Article I, Article II, or Statutory Violation (Counts 1, 2 & 3)

Plaintiff's claims under Articles I and II of the Constitution and the Administrative Procedure Act claim, as well as her ultra vires claim, rise or fall depending on whether Plaintiff is legally removable at-will under both Article II and 28 U.S.C. § 542(b). Because Plaintiff is removable at-will, Defendants are entitled to judgment on these claims. *See* Mot. 21-22; *supra* pp. 3-27. Plaintiff does not disagree that these are legal claims that do not depend on any disputed facts. Comey Br. 55-57. Thus, Plaintiff's partial motion for judgment on the pleadings should also be denied as to these claims for the same reasons.

### B. Plaintiff Fails to Plead Cognizable First Amendment Claims (Count 4)

Plaintiff's complaint cites no protected speech of her own. Instead, she cites speech of her father, former FBI Director James Comey, and argues that she was terminated in violation of the First Amendment based on her father's speech and her intimate association with her father. Her allegations fail to state a cognizable First Amendment claim.

Plaintiff contends that she adequately pleaded a viewpoint-discrimination and retaliation claim because she was allegedly terminated for her "*perceived* political beliefs—imputed to her because of her father's identity and … speech criticizing the President." Comey Br. 40. Plaintiff asserts, however, that it is "unknown" "who fired her and why." Comey Br. 44 n.8. So she seeks to infer the reason for her termination, even when she was provided both a facially-neutral termination letter that stated

she was removed under Article II and provided no other reasons, and a facially-neutral ratification letter that stated she was removed under Article II and 28 U.S.C. § 542(b) and provided no other reasons. Compl. ¶ 47; Compl. Ex. A (termination letter); Answer ¶¶ 14, 15. Plaintiff's speculative and conclusory allegations that her termination was actually based on protected First Amendment activity cannot override the Executive's authority to remove lower officials without cause. *See Seilia Law*, 591 U.S. at 213-14. If courts could inquire into those reasons even when none are provided and override the Executive's determination based on unsupported allegations that the termination violated the First Amendment, that would intrude on the separation of powers. Mot. 22. As Defendants argued in their motion, even cabinet officials of the opposite political party of the President and from a prior administration could end up staying in office given courts' findings that their terminations violated the First Amendment, eviscerating Article II. Mot. 22-23. Examining such allegations would itself violate the separation of powers.

Plaintiff's primary response is that her First Amendment claim would not lead down that road because the First Amendment excepts "policy-making" employees, and AUSAs are not such employees. Comey Br. 44-45 (citing *Adler v. Pataki*, 185 F.3d 35, 46 (2d Cir. 1999), and *Elrod v. Burns*, 427 U.S. 347, 360 (1976)). But AUSAs plainly qualify as policy-making employees under the *Elrod/Branti* doctrine as the Second Circuit has interpreted it. As the Second Circuit has concluded, "attorneys in government service, other than public defenders" are generally not protected from dismissal by *Elrod/Branti*. *Butler v. N.Y. State Dep't of Law*, 211 F.3d 739, 745 (2d

Cir. 2000) (citation omitted); *see id.* (listing various attorney positions that the Second Circuit has concluded do not qualify for the exception, and noted that "attorneys working in public capacities in New York State were not protected against patronage dismissals under the *Elrod-Branti* analysis"). To determine whether an employee qualifies for the exception, courts "look at the power with which [the employee] is vested by law, and which is inherent in the office." *Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir. 1993) (citing cases). And the Second Circuit has specifically identified "appearing for the [New York State] Attorney General before State and Federal Courts" as a reason an attorney could be dismissed even for reasons of political affiliation under the First Amendment. *Butler*, 211 F.3d at 744 (citation omitted). AUSAs routinely appear in court on behalf of the Executive Branch, and are responsible for investigation and prosecuting offenses against the United States; in other words, they exercise core executive power. *Supra* pp. 14-26. Thus, Plaintiff is wrong. AUSAs are not protected by *Elrod/Branti* under Second Circuit precedent.

