**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MAURENE COMEY,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE; EXECUTIVE OFFICE OF THE PRESIDENT; FRANCEY HAKES in her official capacity as the Director of the Executive Office for United States Attorneys; TODD BLANCHE, in his official capacity as Attorney General of the United States Department of Justice; EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS; OFFICE OF PERSONNEL MANAGEMENT; and THE UNITED STATES OF AMERICA,

Defendants.

Civil Action No: 25-cv-07625

Hon. Jesse M. Furman

ORAL ARGUMENT REQUESTED

# PLAINTIFF MUARENE COMEY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

CLARICK GUERON REISBAUM LLP
Nicole Gueron
Ellen Blain
Deepa Vanamali
41 Madison Avenue
New York, NY 10010
Tel.: (212) 633-4310
ngueron@cgr-law.com
eblain@cgr-law.com
dvanamali@cgr-law.com

KOSKOFF KOSKOFF & BIEDER, PC
Margaret M. Donovan
350 Fairfield Ave.
Bridgeport, CT 06604
Tel: (203) 336-4421
mdonovan@koskoff.com

## TABLE OF CONTENTS


Table of Authorities ............ ii

Preliminary Statement ............ 1

Argument ............ 2

I. Judgment Should Be Entered For Plaintiff On Claims One, Two, and Three: Article II Does Not Permit The President, Attorney General, or Anyone Else to Fire an AUSA Without Cause ............ 2

A. Congress Has the Power to Restrict Removal of Inferior Officers ............ 3

B. AUSAs Retain Removal Protection even if Prosecution Is a "Preclusive and Conclusive" Executive Function ............ 7

II. Judgement Should Be Entered For Plaintiff on Claims One, Two, and Three Based on Statutory Violations ............ 10

A. The CSRA Applies to and Limits Section 542 ............ 10

1. The Attorney General Must Comply with the CSRA ............ 11

2. The 1990 Due Process Amendments Provide Further Protection ............ 12

3. Canons of Statutory Interpretation and Constitutional Avoidance Favor Plaintiff ............ 14

B. Defendants' "Efficiency of Service" Argument Is Illogical ............ 18

1. Section 7513 Requires Removal to Be Connected to Service ............ 19

2. The Connection Must be Legitimate ............ 19

3. Defendants Admit They Did Not Follow the CSRA ............ 20

III. Judgment Should Be Entered For Plaintiff on her Procedural Due Process Claims (Claims Five and Six) ............ 21

Conclusion ............ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Off. of Pers. Mgmt.*,
21 F. App'x 919 (Fed. Cir. 2001) ....................9

*Am. Land Title Ass'n v. Clarke*,
968 F.2d 150 (2d Cir. 1992)....................15

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019)....................13

*Bolar v. Frank*,
938 F.2d 377 (2d Cir. 1991)....................16, 17

*Bush v. Lucas*,
462 U.S. 367 (1983)....................20

*Cheney v. Dep't of Just.*,
479 F.3d 1343 (Fed. Cir. 2007)....................9

*Clark v. Martinez*,
543 U.S. 371 (2005)....................15, 18

*Col. Wild Pub. Lands v. U.S. Forest Serv.*,
2022 WL 17250238 (D.D.C. Nov. 28, 2022) ....................7

*Coleman v. Napolitano*,
65 F. Supp. 3d 99 (D.D.C. 2014)....................22

*Comans v. Exec. Off. of the President*,
2026 WL 2100037 (E.D. Va. July 21, 2026)....................5, 8, 17, 21

*Comey v. U.S. Dep't of Just.*,
No. 25-CV-7625 (JMF), 2026 WL 1142679 (S.D.N.Y. Apr. 28, 2026) ....................12

*Elgin v. Dep't of the Treasury*,
567 U.S. 1 (2012)....................16

*Esparraguera v. Dep't of the Army*,
101 F.4th 28 (D.C. Cir. 2024)....................22

*Fed. Crop Ins. Corp. v. Merrill*,
332 U.S. 380 (1947)....................7

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010)....................5

*Hamlett v. DOJ*,
2002 WL 220046 (M.S.P.B. Jan. 25, 2002)....................13, 14, 17

*Hernandez v. Blanche*,
181 F.4th 149 (1st Cir. 2026)....................8

*Jones v. Hendrix*,
599 U.S. 465 (2023)....................15

*JP Morgan Chase Bank, N.A. v. Tesla, Inc.*,
2024 WL 4167340 (S.D.N.Y. Sept. 12, 2024)....................2, 10

*Karamanos v. Egger*,
882 F.2d 447 (9th Cir. 1989) ....................10

*Kennedy v. Braidwood*,
606 U.S. 748 (2025)....................9, 11

*Langeman v. Garland*,
88 F.4th 289 (D.C. Cir. 2023)....................22

*Lovshin v. Department of Navy*,
767 F.2d 826 (Fed. Cir. 1985)....................19, 20

*Morrison v. Olson*,
487 U.S. 654 (1988)....................3, 4, 7, 8

*Myers v. United States*,
272 U.S. 52 (1926)....................4, 5, 7, 9

*Narumanchi v. Board of Trs. of Conn. State Univ.*,
850 F.2d 70 (2d Cir. 1988)....................21

*Perkins Coie v. Dep't of Justice*,
No. 25-5241, ECF No. 2161832 (D.C. Cir.)....................8

*Perry v Sindermann*,
408 U.S. 593 (1972)....................21

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012)....................15

*Seila Law, LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020)....................5, 9

*Severino v. Biden*,
71 F.4th 1038, 1040 (D.C. Cir. 2023)....................17

*Steele v. United States*,
267 U.S. 505 (1925)....................10

*Termination of an AUSA on Grounds Related to His Acknowledged Homosexuality*,
7 Op. O.L.C. 46 (1983)....................11

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026)....................5, 6

*Trump v. United States*,
603 U.S. 593 (2024)....................5, 8, 9

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021)....................6, 7

*United States v. Crosthwaite*,
168 U.S. 375 (1897)....................16

*United States v. Fausto*,
484 U.S. 439 (1988)....................16

*United States v. Hilario*,
218 F.3d 19 (1st Cir. 2000)....................4

*United States v. Perkins*,
116 U.S. 483 (1886)....................4, 5, 7, 17

*United States v. Santos*,
553 U.S. 507 (2008)....................15

*United States v. Whittingham*,
No. 22-1507, 2024 WL 2104674 (2d Cir. May 10, 2024)....................2