Plaintiff argues that she is not a policy-making official under *Elrod/Branti* because AUSAs have not been "formally designated as having a 'confidential, policy-determining, policy-making, or policy-advocating character'" under the relevant CSRA provisions. Comey Br. 44-45 (quoting 5 U.S.C. § 2302(a)(2)(B)(i); 5 U.S.C. § 7511(b)(2)). But the CSRA classification is not the *Elrod/Branti* test, and does not purport to define the universe of positions not protected for First Amendment purposes. For much of the same reason, Plaintiff's invocation of the recent Executive

Order re-classifying "certain federal positions as exempt policy-determining roles" is irrelevant too. *Contra* Comey Br. 45.

Regardless, Plaintiff fails to state a viable First Amendment claim for a federal employee in her former position. Mot. 23. She states only conclusory accusations that her removal was based on "perceived political affiliation and beliefs" but fails to allege specific facts to support her assertion. Mot. 23 (citing Compl. ¶¶ 5, 56, 69, 99, 117). At most, she alleges that a private citizen's social media post referred to her as James Comey's "liberal daughter," Compl. ¶¶ 8, 64, not that the individual who terminated her considered her political affiliation and fired her as a result. Plaintiff even admits that it is "unknown" "who fired her and why," argues she needs discovery to figure it out, and declines to seek judgment on the pleadings with respect to her First Amendment claim as a result. Comey Br. 44 n.8.

Moving beyond those allegations, Plaintiff seeks to invoke violations of a First Amendment right to intimate association based on her father's speech, not her own. Plaintiff contends that the "First Amendment's protection of familial association … extend[s] beyond spouses[.]" Comey Br. 46 (citing *Patel v. Searles*, 305 F.3d 130, 136 (2d Cir. 2002)). But the case Plaintiff cites for that proposition is not a First Amendment case at all. Rather, it involved a substantive due process claim based on the right to familial association. There, police officials and a detective were said to have disseminated falsehoods that the plaintiff accusing him of murdering his mother and sister after the police officers and detective could not find a suspect, and that dissemination was intended "to create hostility and mistrust among the members of

his family towards him with the hope that the resulting animosity would produce accusations against him." *Patel*, 305 F.3d at 134. Yet here, Plaintiff's complaint fails to plead any facts that Defendants' actions "'interfered with' the parent-child relationship." Mot. 23 (quoting *Jenkins v. Tyler*, 167 F. Supp. 2d 652, 655 (S.D.N.Y. 2001)). Plaintiff attempts to distinguish *Jenkins* on its facts, but the issue here is Plaintiff's pleading deficiency: Comey does not assert that Defendants actually interfered with a close familial relationship due to First Amendment violations. That is the harm the right to familiar association is meant to protect.

While Defendants have acknowledged Second Circuit precedent recognizing a First Amendment claim where a husband employed by New York State was allegedly fired because of his wife's lawsuit against state officials, Mot. 23 (citing *Adler*, 185 F.3d at 41-45), Plaintiff simply does not plead facts that would give rise to a claim under that precedent given her failure to allege how Defendants' actions interfered with the parent-child relationship—if *Adler* could even be extended there. Moreover, *Adler* is distinguishable in any event because the case does not involve an AUSA exercising the Executive's prosecutorial power nor a statute that specifically authorizes the Attorney General to remove AUSAs without cause. Mot. 24. Plaintiff is thus wrong to assert that no "nexus" exists between her familial relationship and ability to carry about her duties. *Contra* Comey Br. 45.

### C. Plaintiff's Fifth Amendment Claims Fail (Counts 5, 6, 7 & 8), and Judgment for Plaintiff Should Be Denied on Counts 5 & 6

Defendants are also entitled to judgment on Plaintiff's Fifth Amendment claims, and Plaintiff's motion for partial judgment on the pleadings as to her procedural due process claims should be denied for the same reasons.