*Wallach v. Van Riswick*,
92 U.S. 202 (1875)....................19

*Windsor v. The Tennessean*,
719 F.2d 155 (6th Cir. 1984)....................13, 14

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952)....................9

**Statutes**

5 U.S.C. § 1204 ....... 13

5 U.S.C. § 2301 ....... 11

5 U.S.C. § 2302 ....... 11, 12, 13, 17, 21

5 U.S.C. § 7511 ....... 9, 12, 14, 21, 17

5 U.S.C. § 7512 ....... 14

5 U.S.C. § 7513(a) ....... *passim*

5 U.S.C. § 7701(c)(2)(B) ....... 20

28 U.S.C. § 503 ....... 11

28 U.S.C. § 516 ....... 6

28 U.S.C. § 542 ....... *passim*

Act of June 22, 1870, ch. 150, § 1, 16 Stat. 162 ....... 11

Act of June 25, 1948, ch. 646, § 503, 62 Stat. 869, 909 ....... 11

Civil Service Reform Act ("CSRA") ....... *passim*

Pub. L. No. 89-554, § 4(c), 80 Stat. 378 (Sept. 6, 1966) ....... 16

**Other Authorities**

28 C.F.R. § 45.13 ....... 8

28 C.F.R. Subpart E-4 ....... 8

28 C.F.R. Subpart G-2 ....... 8

*Constitutionality of the Foreign Service Grievance Board's Oversight Authority*, 2026 WL 2564100, at *2 (Aug. 20, 2026) ....... 6

Hearing on H.R. 917, 99th Cong. 25, 26 (1985) ....... 12, 13

U.S. Const. art. 2 cl. 2 ....... 17

U.S. Const. Art. III sec. 3 ....... 19

Plaintiff Maurene Comey respectfully submits this reply memorandum of law in further support of her motion for partial judgment on the pleadings on Claims One, Two, Three, Five, and Six. (ECF 77, "Pl. Br.").

## PRELIMINARY STATEMENT

Defendants now expose their extraordinary proposition: Ms. Comey's "familial relationship" has a "nexus" to her "ability to carry []out her duties" as a federal employee. (ECF 87 ("Opp.") at 32.) Translation: she cannot serve her country because Defendants disfavor her DNA.

Defendants' admissions demonstrate that Ms. Comey is entitled to judgment on Claims One, Two, Three, Five, and Six. Defendants admit she was an outstanding career Assistant United States Attorney. (ECF 63, Answer ("Ans.") ¶¶ 25-33, 55.) They admit they fired her without cause. (*Id.* ¶ 69.) They admit that they denied her the notice and process required by the Civil Service Reform Act ("CSRA"). (*Id.* ¶¶ 69, 48.) The only question presented by Plaintiff's motion is therefore legal: whether Article II, 28 U.S.C. § 542(b), or the CSRA authorized Defendants to remove her at will.

The answer is no. Defendants' novel claim that Article II requires rank-and-file prosecutors to be removable at will would effectively transform AUSAs into principal officers. But Ms. Comey was not a principal officer, and 150 years of Supreme Court decisions recognize Congress's power to regulate the appointment and removal of inferior officers and employees. Congress has done so here. By statutory design, AUSAs do not have the final word on the government's litigation positions, such that they wield unreviewable "preclusive and conclusive" executive power. Rather, they serve in a hierarchy controlled by the Attorney General—a principal officer nominated by and accountable to the President—who supervises federal litigation and may supersede or reverse positions taken by subordinate prosecutors.

Defendants' statutory theories are similarly deficient. Section 542 identifies who may remove an AUSA; the later-enacted CSRA specifies the substantive and procedural limits on that removal power. Defendants also cannot rewrite the CSRA's requirement of removal only "for such cause as will promote the efficiency of the service" to strip away its meaning.

Finally, because Defendants could not remove Ms. Comey at will, she has established her Fifth Amendment due process claims as a matter of law. She had a property interest in maintaining her employment absent cause for termination, and Defendants deprived her of that interest without due process.

## ARGUMENT

### I. JUDGMENT SHOULD BE ENTERED FOR PLAINTIFF ON CLAIMS ONE, TWO, AND THREE: ARTICLE II DOES NOT PERMIT THE PRESIDENT, ATTORNEY GENERAL, OR ANYONE ELSE TO FIRE AN AUSA WITHOUT CAUSE

The Court can decide these Article II claims in Ms. Comey's favor on the pleadings because "no material issue of fact" is in dispute. *United States v. Whittingham*, No. 22-1507, 2024 WL 2104674, at *1 (2d Cir. May 10, 2024) (Rule 12(c) motion should be granted where "the movant clearly establishes that no material issue of fact remains to be resolved and that [s]he is entitled to judgment as a matter of law") (citation omitted).

It is undisputed that an executive branch official fired Ms. Comey. Defendants "admit" that Attorney General Bondi "authorized" Ms. Comey's removal, which the Court can take "as true" for purposes of this motion. Ans. ¶ 15; *JP Morgan Chase Bank, N.A. v. Tesla, Inc.*, 2024 WL 4167340, at *6 (S.D.N.Y. Sept. 12, 2024). But determining exactly which executive branch official fired her is not a "material issue of fact" for her separation of powers and APA claims based on the executive's reliance on Article II: *no one* can wield so-called "Article II" power to fire Ms. Comey in violation of the CSRA.

### A. Congress Has the Power to Restrict Removal of Inferior Officers

Nearly forty years ago, the Supreme Court ruled that the Constitution permitted Congress to provide for-cause removal protections to an independent counsel—a prosecutor who could assert "independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice," "appoint employees," "handl[e] all aspects of any case, in the name of the United States," and had to comply with "written or other established Department of Justice policies" only when "possible." *Morrison v. Olson*, 487 U.S. 654, 662 (1988). The Court ruled: "We do not think that [for-cause removal protection] sufficiently deprives the President of control over the independent counsel to interfere impermissibly with his constitutional obligation to ensure the faithful execution of the laws." *Id*. at 693.