1. Beginning with procedural due process, Plaintiff does not dispute that her claims ultimately rise or fall depending on whether she was an at-will employee under the relevant statutes or by virtue of Article II. *See* Comey Br. 46 (asserting that she had a "property interest in her job" because she "was not an at-will employee"). Absent a property interest in her job, she lacks a cognizable procedural due process claim. *See Narumanchi v. Board of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).

Plaintiff did not have such a property interest because she was removable at-will by the Attorney General under both 28 U.S.C. § 542(b) and Article II. *See* Mot. 24-26; *supra* pp. 3-26. Her efforts to distinguish Defendants' cases fail because the CSRA cannot be applied to provide her protection from at-will removal under Article II and in any event statutory law provides expressly that she is removable at-will. *Contra, e.g.*, *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir. 1996) (employee lacked a property interest in employment where state law "expressly permitted" the employee's termination "at any time") (cited at Comey Br. 48).

Plaintiff does appear to assert that she has a property interest regardless of Article II and 28 U.S.C. § 542(b) because DOJ allegedly "fostered 'rules and

understandings' of continued employment," Comey Br. 47 (quoting *Perry v. Sindermann*, 408 U.S. 593, 602 (1972)), and allegedly "engaged in 'conduct and practice' … that established a property interest," Comey Br. 47 (quoting *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991)). But Plaintiff must have a "legitimate claim of entitlement" to continued employment that is "derived from existing rules or understandings that stem from an independent source" like federal or state statutory law that "place[s] substantive limits on official discretion" in the form of "explicitly mandatory language." *Langeman v. Garland*, 88 F.4th 289, 295 (D.C. Cir. 2023) (citations omitted). Plaintiff simply does not point to any such "independent source." And even accepting Plaintiff's allegations about DOJ's practices and representations, those facts cannot establish a property interest unless the governing law *objectively* made her continued employment an entitlement. Obviously, DOJ practice cannot create tenure contrary to statute or the Constitution.

2. Plaintiff next alleges that she has pleaded a "stigma-plus" claim in her reputation, and that the Government somehow "ratified [allegedly] stigmatizing allegations" by a social-media personality against Plaintiff by terminating Plaintiff's employment. Comey Br. 49. As Plaintiff admits, however, that Defendants "offered no explanation" for her termination when it was made and were "silen[t]" when the social-media personality claimed credit for her termination. Comey Br. 49. Sure enough, Plaintiff's termination notice and the subsequent ratification of that termination state only that Comey was removed from federal employment on the

basis of Article II and Article II and 28 U.S.C. § 542(b), respectively. Compl. Ex. A; Answer Ex. A.

That is insufficient to state a claim. Although the "stigma" and the "plus" can theoretically come from different actors at different times, the government "actor imposing the plus" must have "adopted (explicitly or implicitly) [the relevant] statements in doing so." *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005). Plaintiff identifies no official who repeated, endorsed, or attributed to her the allegations made by a non-governmental official. Instead, Plaintiff's theory asks this Court to infer that Defendants somehow adopted the statements from its failure to disavow them. Plaintiff does not allege that any government actor made any defamatory statements. That would be a significant expansion of stigma-plus.

There is no reason to do that here, where Plaintiff even implicitly concedes that no defamatory statements were made regarding the basis for her removal by stating that she wants the opportunity to "challenge the accuracy of any evidence that *allegedly* serves as the basis for her removal[.]" Compl. ¶ 111; *see* Mot. 28. And Plaintiff's claims that "Defendants' actions serve as an effective bar from Ms. Comey obtaining employment within the executive branch" is speculative in the extreme. *See* Comey Br. 50. Her complaint merely asserts without evidence that "[s]hould Plaintiff apply to work for a federal agency or a private civilian employer … Defendants *may* disseminate information that includes inaccurate and false information that will adversely impact her reputation and chances for additional employment opportunities." Compl. ¶ 112 (emphasis added); *see* Mot. 28. That

speculation is inadequate for Plaintiff to plead a liberty-interest claim. And is belied by Defendants' admissions in its publicly-filed Answer to Plaintiff's allegations that her work product as an AUSA was highly regarded and that she consistently received outstanding performance evaluations.