In the 7-1 majority opinion, Chief Justice Rehnquist warned of the outcome that might result if the dissenting opinion were followed to its most extreme conclusion. To say that "the language of Article II vesting the executive power of the United States in the President requires that every officer of the United States exercising any part of that power must serve at the pleasure of the President and be removable by him at will," they wrote, was an unacceptably "rigid demarcation" which would upend the employment of "tens of thousands of holders of offices neither known nor foreseen by the Framers." *Id*. at 690 n.29. This interpretation was "more than the [Constitution's] text will bear." *Id.*

The author of the lone dissent—Justice Scalia—disavowed this doomsday interpretation:

> [T]hat has never been the law and I do not assert otherwise. What I *do* assert—and what the Constitution seems plainly to prescribe—is that the President must have control over all exercises of the executive power . . . That requires that he have plenary power to remove principal officers such as the independent counsel, but **it does not require that he have plenary power to remove inferior officers**. Since the latter are . . . subordinate to, *i.e.,* subject to the supervision of, principal officers who (being removable at will) have the President's complete confidence, **it is enough—at least if they have been appointed by the President or by a**

> **principal officer—that they be removable *for cause*,** which would include, of course, the failure to accept supervision.

*Id*. at 724, n.4 (Scalia, J., dissenting) (bold emphases added, italics in original).

This defeats Defendants' Article II defense. Maurene Comey was far from an independent counsel. As a line-level prosecutor, she had no power detached from her DOJ chain of command. (Ans. ¶ 44.) She could not hire her own employees or handle "all aspects of any case." *Morrison*, 487 U.S. at 662. "She had no authority to set DOJ policy" and was "subject to [DOJ] approval requirements." (ECF 1, "Compl." ¶ 44; Ans. ¶ 44.) Constitutionally speaking, she sat four levels below the SDNY United States Attorney, himself an inferior officer, reporting to Criminal Division Unit Deputies, the Criminal Division Chief, and the Deputy United States Attorney. (Ans. ¶¶ 44, 50.) *See United States v. Hilario*, 218 F.3d 19, 25 (1st Cir. 2000) ("United States Attorneys are inferior officers."). Ms. Comey's for-cause removal protections were entirely constitutional, even under a dissenting opinion considered an ideological touchstone for unified executive power.

Defendants are correct that Ms. Comey "relies primarily on older cases" to establish that she could rely on statutory removal protections, because over a century of Supreme Court precedent says so. (Opp. 14.) Those "older cases" include *United States v. Perkins*, 116 U.S. 483, 485 (1886) ("[W]hen congress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of removal as it deems best for public interest."), *Myers v. United States*, 272 U.S. 52, 161 (1926) ("Congress, in committing the appointment of such inferior officers to the heads of departments, may prescribe incidental regulations controlling and restricting the latter in the exercise of the power of removal."), and *Morrison*, 487 U.S. at 691 ("[W]e cannot say that the imposition of a 'good cause' standard for removal by itself unduly trammels on executive authority.").

Ms. Comey's reliance on this binding precedent puts her in good company. The Supreme Court has validated these "older cases"—time (*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 507 (2010) ("Nothing in our opinion, therefore, should be read to cast doubt on the use of what is colloquially known as the civil service system within independent agencies.")), and time (*Seila Law, LLC v. Consumer Fin. Prot. Bureau,* 591 U.S. 197, 217-18 (2020) (*Morrison*'s "removal protections did not unduly interfere with the functioning of the Executive Branch")) and time (*Trump v. United States*, 603 U.S. 593, 621 (2024) (invoking *Myers* to explain that unrestricted presidential removal power applies only to the "most important of his subordinates—such as the Attorney General—in their most important duties") (citation omitted)) again. Defendants ask this Court to overrule *Perkins*, *Myers*, *Morrison*'s majority *and* dissent, and nearly 150 years of related decisions, in one fell swoop.[1]

In support of their novel theory, Defendants rely on tea leaves in the *Slaughter* dissent. (Opp. 29-30.) But *Slaughter* expressly did not "determine the fate of officials not before [the Court]." *Trump v. Slaughter*, 146 S. Ct. 2283, 2306 (2026). Rather, the *Slaughter* majority provided a ringing endorsement of *Myers*, calling it a "landmark" decision that was "right all along." *Id*. at 2298 (majority) and 2316 (Gorsuch, J., concurring). That landmark decision condemned the "evil of the spoils system" and insisted that inferior officers appointed by department heads "could be entirely removed from politics." *Myers*, 272 U.S. at 173-74. Moreover, the *Slaughter* concurrence recognized that the CSRA protects "rank-and-file" employees. *Slaughter*, 146 S. Ct. at 2317 (Gorsuch, J., concurring). And while the dissent that Defendants' theory depends on warned the decision "may also have major implications for

[1] The *Comans* court recently rejected this invitation, concluding Congress appropriately provided removal protections to inferior officers through the CSRA. *Comans v. Exec. Off. of the President*, 2026 WL 2100037, at *4 (E.D. Va. July 21, 2026).

inferior officers and civil-service employees," it also reaffirmed that "[t]he Court's precedents, to date, continue to support removal protections for such individuals." *Id.* at *2344 (Sotomayor, J., dissenting).

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021), is instructive. The Supreme Court assessed whether administrative patent judges' significant "unreviewable authority" that "bind[s] the Executive Branch" was consistent with for-cause removal protections under 5 U.S.C. § 7513(a). *Id*. at 23. The Court held that authority "incompatible with their appointment by [a department head] to an inferior office." *Id*.

Defendants advance that same argument here. (Opp. 20.) But the *Arthrex* Court's solution was not to eliminate CSRA removal protections; it was to make patent judges more like AUSAs, by requiring patent judge decisions to be "subject to review" by a principal officer. *Arthrex,* 594 U.S. at 24. The solution was adding supervision, not gutting removal protections. *Id*. at 27 ("[T]he exercise of executive power by inferior officers must at some level be subject to the direction and supervision of an officer nominated by the President and confirmed by the Senate."). DOJ recently agreed in an Office of Legal Counsel opinion about employees who wield "exclusive" executive power. *Constitutionality of the Foreign Service Grievance Board's Oversight Authority*, 2026 WL 2564100, at *2 (Aug. 20, 2026) ("salvaging" statute by subjecting board decisions to principal officer review).