Lastly, Plaintiff asserts that it is "unclear whether Defendants make any argument related to Cause of Action Eight concerning substantive due process." Comey Br. 51 n.9. Defendants moved for judgment on the pleadings on all of Plaintiff's claims, and her substantive due process claim in her reputation merely restates her liberty-interest claim in her reputation. *See* Compl. ¶¶ 114-118. Plaintiff's contention that somehow "Defendants' deviation from CSRA processes" gives rise to a substantive due process violation simply seeks to convert a procedural due process claim into a substantive due process one. *See* Comey Br. 51 n.9. And in any event, Plaintiff lacks a valid property interest in her continued employment as an AUSA, so her substantive due process claim fails for that reason as well. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 789 (2d Cir. 2007).

### D. Plaintiff Does Not Plead Legally Cognizable Declaratory Judgment or Mandamus Claims (Counts 9 & 10)

Plaintiff's claim for a declaratory judgment merely duplicates Plaintiff's substantive claims, and thus should be dismissed. Mot. 29 (citing *Skanska USA Bldg. Inc. v. Regeneron Pharms. Inc.*, No. 23-cv-8418, 2024 WL 3274731, at *3 (S.D.N.Y. July 1, 2024)). In any event, Plaintiff's plea for this Court to issue a declaratory judgment clarifying that Article II does not allow for Plaintiff's removal without cause rises or falls with Plaintiff's substantive claims. *See* Comey Br. 51-52. To the extent

Plaintiffs appear to ask for a declaratory judgment to remedy alleged injuries for other employees removed under Article II, Plaintiff lacks standing to invoke their injuries.

Plaintiff also admits that she pleaded her mandamus claim "in the alternative," Comey Br. 52 (quoting Compl. ¶ 123), so this claim should be dismissed along with her other substantive claims. In any event, Plaintiff has also not established a "clear and indisputable" right to relief, *United States ex rel. Bernardin v. Duell*, 172 U.S. 576, 582 (1899), especially where she is removable at-will under a federal statute and Article II. Regardless, while mandamus is a proper mechanism for trying the title to judicial offices, *see Marbury v. Madison*, 1 Cranch 137, 167-173 (1803), courts may not use it to restore executive officers. *See* Mot. 30-31.

## CONCLUSION

For all the foregoing reasons, the Court should issue judgment in favor of Defendants, and deny Plaintiff's motion for partial summary judgment.

August 21, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BRETT A. SHUMATE
Assistant Attorney General

By: */s/ Tyler J. Becker*
TYLER J. BECKER
Counsel to the Assistant Attorney General

JOHN A. SARCONE III
First Assistant United States Attorney
Northern District of New York

Karen Folster Lesperance
Assistant United States Attorney
*Acting Under Authority Conferred by 28 U.S.C. § 515*

*Attorneys for the United States*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(c) of the Local Rules for the United States District Court for the Southern District of New York, the undersigned counsel for the Defendants hereby certifies that this memorandum of law complies with the type volume limitation of Rule 7.1(c). As measured by the word-processing system used to prepare this memorandum of law, there are approximately 9,669 words in the brief.

*/s/ Tyler J. Becker*
Tyler J. Becker
Counsel for the Assistant Attorney General

**CERTIFICATE OF SERVICE**
**BY NEXTGEN CM/ECF**

Maurene Comey
v.
Department of Justice, et al.

Docket No. 1:25-cv-07625

The undersigned hereby certifies that he is an employee of the U.S. Department of Justice, and is a person of such age and discretion as to be competent to serve papers.

He further certifies that on August 21, 2026, he served a copy of the Defendant's motion for judgment on the pleadings and memorandum of law in support thereof on counsel for plaintiff by uploading a Portable Document Format (PDF) version of the same to the Southern District of New York's ECF system.

*/s/ Tyler J. Becker*
Tyler J. Becker
Counsel for the Assistant
Attorney General