The *Arthrex* solution is already in place here. Congress gave the Attorney General plenary authority over all federal litigation involving the United States. 28 U.S.C. §§ 516 (federal litigation is conducted "under the direction of the Attorney General"), 519 ("[T]he Attorney General shall supervise all litigation to which the United States . . . is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys . . . in

the discharge of their respective duties."). It is not necessary that the Attorney General review every decision made by an AUSA. "What matters is that the [principal officer] have the discretion to review" the actions of her subordinates. *Arthrex*, 594 U.S. at 27.

Subjecting line prosecutors to arbitrary, political removals would revive the "evil[s]" of a spoils system that Congress eradicated, with Supreme Court approval in *Perkins*, *Myers*, *Morrison*, and their progeny. Defendants have no "Article II" right to discriminate against career civil servants based on their politics, speech, or genealogy.

### B. AUSAs Retain Removal Protection even if Prosecution Is a "Preclusive and Conclusive" Executive Function

Defendants' reliance on the phrase "preclusive and conclusive" is a backdoor attempt to recast AUSAs as principal officers.

*First*, Defendants erect a ridiculous straw man—that removal protections for AUSAs destroy the President's prerogative to set executive policy:

> If plaintiff were correct that the attorney general lacks the ability to remove AUSAs without cause, AUSAs could appear in court and bind the President and the entire Executive Branch to positions that the President disagrees with, in an area where the President is supposed to have conclusive and preclusive power.

(Opp. 20.) This argument makes no sense. Even if it were true that an AUSA can enter a courtroom and, with a word, irretrievably commit the U.S. Government to a position contrary to the President's views,[2] changing an AUSA's removal protections does not cure that risk. Whether or not serving at will, an AUSA can *unwittingly* make a disfavored argument that her

[2] Contrary to Defendants' assertion, it is far from clear that the Government can be bound by the unauthorized actions of its agents. *See generally Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947) ("Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."); *Col. Wild Pub. Lands v. U.S. Forest Serv.*, 2022 WL 17250238, at *4 (D.D.C. Nov. 28, 2022) (discussing limits of AUSA's authority to bind the United States to a settlement without proper authorizations).

supervisors can thereafter correct or reverse for policy reasons. *See, e.g.*, *Perkins Coie v. Dep't of Justice*, No. 25-5241, ECF No. 2161832 (D.C. Cir.) (DOJ moving to voluntarily dismiss appeal on March 2, 2026, and moving to withdraw voluntary dismissal on March 3, 2026).

And if a rogue AUSA *intentionally* makes an argument that subverts Presidential policy, the CSRA already provides a remedy: the AUSA can be fired for cause, including insubordination.[3] *See, e.g.*, *Hernandez v. Blanche*, 181 F.4th 149, 165 (1st Cir. 2026) (affirming termination of CSRA-protected employee for insubordination). The President thus already "retains appropriate authority to hold Plaintiff to account through the CSRA and [though] her superiors," principal officers who serve at the President's will. *Comans,* 2026 WL 2100037, at *6. Employment-at-will neither solves the purported problem—making unapproved statements—nor offers a remedy not already available. All it provides, as this case demonstrates, is an unfettered ability to proactively purge purported political enemies deemed insufficiently loyal to the incumbent political party. The answer to the hypothetical problem is not to hang a Damocles sword over prosecutors' heads; it is to subject them to supervision and discipline (including termination) for insubordination, *Morrison*, 487 U.S. at 724, n.4 (Scalia, J., dissenting)—as the CSRA already does.

*Second*, the Court's recent use of the phrase "conclusive and preclusive" has not overruled the extensive caselaw differentiating principal officers from inferior officers and employees. *Trump v. United States* offered a limited example, consistent with that caselaw: "Congress lacks authority to control the President's 'unrestricted power of removal' with respect to '*executive officers* of the United States whom he has appointed.'" 603 U.S. 593, 608-09

---

[3] There is a range of other sanctions for DOJ attorney misconduct. *See, e.g.*, 28 C.F.R. Subpart G-2; 28 C.F.R. Subpart E-4; 28 C.F.R. § 45.13; Justice Manual 1-4.200.

(2024) (citation omitted, emphasis added); *id*, 603 U.S at 651, n.1 (Barrett, J., concurring) ("I do not understand the Court to hold that all exercises of the Take Care power fall within the core executive power.") (citations omitted). And *Youngstown* itself cited *Myers* to refer to the "exclusive authority" to remove *principal* officers. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 638, n.4 (1952) (Jackson, J., concurring).

Defendants argue that Ms. Comey's multiple levels of supervision "simply places AUSAs within the hierarchical supervision through which Article II executive power is exercised." (Opp. 18.) Exactly. Principal officers are not inferior officers; that the latter answers to the former is the enduring cornerstone of the caselaw distinguishing the two. *See Kennedy v. Braidwood*, 606 U.S. 748, 761 (2025) ("Inferior officers are most readily defined by their relationship to principal officers."); *Seila Law*, 591 U.S. at 218, n.3 ("More recently, we have focused on whether the officer's work is 'directed and supervised' by a principal officer."). This very constraint is set out in Plaintiff's moving brief (Pl. Br. at 20-21) and demonstrated by the position of the AUSA's name on the signature block in this case. Defendants assert this "focus on supervision" is misplaced, because "Congress could not impose for-cause removal restrictions" on, say, the Solicitor General or Deputy Attorney General. (Opp. 19.) True, and the CSRA expressly excludes these types of senior positions. 5 U.S.C. § 7511(b)(1)-(3).

*Finally*, Defendants' vision of an AUSA's executive power sweeps far too broadly. An AUSA exercises executive power, but so do law enforcement officers such as Drug Enforcement Administration agents, Immigration and Naturalization Service detention enforcement officers, and IRS agents, who retain removal protection without disrupting the constitutional order. *See, e.g.*, *Cheney v. Dep't of Just.*, 479 F.3d 1343, 1348-49 (Fed. Cir. 2007) (DEA Resident Agent in Charge); *Alexander v. Off. of Pers. Mgmt.*, 21 F. App'x 919, 921 (Fed. Cir. 2001) (INS Detention

Enforcement Officer); *Karamanos v. Egger*, 882 F.2d 447, 452 (9th Cir. 1989) (IRS agent); *see also Steele v. United States*, 267 U.S. 505, 507-08 (1925) (deputy U.S. Marshal is not an officer "in the constitutional sense" despite wielding executive power).

## II. JUDGEMENT SHOULD BE ENTERED FOR PLAINTIFF ON CLAIMS ONE, TWO, AND THREE BASED ON STATUTORY VIOLATIONS

Ms. Comey is entitled to judgment on her separation of powers and APA claims based on statutory violations because neither Section 542 nor the CSRA itself permits Defendants to violate the CSRA (Claims One, Two, and Three). She has established, as a matter of law, that she was fired in violation of the CSRA because Defendants admit that: (1) they did not cite Section 7513(a) of the CSRA in her termination papers (Ans. ¶¶ 3, 47, 52); (2) they did not follow the CSRA's due process procedures when terminating her (*id.* ¶ 48); (3) Ms. Comey's removal "was not 'for cause' and was not based on her performance" (*id.* ¶ 69); and (4) she successfully prosecuted multiple, high-profile criminal defendants and received "outstanding" reviews for her almost decade of service in this District (*id.* ¶¶ 24-28, 30-41, 43).[4]

### A. The CSRA Applies to and Limits Section 542

No court has held that the Attorney General can ignore the CSRA, and DOJ itself has long understood that the CSRA tempers the Attorney General's Section 542 removal authority. Defendants' argument ignores the CSRA and invents a constitutional problem where none exists.

[4] Defendants may invoke these statutory defenses only if the Attorney General fired Ms. Comey. While that fact is unproven, the Court can address Defendants' statutory arguments now, pre-discovery. "[I]f a defendant's answer admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be granted." *JPMorgan Chase Bank*, 2024 WL 4167340, at *6 (cleaned up). Here, Defendants style their representation that Attorney General Bondi fired Ms. Comey as an "admission": responding to Plaintiff's allegation that the AG "authorized" Plaintiff's termination by "admitting" that Bondi "authorized" it. (Ans. ¶¶ 12, 14, 15, 16.) Accordingly, this Court can assume that admission "as true" for purposes of this motion.

**1. The Attorney General Must Comply with the CSRA**

Remarkably, Defendants fail to grapple with the text of Section 2302(c)(2), which directs the Attorney General to comply with and enforce the CSRA.

Sections 2301 and 2032 establish "Merit System Principles" and "prohibited personnel practices" such as punishing civil servants based on political affiliation. 5 U.S.C. §§ 2301-2302. The CSRA expressly directs "heads of agencies" to "prevent[] prohibited personnel practices" and "comply[] with and enforc[e] applicable civil service laws, rules, and regulations and other aspects of personnel management[.]" 5 U.S.C. § 2302(c)(2). The head of the Department of Justice is the Attorney General. 28 U.S.C. § 503.

Section 2302 thus directs the Attorney General to comply with the CSRA in "very clear and explicit language." *Braidwood*, 606 U.S. at 764, 770-71 (cleaned up). *Braidwood*, by contrast, allowed the Secretary of HHS to remove Task Force members at will because "no statute restricts [their] removal."

Defendants' only response to this directive is that it must not apply to the head of the Justice Department, exalting Section 542 over Section 2302. Arguing that Section 542(b) "does not provide such a 'very clear and explicit' constraint on the Attorney General's removal authority," (Opp. 4), misses the point. Congress constrained the Attorney General's removal authority through Section 2302(c)(2), which post-dates Section 542. It is immaterial that Congress did not restate that the Attorney General is the "head" of DOJ because it had done so long before. 28 U.S.C. § 503; *see also* Act of June 25, 1948, ch. 646, § 503, 62 Stat. 869, 909; Act of June 22, 1870, ch. 150, § 1, 16 Stat. 162.

Defendants also cannot rebut that DOJ has long concluded that the CSRA tempers Section 542 authority. (Pl. Br. at 24); *see Termination of an AUSA on Grounds Related to His Acknowledged Homosexuality*, 7 Op. O.L.C. 46 (1983) (the "Attorney General's authority to

remove [AUSAs under] 28 U.S.C. § 542(b)[] is tempered by [the CSRA's] prohibited personnel practices")). DOJ's recent 180-degree turn is a lawless contortion aimed at creating a partisan civil service. As this Court observed earlier in this case, "while the Government's litigation position may have changed, the law did not." *Comey v. U.S. Dep't of Just.*, No. 25-CV-7625 (JMF), 2026 WL 1142679, at *9 (S.D.N.Y. Apr. 28, 2026).

Defendants "admit" that the Attorney General fired Ms. Comey without cause and without "the CSRA's protections and procedural mandates." (Ans. ¶¶ 48, 69; ECF 68 at 16.) That settles the issue. The Attorney General violated the CSRA when she (purportedly) fired Ms. Comey, so judgment should be entered for Plaintiff on her APA claims.

**2. The 1990 Due Process Amendments Provide Further Protection**

In 1990, Congress provided AUSAs additional safeguards: for cause and due process protections. 5 U.S.C. § 7511(a)(C); *see generally* Pl. Br. at 25-28.

Defendants concede that Ms. Comey qualifies as an employee under Section 7511(a)(C) and that the "protections and procedural mandates . . . were not followed here" (ECF 68 at 15-16). But they argue—without authority—that when the Attorney General acts, the protections and procedural mandates of the Due Process Amendments evaporate. (Opp. 8.) No court has so ruled, and the idea is nonsensical.

*First*, the 1990 Due Process Amendments supplemented the "civil service laws" the Attorney General was already bound to follow under 5 U.S.C. § 2302(c). Nothing carved out AUSAs from those Amendments, and the legislative history confirms that Congress specifically *overrode* DOJ's objections to provide AUSAs due process and for cause protections. Hearing on H.R. 917, 99th Cong. 25, 26 (1985) (DOJ "particularly concerned about the effect [of the bill] on positions such as assistant U.S. attorneys who handle very sensitive cases which demand high

standards of ethical conduct").[5] It is illogical to read the Amendments as permitting the Attorney General to fire AUSAs at will, but not other DOJ attorneys who also prosecute crimes and report to inferior officers. (Opp. 9.)

*Second*, no court has held that the Attorney General's Section 542(b) authority overrides the CSRA, either before or after the 1990 Due Process Amendments. *Windsor v. The Tennessean* is not to the contrary. 719 F.2d 155 (6th Cir. 1984). The Sixth Circuit's conclusion—that the Attorney General could fire an AUSA without due process because he did not have a property interest in his position—pre-dated the Due Process Amendments, which expressly provided AUSAs with such property interest and due process rights (hence their name). *See* H.R. 917 Hearing at 2 ("Except for a very few high-level political appointees, Federal employees do not serve at the pleasure of the President and therefore should not be abruptly fired. It's time to protect excepted service employees."). *Windsor* also did not address Section 2302(c) protections because prohibited personnel practices were not at issue. *See* 719 F.2d at 158-59 (not alleging violation of civil service laws). *Windsor* is thus both out of date, because Congress subsequently enacted for AUSAs precisely what the *Windsor* Court held they lacked, and irrelevant, because it did not address the prohibited personal practices at issue here. The bottom line is that no court has held what Defendants seek here: a ruling that the Attorney General can fire AUSAs at whim.

*Third*, the MSPB, charged with interpreting and enforcing the CSRA, 5 U.S.C. § 1204, has long concluded that the CSRA constrains Section 542. *Hamlett v. DOJ*, 2002 WL 220046 (M.S.P.B. Jan. 25, 2002). Attempting to minimize *Hamlett*, Defendants misread it. (Opp. 9).

---

[5] While "legislative history is not the law," (Opp. 8 (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018)), "clear legislative history can 'illuminate ambiguous text,'" *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019). Congress heard lengthy testimony about how the Due Process Amendments would impact DOJ attorneys, including DOJ's concern about its impact on AUSAs.

The MSPB *did* determine that the CSRA applied to the Attorney General's Section 542 removal authority—it reviewed the language and history of Section 542 and the CSRA, and concluded that "28 U.S.C. § 542 does not bring AUSAs outside of the coverage of 5 U.S.C. § 7511(a)(1)(C), and . . . an AUSA who meets the plain terms of the latter provision has the right to appeal an adverse action covered by 5 U.S.C. § 7512 to the Board." *Id.* at *4. Thus, the Board held, "We do not agree with the broad interpretation of section 542 set forth in [*Windsor*] [that] 'Section 542 gives the Attorney General unconditional authority to dismiss an AUSA,'" because "[t]hose decisions were issued before the 1990 Civil Service Due Process Amendments were enacted, and consequently, they did not consider, nor could they have considered, the scope of an AUSA's rights under 5 U.S.C. § 7511(a)(1)(C)." *Id.* (citations omitted). Defendants' claim that "*Hamlett* did not purport to hold that the CSRA 'clearly expressed a congressional intent to trim' the Attorney General's removal power," Opp. 18 (citing *Severino*, 71 F.4th at 1044), is misleading. While the MSPB did not employ that exact language, its conclusion is clear: Congress intended the CSRA to protect AUSAs and the Attorney General does not have unconditional authority to remove them.[6]

**3. Canons of Statutory Interpretation and Constitutional Avoidance Favor Plaintiff**

Defendants rely heavily on the canon that the "specific governs the general," (Opp. 5), but their analysis has two fatal flaws.

[6] Defendants wrongly reject *Hamlett*'s examination of Section 7511(b). (Opp. 10.) The Due Process Amendments exclude certain employees from Section 7511(a)(1)(C)'s expanded definition. Relying on the statutory canon "*expressio unius est exclusio alterius*," the MSPB concluded that Congress's decision to not exclude AUSAs from the Due Process Amendments protections (while excluding other DOJ employees, like FBI agents) evinced its intent to protect them. *Hamlett*, 2002 WL 220046, at *3. And Defendants are wrong to reject *Hamlett*'s reliance on the statute at issue in *King v. Briggs* (Opp. 12) because that statute, like Section 542, did not expressly exempt the employee from CSRA removal protections.

*First*, the canon applies only in the event of conflict. *See Am. Land Title Ass'n v. Clarke,* 968 F.2d 150, 157 (2d Cir. 1992) ("*where two statutes conflict*, the statute that addresses the matter under consideration in specific terms controls over one that does so in a general manner," unless Congress clearly said otherwise) (emphasis added). But "[b]asic principles of statutory interpretation require that we construe [two statutes] in harmony, not set them at cross-purposes." *Jones v. Hendrix*, 599 U.S. 465, 478 (2023). And here there is a straightforward reading that eliminates any conflict: the Attorney General may hire and fire an AUSA under Section 542, and the CSRA outlines why and how.

By contrast, Defendants introduce disharmony into the statutory scheme by insisting Section 542 overrides the CSRA—although only under certain circumstances. Under their reading, the CSRA protects AUSAs except when the Attorney General acts. That not only undermines the CSRA's fundamental goal of a non-partisan civil service, but it would also require the Court to apply the statute one way in one context, and a different way in another. The Supreme Court rejects such statutory contortions. *See Clark v. Martinez*, 543 U.S. 371, 381 (2005) (rejecting statutory reading that would render statute "a chameleon" with different meanings based on to whom it applied); *United States v. Santos*, 553 U.S. 507, 522 (2008) (Court "forcefully rejected" the "interpretive contortion" of "giving the same word, in the same statutory provision, different meanings in different factual contexts").

*Second*, to the extent there is a conflict between Section 542 and the CSRA, Defendants' application of the canon that the specific governs the general is backwards. Where, as here, "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012), that comprehensive scheme is the specific. And that principle is even more firmly

entrenched where the more specific statute was enacted after the general one. *Bolar v. Frank,* 938 F.2d 377, 379 (2d Cir. 1991) (per curiam) ("[W]ell settled principles of statutory construction dictate that the later, specific venue provision . . . applies rather than the earlier, general venue provision.").

Congress enacted Section 542 in its current form in 1966 and its predecessors as early as 1870. Pub. L. No. 89-554, § 4(c), 80 Stat. 378 (Sept. 6, 1966); *United States v. Crosthwaite*, 168 U.S. 375, 378 (1897). Section 542 provides—in full—that the Attorney General "may appoint one or more assistant United States attorneys in any district when the public interest so requires," and that "[e]ach assistant United States attorney is subject to removal by the Attorney General." By contrast, a decade later, Congress enacted the CSRA with "painstaking detail," *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 11 (2012), "comprehensively overhaul[ing] the civil service system," *United States v. Fausto*, 484 U.S. 439, 443 (1988). It created "an elaborate new framework for evaluating adverse personnel actions against federal employees," and "prescribes in great detail the protections and remedies applicable to such action[.]" *Id.* (cleaned up).

Defendants' responses are unavailing. The mere fact that the CSRA applies to more employees than Section 542 (Opp. 6), does not make it a more general scheme. Rather, the CSRA created an "elaborate" statutory scheme—with multiple sections, administrative bodies, procedural rules and distinctions among the federal workforce. *Fausto*, 484 U.S. at 443. Defendants do not explain how this "comprehensive scheme" could possibly be less "specific" than the two sentences of Section 542. *Fausto*, 484 U.S. at 443. Further, Defendants' claim that "heads of Departments" *cannot* include the head of DOJ, ignores (a) that Congress enacted the CSRA long after declaring the Attorney General head of DOJ, and (b) that the relevant

provisions of the CSRA except *other* DOJ employees from its reach, *see* 5 U.S.C. §§ 2302(a)(2)(C)(ii)(I), 7511(b)(8) (excluding FBI employees).

Thus, while Section 542 identifies *who* can fire an AUSA, the CSRA identifies *how* that removal can be accomplished. The two statutes therefore exist in harmony but—to the extent they conflict—the CSRA is the "later, specific" statute that governs Section 542. *Bolar*, 938 F.2d at 378; *Hamlett,* 2002 WL 220046.

Lacking support from the tools of statutory interpretation, Defendants muddle constitutional and statutory arguments. Defendants claim that the CSRA cannot "preclude [] the Attorney General's [removal] power under Article II" (Opp. 14), confusing statutory authority with constitutional authority. Article II does not give the Attorney General any power. It gave *Congress* the power to grant the Attorney General statutory authority to hire and fire AUSAs, which Congress further specified through another statute. *See* U.S. Const. art. 2 cl. 2; *Perkins*, 116 U.S. at 485 (department head "has no constitutional prerogative of appointment to offices independently of . . . congress," and thus "must be governed" "not only in making appointments but all that is incident thereto"). Here, acting pursuant to its Article I Necessary and Proper Clause and its Article II Appointments Clause authority, Congress gave the Attorney General power to hire and fire AUSAs. That is a *statutory* grant of power, and, with the CSRA, Congress acted well within its constitutional authority to limit it.[7]

Defendants try to shoehorn the Attorney General's statutory power into the President's purported "Article II" constitutional power to construct a constitutional avoidance argument. *See*

---

[7] Defendants' explanation of *Severino v. Biden* remains misleading. 71 F.4th 1038, 1040 (D.C. Cir. 2023). Defendants claim that the D.C. Circuit examined "*the appointing official's* Article II removal authority." (Opp. 5, emphasis added.) In *Severino*, the court examined whether *the President* could remove officers that he had himself appointed; the decision says nothing whatsoever about "Article II removal authority" of other Executive Branch officials, because no such authority exists.

Opp. 13 ("Interpreting the CSRA to restrict the power of *the President and the Attorney General* to remove an AUSA without cause would obviously encroach on the Executive's power to control subordinates exercising executive power" under Article II). But no constitutional provision, no statute, and no court decision provides that a Head of a Department can exercise the President's purported Article II removal authority to fire a career civil servant.[8] Claiming this so-called Article II removal power overrides laws passed by Congress is what creates a constitutional conflict. *Clark v. Martinez*, 543 U.S. 371, 381 (2005) (constitutional avoidance canon is "a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts"). Defendants' argument means that AUSAs have or lose civil service protections depending on who signs the termination papers. That is not the law.

**B. Defendants' "Efficiency of Service" Argument Is Illogical**

Defendants' argument that Ms. Comey's termination "qualifies as [a] removal for [the] 'efficiency of the service' under the CSRA" takes the phrase through the looking-glass. (Opp. 26.) Section 7513 permits termination for "such cause as will promote the efficiency of the service"—it is *not* disjunctive. Congress did *not* authorize removal for "cause" *or* "efficiency of service." Thus, without "cause" there can be no harm to the "efficiency of the service." Defendants cannot use the CSRA to violate the CSRA: no reasonable reading of the statute permits Defendants to terminate *without cause* yet somehow *for the efficiency of service*.[9]

---

[8] Relatedly, Defendants' assertion that the President's Article II authority can be (silently) delegated is wrong. *See* Pl. Br. at 15-19.

[9] The argument should also be rejected as a post-hoc justification taken solely for the purposes of litigation. (Pl. Br. at 34-36.)

### 1. Section 7513 Requires Removal to Be Connected to Service

Congress mandated removal only "for such cause as will promote the efficiency of service," thus requiring a reason for termination connected to the agency's public mission. "Cause" can include misconduct[10] as well as other rationales (Opp. 26), but the reason for termination must connect to the agency's ability to do its work. *Lovshin v. Department of Navy*, 767 F.2d 826, 830, 835 (Fed. Cir. 1985) (while "[n]o limitation on the type of wrongful conduct by an employee which might lead to disciplinary action 'for cause' is specified in Chapter 75," Congress kept the "requirement[] for proof of a nexus" between the adverse action and efficiency). Defendants admit there was no reason for Ms. Comey's firing—she was outstanding. (Ans. ¶¶ 25-33, 55.) Hence, the firing had no "nexus" to DOJ's work.

### 2. The Connection Must be Legitimate

Defendants' attempt to establish a *per se* nexus here is illegitimate. Their claim—that Section 7513(a) "must at least encompass legitimate institutional considerations relevant to the Government's operation of the federal prosecutorial function" (Opp. 27)— is a dressed-up First Amendment and CSRA violation. They casually suggest a "nexus" between Ms. Comey's "familial relationship and ability to carry []out her duties." (Opp. 32.) This should be condemned for what it is: an attempt to exclude specific American citizens from holding government jobs if they were born into the "wrong" family.

This violates foundational tenets of our democracy. In 1789, the Framers prohibited penalizing children for the sins of the parents, outlawing punishment based on "Corruption of Blood." U.S. Const. Art. III sec. 3; *see Wallach v. Van Riswick*, 92 U.S. 202, 210 (1875) ("children should not bear the iniquity of the fathers"; "When the Federal Constitution was

[10] *See, e.g.,* Opp. at 33-34.

framed, this was felt to be a great hardship, and even rank injustice."). Defendants seek to resurrect guilt by familial association.

This offensive proposition also self-evidently violates the CSRA and reverses what the United States government has sought to achieve since 1883: a federal work force free from political interference. *Bush v. Lucas*, 462 U.S. 367, 382 (1983) ("Congressional attention to the problem of politically-motivated removals" existed since at least the Pendleton Act of 1883); *Lovshin*, 767 F.2d at 832 ("The rights of employees to be selected and removed only on the basis of their competence are concomitant with the public's need to have its business conducted competently. . . . An employee has no right to be incompetent; a manager has no right to hire political bed fellows.") (cleaned up); Justice Manual 1-8.100 ("The legal judgments of the Department of Justice must be impartial and insulated from political influence."). Defendants assert that decisions addressing Section 7513(a) "simply provide an evidentiary burden, namely that when an employee is removed for cause, the government must show a nexus between the for-cause removal charge and the agency's work." (Opp. 27.) Precisely. Section 7513(a) provides that any agency can fire an employee for a "cause" that "will promote" "efficiency"; Sections 7511(a)(1)(C) and 7513 permit the employee to contest the agency's decision; and courts require the agency to justify it.[11] The reason cannot be a prohibited personnel practice. 5 U.S.C. § 7701(c)(2)(B).

### 3. Defendants Admit They Did Not Follow the CSRA

Even if Defendants were correct that Section 7513(a) permits the Attorney General to fire an AUSA for "efficiency," Defendants cannot ignore the rest of the statute: Section 7513(b)

[11] Defendants' comparison of Section 7513(a) with Section 7543(a) is a selective reading of the CSRA. ECF 55 at 12 n.6. Those two sections apply to different employees and contain different language. In any event, Plaintiff does not claim that "cause" must mean precisely the same as the misconduct delineated in Section 7543(a). Under any section, cause does not mean an employee's corrupted blood.

would still mandate that the AUSA be provided with due process protections. 5 U.S.C. § 7511(a)(1)(C). And Section 7513(a) remains part of the CSRA, which requires heads of departments to comply with and enforce merit systems principles. 5 U.S.C. § 2302(b). Defendants admit that they did not provide any such due process, and do not justify their actions as consistent with the merit systems principles. (Ans. ¶¶ 69, 48.) Ms. Comey is entitled to judgment on her APA claims on that basis alone.

## III. JUDGMENT SHOULD BE ENTERED FOR PLAINTIFF ON HER PROCEDURAL DUE PROCESS CLAIMS (CLAIMS FIVE AND SIX)[12]

Defendants admit that they did not follow the CSRA's due process procedures when they fired Ms. Comey. (Ans. ¶ 48.) They appear to acknowledge that Ms. Comey has a property interest in her continued employment if she is protected by statute. (Opp. 33-34.) Judgment should accordingly be entered for Ms. Comey on Claims Five and Six because she has established as a matter of law that the CSRA protects her from removal without due process. *Comans*, 2026 WL 2100037, at *4-6 (granting summary judgment on procedural due process claims to federal employee fired purportedly pursuant to Article II; employee retained due process rights under the CSRA); Pl. Br. at 46-48; *see Perry v Sindermann*, 408 U.S. 593 (1972); *Narumanchi v. Board of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).

In addition to Ms. Comey's statutory property interest in her employment, she also has a property interest because the "rules and understandings, promulgated and fostered" by DOJ created an expectation of continued employment. (*See* Pl. Br. at 47 (citing *Perry*, 408 U.S. 593, and *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775 (2d Cir. 1991).) Arguing that Ms. Comey must point to "explicit mandatory language" that "places substantial limits on official

[12] Ms. Comey did not move for judgment on the pleadings on Claims Four, Seven, and Eight.

discretion," (Opp. 34), Defendants cite one case in support—which is inapt as it focused entirely on a 1997 FBI policy that expressly preserved discretion to terminate without process. *Langeman v. Garland*, 88 F.4th 289, 295-96 (D.C. Cir. 2023). There is no doubt that "[i]n the realm of federal employment, protected property interests can arise not only through operation of statute and regulation, but also through agency-fostered policies or understandings and the implicit overall workings [] of a particular government employer." *Coleman v. Napolitano*, 65 F. Supp. 3d 99, 105 (D.D.C. 2014); *see also Esparraguera v. Dep't of the Army*, 101 F.4th 28, 33 (D.C. Cir. 2024).

Here, the CSRA's explicit for-cause removal protections, its requirement of merits-based hiring and firing, its prohibition of certain personnel practices, and the fact that Ms. Comey consistently received "outstanding" ratings and was provided a retirement plan, (Ans. ¶¶ 3, 25; Compl. Ex. B), demonstrate that she had an expectation of continued employment as an AUSA absent cause for removal.

## **CONCLUSION**

The Court should grant Plaintiff's motion for partial judgment on the pleadings.

Dated: September 16, 2026
New York, New York

CLARICK GUERON REISBAUM LLP

By: */s/ Ellen Blain*
Nicole Gueron
Ellen Blain
Deepa Vanamali
41 Madison Avenue
New York, NY 10010
Tel: (212) 633-4310
Fax: (646) 478-9484
ngueron@cgr-law.com
eblain@cgr-law.com
dvanamali@cgr-law.com

KOSKOFF KOSKOFF & BIEDER, PC
Margaret M. Donovan
350 Fairfield Ave.
Bridgeport, CT 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
mdonovan@koskoff.com

*Attorneys for Plaintiff Maurene Comey*

**CERTIFICATE OF COMPLIANCE**

Ellen Blain, pursuant to this Court's Order (ECF 79), undersigned counsel for Plaintiff Maurene Comey, hereby certifies that the number of words within the attached memorandum of law, excluding the caption, table of contents, table of authorities, and signature block, is 6,996 according to the word-processing system used to prepare the aforesaid document.

Dated: September 16, 2026
New York, New York

*/s/ Ellen Blain*
Ellen Blain